# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Marvin Aspen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 8288 | **DATE** | 10/10/2003 |
| **CASE TITLE** | Dexia Credit Local vs. Roban, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing re-set for 11/18/2003 at 10:30 A.M..
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order: Dexia's motion to dismiss (20-1) is granted with respect to Counts I and II and denied with respect to Counts III and IV.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | OCT 1 4 2003 | |
| | Notified counsel by telephone. | date docketed | 33 |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 10/10/2003 | |
| | | date mailed notice | |
| GL | courtroom deputy's initials | GL mailing deputy initials | |
| | Date/time received in central Clerk's Office | | |

| | |
|---|---|
| DEXIA CREDIT LOCAL, f/k/a Dexia Public Finance Bank and Credit Local de France )<br><br>Plaintiff, )<br><br>v. )<br><br>PETER G. ROGAN, et al. )<br><br>Defendants. )<br>........................................................... )<br><br>EDGEWATER PROPERTY COMPANY and PGR PROPERTIES, INC., )<br><br>Counterplaintiffs )<br><br>v. )<br><br>DEXIA CREDIT LOCAL, )<br><br>Counterdefendant. ) | **DOCKETED**<br>**OCT 1 4 2003**<br><br>Case No. 02 C 8288 |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Plaintiff Dexia Credit Local (hereinafter "Dexia"), filed a ten count complaint against eleven defendants, including Edgewater Property Company (EPC) and PGR Properties, Inc. (PGR). EPC and PGR responded with a four count counterclaim against Dexia. Dexia filed a motion to dismiss all four counts in the counterclaim. For the reasons set forth below, we grant Dexia's motion with regard to Counts I and II, and deny Dexia's motion with regard to Counts III and IV.[1]

---

[1] This court has original jurisdiction over the action brought by Dexia under 28 U.S.C. § 1332 (a)(2) because the amount in controversy exceeds $75,000, Dexia, the plaintiff, is a foreign

1

33

I.  **BACKGROUND**

For the purpose of a motion to dismiss, we accept all well-plead allegations as true. *MCM Partners, Inc. v. Andrews-Bartlett & Assoc., Inc.*, 62 F.3d 967, 972 (7th Cir. 1995). We therefore recite the facts as EPC and PGR present them in their complaint.

EPC and PGR own real property surrounding Edgewater Medical Center (hereinafter "Edgewater"). In 1996, EPC and Edgewater entered a ten year lease agreement under which Edgewater agreed to pay rent, property taxes, insurance, and other expenses in exchange for the use of EPC's properties. (Compl. ¶12.) The rent and other payments made under the lease were "commercially reasonable." (Compl. ¶12.) There is no written lease between Edgewater and PGR; however, Edgewater's board of directors agreed in 1996 to make tax and maintenance payments for the use of PGR's parking lots and used the properties exclusively for several years thereafter. (Compl. ¶13.) "Edgewater's reimbursement of these costs were commercially reasonable, and Edgewater enjoyed the use of the PGR Parking Lots at a cost that was below market rates." (Compl. ¶13.)

In 1997, Edgewater contacted Dexia about obtaining a letter of credit in order to refinance its existing bond debt. (Compl. ¶ 14.) Before issuing the letter of credit, Dexia conducted a due diligence review of Edgewater's financial statements and was provided with information about the lease agreements with EPC and PGR. Dexia did not question or challenge the validity of the lease agreements before it issued its letter of credit to Edgewater. (Compl. ¶ 16.) Although Dexia secured its letter of credit with collateral, none of the EPC and PGR properties were included in that collateral because Edgewater did not own the EPC or PGR properties. (Compl. ¶ 19.)

---

corporation, and the defendants are citizens of Illinois, Indiana, and California. Because this court has jurisdiction over the original matter, the court also has supplemental jurisdiction over EPC and PGR's counterclaim pursuant to 28 U.S.C. § 1367(a). The parties do not contest that Illinois law applies to each of EPC and PGR's claims.

In May of 2001, a federal grand jury indicted several of Edgewater's doctors, as well as Edgewater's management company on charges of medicare fraud. (Compl. ¶21.) Edgewater subsequently filed for bankruptcy and Dexia was obliged to pay the principal amount of $55 million on Edgewater's bonds. (Compl. ¶ 22-23.)

