# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DEXIA CREDIT LOCAL, f/k/a Dexia Public Finance Bank and Credit Local de France, ) ) ) ) | |
| ) | No. 02 C 8288 |
| Plaintiff, ) ) | Judge Mark Filip |
| vs. ) ) | Magistrate Judge Sidney I. Schenkier |
| PETER ROGAN, *et al.*, ) ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Dexia Crédit Local ("Dexia") has moved for an order that certain materials it has subpoenaed from the Department of Justice of the United States ("the Government") are not subject to Rule 6(e) of the Federal Rules of Criminal Procedure, and to compel production of those materials (doc. # 180). For the reasons that follow, Dexia's motion is granted.

### I.

In its second amended complaint ("Complaint"), Dexia alleges that Peter Rogan, formerly the owner and later the CEO of Edgewater Hospital, and various other entities that Mr. Rogan allegedly controlled engaged in a wide-ranging scheme that involved extensive Medicare and Medicaid fraud, and the improper siphoning of millions of dollars from Edgewater through fraudulent management agreements (Complaint, ¶¶ 9, 14, 118). Dexia alleges that the defendants concealed this fraud in order to induce Dexia to issue letters of credit securing $56 million in bond obligations of Edgewater (*Id.*, ¶ 158), and thereafter continued to conceal the fraudulent activity so

as to lull Dexia into believing that Edgewater was financially healthy, which in turn enabled the defendants to continue their alleged fraudulent scheme in looting of Edgewater (*Id.*, ¶¶ 178, 183).

The alleged Medicare and Medicaid fraud apparently captured the attention of the Government, which convened grand juries to investigate the matter. In May 2001, a federal grand jury indicted Bainbridge (a defendant in this case), Roger Ehman (Mr. Rogan's direct assistant), and various doctors on Edgewater's staff for fraud; the indictments resulted in a number of guilty pleas (Complaint, ¶¶ 81-90). Dexia alleges that as a result of the indictments, the Medicare and Medicaid programs ceased payments to Edgewater. Within a week after that happened, Edgewater's bondholders drew upon the letters of credit, which Dexia satisfied by paying some $56 million; Dexia so far has only been reimbursed for $500,000.00 of that amount (*Id.*, ¶¶ 197-99).

In the course of discovery in this case, Dexia served two subpoenas on the United States Attorney's Office in Chicago. The first subpoena, dated June 28, 2004, sought production of "all tapes, transcripts thereof, and FBI investigative reports (i.e., FBI 302s) recorded/made/prepared in connection with, related to, or for use in the criminal case captioned <u>United States v. Bainbridge Management, et al.</u>, No. 01 CR 469 (N.D. Ill.)" (Dexia Motion, Ex. A). In a second subpoena served on the United States Attorney's Office, this one dated January 7, 2005, Dexia additionally sought production of "[a]ny and all deposition transcripts and exhibits thereto from *United States v. Peter Rogan*, Case No. 02 C 3310 (N.D. ILL)" (Dexia Motion, Ex. B), which is a suit the Government has brought against Mr. Rogan under the False Claims Act, 31 U.S.C. § 3729.

These subpoenas are the subject of Dexia's current motion. Dexia seeks an order ruling that the material sought in these subpoenas are not "matter[s] occurring before the grand jury," and that

2

the Government therefore may produce them without running afoul of the restrictions imposed by Rule 6(e)(2) of the Federal Rule of Criminal Procedure.

At the first hearing on the motion, held on March 3, 2005, it became clear that the Government largely agreed with Dexia's position that the vast majority of the documents sought by the subpoenas are not Rule 6(e)(2) material. It became equally apparent that Mr. Rogan disagreed. At that hearing, Mr. Rogan asserted that Dexia's motion should be denied for three reasons: (1) as a threshold matter, the question of whether the subpoenaed materials are subject to Rule 6(e)(2) is a matter that must be decided by the chief judge of the district; (2) the subpoenaed materials, in fact, are "matter[s] occurring before the grand jury" and thus may not be produced under Rule 6(e)(2); and (3) in any event, the Government is judicially estopped from asserting that the subpoenaed materials are not covered by Rule 6(e)(2) because of allegedly contrary representations the Government made in earlier proceedings before then Chief Judge Aspen and current Chief Judge Kocoras in petitions to authorize limited disclosure of the subpoenaed materials for use in proceedings other than the instant lawsuit.

