**EXHIBIT A**



**SIDLEY AUSTIN LLP**
ONE SOUTH DEARBORN
CHICAGO, IL 60603
(312) 853 7000
(312) 853 7036 FAX

epruitt@sidley.com
(312) 853-1093

BEIJING
BRUSSELS
CHICAGO
DALLAS

GENEVA
HONG KONG
LONDON
LOS ANGELES
NEW YORK

SAN FRANCISCO
SHANGHAI
SINGAPORE
TOKYO
WASHINGTON, DC

FOUNDED 1866

August 24, 2007

**By Email and Facsimile**

Michael J. O'Rourke
O'Rourke Katten & Moody
161 N. Clark Street, Suite 2230
Chicago, Illinois 60601

Re: <u>Dexia v. Rogan (02 C 8288) – Citation to Judith Rogan</u>

Dear Mike:

I am writing in relation to Judith Rogan's objections and document production in response to Dexia Crédit Local ("Dexia") Citation to Discover Assets in the above-referenced case. As noted in the Citation, we will not be able to proceed with Mrs. Rogan's examination until we have satisfactorily resolved the document production issues addressed in this letter. To date, Mrs. Rogan response to the Citation has been severely deficient, for reasons we explain in detail below. Accordingly, we will file a rule to show cause as to why Mrs. Rogan should not be held in contempt if we do not receive the information and/or production requested below by 5:00 p.m. on Tuesday, August 28th.

Before we proceed with addressing Mrs. Rogan's compliance with her production obligations, a note of caution. As you know, the Citation prohibits Mrs. Rogan from, *inter alia*, making or allowing any transfer or other disposition of, or interfering with, any property belonging to the judgment debtor, Peter Rogan. We have developed evidence that Mrs. Rogan has previously facilitated such transfers. Accordingly, we urge you to caution Mrs. Rogan that she is prohibited from making or allowing any such transfers.

## I. General Objections.

**General Objection No. 1** – Mrs. Rogan objects generally to all documents requested "which call for production of purely private and personal documents." This objection was not specifically raised in Mrs. Rogan's response to Requests No. 1–10. Mrs. Rogan's invocation of this objection in response to Requests No. 11–15 is addressed below. Please confirm by 5:00 p.m. on Tuesday, August 28th. whether Mrs. Rogan has withheld any documents responsive to Requests No. 1–10 on the basis of this general objection.

**General Objection No. 2** – Mrs. Rogan objects to all requests to the extent that they call for the production of privileged documents. It is well-established that the party seeking to withhold materials from discovery bears the burden of establishing the essential elements to



MICHAEL J. O'ROURKE
AUGUST 24, 2007
PAGE 2 | CHICAGO

demonstrate the materials are privileged. *See United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997). Accordingly, Fed.R.Civ.P. 26(b)(5) requires that parties withholding otherwise discoverable information provide detailed descriptions of all information withheld to enable the requesting party to assess the applicability of the privilege. Furthermore, the privilege must be established on a document-by-document basis; a blanket claim failing to specify what information is protected will not suffice. *United States v. White*, 970 F.2d 328, 334 (7th Cir. 1992). We specifically requested that Mrs. Rogan provide us with a privilege log on July 5, 2007. Despite these requirements of which you surely are aware and our July 5th request, Mrs. Rogan has not yet provided us with a privilege log for documents she has withheld from production. By 5:00 p.m. on Tuesday, August 28th, Mrs. Rogan must provide a privilege log providing a detailed explanation for <u>each</u> document withheld from production. The log, inter alia, must state the sender, recipient, date, type of document (e.g., memo, letter, etc.), identify the client and attorney, and provide a sufficient description of the subject matter so that we can assess whether or not it is privileged.

**General Objection No. 3** — Mrs. Rogan objected to producing documents without the entry of an appropriate protective order. As documented in my July 5th letter, the parties have agreed that Mrs. Rogan's document production will be governed by the terms of the protective order previously entered by Judge Filip in this case.

## II. Specific Objections and Document Production Issues.

Below I address Mrs. Rogan's objections to specific document requests as well as deficiencies we have discovered in Mrs. Rogan's document production to date.

**Request No. 1** — Mrs. Rogan agreed to produce documents responsive to our request for "[a]ll documents (written or electronic) relating to Your assets and liabilities . . ." However, there are several areas in which Mrs. Rogan's production is deficient.

