**EXHIBIT B**



**SIDLEY AUSTIN LLP**

SIDLEY AUSTIN LLP
ONE SOUTH DEARBORN
CHICAGO, IL 60603
(312) 853 7000
(312) 853 7036 FAX

epruitt@sidley.com
(312) 853-1093

BEIJING
BRUSSELS
CHICAGO
DALLAS

GENEVA
HONG KONG
LONDON
LOS ANGELES
NEW YORK

SAN FRANCISCO
SHANGHAI
SINGAPORE
TOKYO
WASHINGTON, DC

FOUNDED 1866

September 4, 2007

**By Email and Facsimile**

Michael J. O'Rourke
O'Rourke Katten & Moody
161 N. Clark Street, Suite 2230
Chicago, Illinois 60601

Re: *Dexia v. Rogan* (02 C 8288) – Citation to Judith Rogan

Dear Mike:

This letter serves to memorialize the points addressed during our call on August 30, 2007 regarding Judith Rogan's objections and document production in response to Dexia Crédit Local ("Dexia") Citation to Discover Assets in the above-referenced case. As noted in the Citation and my August 24, 2007 letter, we will not be able to proceed with Mrs. Rogan's examination until we have satisfactorily resolved the document production issues addressed in this letter. Please contact me immediately if you believe there is anything in this letter that does not accurately reflect our discussion on August 30th.

Before we proceed with addressing the issues relating to Mrs. Rogan's compliance with her production obligations, we again ask that you caution Mrs. Rogan that the Citation prohibits her from, *inter alia*, making or allowing any transfer or other disposition of, or interfering with, any property belonging to the judgment debtor, Peter Rogan. In addition, we note that Mrs. Rogan has filed a lawsuit against Dexia and the United States in which she claims that she is not in the possession of or transferred assets belonging to Peter Rogan. This is yet one more reason Mrs. Rogan should be cautioned against facilitating transfers of Peter Rogan's assets.

I. **General Objections.**

**General Objection No. 1** – Mrs. Rogan objects generally to all documents requested "which call for production of purely private and personal documents." This objection was not specifically raised in Mrs. Rogan's response to Requests No. 1–10. You confirmed that Mrs. Rogan has not withheld any documents responsive to Requests No. 1–10 on the basis of this general objection.

**General Objection No. 2** – Mrs. Rogan objects to all requests to the extent that they call for the production of privileged documents. You provided us with a privilege log on August 28, 2007. During our call, we noted that entries 4 and 6 on the privilege log appear to be

Sidley Austin LLP is a limited liability partnership practicing in affiliation with other Sidley Austin partnerships



MICHAEL J. O'ROURKE
SEPTMEBER 4, 2007
PAGE 2 | CHICAGO

documents provided to the IRS. If that is the case, these documents would not be protected by the attorney-client privilege. You agreed to re-examine the documents to determine if the privilege log descriptions are correct and whether you will maintain a claim a privilege for these documents. If you do not produce these documents, we will seek to compel their production.

## II. Specific Objections and Document Production Issues.

**Request No. 1** – Mrs. Rogan agreed to produce documents responsive to our request for "[a]ll documents (written or electronic) relating to Your assets and liabilities . . ." The following reflects our discussions regarding the areas in which Mrs. Rogan's production is still deficient.

— <u>HSBC account documents</u> – With respect to Mrs. Rogan's HSBC account, we agreed to provide you with a detailed list of the credits and debits for which we want the underlying record, *i.e.* wire transfer record, cancelled check, etc. Attached please find a list of the transactions for which we would like such records. Per our discussion, Dexia agrees to pay the expenses charged by HSBC for producing copies of these records if presented with an itemized list of such charges from HSBC. The following other HSBC account documents also have not yet been produced:

> Account records for the period November 18, 2006 through December 31, 2007 for Account #280-089295-236 and Account #280-089295-203.
> A photocopy of any debit card(s) issued for the HSBC accounts.
> A copy of any document(s) indicating the individual(s) that have signature authority on the HSBC accounts.

<u>Oceanic Bank Account Documents</u> - With respect to Oceanic Bank, you stated that you had misunderstood our request and had thought we wanted Mrs. Rogan to produce documents relating to the Oceanic Bank account for Mr. Rogan's Irrevocable Trust. We clarified that, as stated in my prior correspondence to you on this issue, our requests seeks the account documents relating to the Oceanic Bank account held in the name of Mrs. Rogan's Indiana revocable trust. You agreed to obtain these account documents. This includes all documents relating to the opening of the account, monthly account statements, a copy of any debit card(s) issued for the account, and records of all transfers to and from the account, *i.e.* wire transfer record, cancelled check, etc. The account number for Mrs. Rogan's Oceanic Bank account is 4375/SNG. As with the HSBC documents, Dexia agrees to pay the expenses charged by Oceanic Bank for producing copies of these records if presented with an itemized list of such charges from Oceanic Bank.

<u>Other Bank and Investment Accounts</u> - In my August 24, 2007 letter, we identified a list of account records that are missing from Mrs. Rogan's production. You agreed to obtain the missing records detailed in my letter, including records of access to the Rogan safe deposit box maintained at First National Bank of Valparaiso.



