**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DEXIA CREDIT LOCAL, f/k/a Dexia Public Finance Bank and Credit Local de France, | ) ) ) | |
| Plaintiff, | ) ) | |
| | ) | No. 02 C 8288 |
| v. | ) | |
| | ) | Judge Matthew F. Kennelly |
| PETER G. ROGAN, et al. | ) | Magistrate Judge Sidney I. Schenkier |
| | ) | |
| Defendants. | ) | |

.

**PLAINTIFF DEXIA CRÉDIT LOCAL'S MEMORANDUM IN OPPOSITION TO
ROBERT ROGAN'S MOTION TO DISMISS FOR LACK OF PERSONAL
<u>JURISDICTION</u>**

On October 22, 2008, Intervenor Robert Rogan ("Mr. Rogan") filed a 15-page brief claiming that this Court lacks personal jurisdiction over him in connection with the expected turnover proceeding related to his California bank and securities accounts. Mr. Rogan devotes his entire brief primarily to analyzing whether this Court ***would have*** had personal jurisdiction over him if Dexia had sought a temporary restraining order ("TRO") or preliminary injunction ("PI") against Mr. Rogan personally. Tellingly, however, Mr. Rogan's brief barely addresses the fact that Dexia did not proceed against Mr. Rogan personally. Instead, Dexia obtained a TRO against financial institutions holding Mr. Rogan's accounts, which complied with the TRO without any objection to personal jurisdiction. To avoid the effect of the TRO on his accounts, Mr. Rogan filed a motion to dismiss the TRO, which in just two sentences objected to personal jurisdiction, <u>and</u> also volitionally moved to intervene in this proceeding because he had an "absolute right to intervene in the underlying action." (Dkt. No. 436). Thereafter, Mr. Rogan continued to participate in the TRO/PI proceeding by submitting evidence and argument. Thus,

the issue of whether this Court initially possessed personal jurisdiction over Mr. Rogan or his property now is irrelevant. Mr. Rogan waived his objection to personal jurisdiction by virtue of his voluntary and active participation in this proceeding.

## FACTS

Although many of the "facts" set forth in Mr. Rogan's brief are not germane to the issue of personal jurisdiction, Dexia cannot let some of these "facts" stand without setting the record straight.

**A.     Dexia Did Not "Wait" 16 Years To Challenge Distributions Into the Children's Trusts.**

Mr. Rogan alleges that Dexia "waited more than 16 years to challenge transfers into a Trust that predated by six and three years Dexia's issuance of a letter of credit to support a bond refinancing in Chicago, Illinois." (Mem. at 6) This allegation grossly misstates the record. Dexia first learned about the fraud in this case in 2001 (thanks to Peter Rogan's affirmative concealment of it, Dexia Second Amended Complaint, Dkt. No. 135 at ¶¶ 5-7, 123, 149-159, 168-73, 175-183, 193-196)), and first uncovered the existence of the trusts in **2004**. From 2004-06, Dexia expended substantial resources to discover the proof it has set forth in its TRO/PI filings that show that these trusts are *alter egos* of Peter Rogan. In so doing, Dexia had to overcome many obstacles Peter Rogan and Cuppy raised, e.g., they repeatedly refused and delayed production of records, asserting that the trusts were irrelevant to Dexia's case. *See, e.g., Dexia Credit Local v. Rogan*, 231 F.R.D. 538 (N.D. Ill. 2004) (rejecting motion of Mr. Cuppy, the Boulevard entities, the Belize Trusts, and Caribe Trustees' foreign law defense to production in response to Dexia's subpoenas); 3/31/05 Order (Dkt. No. 202) (granting in part and denying in part Dexia's motion for sanctions against Mr. Cuppy and the Boulevard Entities). Shortly after Dexia obtained the judgment in this case in May 2007, Dexia initiated post-

judgment collection proceedings against Peter Rogan (Ex. 2) and the trustee of these trusts, Fred Cuppy. (Ex. 11) Accordingly, Dexia aggressively pursued discovery of details pertaining to the trusts as soon as it learned of them and took steps to execute against them immediately after Dexia obtained the judgment in this case.

**B.**     **Dexia's TRO/PI is Amply Supported by Competent Evidence.**

Mr. Rogan also posits the groundless position that the evidentiary sufficiency of Dexia's TRO/PI filings, claiming Dexia's: (a) filings are not supported by competent evidence; (b) failure to identify a "party or representative agent of Dexia" is improper; and (c) TRO/PI motion was "premised upon a subsequently withdrawn attorney affidavit". (Mem. at 7, 9) These challenges should be rejected.

