# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DEXIA CREDIT LOCAL, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 02 C 8288 |
| PETER G. ROGAN, et al., | ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

The Court previously entered a temporary restraining order that, among other things, had the effect of freezing certain accounts held by Frederick Cuppy and a corporation of which he is the sole shareholder. Plaintiff Dexia Credit Local has moved for entry of a preliminary injunction seeking essentially the same relief. Cuppy opposes entry of a preliminary injunction. For the reasons stated below, the Court grants Dexia's motion in part and denies it in part. This constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a).

## Background

Dexia holds a judgment against Peter Rogan in an amount in excess of $124 million. In August 2008, Dexia filed an *ex parte* motion for a temporary restraining order and a preliminary injunction, seeking an order freezing and turning over various assets in the United States and abroad that it alleges are Rogan's or in his control or that he fraudulently transferred. In that motion, Dexia alleged that Rogan, in concert with

Cuppy (Rogan's attorney) and others, had engaged in an elaborate and longstanding scheme to hinder Dexia and other creditors from executing against Rogan's assets. Dexia filed the motion *ex parte* based on its allegations that Rogan had taken steps in the past to hinder Dexia from collecting, including evading court orders, and that if he became aware of the motion, Rogan likely would take further steps to evade its intended effect.

Dexia supported the motion with an extensive and voluminous factual and legal submission. The Court initially heard Dexia's counsel *in camera*, albeit on the record, and made findings that permitted Dexia to submit its materials *ex parte*. The Court then took Dexia's motion for a temporary restraining order under advisement. On or about September 2, 2008, the Court summoned Dexia's counsel for a further *in camera* court session. During that session, the Court advised Dexia's counsel that it intended to grant the requested temporary restraining orders and asked counsel to prepare and submit the necessary draft orders. Dexia's counsel did so, and the Court signed the orders on September 4-5, 2008.

The temporary restraining orders the Court entered barred Peter Rogan, his wife Judith Rogan, and Cuppy from directly or indirectly making or allowing transfers or other dispositions of various assets. The orders also froze assets held by certain institutions and entities that, based on Dexia's submissions to the Court, appeared to be within Rogan's effective control. These included assets held by a number of trusts Rogan had established with Cuppy's assistance: the Peter G. Rogan Irrevocable Trust, the RPP Finance Trust, and domestic and offshore trusts established for the benefit of Rogan's children, as well as accounts in which funds the trusts had transferred to the children

2

and others were held.

Cuppy did not seek to dissolve the temporary restraining order but did oppose entry of a preliminary injunction. Cuppy filed an affidavit and a memorandum in opposition to Dexia's motion for a preliminary injunction. Dexia then filed a supplemental memorandum providing additional evidence and argument relating to Cuppy. The Court held an evidentiary hearing on September 29 and October 31, 2008.

**Facts**

**1.     Cuppy's affidavit**

In his affidavit, Cuppy stated that the temporary restraining order had the effect of, among other things, freezing a personal bank account at Chase Bank, a personal investment account at Smith Barney, and an account at Chase Bank in the name of Dynamic Alliance Inc., a corporation of which Cuppy is the sole shareholder. *See* Cuppy 1st Affid. ¶¶ 6-7, 10.

Cuppy stated in his affidavit that he had rendered legal services to Rogan at various times and is also Rogan's friend. *Id.* ¶ 4. He also stated that he had invested in certain projects in which "entities referenced in the Dexia motion" had also invested. Cuppy also stated that he had "received fees for management services from entities referenced by Dexia," and that "[t]hose payments were for services rendered." *Id.* ¶ 9.

Cuppy stated in his affidavit that he is a trustee of certain domestic trusts established for the benefit of Rogan's children in 1992 and, as such, is "responsible for managing investments on behalf of the various beneficiaries." *Id.* ¶ 11. Cuppy expressed concern that because the trusts' assets consist in part of securities and

options, the injunction could prevent him as trustee from closing open orders and positions, risking a diminution of the assets' value. *Id.* Cuppy further stated that he acts as a trustee of certain Belizean trusts established for the benefit of Rogan's children and that he discharges those responsibilities through an entity called Caribe Trustees Limited, of which he is the sole owner. He stated that these trusts possess no assets other than an indirect interest in an entity called 410 Montgomery, LLC. *Id.* ¶ 12.

