**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DEXIA CREDIT LOCAL, f/k/a Dexia Public Finance Bank and Credit Local de France, | ) ) ) | |
| Plaintiff, | ) ) | No. 02 C 8288 |
| v. | ) ) | Judge Matthew F. Kennelly |
| PETER G. ROGAN, et al. | ) ) | Magistrate Judge Sidney I. Schenkier |
| Defendants. | ) ) | |

.

**PLAINTIFF DEXIA CRÉDIT LOCAL'S RENEWED
MOTION FOR TURNOVER PERTAINING TO
THE INTERESTS OF THE ROGAN CHILDREN**

NOW COMES Dexia Crédit Local ("Dexia"), by and through its attorneys Howrey LLP, and hereby renews its Motion to this Honorable Court for Turnover Pertaining to the Interests of Robert Cashman Rogan, Brian Peter Rogan and Sara Caitlin Rogan (the "Rogan Children").[1] In support of this Motion, Dexia states as follows:

1.     The assets to which this motion is addressed are held as follows:  (i) the RPP Finance Trust ("RPP Trust"); (ii) the Peter G. Rogan Irrevocable Trust ("PGR Bahamas Trust"); (iii) the trusts domiciled in Florida and Belize that Peter Rogan ("Rogan") created in the names of each of his children; and (iv) transfers to each of the Rogan Children.  We address each of these categories in turn.

---

[1] Dexia presents this motion in response to the Court's direction that Dexia submit a "focused" Turnover Motion.  Accordingly, the instant motion merely seeks to provide the Court and the parties with general notice as to the assets sought and the theories upon which Dexia presently intends to rely.

## The RPP Finance Trust

2.     The potential interest of the Rogan Children in the RPP Trust derives from the fact that the trust lists the Rogan Children, their spouses, and the Children's children as potential trust beneficiaries.  Ex. 297 at 1-4.

3.     The RPP Trust holds assets directly and through its 100% ownership of RPP Finance Ltd. ("RPP Ltd."), which also holds and has held assets.

4.      The bases upon which Dexia seeks turnover of the holdings of the RPP Trust include those articulated in Dexia's Memorandum of Law No. 2 filed with its original Turnover Motion as well as several additional theories.  Those theories include:

   a.  **Standing**.  Dexia challenges the ability of any of the Rogan Children to establish standing to challenge turnover.

   b.  **Trust Terms.**  The terms of the trust permit Dexia to execute against the entire corpus of the trust.

    i.  Peter G. Rogan is designated as Grantor of the RPP Trust.  Ex. 297 at 1.

    ii.  The trust is self-settled, contains no spendthrift provision, and is subject to creditors' claims to the full amount that a trustee must or could possibly distribute to Rogan.  *Memorandum of Law No. 2* at 9-12.

    iii.  Article 3 does not to give the Trustees discretion as to *whether* to pay Rogan (Grantor), for it states the Trustees "shall" pay Grantor:

> such amounts of the corpus and income … as Trustees, in their sole discretion, deem necessary … for the reasonable support and comfort of the Grantor including … such amount necessary to meet an emergency or other needs of the Grantor.

    iv.  To the extent that Peter Rogan is deemed to be a beneficiary of the RPP Trust, Dexia, as Rogan's creditor, is permitted under the law to collect

from the trust the full amount that a trustee could possibly distribute to Rogan as a beneficiary. *Memorandum of Law No. 2* at 9-10. Under Article 3, Section 1, the Trustees may distribute any amount of the corpus or income of the trust to any beneficiary, and are not required to distribute sums equally or at all to other beneficiaries.

[Although the foregoing alternative theories are each sufficient to resolve all issues pertaining to the trust as a matter of law, Dexia also is prepared to present proof to support turnover under the following alternative theories as well.]

c. **Alter Ego.** Under the alter ego theory, creditors execute upon assets held by debtor's alter ego, including trusts. *Memorandum of Law No. 1* at 18-19. In light of the structure of the RPP Trust and Rogan's ability to control it through the trust's sole trustee, Fred Cuppy, the RPP Trust is the alter ego of Peter Rogan.[2] *See, e.g., Memorandum of Law No. 2* at 8-9, 12-17.