At the same time, Dexia took over the management and control of Edgewater. Dexia ordered that Edgewater discontinue payments to EPC and PGR but continued to use the EPC and PGR properties. (Compl. ¶ 25-27.) On November 14, 2002, Dexia filed a complaint against EPC and PGR and subsequently recorded a *lis pendens* notice identifying the EPC and PGR properties as being the subject of pending litigation. (Compl. ¶36.) At the time that Dexia filed the *lis pendens* notice, it was aware that EPC and PGR were trying to sell their respective properties. (Compl. ¶39.) Specifically, Dexia was aware that PGR had entered into a Purchase and Sale Agreement with CA Development, Inc. and that EPC had entered into a Purchase and Sale Agreement with Blue Badger, Inc. and Split Management Company, Inc. (Compl. ¶ 40.)

In March 2003, PGR and Dexia entered an Agreement Regarding Release of *Lis Pendens*, pursuant to which Dexia agreed to release its *lis pendens* notice in exchange for PGR's agreement to place $375,000 in escrow to secure any judgement that Dexia may obtain. (Compl. ¶42.) Dexia has not entered into a similar arrangement with EPC, and as a result, Blue Badger and Split Management Co. terminated their sale agreement with EPC. (Compl. ¶44.)

## II. ANALYSIS

We are presented with a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. "The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits." *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990) (quoting *Triad Assocs., Inc. v. Chicago Hous. Auth.*, 892 F.2d 583, 586 (7th Cir. 1989)). In considering a motion

to dismiss, we must accept all well-pled allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See Id.* at 1520-21; *MCM Partners, Inc. v. Andrews-Bartlett & Assoc., Inc.*, 62 F.3d 967, 972 (7th Cir. 1995), *aff'd* 161 F.3d 443 (7th Cir. 1998), *cert. denied* 528 U.S. 810 (1999). Therefore, a complaint should not be dismissed "unless it appears beyond all doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). A complaint or counterclaim is only required to provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(e)(2).

### A.  Count I: Slander of Title

EPC and PGR allege that Dexia should be held liable for slander of title because it "recorded the *Lis Pendens* Notice with full knowledge or in reckless disregard of the fact that it had no reasonable or colorable grounds for asserting any claim of right, title or interest" in the properties. (Compl. ¶48.) To state a claim for slander of title, a plaintiff must assert that 1) the defendant made a false and malicious publication; 2) that disparaged the plaintiff's title to property; and 3) damages due to the publication. *Chicago Title & Trust Co. v. Levine*, 789 N.E.2d 769, 772 (Ill. App. Ct. 2002).

The parties do not dispute that EPC and PGR sufficiently alleged that the filing of the *lis pendens* notice fits the second and third requirements of a claim for slander of title. EPC and PGR both assert that they were hindered in their efforts to sell their properties as a result of the *lis pendens* notice (even if PGR was able to ultimately enter into a sale agreement) and that they have suffered financial damages as a result of the notice. Also, for purposes of a motion to dismiss, we accept as

true the allegation that Dexia filed a malicious suit against EPC and PGR, and that Dexia entered the *lis pendens* with full knowledge that the suit was baseless.

The dispute centers around two questions. First, Dexia argues that it is impossible to be held liable for slander of title if all of the information contained in a publication is true. Second, Dexia argues that, even if its suit is false and malicious, it is absolutely immune from liability for statements made in conjunction with litigation and therefore cannot be held liable for statements made in a *lis pendens*. We do not address the first issue because we find that Dexia is absolutely immune from suit with regard to the statements it made in filing the *lis pendens*.