At the March 3 hearing, the Court set a schedule for briefing of Dexia's motion. The Court required that the Government first provide a list of materials responsive to the subpoenas. The Court required that the Government's list identify those materials that the Government represented in earlier petitions to be grand jury material, as well as those materials that the Government now asserts are covered by Rule 6(e)(2). The Government timely filed that list on March 17, 2005, but asked that the Court: (1) relieve the Government of the requirement of identifying which documents it represented to be grand jury materials in earlier petitions, out of the concern that disclosing the information would itself violate grand jury secrecy (since the petitions were under seal); and (2) to

defer the requirement that the Government identify which 302 reports it claims are grand jury material (Government's Initial Response, at 2, 4 and 1). By an order dated March 24, 2005, the Court granted both requests (doc. # 200).[1]

Under the schedule set by the Court, defendants' response to Dexia's motion was the next document to be filed. That brief which was timely filed on April 14, 2005, narrowed the issues before the Court in two respects. *First*, Mr. Rogan (the only defendant who chose to respond) did not assert the position – which he raised at the March 3, 2005 hearing – that this motion falls solely within the province of the chief judge, and thus cannot be considered by this Court. *Second*, Mr. Rogan's response made clear that, in the main, he did not object to disclosure of the vast majority of the deposition transcripts and exhibits from *United States v. Rogan* (Rogan Mem. at 9). Accordingly, after confirming that to be the case in a proceeding in open court on April 21, 2005, the Court entered an order requiring the Government to produce the depositions and exhibits from that case, while requiring certain redactions from the depositions of Messrs. Rogan, Rao and Lundy pending the Court's ruling on the pending motion (doc. # 211).

Thus, as narrowed by Mr. Rogan's response, the remaining issues before the Court are: (1) whether the tapes, transcripts and 302 reports sought by the June 28, 2004 subpoena constitute "matter[s] before the grand jury," which under Rule 6(e)(2) cannot be produced (absent an order by the Chief Judge under Rule 6(e)(3)); and (2) whether the Government is judicially estopped from asserting that the documents in question are not grand jury material, as a result of contrary

---

[1]Thereafter, by an order dated April 7, 2005 (doc. # 207), the Court allowed the prior petitions submitted to Chief Judges Aspen and Kocoras to be produced in this case, for use in this case. Accordingly, the representations made by the Government in connection with its earlier petitions to Chief Judges Aspen and Kocoras have been provided to all parties.

representations they allegedly made in the petitions to Chief Judges Aspen and Kocoras. We have now received the Government's memorandum and Dexia's reply memorandum, and having considered the arguments raised by the parties and the relevant authorities, we now consider each of those issues.[2]

## II.

Rule 6(e)(2) prohibits – subject to exceptions not relevant here – an attorney for the Government from disclosing "a matter occurring before the Grand Jury." Fed. R. Crim. P. 6(e)(2)(B)(iv). Rule 6(e) protects grand jury secrecy in order to promote important institutional and private interests. *In the Matter of Special March 1981 Grand Jury (Almond Pharmacy, Inc.)*, 753 F.2d 575, 578 (7th Cir. 1985). "The institutional interests, which range from not forewarning the targets of the grand jury's investigation to protecting witnesses and grand jurors from reprisals, are those that are important to the grand jury's investigatory effectiveness." *Id.* The personal interests protected by grand jury secrecy are "private interests, mainly in reputation, that the ex parte nature of the grand jury puts at risk: for example, the reputation of a person accused of wrongdoing by a witness before the grand jury." *Id.* These important interests, "although reduced, are not eliminated