(i) <u>Oceanic Bank and HSBC account documents</u> — Dexia served its Citation on Mrs. Rogan through personal service and by sending the Citation to you on June 20, 2007. Since that time, we repeatedly have requested production of the full account documents for Mrs. Rogan's accounts at Oceanic Bank & Trust in the Bahamas and HSBC in Canada.

> ➢ On July 5, 2007, after reviewing Mrs. Rogan's initial production of documents at your offices, I noted that Mrs. Rogan had not produced documents related to her bank accounts at Oceanic Bank & Trust and HSBC. That same day, I sent you a letter noting that Mrs. Rogan had not produced these documents and stating that we expected Mrs. Rogan to immediately produce these key financial records.

> ➢ On July 10th, you responded to my letter by stating that "we are pulling together the HSBC and Bahamas trust documents for production I will call you in the next couple of days when I have them."



- I responded to you on July 11th to emphasize that "the citation seeks not just the account statements for the HSBC, Oceanic Bank and other accounts, but also requires production of cancelled checks, wire transfer records, records of deposits, account opening documents, and communications relating to the accounts."

- On July 13th, Mrs. Rogan produced some account records to us. However, after examining the records, we discovered that the production contained **no** records for Mrs. Rogan's Oceanic Bank account and only a summary account statement for the HSBC account covering the period January 1, 2007 through July 2007.

- On August 14th, I sent you another letter stating that we still had not received any documents for Mrs. Rogan's account at Oceanic Bank and that the summary statement Mrs. Rogan produced for the HSBC account was not adequate. My August 14th email made clear that the Citation requires Mrs. Rogan to produce full account records for both the Oceanic Bank and HSBC accounts for the period January 1, 2004 through the present, "including: account opening documents, monthly account statements, all back up for individual credits and debits to the account (*i.e.*, records of deposit, checks, wire transfer records) and all correspondence or communications Mrs. Rogan has regarding these account[s]."

- On August 20th, you called to tell me that Mrs. Rogan was contacting HSBC to obtain the documents we were requesting, that Mrs. Rogan did not have any Oceanic Bank account documents in her possession, and that you had a "call in" to John Foley regarding obtaining the Oceanic Bank account statements. You also told me that you would call me on August 22nd with an update on when we could expect to receive these documents. I did not hear anything from you August 22nd.

Mrs. Rogan has been on notice since at least June 20th that she needed to provide us with her bank records, including full monthly statements, records of transfers and other documents related to her accounts. You stated on July 10th that Mrs. Rogan was gathering the Oceanic and HSBC documents. Despite these facts, we *still* have not received these documents (apart from the summary records for January–July 2007 produced for the HSBC account). If Mrs. Rogan did not have these records in her personal possession, she should have requested the records from HSBC and Oceanic weeks ago. There is no justification for the delay in producing these documents. The HSBC and Oceanic documents must be produced by 5:00 p.m. on Tuesday, August 28th.

(2) <u>Other Bank and Investment Accounts</u> - Mrs. Rogan provided us with one-page, 2006 year end account summaries for many of her bank and investment accounts. However, as noted above, our requests covered the period January 1, 2004 through the present and required Mrs. Rogan to produce not only year end account summaries, but all account opening documents, monthly account statements, individual records of deposit, checks, wire transfer records, and all correspondence or communications Mrs. Rogan has regarding these accounts.





MICHAEL J. O'ROURKE
AUGUST 24, 2007
PAGE 4 | CHICAGO

Based upon our review, it appears that Mrs. Rogan may only have produced account documents in her immediate physical possession. However, Judge Schenkier repeatedly has affirmed in this case that a party responding to discovery requests has a responsibility to produce not only documents in her immediate possession, but also documents in her custody or control, i.e., documents that the party has the ability to receive upon request. See, e.g., *Dexia Credit Local v. Rogan et al.*, 231 F.R.D. 538, 541 (N.D. Ill. 2004). Based upon our review of the documents provided to date, Mrs. Rogan still has not produced the following documents to Dexia:

| | | | |
|---|---|---|---|
| Brandywine Fund | 16000609225 | Judith K. Rogan | ➢ No monthly account statements for period January 1, 2004 through present;<br><br>➢ No records of individual deposits, checks, or wire transfer records for period January 1, 2004 through present. |
| DWS Scudder | 11-103-15216-9 | Judith K. Rogan Revocable Trust | ➢ No monthly account statements for January 2004 through March 2004, August 2004 through December 2004, or January 1, 2005 through present;<br><br>➢ No records of individual deposits, checks, or wire transfer records for period January 1, 2004 through present. |
| Ameritrade | 192-908508 | Judith K. Rogan Revocable Trust | ➢ No monthly account statements for July 2004, November 2004, April 2005 through August 2005, October 2005 through December 2005 and February 2006;<br><br>➢ No records of individual deposits, checks, or wire transfer records for period January 1, 2004 through present. |
| 1st Nat'l Bank of Valparaiso | 700-697-7 | Judith K Rogan | ➢ No monthly account statements for period January 1, 2004 |

*[Handwritten annotations at top: "30 Dcn Road / Canton, MA 02021" and "BOSTON 02205"]*



MICHAEL J. O'ROURKE
AUGUST 24, 2007
PAGE 5 | CHICAGO

| | | | |
|---|---|---|---|
| | | Trustee | through present;<br>➢ No records of individual deposits, checks, or wire transfer records for period January 1, 2004 through present. |
| 1st Nat'l Bank of Valparaiso | 700-823-6 | Peter Rogan or Judith K | ➢ No monthly account statements for period January 1, 2004 through December 31, 2004;<br>➢ No records of individual deposits, checks, or wire transfer records for period January 1, 2004 through present. |
| 1st Nat'l Bank of Valparaiso | Safe Deposit Box | Peter and Judith Rogan | ➢ No inventory of the contents of safe deposit box;<br>➢ No copies of the bank's records of access to the safe deposit box or other records relating to the safe deposit box. |
| Clipper Fund | 87-080-8027 | Judith K Rogan | ➢ No account opening documents;<br>➢ No monthly account statements for period January 1, 2004 through present;<br>➢ No records of individual deposits, checks, or wire transfer records for period January 1, 2004 through present. |
| Ameritrade | 51-282-424 | Judith K Rogan Trustee | ➢ No account opening documents;<br>➢ No monthly account statements for period January 1, 2004 through present;<br>➢ No records of individual deposits, checks, or wire transfer records for period January 1, 2004 through present. |

*[Various handwritten annotations throughout margins, including "No FEE", "Not available", "Annual", etc.]*

Case: 1:02-cv-08288 Document #: 566-2 Filed: 09/23/08 Page 7 of 10 PageID #:7568



**SIDLEY AUSTIN LLP**
**SIDLEY**

MICHAEL J. O'ROURKE
AUGUST 24, 2007
PAGE 6 | CHICAGO

By 5:00 p.m. on Tuesday, August 28th, provide us with a specific date within the next two weeks when we will receive the foregoing documents. If you believe any of the records identified above already have been produced, please identify by Bates number where those documents are to be found in Mrs. Rogan's production.

**Request No. 6** – Mrs. Rogan agreed to produce all "communications, correspondence, or agreements" between Mrs. Rogan, any individual or entity on Rider B of the Citation, and Oceanic Bank. To date, Mrs. Rogan has not produced any such documents to Dexia. Mrs. Rogan (or her agents) must have had some communication with Oceanic Bank in setting up her account and arranging transfers to and from the account. If such communications are in the possession of Messrs. Foley, Tatooles, Cuppy or Myers or some other individual acting on Mrs. Rogan's behalf, Mrs. Rogan must request the responsive documents from those individuals. By 5:00 p.m. on Tuesday, August 28th, provide us with a specific date within the next two weeks when we will receive the foregoing documents.

**Requests Nos. 7-10** – Mrs. Rogan agreed to produce responsive documents "to the extent they exist." By 5:00 p.m. on Tuesday, August 28th, provide us with a specific date within the next two weeks when we will receive the foregoing documents.