MICHAEL J. O'ROURKE
SEPTMEBER 4, 2007
PAGE 3 | CHICAGO

**Request No. 6** – Mrs. Rogan agreed to produce all "communications, correspondence, or agreements" between Mrs. Rogan, any individual or entity on Rider B of the Citation, and Oceanic Bank. You agreed you would confirm whether Mrs. Rogan has any such documents in her possession, custody or control.

**Requests Nos. 7-10** – Mrs. Rogan agreed to produce responsive documents "to the extent they exist." You agreed you would confirm whether Mrs. Rogan has any such documents in her possession, custody or control.

**Requests Nos. 11-15** – Mrs. Rogan objected to these requests on the grounds that they seek "irrelevant and purely private information" that is outside the proper scope of a citation to discover assets. You agreed to revisit this issue with Mrs. Rogan to determine whether she will drop her objection and produce the requested documents. If she persists in maintaining this objection, we will ask the court to compel the production of these documents.

**Request No. 16** – Mrs. Rogan has objected to our request for communications between Mrs. Rogan and Fred Cuppy, Troy Myers, John Tatooles or John Foley regarding the individuals or entities on Rider B as seeking documents protected by the attorney-client privilege. You agreed you would confirm whether Mrs. Rogan has any retention letters or agreements in her possession, custody or control confirming the existence of an attorney-client relationship with any of these attorneys. If such retention letters do not exist, please provide us with the following information necessary for Dexia to evaluate Mrs. Rogan's privilege claims:

- The date on which Mrs. Rogan formed an attorney-client relationship with each of the attorneys in question;
- The subject matters for which Mrs. Rogan retained each attorney;
- The general subjects on which each attorney has provided advice to Mrs. Rogan.

Also, since Mrs. Rogan did not list any communications with Troy Myers or Fred Cuppy on her privilege log, please confirm whether Mrs. Rogan has withheld any such documents based on attorney-client privilege.

**Requests No. 17-24** – These requests seek billing records and records of payment for services provided by various law firms to Mrs. Rogan, Mr. Rogan, or the entities and individuals on Rider B. We agreed to provide you with a copy of the transcript reflecting Judge Schenkier's prior ruling regarding discovery of attorney invoices and the proper scope of redaction when producing such invoices. You agreed to revisit this issue with Mrs. Rogan to determine whether she will reconsider producing the requested documents. I have attached a copy of Dexia's Motion to Compel Production of Properly Redacted Attorney Invoices From Tatooles Foley & Associates. We do not have a copy of the transcript from the hearing on this motion. However, following this hearing and consistent with Judge Schenkier's directions, Tatooles and Foley produced largely unredacted attorney invoices that removed the types of


**SIDLEY** SIDLEY AUSTIN LLP

MICHAEL J. O'ROURKE
SEPTMEBER 4, 2007
PAGE 4 | CHICAGO

objectionable redactions detailed in Dexia's motion. If you would find it useful, we can provide you with copies of the unredacted invoices that Tatooles and Foley produced as a result of this motion.

      \*      \*      \*

With respect to all of the issues discussed above, you agreed to provide us with answers to our questions, responsive documents and/or dates by which we can expect to receive responsive documents by September 10, 2007. You also agreed to produce documents on a rolling basis if additional documents become available before September 10th. If, by September 10th, Mrs. Rogan does not provide us with answers to our questions, responsive documents and/or a _firm_ date in the very near future by which we can expect to receive responsive documents, Dexia will move for a rule to show cause against Mrs. Rogan

As always, please contact me with any questions or concerns you may have about our requests.

Sincerely,

Eric S. Pruitt

cc: Gabriel Aizenberg
     AUSA Joseph Stewart
     AUSA Melissa Childs

CH1 3982738v.1

# DOCUMENTS FOR WHICH ALL BACKUP IS REQUESTED

## BANK ACCOUNT #280-089295-236

| DATE | TRANSACTION | AMOUNT |
|---|---|---|
| 11/03/06 | Inward Wire Transfer TTMNYJ07092609 Oceanic Bank and Trust Nassau, Bahamas | -$1,499,992.50 |
| | Term Deposit New Deposit 280-089295-320 | 1,499,992.50 |
| 11/07/06 | Term Deposit Redemption 280-089295-320 | -1,500,775.91 |
| | Term Deposit New Deposit 280-089295-321 | 1,400,775.91 |
| | FCY Transfer TT HNB001439 Judith Rogan Ref# 18941X99330 + SVC | -50,097.14 |
| | DR MEMO Trasf To Cad Acc. At 1.1203 | -50,000.00 |
| 11/16/06 | CR MEMO Judith Rogan Inward Wire To MNY320076669 | 749,992.53 |
| | Term Deposit New Deposit 280-089295-322 | -749,995.39 |
| 11/17/06 | Term Deposit Redemption 280-089295-321 | 1,402,505.50 |
| | Term Deposit Redemption 280-089295-322 | 750,073.51 |
| | Term Deposit New Deposit 280-089295-323 | -2,152,579.01 |
| 1/31/07 | Term Deposit Redemption 280-089295-323 | 100,013.06 |