First, Mr. Rogan has never lodged specific objections to Dexia's proof and has yet to explain with any specificity why he believes any particular piece of evidence is incompetent. Nor has Mr. Rogan ever challenged the law Dexia cited in its TRO/PI motion, which provides that the rules of evidence are relaxed, and hearsay is admissible, in TRO/PI proceedings. (Dkt. No. 378, pp. 18-19)

Second, Mr. Rogan cites no legal authority that would obligate Dexia to proffer a representative as a witness. Nor is Dexia aware of any such authority. Dexia has not identified a Dexia representative as a witness in this turnover proceeding because Dexia did not generate the documentary proof upon which Dexia relied in support of its TRO/PI motion and because Dexia was not involved in the events related to the Children's Trusts.

Third, as Dexia has repeatedly articulated in this matter, Dexia did not file, and has not relied upon, the Mendeloff Affidavit to support the merits of its TRO/PI motion. This Court has repeatedly recognized that Dexia filed the affidavit *solely* as support for its request that the Court

issue the TRO on an *ex parte* basis, that is, to comply with the requirement of Fed. R. Civ. P. 65(b)(1) that a party seeking an *ex parte* TRO must file such an affidavit demonstrating the harm that will result if the TRO is granted with notice,[1] which showing the Court has indicated Dexia satisfied "in spades." (Tr. 9/16/08 at p. 16 (Ex. A)) Contrary to Mr. Rogan's claim, Dexia has never withdrawn this affidavit, but has simply noted the limited purpose for which it was offered in the first place.

### C. Dexia Has Never Requested Mr. Rogan's Social Security Number For Its Own Inspection Or Use.

Mr. Rogan's repeated references (in his briefing and supporting affidavit) to Dexia's purported attempts to obtain his social security number are nothing short of frivolous. (Mem. at 3, 8; R. Rogan Aff. ¶¶ 21, 22). Dexia assumes that Mr. Rogan's averments relate to Dexia's efforts to establish an escrow account for payments from Hoover Creek Plantation Partners and Palmetto Commons Partners to CFMT of Florida, LLC or Hoover Creek Condo Partners, LLC, per this Court's September 22nd order (Dkt No. 588).

In connection with these efforts, it was the proposed escrow agent, Darby Bank (and not Dexia), that was the source of the request for certain personal information from the Trust Beneficiaries in order to establish this account, including social securities numbers. Dexia's counsel simply forwarded this request to Mr. Rogan's counsel (Ex. B) and asked that his counsel send this information to <u>Darby</u> <u>Bank</u> in Savannah, Georgia. Specifically, in an October 17, 2008 email, Dexia's counsel told Mr. Rogan's counsel that:

> I have been in contact ***with Darby Bank*** regarding what information they need in order to set up that account … Please send ***them*** the following information for Judy, Robert, Brian and Sara: - Address – Phone number – Social Security

---

[1] In fact, paragraph 2 of the Mendeloff affidavit affirmatively states that this is the reason the affidavit was being filed. (Dkt. No. 611, Ex. 10).

Number – Drivers License Number – Mother's Maiden name.

(*Id.*) (emphasis added).  In short, Dexia **never requested** for itself, and has **no interest** in possessing, the social security number of Mr. Rogan.[2]

## ARGUMENT

This Court has personal jurisdiction over Mr. Rogan because he waived his objection to personal jurisdiction by:  (a) intervening in this proceeding; (b) participating extensively in this proceeding; and (c) raising inadequate objections to personal jurisdiction without argument and citation to authority.  In addition, this Court has *in rem* jurisdiction over Mr. Rogan's accounts at financial institutions in California because this Court has personal jurisdiction over all of the relevant parties:  Mr. Rogan, his father, and the relevant financial institutions.

## I.    By Filing a Motion to Intervene, Robert Rogan Has Waived the Argument That This Court Lacks Personal Jurisdiction Over Him.