Cuppy further stated in his affidavit that he acts in a managerial capacity for CFMT Ltd. and, through Dynamic, for CFMT of Florida, LLC, each of which is owned, directly or indirectly, by the Peter G. Rogan Irrevocable Trust. That trust, Cuppy stated, owns a partial interest in two real estate projects in Savannah, Georgia, and a real estate project in Hilton Head, South Carolina that Dynamic manages. *Id.*

Finally, Cuppy stated that Peter Rogan has never owned an interest in or received a payment from Dynamic. He stated that Dynamic owns four assets: a minority interest in real estate in Merrillville, Indiana that it has held for twenty-five years; two condominium units in Jacksonville, Florida, which it manages for itself and other investors (not including Rogan); a passive minority interest in Seal Wrap Systems, LLC; and an indirect one percent interest in 410 Montgomery, LLC. *Id.* ¶ 10.

Cuppy separately filed an affidavit, pursuant to directions in the temporary restraining order, identifying assets held for the benefit of "Rogan Entities" as that term was defined in the order. This affidavit identified accounts holding the assets of the Rogan children's trusts and various other entities and listed the amounts held in those accounts as of September 12, 2008. *See* Cuppy 2d Affid. ¶¶ 4-10.

In his memorandum in opposition to Dexia's preliminary injunction motion, Cuppy

argued that Dexia had offered no evidence that any of his personal accounts or those of Dynamic contained any assets belonging to Peter Rogan, *see* Cuppy Mem. at 3, 6-7; that his investment in and management of projects in which Rogan-related entities has no bearing on whether his accounts contain Rogan's assets, *see id.* at 4; and that absent such evidence, there is no basis to freeze Cuppy's accounts. *See id.* at 4-5. Cuppy also argued that the temporary restraining order had caused him significant harm and that a preliminary injunction would compound this and would jeopardize the continued existence of Dynamic. *See id.* at 5-7. Finally, Cuppy argued that he should be permitted to discharge his responsibilities as trustee of the Rogan children's trusts. *See id.* at 9-10.

**2.     Dexia's supplemental submission**

Dexia filed a supplemental memorandum in which it contended, and offered evidence, that the financial affairs of Cuppy and his company Dynamic are closely intertwined with those of Peter Rogan and the trusts he established and that Cuppy had received significant transfers from entities connected with the trusts and/or Rogan. This included the following:

- The children's Belizean trusts indirectly own ninety-nine percent of Boulevard Investors, LLC, which in turn owns the 410 Montgomery condominium development in Savannah; Cuppy's company Dynamic owns the other one percent; and Dynamic received payments of over $38,000 from 410 Montgomery in June and November 2006.

- Dynamic originally owned a one-third share of a real estate development

5

called Taylor Row but sold that share to the children's domestic trusts, which already owned another one-third share.  Cuppy arranged financing for the project and agreed to give a personal guaranty to support part of the financing.  Cuppy received a $35,000 payment from Taylor Row in October 2005.

- The children's domestic trusts and Dynamic each own a one-third interest in a real estate development in Savannah called Gardens on Jones, LLC; Cuppy signed the operating agreement for the LLC on behalf of Dynamic Alliance and the trusts; Dynamic made payments into the project totaling $800,000; and Cuppy personally guarantied a loan for the project.

- Seal Wrap, LLC, referenced in Cuppy's affidavit as an entity in which Dynamic Alliance holds a passive minority interest, is one-third owned by Boulevard Investors LLC, an entity owned ninety-nine percent by the children's Belizean trusts and one percent by Dynamic Alliance.

- Various entities owned directly or indirectly by the Peter G. Rogan Irrevocable Trust in which neither Cuppy nor Dynamic Alliance held an ownership interest had made significant payments to Cuppy or Dynamic Alliance: a total of $35,000 from Wilmington Condominium Commons to Cuppy in 2005; a total of $80,000 from Hoover Creek Condo Partners to Cuppy in 2005-2006; $10,000 from CFMT Ltd. (a subsidiary of a Rogan trust) in 2006; and $30,000 from CFMT of Florida (a subsidiary of CFMT Ltd.) to Dynamic Alliance in 2006.