d. **Fraudulent Transfer.** Dexia's original Turnover Motion and related pleadings articulate substantial proof that Rogan and Cuppy created RPP and the other offshore trusts to shield Rogan's assets from his creditors. During the life of the RPP Trust, Rogan and Cuppy caused numerous transfers of funds to be completed in a manner designed to conceal ownership and control of the funds. Thereafter, in late 2006, Cuppy caused substantial RPP assets contained in accounts at U.S. financial institutions to be transferred to The Bahamas. *Statement of Facts*, at 123-24. The fraudulent transfer statute is designed to protect creditors from just

---

[2] Dexia's *Memorandum of Law No. 2* articulates the reason that Fred Cuppy's attempted replacement of trustees for this trust was invalid, meaning that Cuppy remains trustee or that there is no trustee at all. *Memorandum No. 2* at 7-9.

such concealment efforts.  Dexia's prior submissions document recent transfers of substantial RPP Trust assets designed to conceal those assets from discovery. Accordingly, Dexia urges the Court to deem as fraudulent the transfer of assets creating the RPP Trust as well as other funds transfers during the life of the RPP Trusts designed to conceal the ownership and control of the trust from Rogan's creditors.

e. **Constructive Trust.**  Notably, contrary to defendants' assertions, the foregoing theories are effective upon any assets that fall within their purview, irrespective of whether the Rogan originally obtained the assets by fraud.[3]  This is not the case with regard to the constructive trust theory, for the crux of that theory is that Debtor obtained and retains or controls funds to which he does not have a just claim.  Dexia's proof presents a *prima facie* showing that the Rogan knew that the funds he used to establish the RPP Trust were the proceeds of fraud.  By operation of the notion of a constructive trust, the law requires one whom knowingly receives and/or controls fraudulently obtained funds to transfer the funds to the party to whom they justly belong.  Accordingly, Dexia urges the Court to impose a constructive trust upon the RPP Trust holdings.

### The Peter G. Rogan Irrevocable Trust

5.     The interest of the Rogan Children in the PGR Bahamas Trust derives from the fact that Paragraph 1(2)(e) of the PGR Bahamas Trust lists the Rogan Children, their spouses and the Children's children as trust beneficiaries.  Ex. 14 at 7-8.

---

[3] Here, we distinguish between a fraud perpetrated upon a third-party for illicit profit, e.g., fraudulently obtaining Dexia's bond guarantee by concealing the health care fraud upon Edgewater Medical Center or the United States, and a fraud against creditors by concealing a putative debtor's assets from them.  The

4

6.     The PGR Bahamas Trust may hold assets directly, but definitely holds assets through its direct or indirect ownership of various other entities, including:  PPR GmbH (100%), CFMT Ltd. (100%), CFMT of Florida LLC (100%), Epyon Holdings (100%), Hoover Creek Condo Partners LLC (85%), Posada-Palmetto LLC (33.5%), Ponce Inlet LLC (100%), and Wilmington Condo Commons LLC (96.5%).[4]

7.     The bases upon which Dexia seeks turnover of the holdings of the PGR Bahamas Trust include those articulated in Dexia's *Memorandum of Law No. 1* filed with its original Turnover Motion as well as several additional theories.  Those theories include:

a. **<u>Standing</u>.**  The Rogan Children are not vested beneficiaries and thus lack standing.

b. **<u>Invalid and Ineffective Spendthrift Provision</u>.**  The PGR Bahamas Trust is a self-settled spendthrift trust.  Under controlling law, a settlor's creditors can reach all assets of such trusts.  *Memorandum of Law No. 1* at 1-7; *Memorandum of Law No. 2* at 9-10.

c. **<u>Trust is a Sham</u>**.  Sham trusts erected to defraud creditors are disregarded and creditors are permitted to access all trust holdings. *Memorandum of Law No. 1* at 7-16.

[Although the foregoing alternative theories are each sufficient to resolve all issues pertaining to the trust as a matter of law, Dexia also is prepared to present proof to support turnover under the following alternative theories as well.]

---

latter scheme may and frequently does occur even if debtor obtained the concealed assets entirely honestly.