Although the Illinois Supreme Court has not addressed this issue, there is one Illinois Court of Appeals case that is directly on point. In *Ringier Am., Inc. v. Enviro-Technics, Ltd.*, a court held that the absolute privilege accorded to false and malicious statements made in judicial proceedings extends to the filing of a *lis pendens* made in furtherance of the suit. 673 N.E.2d 444, (Ill. App. Ct. 1996). The court based its decision on earlier cases that extended the litigation privilege to "quasi-judicial proceedings, as well as actions 'necessarily preliminary' to judicial or quasi judicial proceedings." *Id.* at 446 (citing *Parrillo, Weiss & Moss v. Cashion*, 181 Ill.App.3d 920, 928 (1989)). The *Ringier* court also noted that extending the privilege supported the policy rationale of the absolute immunity rule, which is to "favor the free and unhindered flow of such information." *Id.* Finally, the *Ringier* court, acknowledging the absence of any case in Illinois dealing with the exact issue, cited a long list of cases in other jurisdictions in which courts have held that the privilege protecting statements made in the course of litigation should be extended to the filing of *lis pendens* notices. *Id.* at 447 (citations omitted). The Illinois appellate court relied on the rationale of the California Supreme Court, when it stated that:

5

> It would be anomalous to hold that a litigant is privileged to make a publication necessary to bring an action but that he can be sued for defamation if he lets anyone know that he has brought it, particularly when he is expressly authorized by statute to let all the world know that he has brought it.

*Id.* (citing *Albertson v. Raboff*, 46 Cal.2d 375, 295 P.2d 405, 409 (1956)). The decision in *Ringier* is squarely on point with regard to the question presented by this case and provides guidance in determining how the Illinois Supreme Court would decide the issue. Therefore agreeing with the *Ringier* rationale, we find that the absolute privilege accorded to false and malicious statements made in judicial proceedings extends to the filing of a *lis pendens* made in furtherance of the suit.

EPC and PGR argue that we should not adopt the rationale in *Ringier* for two reasons. First, it argues that the facts of *Ringier* are dispositive because the litigation in that case "legitimately concerned the disputed ownership of property" whereas Dexia's act of filing suit against EPC and PGR was in no way legitimate. This rationale fails upon close reading of the *Ringier* case. That case, like the one before us, involved a motion to dismiss a case in which plaintiffs claimed that the underlying suit was filed maliciously. In assessing the motion to dismiss, the *Ringier* court specifically assumed "that defendants filed their counterclaim maliciously and without cause, for the purpose of harassing the plaintiff and to gain an unfair advantage in the underlying litigation." EPC and PGR's argument that the suit in *Ringier* was more legitimate than the suit filed in this case can therefore hold no weight because the *Ringier* court based its decision on the assumption that there was no merit to the underlying suit filed in that case.

EPC and PGR point to two unpublished decisions of the Northern District of Illinois to support their argument that Dexia is not absolutely immune from suit for slander of title. In *Greer*

6

*Properties, Inc. v . LaSalle National Bank*, the court denied a motion to dismiss a slander of title action on the ground that one party could prove that the other had filed the notice with knowledge that it was baseless. 1989 WL 135223 (N.D. Ill. 1989). In doing so, the court recognized the possibility that one could bring an action for slander of title where an underlying suit is without merit. The second case that EPC and PGR cite is *Midwest Bank of Freeport v. Gingell*, which dismissed a counterclaim alleging slander of title on the grounds that the recording in that case "did nothing more than evidence plaintiff's newly obtained interest in the property" and thus did not "cast a cloud upon another's title to real estate." 1993 WL 487540, *3-4 (N.D. Ill. 1993). The court acknowledged, however, that where a recording does cast a cloud on another's title to real estate, that recording could be actionable as a slander of title. *Id.* Although these cases do provide some support for EPC and PGR, neither decision contains any discussion of the particular issue before us, i.e. whether the general litigation privilege should extend to the filing of an associated *lis pendens* notice. In fact, neither opinion provides enough information regarding their respective rationales to be helpful in this case. The well-reasoned authority in *Ringier* provides better guidance. Because we find that Dexia is absolutely privileged with regard to the statements made in its *lis pendens* notice, we grant Dexia's motion to dismiss Count I of EPC and PGR's counterclaim.

### B.     Count II: Tortious Interference with Contractual Relations

EPC and PGR next allege that Dexia tortiously interfered with EPC and PGR's contracts to sell their properties. To state a claim for tortious interference, a plaintiff must allege: 1) the existence of a valid and enforceable contract; 2) that defendant was aware of the contract; 3) defendant intentionally and unjustifiably induced a breach; 4) the breach was caused by defendant's wrongful conduct; and 5)

7

damages. *HPI Health Care Servs, Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 676 (Ill. 1989) (citations omitted).