---

[2]Although Mr. Rogan has elected not to pursue the argument that only the chief judge can determine whether certain material is subject to Rule 6(e)(2), we note that in any event we see no good basis for such a contention. Rule 6(e) does not vest jurisdiction to decide what constitutes "a matter occurring before the grand jury" solely in chief judges within a district. Local Criminal Rule 16.1 provides that "[a]ll matters pertaining to grand juries shall be heard by the chief judge of his or her designee." While Local Criminal Rule 16.1 requires that the chief judge (or his designee) must decide whether to permit disclosure of grand jury material, the question presented here is not whether grand jury material should be disclosed under the provisions of Rule 6(e)(3), but, instead, whether the subpoenaed materials are grand jury materials at all. We do not read Local Criminal Rule 16.1 as vesting that decision solely in the chief judge. *Compare In Re Mahurkar Double Lumen Hemodialysis Catheter Patent Litigation*, 140 B.R. 969, 973 (N.D. Ill 1992) (Easterbrook, J., sitting by designation) (while only a bankruptcy judge may decide whether to lift the automatic stay under 11 U.S.C. § 362(a), both the bankruptcy court and the court in which other litigation is pending may determine whether the stay applies to a particular claim).

5

merely because the grand jury has ended its activities." *In Re Eyecare Physicians of America*, 100 F.3d 514, 519 (7th Cir. 1996).

That said, "grand jury secrecy does not 'foreclose from all future revelations to proper authorities the same information or documents which were presented to the grand jury.'" *In re Grand Jury Matter (Catania)*, 682 F.2d 61, 63 (3rd Cir. 1982) (quoting *United States v. Interstate Dress Carriers, Inc.*, 280 F.2d 52, 54 (2nd Cir. 1960)). The policy of grand jury secrecy is "'designed to protect from disclosure only the essence of what takes place in the grand jury room, in order to preserve the freedom and integrity of the deliberative process.'" *Catania*, 682 F.2d at 63 (quoting *In re Grand Jury Investigation*, 630 F.2d 996, 1000 (3rd Cir. 1980), *cert. denied*, 449 U.S. 1081 (1981)). *See also United States v. Stanford*, 589 F.2d 285, 291 (7th Cir. 1978) ("unless information reveals something about the grand jury proceedings, secrecy is unnecessary").

The Seventh Circuit has fashioned several governing principles for courts to use in determining whether information that is sought "reveals something about the grand jury proceedings." *Stanford*, 589 F.2d at 291. At the threshold, the Seventh Circuit has drawn a distinction between the requests for transcripts of grand jury testimony on the one hand, and disclosure of documents presented to the grand jury on the other hand. "The policy of grand jury secrecy obviously [has] a much more limited application to the subpoena documents than it [does] to grand jury transcripts." *State of Illinois v. Sarbaugh*, 552 F.2d 768, 771 n.2 (7th Cir. 1977). In this case, Dexia has not sought the subpoena transcripts of grand jury testimony. Moreover, the Government has indicated that to the extent that the subpoenaed materials summarize grand jury testimony, or disclose that they were used to prepare a statement before the grand jury, these

materials constitute "matter occurring before the grand jury" that cannot be produced under Rule 6(e)(2) (Government Mem. at 5).

With respect to materials other than grand jury transcripts, the Seventh Circuit has explained that "'matters occurring before the grand jury' do not include every document of which the grand jury happens to have custody." *Almond Pharmacy*, 753 F.2d at 578. The Seventh Circuit has thus explained that "[i]f a document is sought for its own sake rather than to learn what took place before the grand jury, and if its release will not seriously compromise the secrecy of the grand jury's deliberations, Rule 6(e) does not forbid its release." *Id.*; *see also In re Special February, 1975 Grand Jury (Baggot)*, 662 F.2d 1232, 1244 (7th Cir. 1981) (if a document "has intrinsic value and a usefulness for other legitimate purposes and would not breach grand jury secrecy, it may be released for those purposes outside of Rule 6(e))"); *Stanford*, 589 F.2d at 291 (quotations omitted) ("when testimony or data is sought for its own sake for its intrinsic value in furtherance of a lawful investigation rather than to learn what took place before a grand jury, it is not a valid defense to disclosure that same documents had been, or were presently being, examined by a grand jury"). In deciding whether disclosure of information would contravene the institutional interests protected by grand jury secrecy, we are mindful that "[t]he Justice Department should be an adequate guardian of the institutional interests of (federal) grand juries – after all, the grand jury is an investigatory tool of the Department." *Almond Pharmacy*, 753 F.2d at 577.