**Requests Nos. 11-15** – Mrs. Rogan has objected to these requests on the grounds that they seek "irrelevant and purely private information" that is outside the proper scope of a citation to discover assets. This objection is without merit. Dexia's citation to discover assets was issued pursuant to 735 ILCS 5/2-1402 and Illinois Supreme Court Rule 277. The type of information discoverable under this provision is extremely broad. *See Gerald E. Kennedy v. Four Boys Labor Services, Inc.*, 279 Ill.App.3d 361, 367 (1996) (noting that "in interpreting the provisions of section 2-1402, the provisions are to be liberally construed.") In fact, Illinois courts explicitly have held that in the context of a citation proceeding, a "fishing expedition" is permissible so long as it is based on a belief that assets are in the possession of the third party. *See Terry Regan and Dennis Egan v. Garfield Ridge Trust & Savings Bank*, 247 Ill. App. 3d 621, 624 (1993) (holding that "a fishing expedition for assets is permissible in the context of an initial proceeding to discover assets"); *Federal Loan Corp. v. Harris*, 17 Ill.App.3d 49, 50 (1974) (same).

The Seventh Circuit has held that a judgment creditor can properly use a citation to discover assets to request non-financial information that may assist the judgment creditor in discovering the location of the judgment debtor's assets. *See Matrin-Trigona v. Gouletas*, 634 F.2d 354, 357 (7th Cir. 1980) (affirming contempt order against citation respondent who refused to provide information regarding his place of birth, location of his telephone, and information relating to his filings as a candidate for public office) Thus, during discovery in this case, Mr. Rogan produced his own calendar, address book, passport and information evidencing travel. Each of these categories of documents contained information relevant to Mr. Rogan's assets and control over various investments. Mr. Rogan's calendar, airline ticket receipts and passport



**SIDLEY** | SIDLEY AUSTIN LLP

MICHAEL J. O'ROURKE
AUGUST 24, 2007
PAGE 7 | CHICAGO

provided evidence of his travel to the Bahamas to coordinate a transfer of funds from his Bahamian trust to a U.S. bank account in 2002. Mr. Rogan's address book similarly provided information regarding Mr. Rogan's connections to investments of which he claimed to have no knowledge.

*[handwritten: personal item]*

Here, Dexia has requested from Mrs. Rogan the same types of documents that Mr. Rogan already produced and which the Seventh Circuit in *Gouletas* found relevant in a citation proceeding. Specifically, Dexia requested a copy of Mrs. Rogan's calendar (Request 11), address book or contacts list (Request 12), passport (Request 13), applications or other documents related applications for temporary or permanent residency (Request 14) and document sufficient to show Mrs. Rogan's travel by airplane or boat (Request 15). These requests seek relevant information relating to the potential disposition and location of Mr. Rogan's assets, which we have reason to believe have flowed through accounts in Mrs. Rogan's name. For example, Mrs. Rogan opened her foreign accounts in the Bahamas and Canada during the pendency of this litigation. It appears that a substantial amount of these funds likely originated with Mr. Rogan, were transferred by Mr. Rogan to Mrs. Rogan's foreign accounts, and then used by Mrs. Rogan for Mr. Rogan's personal expenses, *e.g.*, Mrs. Rogan's payment of Mr. Rogan's $100,000 retainer fee with Hogan Marren, Ltd. in connection with its representation of Mr. Rogan in his appeal of *U.S. v. Rogan*. In addition, given that she is Mr. Rogan's wife, information about her travel and contacts is likely to reveal information about her husband's whereabouts and locations in which he has disposed of assets. Documents responsive to these requests must be produced by 5:00 p.m. on Tuesday, August 28th.

**Request No. 16** – Mrs. Rogan has objected to our request for communications between Mrs. Rogan and Fred Cuppy, Troy Myers, John Tatooles or John Foley regarding the individuals or entities on Rider B as: (i) seeking documents protected by the attorney-client privilege and (ii) outside the proper scope of a citation.

First, we note that we have never seen any documents suggesting that Mrs. Rogan has an attorney-client relationship with Messrs. Cuppy, Myers, Tatooles or Foley in relation to the entities and individuals identified in Rider B. The fact that these individuals are attorneys does not make every communication Mrs. Rogan had with them privileged. Accordingly, for each document withheld from production, Mrs. Rogan must provide us with a detailed privilege log providing the basis for her claim of privilege. *See Allendale Mut. Ins. Co. v. Bull Data Systems, Inc.*, 145 F.R.D. 84, 88 (N.D. Ill. 1992) (holding that "[f]or each document, the log should identify the date, the author and all recipients, along with their capacities. The log should also describe the document's subject matter, purpose for its production, and a specific explanation of why the document is privileged or immune from discovery. These categories . . . must be sufficiently detailed to allow the court to determine whether the discovery opponent has discharged its burden of establishing the [existence of a privilege]. Accordingly, descriptions such as 'letter re claim,' 'analysis of claim,' or 'report in anticipation of litigation' -- with which we have grown all too familiar -- will be insufficient."). *See also In re Air Crash Near Roselawn, Ind.*, 1997 WL 97096, *2 (N.D. Ill. 1997) (same).