| | | |
|---|---|---|
| | FCY Transfer<br>TT HRP027783<br>Judith Rogan<br>Ref# 18941X99330 + SVC | -40,025.42 |
| 2/05/07 | FCY Transfer<br>TT HRP028289<br>Judith Rogan<br>Ref# 18944X234528 + S/C | -40,025.31 |
| 3/13/07 | Term Deposit<br>Redemption<br>280-089295-323 | 50,006.53 |
| 3/16/07 | FCY Transfer<br>TT HRP033239<br>Judith Rogan<br>Ref# 19108X159201 + S/C | -40,025.50 |
| 3/26/07 | FCY Transfer<br>TT HRP034426<br>Judith Rogan<br>Ref# 1916X37752 + S/C | -20,025.84 |
| 4/02/07 | Term Deposit<br>Transfer From<br>280-089295-323 | 50,000.00 |
| 4/04/07 | FCY Transfer<br>TT HRP035697<br>Judith Rogan<br>Ref# 19198X100850 + S/C | -40,025.87 |
| 4/20/07 | FCY Transfer<br>TT HRP037688<br>Judith Rogan<br>Ref# 19286X163950 + S/C | -15,026.54 |
| 5/10/07 | Term Deposit<br>Redemption<br>280-089295-323 | 40,005.22 |
| | FCY Transfer<br>TT HRP040588<br>Judith Rogan<br>Ref# 55525X96214 + SVC | -40,027.13 |
| 6/19/07 | Term Deposit<br>Redemption<br>280-089295-323 | 50,006.53 |
| 6/20/07 | FCY Transfer<br>TTHRP046919<br>Ref: 57188X60584 + S/C | -40,028.22 |

# DOCUMENTS FOR WHICH ALL BACKUP IS REQUESTED

## BANK ACCOUNT #280-089295-150

| DATE | TRANSACTION | AMOUNT |
|---|---|---|
| 11/07/06 | Transfer<br>DFT 115951<br>Unique Real Estate Accom. | -5,000.00 |
| 11/07/06 | Cash Withdrawal<br>C/O | 6,000.00 |
| 11/08/06 | Cheque 000000000001 | -10,000.00 |
| 12/01/06 | Cheque 000000000031 | -5,000.00 |
| 12/11/07 | Cheque 000000000033 | -10,000.00 |
| 1/02/07 | Cheque 000000000034 | -5,000.00 |
| 1/29/07 | Cheque 000000000037 | -5,000.00 |
| 03/02/07 | Cheque 000000000039 | -5,000.00 |
|  | Cheque 000000000043 | -5,000.00 |
| 03/27/07 | Cheque 000000000045 | -5,000.00 |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DEXIA CREDIT LOCAL, f/k/a Dexia Public Finance Bank and Credit Local de France | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 02 C 8288 |
| PETER G. ROGAN, et al. | ) ) | Hon. Mark Filip |
| Defendants. | ) ) ) | Magistrate Judge Sidney I. Schenkier |

## PLAINTIFF DEXIA CRÉDIT LOCAL'S MOTION TO COMPEL PRODUCTION OF PROPERLY REDACTED ATTORNEY INVOICES FROM TATOOLES FOLEY & ASSOCIATES

Dexia Credit Local ("Dexia"), by and through its attorneys, hereby moves the Court for an order compelling subpoena respondent Tatooles Foley & Associates ("Tatooles") to produce: (i) properly redacted copies of previously-produced Tatooles attorney invoices and (ii) a privilege log for each remaining redaction to the Tatooles invoices. In support of this motion, Dexia states as follows:

1. On January 26, 2006, Dexia provided Tatooles with a letter detailing outstanding discovery issues pursuant to this Court's March 31, 2005 Order governing resolution of discovery disputes.

2. On February 1, 2006, the parties had a face-to-face conference to discuss the issues raised in Dexia's January 26th letter. Dexia and Tatooles were unable to resolve their dispute during this conference.

3. On February 2, 2006, in accordance with the Court's March 31, 2005 Order, Dexia provided Tatooles with a draft Joint Letter setting forth Dexia's position with respect to the issues in dispute.

4. On February 3, 2006, Tatooles provided Dexia with its sections of the Joint Letter laying out Tatooles' positions with respect to the contested issues.

5. The Joint Letter was finalized on February 6, 2006 and is attached hereto.

WHEREFORE, for the reasons set forth in the Joint Letter, Dexia respectfully requests that the Court grant its Motion to Compel and order Tatooles to produce properly-redacted copies of the Tatooles invoices and provide Dexia with a privilege log for any remaining redactions.