Unlike subject-matter jurisdiction, personal jurisdiction is "a legal right protecting the individual" that can be waived.  *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 704 (1982).  Thus, federal courts consistently hold that the act of moving to intervene in a proceeding waives personal jurisdiction.  *See, e.g., County Sec. Agency v. Ohio Dept. of Commerce*, 296 F.3d 477, 483 (6th Cir. 2002) (attempt to preserve objection to personal jurisdiction in motion to intervene was unsuccessful because "a motion to intervene is fundamentally incompatible with an objection to personal jurisdiction");  *United States v. Oregon,* 65 F.2d 1009, 1017 n. 18 (9th Cir.1981) ("The court below gained personal jurisdiction over [the defendant] when it intervened as of right.");  *Glinka v. Abraham and Rose Co. Ltd.***,** 199 B.R. 484, 496 (D. Vt. 1996) ("The Court finds that Federal Plastics subjected itself to the *in*

---

[2] Additionally, under the most recent draft of the escrow agreement, Darby Bank no longer seeks any personal information from Mr. Rogan.

*personam* jurisdiction of the court when it moved to intervene in this adversary proceeding on May 12, 1992, to litigate its right[s.]"), *aff'd, In re HousecraftIndust. USA, Inc.*, 310 F.3d 64 (2nd Cir. 2002); 7C Fed. Prac. & Proc. Civ. 3d § 1920 (2008) ("[T]he intervenor has submitted to the personal jurisdiction of the court by seeking to intervene in the action and cannot move to dismiss on that ground."); *cf. DeWitt, Porter, Huggett, Schumacher & Morgan, S.C. v. Kovalic*, No. 94-2545, 1995 WL 375869, at *2 (7th Cir. June 21, 1995) ("Personal jurisdiction is waivable, and [the party] did just that when she voluntarily joined the case as a third-party plaintiff and participated in the litigation").

Here, the very first docketed entry by Mr. Rogan in this proceeding is *Sara and Robert Rogan's Motion to Intervene*. (Dkt. No. 437). There, Mr. Rogan argues that he has an "absolute right to intervene in the underlying action" and that he is entitled to intervene, "as of right, pursuant to Fed. R. Civ. Proc. 24(a)" (*Id.* at ¶¶ 5, 6), and that this Court "does not have jurisdiction over Sara Rogan and Robert Rogan." Mr. Rogan does not elaborate upon this argument or provide any support for his conclusion. (*Id.* at ¶ 4). Nor did Mr. Rogan take any steps to preserve an objection to personal jurisdiction when this Court heard Mr. Rogan's motion to intervene. (9/16/08 Tr. at 15 (Ex. A))

## II.    Through His Substantial Participation In The Proceedings, Robert Rogan Has Waived Any Argument of Personal Jurisdiction.

Mr. Rogan apparently claims that he may intervene as a matter of right to protect his claimed interests, while at the same time preserve an objection on personal jurisdiction grounds sufficient to permit him later to contest this Court's jurisdiction to decide matters relating to these interests. Mr. Rogan of course cites no legal authority that would permit him to pull off this maneuver. The reason may be that all authority runs against him: by moving to intervene and by actively participating in the proceedings, Mr. Rogan waived any objection to personal

jurisdiction. *See Continental Bank, N.A. v. Meyer*, 10 F.3d 1293, 1296-97 (7th Cir. 1993) (objection to personal jurisdiction initially preserved in answer waived by subsequent participation in litigation); *Sullivan v. Porter,* 210 F.3d 376, 376 (7th Cir. 2000) (party's participation in the lawsuit waived his personal jurisdiction objection and once "submitted generally to the jurisdiction of the court, the court is powerless to dismiss the suit for lack of personal jurisdiction"); *Armoloy Corp v. Industrial Hard Chromium Co.*, No. 02 C 50071, 2002 WL 1284286, at *1 (N.D. Ill. 2002) (a party "can waive its defense of personal jurisdiction through its own conduct by participating in the litigation on the merits"); *DeWitt, Porter, Hugget, Schumacher & Morgan, S.C.*, 1995 WL 375869 at *2 (personal jurisdiction objection waived where party voluntarily joined the case as a third-party plaintiff and participated in the litigation); *Apollo Galileo USA Partnership v. Kingdom Vacations, Inc.*, 2002 WL 1359391, at *2 (N.D. Ill. 2002) (by participating in litigation, as opposed to filing a motion to dismiss for lack of personal jurisdiction, party waived personal jurisdiction objection).

Mr. Rogan's active participation in these proceedings has been significant, calling upon this Court to decide numerous facets of the controversy and participating actively in the proceedings. First, Mr. Rogan sought and obtained this Court's order permitting him to intervene (Dkt. Nos. 437 and 519). Second, Mr. Rogan moved this Court to dissolve the temporary restraining order entered against his bank accounts. (Dkt. Nos. 445, 447). In so doing, Mr. Rogan sought numerous merit-based determinations, including whether the TRO complied with Fed. R. Civ. P. 65, whether the Northern District of Illinois was a proper venue, and whether the TRO violated the First, Fifth, or Fourteenth Amendments. Third, Mr. Rogan filed a joint motion (as an "intervenor") to strike portions of the Affidavit of Scott Mendeloff (Dkt. No. 531) and filed a personal affidavit in support of his statement of disputed facts (Dkt.