- The RPP Finance Trust, of which Cuppy was a trustee and is a beneficiary, made payments to Dynamic and Cuppy from 2001 through 2006 totaling over $550,000.  Dynamic and Cuppy transferred around $500,000 to

RPP Finance Ltd. during that same period, ostensibly to repay loans for which there was no documentation.

- Dexia also provided evidence of other transactions between Cuppy and Rogan-related entities or entities in which they had invested.

3. **Matters that Cuppy has not disputed**

An evidentiary hearing is required on a motion for preliminary injunction only to the extent that the response to such a motion identifies genuine issues of material fact. *See In re Aimster Copyright Litig. (Appeal of Deep)*, 334 F.3d 643, 653-54 (7th Cir. 2003); *Ty, Inc. v. GMA Accessories, Inc.*, 132 F.3d 1167, 1171 (7th Cir. 1997). "[A]s in any case in which a party seeks an evidentiary hearing, he must be able to persuade the court that the issue is indeed genuine and material and so a hearing would be productive – he must show in other words that he has and intends to introduce evidence that if believed will so weaken the moving party's case as to affect the judge's decision on whether to issue an injunction." *Ty*, 132 F.3d at 1171.

In the materials it submitted in support of its motion for temporary restraining order and for a preliminary injunction, Dexia offered ample evidence that Cuppy assisted in Rogan in concealing his assets and attempting to place them beyond the reach of creditors. In significant part, this was done via the various trusts referenced earlier, which Cuppy set up for Rogan and thereafter oversaw and administered. In addition, Dexia's evidence submitted in connection with its motion also reflects that Cuppy aided Rogan in deliberately evading orders entered by judicial officers in this case, in an effort to keep his assets from the grasp of Dexia.

7

In his submissions prior to the evidentiary hearing, Cuppy raised no dispute regarding these points. Nor did Cuppy contest Dexia's assertion that the Peter G. Rogan Irrevocable Trust, the RPP Finance Trust, or the children's domestic and offshore trusts are Peter Rogan's alter egos or nominees. The Court takes those contentions as established for purposes of the present motion.[1]

**4.      The evidentiary hearing**

The Court held an evidentiary hearing on Dexia's motion for entry of a preliminary injunction against Cuppy. Cuppy was the only witness to testify at the hearing. Consistent with the disputes issues addressed in Cuppy's pre-hearing submissions, his testimony focused on Dynamic Alliance, Cuppy's involvement with projects in which Rogan-related trusts had invested, and transfers he and Dynamic had received.

The uncontested factual material Dexia submitted gives one reason to be skeptical regarding Cuppy's *bona fides* in his dealings relating to Peter Rogan. The Court, however, found Cuppy's testimony at the hearing largely credible – though not always favorable to Cuppy's position. The Court summarizes the evidence as follows.

First, Cuppy testified that the accounts that are currently subject to the temporary restraining order do not hold any assets belonging to Peter Rogan. He also testified that he had never used Dynamic or its accounts to funnel assets to Rogan. The Court found this testimony credible.

---

[1] Had Cuppy given any indication that he intended to dispute Dexia's allegations on these points, Dexia would have had, and no doubt would have exercised, the opportunity to question him on these points during his testimony at the evidentiary hearing.

8

Second, Cuppy agreed that he had been involved in a variety of investments and transactions relating to the various Rogan-related trusts and entities they control, including CFMT of Florida LLC, an entity wholly owned by CFMT Ltd., which in turn is wholly owned by the Peter G. Rogan Irrevocable Trust. In certain instances, Cuppy stated, he invested in projects along with the Rogan children's trusts because the particular project was too large, and "we needed additional capital." In previous testimony that was admitted in evidence during Cuppy's cross-examination, Cuppy conceded that this created the potential for a conflict of interest given his dual roles.

Third, Cuppy admitted that he and Dynamic had received significant transfers of funds from the trusts and entities in which they invested. For that reason, the Court need not list the details of those transfers except for particular instances discussed below. Cuppy testified that these transfers consisted of management and trustee fees, one distribution to him as a trust beneficiary, and loans. Cuppy admitted that with relatively insignificant exceptions, he himself had made these transfers on behalf of the trusts – in other words, he caused the trusts to transfer funds to himself and to Dynamic. Cuppy also largely admitted Dexia's contentions that the transfers lacked supporting documentation, such as management contracts, loan agreements, promissory notes, and the like.