[4] Some of the listed entities no longer have funds, but ownership interest may flow through them.

d. **Alter Ego.** As noted, the alter ego theory permits a creditor to satisfy its

judgments by executing upon assets held by debtor's alter ego, which the courts

have frequently held may include third-party businesses, trusts and spouses or

other family relatives. *Memorandum of Law No. 1* at 18-20. When one considers

the various court-approved factors in assessing the alter ego question, the PGR

Bahamas Trust is plainly Rogan's alter ego on the strength of numerous factors

including without limitation: (i) the fact that Rogan fully funded the trust; (ii) the

control Rogan exercised over the PGR Bahamas Trust; (iii) the clear intention of

Rogan, Cuppy and the trustees to create and operate the trust to permit Rogan to

avoid his creditors while retaining covert control over trust's assets; and (iv) the

extensive steps taken by Rogan, Cuppy, Judy Rogan and others to conceal

Rogan's control over the trust from Dexia and other creditors.

e. **Nominee Theory.** Dexia relies upon the nominee approach as an alternative

theory of recovery with regard to all funds distributed from the PGR Bahamas

Trust to Judy Rogan. Closely related to the alter ego theory, the nominee theory

permits creditors to execute against assets a debtor owns and controls in fact, even

though debtor has transferred legal title of the assets to another. *Memorandum of

Law No. 1* at 22-23. Dexia's proof supporting a finding of Judy Rogan as acting

as Peter Rogan's nominee includes without limitation: (i) Judy paid no

consideration for any of the trust proceeds sent to her; (ii) the trust proceeds were

plainly placed in Judy's name in direct response to Dexia's intensive asset

discovery efforts; (iii) Peter Rogan exercised dominion and control over all of the

assets after their transfer to Judy, in fact, Judy transferred a significant portion of

them on to Peter; (iv) there is a close family relationship between Peter and Judy; (v) Peter Rogan is and has always been the source of all funds Judy has used for upkeep of the assets; (vi) Judy has acted intentionally to conceal assets from Peter's creditors; and (vii) Judy took steps to conceal the trail of the assets after she received them. *Memorandum of Law No. 1* at 23-28.

f. **Fraudulent Transfer.** Dexia also relies upon the fraudulent transfer theory to support its effort to recover funds transferred from the PGR Bahamas Trust to Judy Rogan, from accounts of the PGR Bahamas Trusts in the United States to accounts in The Bahamas, and/or from accounts in other foreign countries to accounts in The Bahamas. Specifically, Dexia's efforts here will focus upon: (i) transfer to Judy Rogan of $6.5M from the trust in or about 2005-06, *Statement of Facts*, at 76-90, 96-102; (ii) Judy Rogan's transfers of significant quantities of these funds to or for the benefit of Peter Rogan shortly after the transfers to her, including transfers to Canada shortly before and after Peter's flight there in late 2006, *id.* at 96-102; ad (iii) transfers of over $11M from trust accounts in Grand Cayman to accounts in The Bahamas in late September 2004 immediately after Dexia began to get orders from this Court (Judge Schenkier) requiring production of records identifying the amount and location of trust assets, *id.*, at 70-72. Dexia will rely for this on much the same proof referenced re: the nominee theory, but also including the following items: Rogan has fled; the transfers occurred shortly before and after Rogan incurred substantial debts; Rogan removed and concealed assets by moving more assets offshore in later 2006; the transfers were concealed; and Rogan had been sued at the time of the transfers.

g. **Constructive Trust.** In his opinion in *United States v. Rogan* – which the Seventh Circuit affirmed and on which this Court has already relied – Judge Darrah finds that the Rogan entered into the health care fraud scheme at Edgewater Medical Center ("EMC") "in the early 1990s," *United States v. Rogan*, 459 F. Supp. 2d 692, 700 (N.D. Ill. 2006), *aff'd*, 517 F.3d 449 (7th Cir. 2008). This Court cites to this particular aspect of Judge Darrah's ruling in its October 9, 2008 Memorandum Opinion and Order ("*October 9th Memorandum Opinion and Order*"), at 5-6. Judge Darrah also ruled that Rogan began his scheme to conceal his control of assets in the early 1990s as well. *Id*. at 725-26. Accordingly, the fraud scheme was in place prior to the time Rogan sold EMC in 1994, the proceeds of which Rogan used to create the PGR Bahamas Trust. Rogan thus knew that the funds he used to establish the PGR Bahamas Trust in early 1996 were the proceeds of fraud.