EPC and PGR fail to state a claim for tortious interference because they cannot demonstrate that Dexia's alleged conduct caused a breach of contract.² EPC alleges that "the sale of the EPC properties was terminated only because EPC was unable to provide the purchasers with clean title to the properties." (Opp'n. Dexia's Mot. To Dismiss Countercl. at 12.) EPC claims that, by the terms of its contract, it was required to provide the prospective purchasers with clean title and that it could not do so because of the *lis pendens* notice. Blue Badger and Split Management Co. terminated their sale agreement with EPC because of EPC's failure to provide clean title. (Compl. ¶44.) PGR alleges that, although it was ultimately able to close the sale of its properties, "it was able to do so only by paying a price that it should not have had to pay" and that this should be sufficient to demonstrate a breach of contract. (Opp'n. Dexia's Mot. To Dismiss Countercl. at 12.)

Although these facts are sufficient to allege causation, they do not in any way allege a breach of contract. If the terms of a contract provide for a contract's termination, then termination according to those terms cannot constitute a breach. *See Pfendler v. Anshe Emet Day Sch.*, 401 N.E.2d 1094, 1098 (Ill. App. Ct. 1980) (noting that no breach occurred in firing a school teacher where the school director complied with all proper procedures under her employment contract). In fact, *EPC and PGR*, in their Motion to Dismiss Dexia's claims, cited a case for the proposition that causing merely "incidental contractual problems" is insufficient to allege a breach of contract in a tortious interference case. *Serfecz v. Gallitano*, 1995 WL 680829 (N.D. Ill.) *6 (cited in Motion to Dismiss, 6.) Like in *Serfecz*,

---

²Because we conclude that EPC and PGR failed to sufficiently allege all of the elements of a tortious interference claim, we do not reach Dexia's argument that Dexia is privileged from suit for tortious interference resulting from the filing of a *lis pendens* notice.

8

the injuries alleged by EPC and PGR constitute nothing more than incidental contractual problems and thus are insufficient to satisfy the breach of contract element of a tortious interference claim.

EPC and PGR argue that, "[m]aliciously preventing a party from performing its obligations under a contract, thereby causing the termination of that contract, is effectively the same as causing a breach." (Opp'n. Dexia's Mot. To Dismiss Countercl. at 12.) They cite no authority for this proposition, nor can we find any. Thus, because neither EPC nor PGR can assert that their sales contracts were breached, we grant Dexia's motion to dismiss with respect to Count II.

### C. Count III: Quiet Title

The third count in EPC and PGR's complaint is an action for quiet title. An action for quiet title is an equitable procedure, pursuant to which a party attempts to remove a cloud to its title in real property. *Illinois Dist. of Am. Turners, Inc. v. Reiger*, 770 N.E.2d 232, 239 (Ill. App. Ct. 2002). A "cloud" on a title is an unfounded "semblance of title" that creates doubt regarding the validity of a record title, *Id.* (citation omitted), and includes "[a]ny instrument or proceedings in writing which appears of record and casts doubt upon the validity of the record title." *Allensworth v. First Galesburg Nat'l Bank and Trust Co.*, 128 N.E.2d 600, 601 (Ill. App. Ct. 1955). Thus, the filing of a *lis pendens* notice may constitute a cloud upon title.

For purposes of a motion to dismiss, "[a] plaintiff is barred from maintaining a quiet title action only where it can show no title whatsoever in the property at issue." *Diaz v. Home Fed. Sav. & Loan Ass'n of Elgin*, 786 N.E.2d 1033, 1039 (Ill. App. Ct. 2002). EPC and PGR have sufficiently alleged their ownership interest in their properties. At the same time, a valid interest in title cannot constitute a cloud on that title. *Reiger*, 770 N.E.2d at 239. Thus, EPC and PGR must make some

9

showing that Dexia's interest is not valid. Dexia alleges that EPC and PGR fail to make more than a single conclusory allegation that Dexia has no claim of right to the property. EPC and PGR have, however, provided adequate information to put Dexia on notice of the nature of the quiet title action. *See* Fed. R. Civ. P. 8(e)(2) (requiring only a "short and plain statement" of the grounds for relief in a complaint). EPC and PGR allege that Dexia does not own the properties, that the properties were not used as collateral to secure the Edgewater-Dexia letter of credit because Edgewater did not own the properties, and that EPC and PGR have no stake in Edgewater beyond mere contractual relations. These facts constitute sufficient allegations that Dexia does not have a valid interest in the title to the EPC and PGR properties.