Of course, the challenge often is not in reciting these standards, but rather in deciding how they apply in a particular case. As the Seventh Circuit has recognized, "[w]hether a given document or interview is sufficiently 'grand jury related' to fall within Rule 6(e) is a difficult question in many cases." *Martin v. Consultants & Administrators, Inc.*, 966 F.2d 1078, 1097 (7th Cir. 1992).

7

However, in this case, we find little difficulty in rejecting Mr. Rogan's categorical assertion that all of the subpoenaed documents constitute grand jury materials.[3]

A.

We start with the tapes and transcripts sought by the June 28, 2004 subpoena. The Government has revealed that it has some 950 tape recordings that are responsive to this request. (Government's Initial Response, at 2). The Government has further indicated that these tape recordings all were made consensually; the subpoenaed transcripts are transcriptions of these recordings. In our view, these tape recordings and transcripts fall within the category of information that is "sought for its own sake," *Almond Pharmacy*, 753 F.2d at 578, *Stanford*, 589 F.2d at 291, and not sought simply to try to divine the path of the grand jury's investigation – which, we note, has been included. These tape recordings and transcripts would have the wholly non-grand jury related purpose of allowing Dexia to ascertain what various individuals knew or did not know about the alleged misconduct at Edgewater Hospital; allowing Dexia to make informed decisions about which individuals to depose; and allowing all parties to use the materials to refresh the recollection of witnesses, or to impeach them if they testify in a manner contrary to the recorded statement.

Moreover, based on what has been presented to the Court, production of these materials will not "seriously compromise the secrecy of the grand jury's deliberations." *Almond Pharmacy*, 753

---

[3] There is no dispute that Mr. Rogan long has possessed the subpoenaed materials, and is in a position to identify any particular materials that he specifically contends may disclose a matter occurring before the grand jury. Mr. Rogan has not done so in his submission. Moreover, the Court has not conducted an *in camera* review of the subpoenaed materials. Neither the parties nor the Government has asked the Court to conduct such a review, or has suggested that such a review is necessary in order for the Court to resolve the overarching objections raised by Mr. Rogan to disclosure of the subpoenaed materials.

At this stage, therefore, we address Mr. Rogan's contentions on a categorical basis. However, as we explain below, we will provide Mr. Rogan with an opportunity to object to the production of certain, identified materials that in good faith he contends fall within Rule 6(e)(2).

F.2d at 578. To begin with, the subpoena is not framed in a fashion that asks the Government to disclose which of the tapes or transcripts were presented to the grand jury or incorporated into witnesses' statements. "A general request for 'all documents collected or received in connection with the investigation of anti-trust violations . . .' for example, would be in effect a disclosure of the grand jury proceedings; the documents are significant because they were before the grand jury." *Board of Education of Evanston Township High School Dist. No. 202 v. Admiral Heating & Ventilation, Inc.*, 513 F. Supp. 600, 604 (N.D. Ill. 1981); *see also Stanford*, 589 F.2d at 291 n.6. Dexia's subpoena does not suffer from this vice; we see nothing about the mere production of the tapes and transcripts that would allow Dexia to know which ones were presented to the grand jury.

We also find significant the Government's representation – and there is nothing to contradict it – that these tape recordings all were voluntarily made by the witnesses in question. Thus, these witnesses did not come to the United States Attorney's office under a grand jury subpoena and make the statements only to avoid testifying before the grand jury. This fact distinguishes the present situation from that considered by the Seventh Circuit in *Baggot*. In *Baggot*, various documents were considered grand jury material when they emanated from statements made by a witness who had been subpoenaed to testify before the grand jury: the witness made the statements only upon being advised that he could avoid the grand jury testimony by giving truthful answers during an interview with an Assistant United States Attorney. 662 F.2d at 1234, 1237-38.

By contrast, the factual scenario represented here more closely falls within the facts and reasoning of *Catania*. In that case, the court concluded that tape recordings and transcripts of consensual monitored conversations were not grand jury materials where they were "the product of an FBI investigation, were not generated by the grand jury, and were not requested or subpoenaed

by the grand jury." *Catania*, 682 F.2d at 64. In so holding, the court explained that the information, "although perhaps developed with an eye toward ultimate use in a grand jury proceeding, exists apart from and was developed independently of grand jury processes." *Id.* This reasoning is consistent with the Seventh Circuit's observation in *Almond Pharmacy* that "'matters occurring before the grand jury' do not include every document of which the grand jury happens to have custody." *Almond Pharmacy*, 753 F.2d at 578. Here, even if the tape recordings and transcripts were presented to the grand jury, there is nothing about the production of those materials that would disclose whether that happened. Accordingly, we conclude that the tape recordings and transcripts are not Rule 6(e) material.