**Second**, the requested documents are within the proper scope of a citation. Messrs. Cuppy, Myers, Tatooles and Foley jointly manage the affairs of a large web of entities directly and indirectly owned by Mr. Rogan's domestic and foreign trusts and the domestic and foreign trusts of the Rogan children. Discovery to date has established that millions of dollars have flowed between and among these entities for Mr. Rogan's benefit. As noted above, documents currently in our possession indicate that Mr. Rogan also has caused funds to be transferred to Mrs. Rogan for his benefit. In light of the fact that Mrs. Rogan has no apparent ownership or other interest in the entities on Rider B (with the exception of JKR Business and her revocable trust), the fact that Mrs. Rogan has had any communications with Messrs. Cuppy, Myers, Tatooles or Foley regarding the entities on Rider B would be directly relevant to her knowledge of the affairs of the entities that have been used to hold and/or transfer and conceal the location of Mr. Rogan's assets.

By 5:00 p.m. on Tuesday, August 28th, provide us with a specific date within the next two weeks when we will receive the foregoing documents.

**Requests No. 17–24** - These requests seek billing records and records of payment for services provided by various law firms to Mrs. Rogan, Mr. Rogan, or the entities and individuals on Rider B. Mrs. Rogan has objected to these requests on the basis of "common law privileges" and as outside the proper scope of a citation. We have no idea what "common law" privileges Mrs. Rogan is invoking. In any event, Mrs. Rogan must identify with specificity the privilege she is invoking for *each* document she is withholding based on this objection and must provide a detailed privilege log providing the factual basis for her privilege claims as described above. With respect to Mrs. Rogan's relevance objection, the requested documents clearly are within the proper scope of a citation. Dexia has requested billing records and records of payment provided by various law firms. The firms named in these requests all have provided services to Mr. Rogan that directly or indirectly relate to the disposition of his assets. These firms' billing records likely will contain descriptive entries that **may evidence the location of Mr. Rogan's assets**. Indeed, Magistrate Judge Schenkier previously ordered **Messrs. Cuppy, Foley and Tatooles to produced** *unredacted* attorney invoices to Dexia. The invoices that these attorneys produced contained a wealth of information pertaining to Mr. Rogan's assets. Accordingly, we have every reason to believe that attorney invoices in Mrs. Rogan's possession similarly would contain information regarding the disposition of Mr. Rogan's assets and therefore are properly within the scope of the citation. The records of payment themselves are also directly relevant to Mr. Rogan's assets. The law firms named in Requests No. 17-24 all have provided services to Mr. Rogan and/or entities under his control. We already have discovered that Mr. Rogan caused Mrs. Rogan to use her HSBC account to pay for services Hogan Marren Ltd. rendered to Mr. Rogan. Records evidencing how all of these firms have been paid will establish the source of funds Mr. Rogan used to pay for their services.

By 5:00 p.m. on Tuesday, August 28th, provide us with a specific date within the next two weeks when we will receive the foregoing documents.

*      *      *



MICHAEL J. O'ROURKE
AUGUST 24, 2007
PAGE 9 | CHICAGO

As noted above, Dexia will move for a rule to show cause against Mrs. Rogan if we do not receive the following by 5:00 p.m. on Tuesday, August 28th:

- Confirmation of whether Mrs. Rogan has withheld documents responsive to Requests No. 1-10 based on General Objection No. 1;
- A privilege log for all documents withheld on a claim of privilege;
- A full and complete production of the Oceanic Bank and HSBC documents; and
- A specific date within the next two weeks when we will receive the documents responsive to Request No. 1 identified on pages 4-5, *supra*, and the documents responsive to Requests No. 6-24.

As always, please contact me with any questions or concerns you may have about our requests.

Sincerely,

Eric S. Pruitt

cc: Gabriel Aizenberg
AUSA Joseph Stewart

CH1 3973658v.1