Respectfully Submitted,

PLAINTIFF DEXIA CRÉDIT LOCAL

By: /s/ Eric S. Pruitt
One of Its Attorneys

SIDLEY AUSTIN LLP
Scott T. Mendeloff
Gabriel Aizenberg
Eric S. Pruitt
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000

*Counsel for Dexia Crédit Local*

Dated: February 7, 2006

CHI 3440334v.1



**SIDLEY AUSTIN LLP**

| SIDLEY AUSTIN LLP | BEIJING | GENEVA | SAN FRANCISCO |
| ONE SOUTH DEARBORN | BRUSSELS | HONG KONG | SHANGHAI |
| CHICAGO, IL 60603 | CHICAGO | LONDON | SINGAPORE |
| (312) 853 7000 | DALLAS | LOS ANGELES | TOKYO |
| (312) 853 7036 FAX | | NEW YORK | WASHINGTON, DC |

FOUNDED 1866

February 6, 2006

**By Courier**

Hon. Sidney I. Schenkier
United States District Court for
   the Northern District of Illinois
219 South Dearborn St., Room 1756
Chicago, Illinois 60604

Re:  *Dexia Crédit Local v. Peter G. Rogan et al.* (02 C 8288)

Dear Judge Schenkier:

Counsel for plaintiff Dexia Crédit Local ("Dexia"), who are Edgewater Medical Center's special counsel, (collectively "Dexia/Edgewater") and third party subpoena respondent Tatooles Foley & Associates, ("Tatooles") respectfully submit this joint letter pursuant to the Court's March 31, 2005 order governing the filing of discovery motions. This joint letter addresses the five issues that remain in dispute following the parties' face-to-face meet and confer on February 1, 2006.

## I. REDACTIONS TO TATOOLES INVOICES

### A. Dexia/Edgewater's Position

Before presenting its position on the substantive issue of Tatooles' improper redaction of attorney invoices, Dexia/Edgewater provide this brief procedural background relating to the parties' dispute.

## PROCEDURAL BACKGROUND

### (i) November 1, 2005 Production of Redacted Tatooles Invoices

On November 1, 2005, Tatooles produced various attorney invoices relating to services Tatooles provided to Braddock Management LP ("Braddock"), Bainbridge Management LP ("Bainbridge"), Edgewater Property Company ("EPC") PGR Properties, Inc. ("PGR") Boulevard Investors LLC and various other entities related to defendant Peter Rogan (collectively, the "Tatooles invoices"). (See Ex. A – Letter Transmitting Invoices) After reviewing the invoices, Dexia/Edgewater wrote a letter to Tatooles on December 12, 2005 outlining several issues relating to the November 1, 2005 production. (Ex. B) The primary issues that Dexia/Edgewater raised were that Tatooles had: (i) heavily redacted the invoices, thereby deleting material that clearly was not privileged and (ii) failed to provided a privilege

Sidley Austin LLP is a limited liability partnership practicing in affiliation with other Sidley Austin partnerships



log justifying the redactions. On December 16, 2005, the date on which the Court's Order required that the parties have a face-to-face conference, Dexia/Edgewater contacted Tatooles to confirm whether there remained issues in dispute that required the parties to have the face-to-face conference. (Ex. C) Tatooles' counsel responded by stating that he had provided Dexia/Edgewater with a letter on December 15th which "addresses your concerns" and that a face-to-face conference could be had at a later time if necessary. (Id.)

### (ii) December 20, 2005 Agreement

On December 20, 2005, the parties conferred regarding the issues in dispute and reached an agreement regarding the Tatooles invoice issues raised in Dexia/Edgewater's December 12th letter. The following agreement was reached:

1. Tatooles agreed that he would produce a new set of the Tatooles invoices. Tatooles also agreed that this new set of Tatooles invoices would not have any: (i) redactions of the names of participants in meetings or communications; or (ii) redactions to subject matter descriptions in the invoices based upon relevance or confidentiality objections;

2. Redactions only would be made to this new set of Tatooles invoices based upon claims that the redacted material actually reflects confidential attorney-client communications conveying or reflecting advice of counsel (i.e., invoice entries simply providing descriptions of work performed would not be redacted);

3. Tatooles agreed to re-review the Braddock and Bainbridge invoices to ensure that matters subject to the joint Edgewater-Management Company privilege (i.e., entries relating to Edgewater's operations and affairs) were not redacted in the new set of Tatooles invoices; and

4. Finally, Tatooles agreed that, within 21 days (i.e., by January 10, 2006), he would produce both: (i) the new set of Tatooles invoices redacted in conformity with this agreement and (ii) a privilege log for any remaining redactions to the invoices for attorney-client privilege.

Dexia/Edgewater sent an email to Tatooles' counsel on December 20th memorializing this agreement. (Attached hereto as Ex. D) In that email, Dexia/Edgewater specifically requested that Tatooles' counsel contact Dexia/Edgewater if "you believe that this email does not accurately reflect our conversation today or the terms of our agreement." (Id.) Tatooles' counsel never contacted Dexia/Edgewater to dispute the terms of the agreement as set forth in the email.