No. 532). Fourth, Mr. Rogan filed a joint brief (as "intervenor/respondent") in opposition to Dexia's PI motion. (Dkt. No. 568). Fifth, at the preliminary injunction hearing on Sept. 23, 2008, the opening statement of Mr. Rogan's counsel contained no reference to personal jurisdiction. (9/23/08 Tr. at 23-26 (Ex. C))

Quite significantly, Mr. Rogan does nothing more than perfunctorily gesture toward the issue of personal jurisdiction in the two filings that even mention it, Mr. Rogan's motion to intervene and initial motion to dissolve the TRO – both of which do so in a via one-to-two conclusory sentences. Similarly, the sole words his lawyer uttered on the issue came at the close of the preliminary injunction hearing on Sept. 25, 2008 when his counsel stated that he "process (sic) concerns about personal jurisdiction." This was all; there was no argument that the Court lacked personal jurisdiction to make determinations regarding Robert Rogan's assets.(9/25/08 Tr. at 50-53 (Ex. D)) All other filings and presentations before the Court contain not a single objection to this Court's personal jurisdiction over Robert Rogan or his assets.

Because of his extensive participation in this proceeding, the law of this Circuit holds that Mr. Rogan has waived his objection to personal jurisdiction.

## III. Mr. Rogan's Perfunctory Objections to Personal Jurisdiction Without Any Citation to Relevant Authority Amounts to a Waiver of Any Objection.

The law is crystal clear that "failure to properly develop an argument with citation to relevant legal authority constitutes a waiver." *Perry v. Sheet Metal Workers Local No. 73 Pension Fund,* N. 07 C 635, 2008 WL 789102 (N.D. Ill. Mar. 24, 2008) (citing *Weinstein v. Schwartz*, 422 F.3d 476, 477 n. 1 (7th Cir. 2005)); *see also R.J. Reynolds Tobacco Co. v. Cigarettes Cheaper*, 462 F.3d 690, 710 (7th Cir. 2006) ("The arguments are undeveloped (not a single case is cited, and the brief does not explain why the district judge rules as he did) and forfeited"); *Kramer v. Banc of Am. Sec., LLC,* 355 F.3d 961, 964 n. 1 (7th Cir. 2004) ("We have

repeatedly made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority are waived (even where those arguments raise constitutional issues).”); *Baxter Intern. Inc. v. Abbott Laboratories*, 297 F.3d 544, 548 (7th Cir. 2002) (“Motions that simply assert a conclusion without the required reasoning, however, have no prospect of success”).

Mr. Rogan appears to rely upon his objection in his motions to intervene and to dissolve the TRO and the reference to personal jurisdiction in his closing argument to preserve his objection to personal jurisdiction. (Mem. at  11).  However, he supported his personal jurisdiction objection with only two sentences of his five-page motion to dissolve and ***no*** argument and ***no*** citation to authority in his supporting memorandum of law.  (Dkt. No. 445, ¶ 5; Dkt. No. 447).  Likewise, his closing statement contained no substantive (or comprehensible) argument that the Court lacked personal jurisdiction to make determinations regarding Robert Rogan’s assets.  (9/25/08 Tr. at 53 (Ex. D)).  Under the black letter law of this jurisdiction, these cursory references are insufficient to preserve the argument that this Court lacks personal jurisdiction over him.

**IV.**    **This Court has *In Rem* Jurisdiction Over Mr. Rogan’s California Accounts.**

Mr. Rogan also challenges this Court’s ability to assert *in rem* jurisdiction over his accounts at financial institutions in California – *i.e.*, Bank of America and Citibank.  (Mem. at 14; R. Rogan Aff. ¶ 11)  Mr. Rogan is wrong.

In *In re Marriage of Kosmond*, 830 N.E.2d 596 (Ill. App. Ct. 2005), the issue was whether the court could exercise *in rem* jurisdiction over assets held in a bank in Germany such that it the court could freeze those assets.  The court held it had *in rem* jurisdiction over the German bank accounts and froze those assets, because it had “*in personam* jurisdiction over all

of the interested parties," *i.e.*, the account holder, and the bank (which had an office in Illinois). *Id.* at 600.