Two of these transfers are of particular note. First, Cuppy testified that Dynamic owes the RPP Finance Trust $305,000, which he testified that he caused RPP to loan to Dynamic.[2] Cuppy stated that Dynamic invested the funds in a condominium in Fort

---

[2] As noted earlier, Cuppy was, at the time, a trustee of the RPP Finance Trust; he has been and remains a beneficiary.

Lauderdale, Florida (which, Cuppy testified, he is now trying to sell in order to repay RPP).[3] The loan was, Cuppy testified, made on an interest-free basis, and it has been outstanding for several years. Cuppy conceded that the loan is not documented by a promissory note or loan agreement. The evidence established that Cuppy caused RPP to make this unlimited, interest-free loan essentially at his whim. Second, Cuppy conceded that documents reflect that in 2002, he caused RPP to make a $20,000 distribution to him, which he identified on the entity's bank statements as a "K-1 distribution." Cuppy admitted that he made no such distributions to the trust's other beneficiaries. When asked to explain this, Cuppy stated, in substance, that he simply decided to make a distribution to himself.

Cuppy evidently had both the authority and the ability to draw money from the RPP Finance Trust at his whim, at whatever times and in whatever amounts he desired. It is reasonable to infer that Rogan put Cuppy in a position that enabled him to do this because Cuppy's assistance was critical in aiding Rogan in placing and keeping his assets beyond the reach of his creditors.

The Court cannot say, however, that Dexia has shown that the payments that Cuppy characterized as management and trustee fees were unearned or that they were

---

[3] There is an apparent disconnect between Cuppy's sworn statement in his affidavit that Dynamic owned only specific assets – which included two condominiums in Jacksonville, Florida but none in Fort Lauderdale – and his October 31 hearing testimony that the funds Dynamic "borrowed" from the RPP Trust were invested in a condominium in Fort Lauderdale. Though the Court's notes of the testimony do not reflect any square statement that Dynamic is the owner of the Fort Lauderdale property, that is a reasonable inference from Cuppy's testimony that it was Dynamic that "borrowed" the money from the RPP Trust. The Court expects Cuppy to clarify or correct either his statement in the affidavit or his hearing testimony in this regard.

10

disproportionate to the work he did. The Court found credible Cuppy's testimony that he had performed valuable services in managing and overseeing various real estate developments in which the trusts invested and that he was entitled to be paid for those services. Although these payments appear to have been made at times and in amounts that Cuppy determined on a discretionary basis, the Court cannot say, based on the present record, that consideration was lacking for the payments.

On the other hand, two transfers – which, again, lacked documentation or other support – appear to have been made without any consideration (at least not any legally legitimate consideration) in return. These included the indefinite-term, interest-free loan of $305,000 that Cuppy caused RPP Finance Trust to make to Dynamic, and the $20,000 "beneficiary" distribution that Cuppy caused RPP to make to him, and only to him, in 2002.

**Discussion**

To obtain a preliminary injunction, Dexia must show that it has a likelihood of success on the merits and that it lacks an adequate remedy at law and will suffer irreparable harm if the injunction is not granted. *FoodComm Int'l v. Barry*, 328 F.3d 300, 303 (7th Cir. 2003). If Dexia meets these requirements, the Court must balance the harm to Dexia if an injunction is not issued against the harm to opposing parties if it is issued, and must also consider the interests of others, including the public. *Id.* This balancing "involves a sliding scale analysis: the greater [the movant's] chances of success on the merits, the less strong a showing it must make that the balance of harm is in its favor." *Id.*

There is plenty of evidence, uncontested for present purposes, that Cuppy has helped Rogan evade his creditors, including via illegitimate means. But Dexia offers no authority for the proposition that this, without more, justifies freezing Cuppy's assets to satisfy Dexia's judgment against Rogan. Rather, an injunction freezing Cuppy's assets and those of Dynamic is appropriate only to the extent those assets are appropriately considered to be Rogan's or were fraudulently transferred by Rogan.

The precise legal theory on which Dexia seeks to freeze Cuppy's and Dynamic's assets was not clearly articulated in its arguments following the evidentiary hearing. Based on the evidence presented, it would be fair to refer to Cuppy as Rogan's agent in the management and oversight of the alter ego trusts. But that alone does not warrant undoing every transfer that Cuppy received – and Dexia cites no authority suggesting that would be appropriate.