Rogan caused EMC to finance the purchase the issuance of Illinois Hospital Development Bonds. By concealing the fraud scheme from the purchasers of the bonds, Rogan defrauded the bondholders. In 1998, Rogan caused EMC to refinance this debt by issuing a new set of bonds, the proceeds of which retired the 1994 issuance. To obtain a more favorable rate, Rogan obtained from Dexia a guaranty on the 1998 issuance. Again, Rogan concealed the fraud scheme that had been in place at EMC since the early 1990s, thereby defrauding the new bondholders and Dexia. After a federal grand jury indicted Rogan's management companies and one of his top employees, CMS suspended Medicare payments to the hospital and it immediately defaulted on the bonds, causing

Dexia to pay over $55M to the bondholders. Thus, Rogan transferred the injury effected by this original fraud to a second set of bondholders and eventually to Dexia in precisely the same manner as a *Ponzi* scheme transfers an original injury from an initial set of investors to subsequent victims. *See Scholes v. Lehmann,* 56 F. 3d 750, 757-58 (7th Cir. 1995). By concealing his health care fraud scheme, Rogan: (i) defrauded the 1994 bond purchasers to fund the sale of EMC – which funds Rogan used to create the PGR Bahamas Trust in 1996; (ii) defrauded the 1998 bond purchasers to retire the 1994 debt; and (iii) defrauded Dexia to retire the 1998 debt when the scheme collapsed in 2001. Therefore, Dexia is the party that ultimately paid the price for the fraud first visited upon the 1994 bond purchasers. In such settings, the fraud visited upon the first generation of investors is clearly intertwined with later investors whose payments are used to satisfy the first victims. *Id.*

By operation of the notion of a constructive trust, the law requires one whom knowingly receives and/or controls fraudulently obtained funds to transfer the funds to the party to whom they justly belong. This pertains not only to the funds Rogan transferred to the PGR Bahamas Trust in and after 1996, but also to the funds Rogan transferred from that trust to Judy Rogan in or about 2005-07. Accordingly, Dexia urges the Court to impose a constructive trust upon the PGR Bahamas Trust holdings and the funds transferred from that trust to Judy Rogan.

## The Domestic and Belizean Trusts in the Names of the Rogan Children

8.    The Rogan Children are each named beneficiaries in two sets of trusts, one created under Florida law and a second created under the laws of Belize.  In general, Rogan and Cuppy administered each set of trusts as a group, causing all three trusts in each set to take precisely the same investment actions.  Exceptions to this pattern included the purchase of a home in California by the domestic trust in the name of Robert Rogan, which home continues to be owned by that trust and in which home Robert and his family continue to reside.

9.    The Rogan Children's Domestic and Belizean Trusts hold assets directly, as well as through its direct or indirect ownership of various other entities.

a.   The assets held by the Rogan Children's Domestic Trusts include:

i.   A securities account at Smith Barney for each trust;

ii.   Joint ownership interests as listed in the parentheses, meaning interest of each individual trust is one-third of the amount indicated:  Taylor Row LLC (66.66%); Gardens on Jones LLC (33.3%); Walnut Hills LLC (33.3%); Boulevard Management, Ltd. (40.5%); Braddock Management LP (40.5%, through Boulevard Management, Ltd.);[5]

b.   The assets held by the Rogan Children's Belizean Trusts include:

i.   Joint ownership interests as listed in the parentheses, meaning interest of each individual trust is one-third of the amount indicated:  Boulevard Investors Ltd. ("BIL") (100%); Bainbridge Management LP (99%, via ownership of BIL); Boulevard Management Ltd. and Braddock Management LP (49.5%, via ownership of BIL);  Boulevard Investors

---

[5] *See* footnote 1.

LLC ("BILLC") (99%, via ownership of BIL); Pax Wit Property Co. (49.5%, via ownership of BILLC); Seal Wrap Systems (33%, via ownership of BILLC); and 410 Montgomery LLC (99%, via ownership of BILLC).

10.     The law offers a variety of theories by which creditors may execute against a judgment debtor's assets held in the name of another.  The bases upon which Dexia seeks turnover of the assets of the holdings of the Rogan Children's Domestic and Belizean Trusts are:

a.  **Trusts are Shams**.  Creditors are permitted to access all trust holdings of sham trusts. *Memorandum of Law No. 1* at 7-16.  The control Rogan exercised over the several trusts Rogan created is detailed via substantial proof adduced in Dexia's previous motions. *See, e.g., Statement of Facts* at 126-39; *Memorandum of Law No. 2* at 20-37.

b.  **Alter Ego/Nominee.**  Dexia's original post-judgment filing articulates the alter ego approach Dexia advocates and cites to some of the proof upon which Dexia will rely, including without limitation:  (i) the children paid no consideration for the trusts; (ii) Peter Rogan fully funded the trusts; (iii) Rogan is the father of the trust beneficiaries; (iv) Rogan created the trusts to shield his assets from creditors; (v) the trusts' businesses shared employees, offices and lawyers with Rogan's other businesses; (vi) Rogan exercised substantial influence over the trusts' activities; (v) Rogan caused his personal businesses to invest with the trusts; (vi) Rogan caused the trusts to make a concealed payment to Rogan; and (vii) Rogan had direct involvement in and approval authority over the trusts' operations.