Dexia also argues that EPC and PGR cannot maintain an action for quiet title because the *lis pendens* in this case complied with the technical requirements of the Illinois *Lis Pendens* Statute. This argument fails in light of the basic fact that Illinois has long recognized an action to quiet title to property encumbered by a *lis pendens*, regardless of whether the *lis pendens* was properly filed. *See Allensworth v. First Galesburg National Bank and Trust Co.*, 7 Ill.App.2d 1, 4, 128 N.E.2d 600, 601 (1955). We thus conclude that EPC and PGR have properly stated a claim for quiet title and deny Dexia's Motion to Dismiss with regard to Count III.

### D. Count IV: Tortious Interference with Contractual Relations

EPC and PGR's fourth count alleges that Dexia tortiously interfered with the lease agreement between Edgewater and EPC and the agreement to pay taxes and maintenance on the PGR properties by causing Edgewater to cease making payments to both entities. As noted above, the elements of a claim for tortious interference are: 1) the existence of a valid and enforceable contract; 2) defendant was aware of the contract; 3) defendant intentionally and unjustifiably induced a breach; 4) the breach was


caused by defendant's wrongful conduct; and 5) damages. *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 676 (Ill. 1989) (citations omitted).

Once again, Dexia argues that EPC and PGR have failed to allege that there was any breach of the contracts between Edgewater and EPC or PGR. The complaint states that Dexia took control of Edgewater "on or about" May 18, 2001 and that rent payments on the EPC and PGR contracts ceased at about the same time. Pointing to allegations made in prior pleadings in this case, Dexia argues that EPC and PGR originally claimed that the payments to EPC and PGR ceased in March of 2001, two months *prior* to the time when Dexia allegedly took control of Edgewater.[3] Dexia concludes that we should dismiss the tortious interference count based on the rule that one cannot state a claim for tortious interference if the alleged breach of contract occurred before the defendant's action. *See A-Abart Elec. Supply, Inc., v. Emerson Elec. Co.*, 956 F.2d 1399, 1404 (7th Cir. 1992).

EPC and PGR respond that, "[r]egardless of when Edgewater may have first failed to make a rental payment or reimbursement, Count IV alleges that Dexia was the driving force behind Edgewater's decision to permanently refuse to pay rent, taxes and maintenance on properties that it continued to use and inhabit." (Opp. To Dexia's Mot. to Dismiss at 15) (citing Countercl. ¶24-27.) EPC and PGR assert that the evidence will demonstrate that Dexia drove the decision to discontinue rental payments.

Although Dexia does raise a contradiction in the prior pleadings, the contradiction is insufficient grounds for dismissal. A court must not grant a motion to dismiss unless it "appears beyond all doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

---

[3] Although a court generally may not consider matters outside of the pleading for purposes of a motion to dismiss, there is a clearly established exception for matters of public record, including prior pleadings in the same case. *See, e.g., Harris Custom Builders, Inc. v. Hoffmeyer*, 834 F.Supp 256, 261 (N.D. Ill. 1993). We therefore may consider EPC and PGR's previous pleadings in considering the present motion to dismiss.

11

*Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). EPC and PGR have provided sufficient information to allege that Dexia's actions motivated the cessation of payments to EPC and PGR. At trial, EPC and PGR will have to prove by a preponderance of evidence that Dexia's actions took place before Edgewater ceased making its payments on the EPC and PGR agreements. Although EPC and PGR have contradicted themselves, they have not blocked themselves into such a small corner that it would be impossible to satisfy their burden of proof. We therefore deny Dexia's Motion to Dismiss with respect to Count IV.

### III. CONCLUSION

For the foregoing reasons, Dexia's Motion to Dismiss is granted with respect to Counts I and II and denied with respect to Counts III and IV. It is so ordered.

MARVIN E. ASPEN
United States District Judge

Dated 10/10/03