### B.

We now turn to the request for 302 reports. The Government represents that the "vast majority of the 302s are witness interviews or summaries of consensual taped conversations" (Government's Initial Response, at 3). Our reasoning with respect to the 302 reports tracks the analysis set forth above with respect to the tape recordings and transcripts. "FBI reports do not automatically fall within the scope of Rule 6(e)." *Martin*, 966 F.2d at 1097 (citing *Catania*, 682 F.2d at 63-64). Here, we see no evidence that the 302 reports were the product of interviews obtained as a result of grand jury subpoenas that were issued, as was true in *Baggot*, 662 F.2d at 1238. Nor is there anything to indicate that 302 reports summarizing witness interviews or consensual taped conversations would reveal anything about what portion of that information, if any, was actually presented to the grand jury. In these circumstances, we conclude that, as in *Catania*, 682 F.2d at 64, the 302 reports in this case cannot be categorically labeled as grand jury material, as Mr. Rogan seeks to do.

# III.

We now turn to Mr. Rogan's judicial estoppel argument. "The doctrine of judicial estoppel is intended to protect the integrity of the judicial process." *United States v. Christian*, 342 F.3d 744, 747 (7th Cir. 2003). The doctrine provides that "a party who prevails on one ground in a lawsuit may not in another lawsuit repudiate that ground." *Id*. The Seventh Circuit has held that judicial estoppel may apply when: "(1) the later position is clearly inconsistent with the earlier position; (2) the facts at issue are the same in both cases; (3) the party to be estopped convinced the first party to estop its position; and (4) the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id*.

Mr. Rogan asserts that the Government's conduct satisfies all of the elements required for judicial estoppel. Mr. Rogan claims that the Government's position here – that the subpoenaed materials are not grand jury materials under Rule 6(e)(2) – is "clearly inconsistent" with the position the Government asserted in the earlier petitions to Chief Judges Aspen and Kocoras; that the facts at issue are the same now as they were when the Government presented those earlier petitions; that the "party to be estopped" – the Government – convinced Chief Judges Aspen and Kocoras of its position that the subpoenaed materials were grand jury materials; and the "party seeking to assert an inconsistent position" – the Government – would derive an unfair advantage if not estopped. The unfair advantage that Mr. Rogan claims the Government will reap from the alleged change in position is not a benefit in this case (to which the Government is not a party), but rather in the *United States v. Rogan* case, in which Mr. Rogan is seeking to dismiss that False Claims Act case based on alleged abuse of the grand jury and misuse of grand jury materials (Rogan Mem. at 7, 8).

11

We reject Mr. Rogan's arguments because, at the threshold, the Government is not a "party" to this case. There is no assertion that the adverse party to Mr. Rogan in this case, Dexia, took any inconsistent position in an earlier proceeding. In substance, what Mr. Rogan seeks to do is to impute a judicial estoppel that Mr. Rogan says is warranted against the Government to an entirely separate entity, Dexia. Judicial estoppel is an "equitable concept." *Christian*, 342 F.3d at 747. We see no equitable basis to judicially estop Dexia from obtaining the subpoenaed materials based on alleged representations by the Government: representations which Dexia did not make, and had no ability to control. To be sure, Mr. Rogan has offered no authority for this novel application of judicial estoppel, and we are aware of none.

To the extent that the Government's conduct warrants application of judicial estoppel, the proceeding in which that estoppel would be applied is *United States v. Rogan*, 02 C 3310, the Government's False Claims Act case against Mr. Rogan. The Court finds no basis to deprive Dexia in this proceeding of subpoenaed documents that we conclude are not grand jury material, based on the conduct of a non-party – the Government – in petitions filed in other proceedings in which Dexia was not a party.[4]

---

[4] As a result of this ruling, we do not reach the question of whether other elements necessary to judicial estoppel have been met. However, we do note that the materials submitted raise a question concerning whether the Government's current position (that the vast majority of the subpoenaed materials are not subject to Rule 6(e)(2)) is "clearly inconsistent" with the earlier positions the Government took in petitions before Chief Judges Aspen and Kocoras.