### (iii) Tatooles' Failure to Abide by the December 20th Agreement

On January 11, 2006, Tatooles produced a document purporting to be "revised privilege logs corresponding to the invoices of Tatooles Foley & Associates." (See Ex. E) This


**SIDLEY** SIDLEY AUSTIN LLP

HON. SIDNEY I. SCHENKIER
FEBRUARY 8, 2006
PAGE 3 | CHICAGO

log appears to: (i) provide an identification of individuals participating in conversations described in the redacted Tatooles invoices and (ii) provide summary descriptions of the actual subject matter descriptions redacted from the invoices. In response to an email sent on January 11th, Tatooles' counsel stated that he believed that these privilege logs "identify all of the information you were looking for from the invoices." (Ex. F) That same day, Dexia/Edgewater responded to this email by stating that based on the parties' prior discussions and agreement, they had understood that Tatooles would be removing some of the redactions, e.g., redactions of names and basic subject matter descriptions, and producing new copies of the invoices with such redactions removed. (Id.) Dexia/Edgewater asked Tatooles' counsel to clarify whether he would be producing unredacted invoices as agreed, but Tatooles never responded to this email and Dexia/Edgewater never received unredacted invoices per the parties' agreement.

### (iv) Dexia/Edgewater's January 26, 2006 Discovery Dispute Letter

On January 26, 2006, Dexia/Edgewater sent Tatooles a dispute letter pursuant to the Court's March 31, 2005 order setting procedures for resolution of all discovery disputes in this case. (Ex. G) In that letter, Dexia/Edgewater informed Tatooles that there was no justifiable basis for Tatooles' production of so-called "privilege logs" in lieu of producing unredacted invoices because, as first explained in Dexia/Edgewater's December 12th letter, the identity of individuals participating in meetings or conversations and general subject matter descriptions of meetings or conversations contained in attorney invoices are not privileged.

### (v) February 1, 2006 Meet and Confer

On February 1, 2006, counsel for Dexia/Edgewater and Tatooles held a face-to-face meet and confer to discuss the issues raised in December 12, 2005 and January 26, 2006 letters. At that meet and confer Tatooles' counsel:

- ➤ Did not offer any legal basis or argument for Tatooles' failure to produce unredacted invoices revealing names of participants in meetings or communications and subject matter descriptions of meetings and communications;

- ➤ Did not dispute that Tatooles had not abided by the parties' agreement that he would largely produce unredacted invoices and a privilege log for remaining redactions;

- ➤ Did not dispute that, with some possible exceptions, the redacted material generally is not privileged;

- ➤ Suggested that this dispute regarding the redacted Tatooles invoices be turned over to counsel for defendants, despite the fact that several of the redacted invoices are for work performed for entities that defendants' counsel have not claimed they represent (i.e., Boulevard Investors LLC, Boulevard Investors Ltd. (Belize), Gardens on Jones, Health Care Management LLC, Healthco Family Nursing Services, Sheridan Investment Properties, LLC, and Walnut Hills, LLC); and

- ➤ Again stated that his client would not produce unredacted copies of the invoices.



HON. SIDNEY I. SCHENKIER
FEBRUARY 6, 2006
PAGE 4 | CHICAGO

## LEGAL ARGUMENT

Tatooles heavily redacted nearly every invoice that he produced to Dexia/Edgewater. Tatooles' redaction of these invoices was wholly improper for several reasons.

Even without the benefit of a privilege log, it is clear from Dexia/Edgewater's review of the invoices that the most of the redactions are improper because the redacted information relates to: (i) the identity of participants in meetings or communications or (ii) the subject matter of communications. Information regarding the identity of participants in a communication or meeting or the subject matter of such communications or meetings is not protected by the attorney-client privilege or the work product doctrine. Indeed, information regarding the participants and subject matter of communications is <u>exactly</u> the information that Tatooles would need to provide in any privilege log explaining the basis for the redactions. See Allendale Mut. Ins. Co. v. Bull Data Systems, Inc., 145 F.R.D. 84, 88 (N.D. Ill. 1992) (holding that "[f]or each document, the log should identify the date, the author and all recipients, along with their capacities. The log should also describe the document's subject matter, purpose for its production, and a specific explanation of why the document is privileged or immune from discovery. These categories . . . must be sufficiently detailed to allow the court to determine whether the discovery opponent has discharged its burden of establishing the [existence of a privilege]. Accordingly, descriptions such as 'letter re claim,' 'analysis of claim,' or 'report in anticipation of litigation' -- with which we have grown all too familiar -- will be insufficient."). See also In re Air Crash Near Roselawn, Ind., 1997 WL 97096, *2 (N.D. Ill. 1997) (same). It is therefore improper for Tatooles to redact invoices to remove precisely the same information that Tatooles would need to provided to Dexia/Edgewater on a privilege log justifying the redaction. Examples of such improper redactions are attached hereto collectively (in Bates number order) as Ex. H, and include:

> **Improper Redaction of Participants in Communications and Meetings** Many of the redactions improperly have deleted basic information regarding the identity of individuals that were parties to a meeting or communication. See, e.g., TFA Priv 001108-09 (redacting text following entries beginning "letter to," "phone conf. with," and "conference with"); TFA Priv 001134 (appearing to redact text "with David Miller"); TFA Priv 001138 (same); TFA Priv 001168 (same); TFA Priv 001186 (same); TFA Priv 001189 (same); TFA Priv 001543 (redacting text following "letter to"); TFA Priv 001187 (appearing to delete text "with Fred Cuppy"); TFA Priv 001459 (appearing to redact text "with John Foley"); TFA Priv 001482 (redacting text following "phone conference with"); TFA Priv 001483 (redacting numerous entries detailing participants in meetings and phone conferences); TFA Priv 001496 (appearing to redact "with Fred Cuppy" following the word "meeting"); and TFA Priv 001497 (appearing to redact "to Fred Cuppy" following the word letter).