Here, as in *Kosmond*, this Court has personal jurisdiction over all of the interested parties. This Court has personal jurisdiction over Mr. Rogan because Mr. Rogan has waived his objection to personal jurisdiction. It has personal jurisdiction over the relevant financial institutions in California because: (a) these financial institutions have complied with this Court's TRO without objecting to personal jurisdiction; and (b) just like the German bank in *Kosmond*, these financial institutions have offices in Illinois.[3] Finally, this Court has personal jurisdiction over Peter Rogan – whose funds are the target of this proceeding with respect to the Rogan children. In fact, this Court has ruled that Dexia has established a reasonable likelihood of success on the merits of its claim that Peter Rogan, via alter egos, transferred funds to Mr. Rogan and the other Rogan children. Because this Court has personal jurisdiction over all of the interested parties, *Kosmond* establishes that this Court then has *in rem* jurisdiction over Mr. Rogan's California accounts.[4]

---

[3] For a listing of banking centers for Bank of America in Illinois, see:
http://bankofamerica.via.infonow.net/locator/atmbranch/ResultsDisplayAction.do. For a listing of banking centers for Citibank in Illinois, please see:
http://go.mappoint.net/citibankV2/Index.aspx?city=Chicago&state=IL.

[4] Assuming *arguendo t*hat this Court lacked *in rem* jurisdiction over Mr. Rogan's California accounts, the Court's personal jurisdiction over Mr. Rogan permits it to issue orders directed at Mr. Rogan that govern his disposition of those accounts on the ground that Mr. Rogan holds assets of the judgment debtor. *See* 735 ILCS 5/2-1402(f)(2) (permitting a court "to enjoin any person, whether or not a party to the supplementary proceedings, for making or allowing any transfer or other disposition of, or interference with, the property of the judgment debtor not exempt from the enforcement of a judgment"); Illinois Supreme Court Rule 277(a) (court may allow proceedings "against the judgment debtor or any third party the judgment creditor believes has property or is indebted to the judgment debtor"). Furthermore, if Mr. Rogan disobeys this Court's orders, he is subject to this Court's jurisdiction and contempt power. *See SEC v. Homa*, 514 F.3d 661, 674 (7th Cir. 2008), *citing Waffenschmidt v. MacKay*, 763 F.711, 716 (5th Cir. 1985) ("The mandate of an injunction issued by a federal district court runs nationwide."). Thus, Mr. Rogan's argument that there is no "cognizable basis" to subject him to this Court's "jurisdiction and contempt power" (Mem. at 6) clearly is countered by binding precedent.

The case upon which Mr. Rogan relies to establish the absence of *in rem* jurisdiction – *Schaffer v. Heitner*, 433 U.S. 186 (1977) – is inapplicable here. *Schaffer* involved a shareholder derivative suit alleging that defendants violated their duty to the corporation. *Id*. The plaintiff-shareholder sought to sequester the property of nonresident defendants on the theory that because the property was located in the court's jurisdiction, the court had authority over the property. *Id.* at 208-9. The Supreme Court rejected this argument, holding that to have quasi *in rem* jurisdiction over property, the plaintiff must prove that the defendant had minimum contacts with the forum in which the property is located. *Id.* at 212. Here, the property at issue is located outside of this jurisdiction, but this Court has personal jurisdiction over all of the relevant parties. While *Schaffer* does not address our particular factual scenario, *Kosmond* does and thus should be followed.

Respectfully submitted,

Dated: November 7, 2008          PLAINTIFF DEXIA CRÉDIT LOCAL

By: /s/ Gabriel Aizenberg

One of its Attorneys

HOWREY LLP
Scott Mendeloff
Gabriel Aizenberg
321 N. Clark Street, Suite 3400
Chicago, Illinois 60654
(312) 846-5650

## <u>CERTIFICATE OF SERVICE</u>

I, Gabriel Aizenberg, an attorney, hereby certify that on November 7, 2008, I caused a true and correct copy of Plaintiff Dexia Credit Local's *Memorandum In Opposition To Robert Rogan's Motion To Dismiss For Lack Of Personal Jurisdiction* to be served electronically via this Court's ECF system and by U.S. mail on:

Randall Scott Sender
Sender Associates, Chtd.
15601 South Cicero Avenue
Suite 101
Oak Forest, IL 60452

Peter G. Rogan
1155 Mainland Street
Vancouver, B.C. Canada V6B 5P2

By:  /s/ Gabriel Aizenberg

Gabriel Aizenberg