In contrast to other situations in which Dexia sought temporary restraining orders and preliminary injunctions, Dexia does not appear to contend that Cuppy or Dynamic are Rogan's nominees or alter egos. Rather, as best as the Court can discern from Dexia's arguments and legal memoranda, it appears that Dexia contends that Cuppy received fraudulent transfers from entities that are Rogan's alter egos. (Cuppy has not contested Dexia's contention that the various trusts, and specifically the RPP Finance Trust, are appropriately considered to be Rogan's alter egos.)

As the Court noted in its recent decision regarding the Rogan children, a fraudulent transfer by an alter ego of a judgment debtor properly may be treated as a fraudulent transfer by the judgment debtor himself. *See In re Turner*, 335 B.R. 140, 147(Bankr. N.D. Cal. 2005), *reaff'd on reconsideration*, 345 B.R. 2006 (Bankr. N.D. Cal.

2006). And as the Court also concluded in that decision, a judgment creditor may assert a fraudulent conveyance claim in the context of post-judgment collection proceedings and need not file a separate lawsuit; that is how it was done in *Hong Kong Electro-Chemical Works, Ltd. v. Less*, 539 F.3d 795 (7th Cir. 2008).

Under Illinois law, a debtor's transfer of an asset before or after a creditor's claim arose is fraudulent if the transfer was made "with actual intent to hinder, delay, or defraud any creditor of the debtor." 740 ILCS 160/5(a). In determining whether "actual intent" exists, a court considers whether:

- the transfer was to an insider;
- the debtor retained possession or control of the property after transfer;
- the debtor had been sued or threatened with suit before the transfer;
- the transfer was of substantially all the debtor's assets;
- the debtor absconded;
- the debtor removed or concealed assets;
- the debtor received consideration reasonably equivalent to the value of the asset transferred;
- the debtor was insolvent or became insolvent shortly after the transfer;
- the transfer was made shortly before or after a substantial debt was incurred;
- the debtor transferred the essential assets of a business to a lienor who transferred the assets to an insider of the debtor.

740 ILCS 160/5(b).

Some of the factors set forth in the Illinois statute are, without question, present in this case. Dexia has a reasonable likelihood of success on its contention that Cuppy

is an "insider" vis-a-vis Rogan given their close personal and business relationship and the evidence of Cuppy's assistance to Rogan in his attempt to keep assets from his creditors. In addition, at least some of the transfers were arguably concealed via circuitous routing; at least some were made after Dexia filed or threatened suit; Rogan left the country for Canada; Dexia has shown that Rogan concealed significant assets by various means; and Rogan became insolvent in the sense of not having assets sufficient to satisfy his obligations. On the other hand, Rogan did not retain control over the property after its transfer to Cuppy – though that factor is not dispositive.

The primary issue, in the Court's view, is whether the transfers in question were made without reasonably equivalent consideration. The evidence presented at the hearing tends to show that Cuppy provided reasonably equivalent consideration for the transfers that he characterized as management or trustee fees. The absence of documentation supporting the transfers and the apparently discretionary basis on which they were made is relevant but not dispositive in this regard. Based on Cuppy's credible testimony, the Court finds that he performed legitimate services for the transferor entities, consisting of management and oversight of their investments and assets. Nor are the amounts of the transfers so high that they would be considered to be out of proportion to the services Cuppy performed.

The Court cannot say the same regarding the $305,000 that Cuppy caused the RPP Finance Trust to transfer to Dynamic. Cuppy's characterization of this as a loan is somewhat suspect, but even if the characterization is accurate, it was an interest-free loan for an indefinite term, made by and to the person who had control of the trust's assets at his apparent whim, without any documentation of an obligation to repay. Nor

14

was there any apparent benefit to the trust or its beneficiaries from making the "loan." Cuppy's claimed desire, expressed at the hearing, to repay the loan comes, in essence, at the point of a sword. Dexia has established a reasonable likelihood of success on its contention that this was a fraudulent transfer of assets of RPP Finance Trust, an alter ego of Peter Rogan.

The same is true of the $20,000 distribution that Cuppy caused that trust to make to him as a beneficiary. This, again, appears to have been made based upon Cuppy's whim – as evidenced by the fact that no such distributions were made to any of the trust's other beneficiaries.