*October 9ᵗʰ Memorandum Opinion and Order at 6-7, 13-15*; *Memorandum of Law No. 2* at 17-37. Furthermore, Dexia will present proof that Rogan and Cuppy created and operated the trusts in such a manner as to defraud Rogan's creditors. *Id*. at 37-41.

    **c.**   **Constructive Trust.** As noted above, this Court has recognized the ruling of Judge Darrah that the Rogan's health care fraud scheme was active in the early 1990s, well-before the time Rogan funded his Children's domestic trusts in and after August 1994 and their Belizean trusts in and after June 1997. *October 9ᵗʰ Memorandum Opinion*, at 5-6; *Statement of Facts* at 124-25; Exs. 349 and 163. It is Dexia's contention that *all* of the funds used to establish the trusts were the proceeds of fraud. Dexia will present the factual and legal basis for this position in a submission to the Court later this month. Accordingly, Dexia seeks a constructive trust as to *all* of the funds Rogan transferred to the Rogan Children's Trusts in and after 1994, and also to the funds Rogan and Cuppy caused to be transferred from those trusts to the Rogan Children. *See also supra* ¶ 7(g).

    **d.**   **Fraudulent Transfer.** Dexia's proof features numerous transfers to, between, and from the Rogan Children's domestic and foreign trusts designed to conceal ownership and control of the funds from Rogan's creditors. For all of the reasons set forth in the Court's ruling on the trusts and the transfers from the trusts to the Rogan Children personally, these were fraudulent transfers.

**Fraudulent Transfers to the Rogan Children,
Some of Which are Still Contained Within the Personal Holdings of the Rogan Children**

    11.    Over the years, Rogan and Fred Cuppy have caused the Rogan Children's domestic and foreign trusts to distribute funds to the Rogan Children. Similarly, Rogan and his

12

wife each has distributed fraudulently obtained money directly to their children. We address each child in turn:

12. **Robert Rogan.** Rogan and Cuppy effectuated fraudulent transfers to Robert Rogan by transfers to Robert Rogan's accounts at DWS (IRA accounts) and possibly other financial institutions.

13. **Brian Rogan.** Rogan and Cuppy effectuated fraudulent transfers to Brian Rogan by transfers to Brian Rogan's account at Ameritrade, Wachovia, DWS (IRA accounts) and possibly other financial institutions.

14. **Sara Rogan.** Rogan and Cuppy effectuated fraudulent transfers to Sara Rogan by transfers to Sara Rogan's account at: Ameritrade, Wachovia, DWS (IRA accounts) and possibly other financial institutions.

15. The general basis upon which Dexia seeks turnover of the foregoing transfers from the Rogan Children is that which is articulated in the Court's *October 9th Memorandum Opinion and Order* at 19-20, *i.e.*, fraudulent transfer and constructive trust. Dexia will not here repeat the proof presented or referenced in its *Statement of Facts, Memorandum of Law No. 2* and in the Court's *October 9th Memorandum Opinion and Order*, which all establishes the basis for turnover under these theories.

16. As to the specific funds sought, Dexia will present at the turnover hearing detailed proof directly tracing particular transfers from the Rogan Children's Trusts and/or from Judy Rogan into the personal accounts of the Rogan Children. Indeed, one of the primary aims of the discovery Dexia is pursuing from the various financial institution recipients of this Court's TROs is evidence on this very issue.

WHEREFORE, for the foregoing reasons, Dexia Crédit Local hereby urges this Honorable Court to grant its motion for turnover as it pertains to the interests of the Rogan Children in the various assets identified in this motion.

Respectfully submitted,

Dated: December 8, 2008                    PLAINTIFF DEXIA CRÉDIT LOCAL


By: /s/ Scott Mendeloff

One of its Attorneys

HOWREY LLP
Scott Mendeloff
Gabriel Aizenberg
321 N. Clark Street, Suite 3400
Chicago, Illinois 60654
(312) 846-5650