The Government filed two petitions with then Chief Judge Aspen on November 2, 1999 and June 25, 2000 (Government's Mem., Exs. A-1, B-1). In those petitions, the Government identified the documents it sought to disclose, which included documents subpoenaed or otherwise obtained by the grand jury in connection with investigations of fraudulent claims and kickbacks in connection with the Medicare, Medicaid and other healthcare benefit programs at Edgewater Hospital, as well as the work product of investigators, assistant United States attorneys, FBI agents and other federal agents who participated in the investigation. The Government expressly stated that the documents that it sought to disclose did not include grand jury transcripts (*Id.*, Ex. A-1, at 2; Ex. B-1, at 2). In each of the petitions, the Government argued that the materials it sought to disclose were not covered by Rule 6(e)(2) (*Id.*, Ex. A-1 at 10-15; Ex. B-1 at 10-14), and then argued, in the alternative, that if the documents were considered grand jury material, they nonetheless could be disclosed pursuant to Rule 6(e)(3) (*Id.*, Ex. A-1 at 15-22; Ex. B-1 at 15-21). The orders entered

## IV.

While we reject Mr. Rogan's assertion that the subpoenaed documents categorically constitute grand jury material subject to Rule 6(e)(2), we do not discount the possibility that certain of the 302 reports may disclose matters occurring before the grand jury: for example, a 302 report may summarize a witnesses testimony before the grand jury, or may disclose that one of the consensual recordings (or a transcript of it) was presented to the grand jury. In that circumstance, the 302 report would fall within Rule 6(e)(2). Accordingly, the Court sets forth the following procedure to insure the prompt production of the subpoenaed materials, while at the same time

---

by Chief Judge Aspen both stated that "the Court finds that the requested disclosure of documents would not reveal matters occurring before the grand jury," and then went on to find that even if they did, disclosure would be warranted under Rule 6(e)(3) (*Id.*, Ex. A-2 at 1; Ex. B-2 at 1). All of the tape recordings and transcripts identified by the Government as responsive to Dexia's subpoena are dated June 14, 1999 or earlier, and thus were in existence at the time both orders were entered by Chief Judge Aspen.

The two petitions submitted to Chief Judge Kocoras in 2003 differ in certain respects from the petitions the Government submitted to Chief Judge Aspen in 1999 and 2000. The scope of documents the Government sought to disclose in the petitions to Chief Judge Kocoras, with the petitions to Chief Judge Aspen, included documents relating to the investigation of Mr. Rogan and other individuals and entities in connection with false and fraudulent claims and kickbacks in connection with the Medicare, Medicaid and other healthcare benefit programs, as well as the work product of investigators, assistant United States attorneys, FBI agents and other agents participating in the investigation. But, unlike the petitions submitted to Chief Judge Aspen, the petitions submitted to Chief Judge Kocoras specifically sought disclosure of grand jury transcripts (Government's Mem., Ex. C-1, at 2-3; Ex. D-2, at 3-4). Unlike the petitions to Chief Judge Aspen, the petitions to Chief Judge Kocoras did not offer the argument that Rule 6(e)(2) did not apply to the documents the Government sought to disclose, but rather argued that disclosure was appropriate under Rule 6(e)(3). And, the orders entered by Chief Judge Kocoras contained no finding that the materials the Government sought to disclose fell outside of Rule 6(e), but rather found that disclosure was permitted under Rule 6(e)(3) (Government Mem. Ex. C-2, at 1; Ex. D-3, at 1).