> **Improper Redaction of Subject Matter of Communications** Numerous redactions have deleted basic information regarding the subject matter of communications or meetings described in the invoices. See, e.g., TFA Priv 001110 (redacting text



following "meeting with PGR"); TFA Priv 001168 (redacting subject matter of conference with Henry Zeisel); TFA Priv 001192 (redacting text following "meeting with John Foley re"); TFA Priv 001195 )(redacting text following "conference with Peter G. Rogan re"); TFA Priv 001373 (deleting text following "letter to Peter Rogan re"); TFA Priv 001446 (deleting text following "meeting Savannah"); TFA Priv 00 001447 (redacting text following "phone conf. with Fred Cuppy re:"); TFA Priv 001455 (redacting text following "meeting with John Foley re"); TFA Priv 001462 (redacting text following "analysis re"); TFA Priv 001483-84 (redacting numerous entries detailing subject matter of meetings and communications); and TFA Priv 001495 (redacting subject matter of meetings with Fred Cuppy and Mel Brewer).

Notably, the individual(s) that redacted the Tatooles invoices sometimes left information regarding the participants in communications and the subject matter of communications unredacted. See, e.g., TFA Priv 001108; 001168; 001148. Indeed, there appears to be no difference at all between the invoice entries where such information was redacted and entries where such information was disclosed. Compare TFA Priv 001410 ("meeting with David Miller re: tax matters; meeting with Fred Cuppy re: planning matters") and TFA Priv 001496 (appearing to redact "with Fred Cuppy" and description of subject matter following the word "meeting"). See also TFA 001168 (redacting subject matter of one conversation with Henry Zeisel while leaving the subject matter of other conversations unredacted). Such examples of arbitrary redaction underscore the baseless nature of these redactions.

Tatooles claims that his November 1, 2005 transmission letter explains that the redacted material "primarily involved tax planning and estate planning matters for Peter Rogan and his family." (Ex. A) Tatooles further states that this explanation "was intended as a general privilege log in an attempt to avoid further expense to the firm, considering what I view as the minimal relevance of this information to any of the pending claims being asserted by your clients." (Ex. I) The statement in the November 1st letter is not a statement that the redacted invoice entries are privileged. Indeed, to date Tatooles has never disputed that the vast bulk of redacted material is not protected from disclosure by the attorney-client privilege or the work product doctrine. Instead, Tatooles appears to be suggesting that it redacted the invoices because the redacted information is not relevant to Dexia's case. There are several problems with this proffered justification for the redactions.

First, even a cursory review of the redacted invoices reveals that the majority of the redactions do not appear to relate to "tax planning and estate planning matters for Peter Rogan and his family." Notably, the redacted invoices were not issued to Peter Rogan or members of his family, but to defendants Braddock Management LP, Bainbridge Management LP, and other Rogan-related business entities such as Edgewater Property Company and PGR Properties, Inc. (See Ex H) The redacted entries should therefore relate to the business affairs of these entities. However, even if the entries do relate to tax planning and estate planning matters for Peter Rogan and his family, Tatooles cannot claim that discovery of such items is improper since: (i) Tatooles already has produced such material, including Rogan family tax preparation materials (Ex. J) and (ii) Rogan already has produced such material after he agreed to the



HON. SIDNEY I. SCHENKIER
FEBRUARY 6, 2006
PAGE 6 | CHICAGO

production of material relating to his personal and family finances in response to Dexia's motion to compel production of his personal financial information. (See June 9, 2004 Agreed Order). Indeed, Rogan already has provided Dexia with detailed interrogatory responses regarding his finances and several boxes of documents relating to his personal finances, including copies of tax returns for this wife and children and tax planning material prepared by that Tatooles firm. (See Exs. K & L) Moreover, even if Braddock, Bainbridge and other Rogan entities did pay for legal services related to Rogan's personal financial affairs, as suggested by Tatooles' proffered justification for the redactions, this fact would be significant and directly relevant to core issues in this case relating to Rogan's operation of these entities as one common enterprise under his direct control.

Second, Tatooles' position that individual entries in a document may be redacted on relevance grounds is contrary to the Court's prior ruling that parties may not redact individual entries from documents based on nothing more than a belief that individual entries are irrelevant to the case. (See Transcript of December 8, 2004 Proceedings before Hon. Sidney I. Schenkier, at 46 – holding that the Court typically does not allow parties to "redact from a document things that are simply not relevant") Tatooles therefore cannot rely on a vague and generalized relevance objection to justify the numerous redactions to the Tatooles invoices.