Dexia has established that it will suffer irreparable harm unless Cuppy and Dynamic are prevented from transferring assets sufficient to repay these fraudulent transfers. In this regard, the evidence – uncontested for purposes of this hearing – of Cuppy's active involvement in Rogan's attempts to evade his creditors is significant. Dexia has shown that it is likely that absent an injunction, Cuppy will dispose of whatever assets he might have that would enable him to repay these sums. A significant risk of transfer beyond the court's jurisdiction of the assets of a judgment debtor that might be used to satisfy the judgment against him qualifies as irreparable injury. *See, e.g., Tri-State Generation & Transmission Ass'n v. Shoshone River Power, Inc.*, 805 F.2d 351, 355 (10th Cir. 1986); *In re Feit & Drexler, Inc.*, 760 F.2d 406, 416 (2d Cir. 1985); *cf. SEC v. Lauer*, 52 F.3d 667, 671 (7th Cir. 1995) (potential for dissipation of assets belonging to another amounts to irreparable injury).[4] And once the

---

[4] In *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S.
(continued...)

assets are dissipated or removed from the jurisdiction of the Court – of which there is a significant risk – Dexia would lack any reasonably adequate means to levy on those assets. This is sufficient to establish the lack of an adequate legal remedy.

There is no question that Cuppy will experience harm from entry of a preliminary injunction. Given the strong likelihood of success on the merits that Dexia has shown, however, this does not outweigh the irreparable harm that Dexia will experience if no injunction is entered.

Having considered the relevant factors, the Court grants Dexia's motion for a preliminary injunction against Cuppy and Dynamic Alliance, limited to the restraint of funds or assets sufficient to repay the transfers the Court has determined were likely fraudulent. This may consist of or include real estate, so long as the appraised value of the real estate (considered in light of the current weakness in the real estate market), combined with other assets that will be restrained, is sufficient to repay the transfers. Dexia and counsel for Cuppy are directed to make prompt efforts to identify funds or assets sufficient to meet the Court's requirements and are to report to the Court in this

---

[4](...continued)
308 (1999), the Supreme Court held that prior to entry of a money judgment, a district court lacks the authority to issue a preliminary injunction to prevent a defendant from transferring assets in which no lien or equitable interest is claimed. That decision has no bearing on this case, for at least two reasons: Dexia already has a judgment against Rogan, and its citation to discover assets issued to Rogan gave it a lien on his assets. *See, e.g., Pontikes v. Perazic*, 295 Ill. App. 3d 478, 484, 692 N.E.2d 712, 717 (1998). Furthermore, as discussed in the Court's decision on Dexia's preliminary injunction motion regarding the Rogan children, Illinois' post-judgment procedure specifically permits a court to enjoin transfer or disposition of property of the judgment debtor. *See Dexia Credit Local v. Rogan*, No. 02 C 8288, 2008 WL 4543013, at *6 (N.D. Ill. Oct. 9, 2008). As the Court has concluded, Dexia has established a reasonable likelihood of success on its claim that the assets that Rogan's alter ego trusts transferred to Cuppy and Dynamic are in effect Rogan's property.

regard, via a joint status report, to be filed by no later than November 18, 2008.[5] The matter is set for a status hearing on November 20, 2008 at 9:30 a.m.

In addition, the Court acknowledges Cuppy's concern that his inability to carry out his role as trustee for the children's trusts may place the assets of those trusts in jeopardy. Given, however, the evidence about Cuppy presented by Dexia in its temporary restraining order / preliminary injunction papers, the Court believes it appropriate that Cuppy be removed as trustee (to the extent this has not already occurred) and replaced by a neutral person to be appointed by the Court. The Court directs counsel for Dexia to meet and confer promptly with counsel of record for the beneficiaries of the trusts to attempt to agree upon an appropriate replacement.

**Conclusion**

The Court grants Dexia's motion for a preliminary injunction against Frederick Cuppy and Dynamic Alliance, Inc., on the terms and conditions stated in the body of this decision. A proposed preliminary injunction order embodying the Court's ruling is to be submitted to the Court, in hard copy, by no later than the close of business on November 12, 2008. The case is set for a status hearing on November 20, 2008 at 9:30 a.m.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: November 10, 2008

---

[5] The Court acknowledges that Dexia's counsel has a lot on its plate, but the Court expects counsel to give priority to this particular matter.

17