It is difficult to see the inconsistency in the positions that the Government took before Chief Judge Aspen and the position it is taking in this proceeding. In both, the Government's position was – and is – that the documents at issue (which did not include grand jury transcripts) were not Rule 6(e)(2) material. As for its failure to make that argument in the petitions before Chief Judge Kocoras, the Government seeks to distinguish those petitions on the ground that they did seek disclosure of grand jury transcripts (Government Mem. at 8). Without passing on the persuasiveness of that explanation, we note that the vast majority of 302 reports responsive to Dexia's subpoena already had been prepared at the time that Chief Judge Aspen entered one or both of his orders in 1999 and 2000. Thus, if there was a consistency between the 2003 petitions to Chief Judge Kocoras and the positions now taken by the Government worthy of judicial estoppel, it may be that any such estoppel would be limited to the relatively few documents generated after then Chief Judge Aspen's last order of June 26, 2000. But, these are all matters that the Court does not decide in the present motion, and that the Government and Mr. Rogan will be free to litigate in the pending case in which they are both parties.

preventing the disclosure of any particular documents that would fall within the protection of Rule 6(e)(2).

*First*, by May 20, 2005, the Government shall produce to Mr. Rogan a final log setting forth the documents responsive to Dexia's subpoenas.[5] In that list, the Government shall identify any particular items that the Government contends it may not disclose pursuant to Rule 6(e)(2). That log shall be filed with the Court and shall be served on all parties.

*Second*, by May 31, 2005, Mr. Rogan shall file with Court, and serve on all parties, a statement identifying each entry on the Government's list: (a) that Mr. Rogan contends are protected by Rule 6(e), when the Government asserts it is not, and (b) that Mr. Rogan asserts is not protected by Rule 6(e), when the Government asserts that it is. On that same date, Mr. Rogan shall serve on the Government a separate statement explaining, on an item-by-item basis, the basis for its disagreement with the Government's position as to each item in dispute. A copy of that separate statement shall be submitted to the Court *in camera*, but is not to be filed with the Court or served on the other parties.

By June 6, 2005, the Government shall produce to all parties copies of the subpoenaed materials over which there is no disagreement. On that date, the Court will hold a status conference to determine the mechanism for resolving any disputes.

We recognize that this time schedule requires the Government and Mr. Rogan to review substantial amounts of material in a short-time frame. We do not impose that requirement lightly.

---

[5]In its initial submission, the Government indicated that its list of responsive materials was preliminary, and that "it is possible, if not likely, that some material included on the list may not be responsive, and that some material may be inadvertently omitted from that list that should have been included" (Government's Initial Response, at 2 n.1).

However, in deciding the appropriate time frame for response, we give consideration not only to the nature of the task involved, but also to other important considerations.

*First*, we note that the materials that will have to be reviewed and produced under this order are the tape recordings, transcripts and 302 reports (the deposition transcripts and exhibits from *United States v. Rogan* already have been produced). The subpoena seeking production of those documents was issued and served on June 28, 2004, more than ten months ago. While the parties have expressed that there are good reasons why the matter was not brought before the Court on a motion until the end of February 2005, it nonetheless remains the fact that this subpoena has been outstanding for more than ten months. That is plenty of time for the Government and Mr. Rogan (both of whom have access to the subpoenaed documents) to have engaged in a review sufficient to draw conclusions as to what positions each will take as to specific, identified materials.

*Second*, production of these documents is essential to moving this case forward. This lawsuit was filed on November 14, 2002, and now – almost two and one-half years later to the day – document discovery is still ongoing, and virtually no deposition discovery has taken place. Dexia has (understandably) expressed concern about proceeding with depositions of individuals, many of whom have given tape recorded statements or who may be the subject of 302 reports, without first having an opportunity to review this material. Timely production of the material will remove a significant barrier to moving forward with deposition discovery in the case.

For these reasons, we believe the time frame set forth above – while short – is reasonable given all the circumstances. The Court will adjust those dates only upon the most compelling reason. In addition, we caution that the opportunity given to Mr. Rogan to express particularized objections to the Government's positions concerning whether individual reports or recordings are

covered by Rule 6(e) is designed to protect the legitimate interests of secrecy in the grand jury process; it is not intended as a mechanism to necessarily prolong the production process. If the Court concludes that Mr. Rogan is raising frivolous contentions regarding the status of individual items on the Government list, the Court will impose monetary and/or other appropriate sanctions.

## CONCLUSION

For the foregoing reasons, Dexia's motion (doc. # 180) is granted. The matter is set for a status conference on June 6, 2005.

**ENTER:**

**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**Dated: May 13, 2005**