In summary, Tatooles' statement that the redacted material relates to "tax planning and estate planning matters for Peter Rogan and his family" provides no support for the redactions to the Tatooles invoices. Moreover, as described above, it is clear from an examination of the invoices that the redacted material is not privileged in any way and in fact is precisely the type of information that Tatooles would need to provide in a privilege log justifying the redaction. Accordingly, Dexia/Edgewater respectfully request that Tatooles be compelled to produce a new set of the Tatooles invoices that: (i) only contains redactions based upon claims that the redacted material actually reflects confidential attorney-client communications conveying or reflecting advice of counsel; and (ii) does not contain redactions of non-privileged information such as descriptions of the participants and subjects of communications or meetings.

**B. Tatooles' Position**

It is Tatooles' position that attorneys and paralegals preparing the redacted invoices reviewed the December 20, 2005 agreement and attempted to comply in good faith with respect to that matter. With respect to virtually all of the redacted notations, Tatooles and Foley provided a detailed line-by-line privilege log identifying all of the participants in those meetings, discussions or communications, as well as a general description of the topic being discussed. It is the position of Tatooles and Foley that a more detailed description of the contents of the invoices would disclose the content of attorney-client communications such that it would violate its obligation to the various clients for whom invoices have been requested. Tatooles and Foley have referred this dispute to counsel for Peter Rogan and counsel for the various entities impacted by these disclosures for review to determine whether further descriptions of the conversations or removals of some of the challenged redactions are appropriate.



## II. REDACTIONS TO MANAGEMENT COMPANY INVOICES

### A. Dexia/Edgewater's Position

This Court ruled on May 31, 2005 that Tatooles jointly represented both Edgewater Medical Center ("Edgewater") and Braddock Management LP, Bainbridge Management LP and Bainbridge Management, Inc. (the "Management Companies"). Pursuant to the Court's May 31st Order, Dexia and Edgewater are entitled to full production of any documents or information subject to this joint privilege, including documents reflecting communications between Tatooles and Management Company employees regarding Edgewater's operations and affairs. (See May 31st Order at 15-17) Dexia/Edgewater recognize that Tatooles may redact and provide a privilege log for entries in Braddock or Bainbridge invoices reflecting privileged attorney-client communications that do not relate to Edgewater operations, i.e., entries relating to Braddock's or Bainbridge's internal partnership matters and affairs. However, privileged invoice entries reflecting communications involving Tatooles, Management Company employees (e.g., Henry Zeisel) or other Edgewater attorneys (e.g., Robert Hoban) regarding Edgewater's operations and affairs clearly are subject to the attorney-client privilege that Edgewater and the Management Companies jointly control.

While Tatooles claims that he has complied with this standard, some of the Tatooles invoices contain redactions of communications between Tatooles and Management Company employees that unquestionably fall within the scope of the joint privilege. See, e.g., Ex. H at TFA Priv 001167 (appearing to redact subject matter related to Edgewater board minutes) and TFA Priv 001147 (redacting subject matter of entry regarding Edgewater board meeting). Tatooles' December 15, 2005 response on this issue does not acknowledge whether these (or other) entries were in fact improperly redacted in light of the May 31st Order. (See Ex. I) Accordingly, Dexia/Edgewater respectfully request that Tatooles be compelled to produce a new set of the Tatooles invoices that does not contain redactions of invoice entries regarding work Tatooles performed relating to Edgewater's operations and affairs.

### B. Tatooles' Position

It is the position of Tatooles and Foley that despite the court's ruling on May 31, 2005, their bills to Braddock Management LP, Bainbridge Management LP and Bainbridge Management, Inc., included work performed that was not directly impacted by the court's determination that there was a joint privilege with respect to Edgewater hospital matters. To the extent that these bills contain work performed for these entities separate and apart for their involvement with Edgewater Medical Center, Tatooles and Foley contend that those matters remain privileged and subject to full protection. For those reasons, that information was redacted from those invoices and reflected in the privilege log.



### III. PRIVILEGE LOG

#### A. Dexia/Edgewater's Position

Dexia/Edgewater repeatedly requested that Tatooles provide a privilege log for any redactions or documents withheld from production based upon a privilege claim. Dexia/Edgewater specifically requested a privilege log when requesting production of the Tatooles invoices on July 25, September 25, September 29, October 3 and October 14, 2005. (Collectively attached as Ex. M) Moreover, it is well-established that the party seeking to withhold materials from discovery bears the burden of establishing the essential elements to demonstrate the materials are privileged. See United States v. Evans, 113 F.3d 1457, 1461 (7th Cir. 1997). Accordingly, Fed.R.Civ.P. 26(b)(5) requires that parties withholding otherwise discoverable information provide detailed descriptions of all information withheld to enable the requesting party to assess the applicability of the privilege. Furthermore, the privilege must be established on a document-by-document basis; a blanket claim failing to specify what information is protected will not suffice. United States v. White, 970 F.2d 328, 334 (7th Cir. 1992). Despite these requirements and Dexia/Edgewater's repeated requests, Tatooles still has not provided Dexia with a privilege log explaining the basis for the numerous redactions made to the Tatooles invoices. Instead, Tatooles' November 1, 2005 letter transmitting the Tatooles invoices simply stated that "[t]he redactions primarily involved tax planning and estate planning matters for Peter Rogan and his family." (Ex. A) As detailed above, Dexia/Edgewater first requested that Tatooles provide a privilege log for any redactions on July 25, 2005. Tatooles thus has had more than enough time to provide Dexia/Edgewater with such a log. Despite Tatooles' representation that the document he produced on January 11, 2006 is a "privilege log," this document does not meet the minimal requirements for a privilege log in that it: (i) fails to provide specific explanations of why the redacted information is privileged or immune from discovery and (ii) does not provide information sufficiently detailed to allow the court to determine whether Tatooles has discharged his burden of establishing the existence of a privilege. See Allendale Mut. Ins. Co. v. Bull Data Systems, Inc., 145 F.R.D. 84, 88 (N.D. Ill. 1992) Accordingly, Dexia/Edgewater respectfully request that Tatooles be compelled to be to provide Dexia/Edgewater with a privilege log providing a sufficiently detailed explanation for each redaction that Tatooles intends to maintain on the invoices.

#### B. Tatooles' Position

It is Tatooles' position that the privilege log prepared provided sufficient detail from which Dexia/Edgewater's counsel could identify the individuals involved in the discussions or communication as well as the general nature of the entries. Further description would necessarily reveal the content of attorney-client communication.



HON. SIDNEY I. SCHENKIER
FEBRUARY 6, 2006
PAGE 9 | CHICAGO

## IV. UNEXPLAINED GAPS IN INVOICES

### A. Dexia/Edgewater's Position

Tatooles did not produce any Braddock Management LP or Edgewater Property Company invoices for the years 1998-1999. Invoices for this period should exist since Tatooles produced invoices for both of these entities from preceding years (*i.e.*, 1994-1997) and subsequent years (*i.e.*, 2000-2001). Tatooles has stated that the invoices for these years were disposed of in the ordinary course of business when the firm moved its offices. According to Tatooles, the earlier invoices that were produced were copies maintained in off-site storage that, by inadvertence, were still extant when Tatooles received notification of the various federal investigations regarding Edgewater and undertook affirmative efforts to preserve its records. For purposes of this submission only, Dexia/Edgewater accept Tatooles' representations with respect to this issue. They do so without waiving their right to explore this issue further in this or any other case.

### B. Tatooles' Position

See Response to Issue V below.

## V. MISSING INVOICES

### A. Dexia/Edgewater's Position

Tatooles has performed tax and legal work for Robert Rogan, Brian Rogan and Sara Rogan (the "Rogan children") and the trusts for which the Rogan children are beneficiaries. (See Exs. K - L) Request No. 42 in Dexia's October 22, 2004 subpoena to Tatooles included a request for "all billing statements" relating to work Tatooles performed for any individual or entity listed on Rider B, which specifically included the Rogan children and their trusts. (See Ex. N) However, the Tatooles invoices Dexia/Edgewater have received do not reflect this work and do not contain any invoices relating to work Tatooles Foley & Associates performed for the Rogan children or their trusts. Tatooles previously stated that he would re-review his files for invoices, but still has not produced any invoices for work performed for the Rogan children. Notably, on January 4, 2006, Brian Rogan produced a Tatooles invoice dated September 23, 2005 for "professional services rendered" to Brian Rogan. (See Ex. O) Brian Rogan's January 2, 2006 production of this recent invoice suggests that Tatooles should have at least one such invoice in his files. Accordingly, Dexia/Edgewater respectfully request that the Court compel Tatooles to: (i) conclusively determine and confirm whether it has issued any invoices to the Rogan children and (ii) produce any such invoices in its possession, custody or control without further delay.

### B. Tatooles' Position

It is Tatooles' position that they produced all of the invoices that were in their possession at the time that they were served with the subpoenas in the above-captioned case. It was not the routine practice of Tatooles and Foley to retain all of its invoices and, in fact, prior to



HON. SIDNEY I. SCHENKIER
FEBRUARY 6, 2006
PAGE 10 | CHICAGO

the issuance of the subpoena, a number of invoices for all the firm's clients, including those from the subpoenaed entities, were destroyed in the routine course of business. Tatooles and Foley have offered to provide affidavits to that effect but counsel for Dexia has not agreed to such a procedure.

With respect to the remaining requests for further explanation to satisfy what can only be deemed the rank speculation of Dexia's counsel, it is Tatooles' position that it is not required to produce any further explanation beyond the requested production. Mr. Tatooles and Mr. Foley are both subject to subpoena and Mr. Tatooles has already been deposed for in excess of five hours by counsel for Dexia.

Respectfully submitted on behalf of the parties,

By: /s/ Eric S. Pruitt

SIDLEY AUSTIN LLP
Scott Mendeloff, Esq.
Gabriel Aizenberg, Esq.
Eric S. Pruitt, Esq
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000

*Attorneys for Dexia Crédit Local and Edgewater Medical Center*

Attachments

CH1 3437423v.1