# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DEXIA CREDIT LOCAL, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 02 C 8288 |
| PETER G. ROGAN, et al., | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Intervenors Brian, Sara, and Robert Rogan have filed a motion to dismiss this action for lack of subject matter jurisdiction. Intervenor Judith Rogan has filed a nearly identical motion to dismiss. For the reasons set forth below, the Court enters and continues both motions to dismiss and orders the parties to submit supplemental briefs.

### Facts[1]

Dexia Credit Local, a French company, sued Peter Rogan, Braddock Management, L.P., Bainbridge Management, L.P. (Bainbridge L.P.), Bainbridge Management, Inc. (Bainbridge, Inc.), and others for fraud, conspiracy, and other torts. Dexia alleged diversity as the sole basis for subject matter jurisdiction in federal court pursuant to 28 U.S.C. § 1332. It alleged that Bainbridge, L.P. was an Illinois limited

---

[1] The Court presumes general familiarity with the factual background set forth in its earlier decisions in this matter. *See Dexia Credit Local v. Rogan*, No. 02 C 8288, 2008 WL 4855416 (N.D. Ill. Nov. 10, 2008); *Dexia Credit Local v. Rogan*, No. 02 C 8288, 2008 WL 4543013 (N.D. Ill. Oct. 9, 2008).

partnership; Dexia made no allegations, however, concerning the citizenship of Bainbridge, L.P.'s partners. Similarly, Dexia made no allegations concerning the citizenship or identity of defendant Braddock Management, L.P.'s partners. Rather, Dexia alleged only that Braddock Management, L.P. was a California limited partnership.

When the case was filed, it was assigned to another judge of this Court. As best as the Court can determine, neither that judge nor any of the defendants challenged or made any inquiry about the adequacy of Dexia's citizenship allegations. In March 2003, the case was reassigned to a different judge of this Court. That judge likewise appears to have made no inquiry regarding the adequacy of the citizenship allegations.

In September 2005, Bainbridge, L.P. filed for bankruptcy under Chapter 7 of the Bankruptcy Code. As a result of the automatic stay provision of the Bankruptcy Code, Dexia was prevented from pursuing its claims against Bainbridge, L.P. in this case. The docket, however, does not reflect entry of a stay order in this case. Bainbridge, L.P. was later liquidated.

In May 2007, the judge to whom the present case was then assigned entered a default judgment in Dexia's favor against Peter Rogan, Braddock Management, L.P., and Bainbridge, Inc. in an amount in excess of $124 million. Dexia's motion for a default judgment noted that "[b]ecause Bainbridge Management LP ('Bainbridge LP') is in bankruptcy, the automatic stay currently prevents Dexia from seeking entry of default and a default judgment against that entity." Pl. Mot. for Entry of Default & for Default Judg. Against Defs. at 2 n.1 (docket no. 318).

The orders entering judgment in May 2007 said that "final judgment" was being

entered. The judge did not, however, make any findings pursuant to Federal Rule of Civil Procedure 54(b), even though he was entering judgment as to less than all defendants. See docket nos. 330, 331. The judge never entered a judgment or other disposition with respect to Bainbridge, L.P.

In March 2008, the case was reassigned to yet another judge, due to the resignation of the previously-assigned judge. That same month, Dexia moved to reassign the case to this Court, before whom a related, later-filed, still-open case was pending (*United States v. Peter Rogan, et al.*, Case No. 07 C 6398). This Court and the other judge agreed to the reassignment of the present case to this Court, pursuant to Internal Operating Procedure 13(d).

Following the reassignment of the present case, this Court did not make any inquiry into subject matter jurisdiction, assuming that because the case was in a post-judgment phase, jurisdictional issues had been dealt with. That was a serious mistake, as will become clear.

Dexia subsequently pursued supplementary proceedings before this Court to satisfy its judgment. Those proceedings included, among other things, obtaining temporary restraining orders freezing assets that Dexia contended Peter Rogan had transferred to avoid collection or that were held by persons claimed to be his alter egos. Brian, Sara, and Robert Rogan (Peter Rogan's adult children) and Judith Rogan (his wife) then intervened to oppose the freeze orders. The Court ultimately entered preliminary injunctions that had the effect of extending the freeze orders in large part.

Dexia has moved for orders to turn over certain of the frozen assets. The Court has set for hearing at least one of those motions, concerning assets in which the Rogan

3

children claim an interest. Discovery is currently proceeding.

During the supplementary collection proceedings, which have included at least a dozen significant court appearances, numerous filings by the Rogans, and evidentiary hearings, none of the Rogans (or anyone else) contested the existence of diversity jurisdiction. On January 15, 2009, however, the Rogan children and Judith Rogan filed separate motions to dismiss. They argued in those motions that diversity jurisdiction is lacking because there are foreign (non-United States) parties on both sides of the case. Though this contention comes rather late in the day – to say the least – defects in subject matter jurisdiction are typically non-waivable. *See, e.g., State of Wisconsin v. Ho-Chunk Nation*, 463 F.3d 655, 661 (7th Cir. 2006). The Court set the motions for expedited briefing.

## Discussion

Diversity jurisdiction does not exist in a suit where the party on one side is foreign (i.e., not a United States citizen), and the other side of the case includes both domestic and foreign parties. *See, e.g., Karazanos v. Madison Two Assoc.*, 147 F.3d 624, 627 (7th Cir. 1998). That is the case here.

Dexia, the only plaintiff, is a citizen of France. Although Peter Rogan and certain other defendants are United States citizens, it is now apparent that one of the defendants, Bainbridge, L.P., had, at the relevant time, both United States and foreign citizenship. For diversity purposes, a partnership is deemed to hold the citizenships of each of its partners. *See, e.g.*, *Lear Corp. v. Johnson Elec. Holdings, Ltd.*, 353 F.3d 580, 582 (7th Cir. 2003). Bainbridge, L.P.'s partners were Bainbridge, Inc., an Illinois

4

corporation, and Boulevard Investors, Ltd., a Belizean corporation. As a result, Bainbridge, L.P. was a citizen of both Illinois and Belize. In short, when the case was filed, the only party on one side of the case was a foreign citizen, and at least one foreign citizen was a party on the other side of the case.[2]

Ordinarily, this conclusion would defeat this Court's subject matter jurisdiction. Dexia contends, however, that there are ways to save federal jurisdiction in this case.

First, Dexia contends that Bainbridge, L.P. should be considered a citizen of Indiana, not Illinois and Belize. Dexia's theory is that Bainbridge, L.P. was the alter ego of Peter Rogan and that, as a result, Rogan's Indiana citizenship is what counts for purposes of diversity jurisdiction. As the Rogans correctly note, however, subject matter jurisdiction is typically determined at the time a lawsuit is filed. *E.g.*, *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 570-71 (2004). Dexia alleged that Bainbridge, L.P. was Peter Rogan's alter ego in its complaint, but that allegation depended on later proof and findings by a court. In any event, no such finding apparently was ever made as to Bainbridge, L.P.

Second, Dexia contends that subject matter jurisdiction cannot be challenged in a supplementary proceeding to collect on a final judgment. The Seventh Circuit has stated:

> [A] lack of subject-matter jurisdiction is not by itself a basis for deeming a judgment void, that is, open to collateral attack. For ordinarily that is a ground for reversal that can be presented to the appellate court on direct appeal. To allow a ground that can be adequately presented in a direct appeal to be made the basis of a collateral attack would open the door to

---

[2] The citizenship of the other partnership defendant, Braddock Management, L.P., is still unknown to the Court. Dexia must clear this up immediately.

5

>   untimely appeals . . . .

*Bell v. Eastman Kodak Co.*, 214 F.3d 798, 801 (7th Cir. 2000). The problem with this argument is that the rule applies where the party challenging jurisdiction had the opportunity to do so previously. *E.g.*, *Orlando Residence, Ltd. v. GP Credit Co.*, --- F.3d ---, 2009 WL 140454, at *4 (7th Cir. Jan. 22, 2009) (citing *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 n.9 (1982)); *United States v. Cook County*, 167 F.3d 381, 388 (7th Cir. 1999). Dexia contends this is irrelevant because it is seeking to collect from third parties who possess Peter Rogan's assets, as permitted by Illinois law. Though true, that statement does not change the fact that the third parties never had the opportunity to raise the issue of subject matter jurisdiction. Dexia also contends that Judith Rogan should be deemed to have had the opportunity to challenge jurisdiction because she was and is in privity with her husband, Peter Rogan. *Orlando Residence, Ltd.*, 2009 WL 140454, at *4. Judith Rogan has not responded to this argument. It appears, based on the Seventh Circuit's recent ruling in *Orlando Residence*, that Judith Rogan is in privity with her husband Peter Rogan for these purposes. That, however, would not eliminate the Rogan children's ability to challenge subject matter jurisdiction.

Third, Dexia argues that Bainbridge, L.P. can be dismissed pursuant to Federal Rule of Civil Procedure 21 to preserve the Court's jurisdiction. Courts may use Rule 21 to dismiss a dispensable non-diverse party to save diversity jurisdiction. *E.g.*, *Newman-Green, Inc. v. Alfonzo Larrain*, 490 U.S. 826, 832-33 (1989); *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1271 (7th Cir. 1996); *Wire v. Hussman*, No.

6

03 C 5389, 2004 WL 723845, at *3-4 (N.D. Ill. Mar. 31, 2004); 7 Charles A. Wright, Arthur R. Miller, & Mary K. Kane, *Federal Practice & Procedure* § 1685 (3d ed. 2001) ("Courts frequently employ Rule 21 to preserve diversity jurisdiction over a case by dropping a non-diverse party if the party's presence in the action is not required under Rule 19.").[3]  The Supreme Court has made it clear that this may be done even after the court has entered judgment.  *Newman-Green, Inc.*, 490 U.S. at 832-33.  Thus the Court may dismiss Bainbridge, L.P. to preserve diversity jurisdiction, so long as Bainbridge, L.P. is not an indispensable party under Rule 19 (and so long as diversity would exist following the dismissal – a point still unclear due to the lack of information regarding the citizenship of Braddock Management, L.P.  *See supra* n.2).

The first step to determine whether a party is indispensable under Rule 19 is to analyze whether the criteria of Rule 19(a) are met.  *N. Shore Gas Co. v. Salomon Inc.*, 152 F.3d 642, 647 (7th Cir. 1998).  The Court must determine:

> (1) if in the [party's] absence, complete relief cannot be accorded among those who are already parties; or (2) if the [party] claims an interest relating to the subject of the action and is so situated that disposition of the action in its absence may (i) impair or impede its ability to protect that interest, or (ii) leave any of the persons already joined subject to a substantial risk of incurring multiple or otherwise inconsistent obligations.

*Id.* at 647-48 (citation omitted) (concluding that putative defendant was not a necessary party where it had ceased operations, had no funds, and its interests mirrored those of the existing defendant).

Bainbridge, L.P. is not a necessary party and was not a necessary party at the

---

[3] This is an exception to the general rule, discussed above, that subject matter jurisdiction is determined at the time a complaint is filed.  *Wire*, 2004 WL 723845, at *3.

7

time the judgment was entered.  First, complete relief has been accorded among the existing parties; Bainbridge, L.P. has not been a party to the case, for all intents and purposes, since it filed for bankruptcy in September 2005, and it has long ago been liquidated.  Second, Bainbridge, L.P. has no interests that could be impaired by this litigation; no one suggests otherwise.  Third, none of the existing parties are at risk of incurring multiple judgments or inconsistent obligations.  There is no contention that Bainbridge, L.P.'s dismissal would have such an effect; as previously noted, the judgment was entered at a time when proceedings against Bainbridge, L.P. were stayed.

Even were Bainbridge, L.P. a "necessary" party under Rule 19(a), it still would not be an "indispensable" party under Rule 19(b).  This involves determining "whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed."  Fed. R. Civ. P. 19(b).  "A party is 'indispensable' only if the court finds . . . that the action cannot proceed in its absence."  *N. Shore Gas Co.*, 152 F.3d at 648.  This action proceeded to judgment and now to post-judgment collection proceedings, all without Bainbridge, L.P.'s involvement.  The judge who entered the judgment found, in that judgment, that Bainbridge, Inc. was the alter ego of Peter Rogan, *see* docket nos. 330 & 331, and a bankruptcy court judge found that Bainbridge, Inc. was the general partner of Bainbridge, L.P. and as such was liable for the partnership's debts.  *See Edgewater Med. Ctr. v. Rogan (In re Edgewater Med. Ctr.)*, 332 B.R. 166, 178-79 (Bankr. N.D. Ill. 2005).  Under these circumstances, equity and good conscience do not require that Bainbridge, L.P. remain a party to this litigation.

In response to Dexia's contentions regarding the application of Rule 21, the Rogans argue that Bainbridge, L.P. cannot be dismissed at this late date because final judgment has been entered and nothing is left to be litigated other than supplementary collection proceedings. They note that none of the cases cited by Dexia in which courts have used Rule 21 to save diversity jurisdiction have involved using that Rule during the course of post-judgment supplementary proceedings to collect on the judgment.

Consideration of the Rogans' argument led the Court to discover an entirely separate problem – whether a final judgment was ever entered.[4] No one has raised this issue; all appear to have assumed that the prior judge's May 2007 orders entered a final judgment. And indeed, that is what those orders stated. The orders, however, did not dispose of or even address the claims against Bainbridge, L.P. Nor did the judge make any findings, pursuant to Federal Rule of Civil Procedure 54(b), that there was "no just reason to delay" entry of final judgment against Peter Rogan and the remaining defendants other than Bainbridge, L.P. Fed. R. Civ. P. 54(b).

The Court has no doubt that the judge and Dexia intended the May 2007 orders to enter a final judgment in this case. That intent, however, is irrelevant. The Seventh Circuit has held that "[e]ven if the district court intended to enter a partial final judgment pursuant to Rule 54(b), that intention is irrelevant absent the express determination." *Willhelm v. Eastern Airlines, Inc.*, 927 F.2d 971, 973 (7th Cir. 1991). In *Willhelm*, the plaintiff sued two defendants. *Id.* at 972. One of the defendants filed for bankruptcy,

---

[4] Dexia's argument that the Rogans cannot challenge diversity jurisdiction because a final judgment has been entered presents the same problem; if there was no final judgment, no such bar to a jurisdictional challenge could exist.

9

and the district court dismissed it without prejudice. *Id.* Judgment was subsequently entered on the merits in favor of the non-bankrupt defendant. *Id.* The Seventh Circuit ruled that no final judgment had been entered in favor of the non-bankrupt defendant because there had not been a final judgment with respect to the claim against the other defendant, and the district court had not made any finding pursuant to Rule 54(b). *Id.* at 972-73. It appears that the May 2007 "judgment" in the present case suffers from the same deficiency. Specifically, that order does not appear to have been a final judgment, because it did not dispose of all claims against all parties yet did not contain any findings under Rule 54(b).

For these reasons, the Rogans' argument that Rule 21 cannot be used to preserve jurisdiction following entry of a final judgment gets them nowhere; it does not appear there was a final judgment. This, however, gives rise to an equally significant problem, one that none of the parties appears to have anticipated. The Court entered asset-freeze orders, preliminary injunctions, and other orders, all as part of supplementary proceedings to enforce the putative judgment. Ordinarily, however, a party may not execute and collect on a judgment until the judgment is final. *See, e.g.*, *Gerardi v. Pelullo*, 16 F.3d 1363, 1371 n.13 (3d Cir. 1994); *In re Uranium Antitrust Litig.*, 473 F. Supp. 382, 390 (N.D. Ill. 1979); 10 Charles A. Wright, Arthur R. Miller, & Mary K. Kane, *Federal Practice & Procedure* § 2661 (3d ed. 1998). If the judgment is not final, the validity of the Court's orders in the supplementary proceedings is called into question.

Because the Court discovered the problem concerning the finality of the

judgment on its own initiative, the parties have not had an opportunity to address the issue and its implications. Further briefing is required. The Court will continue to insist that this be done on an expedited basis, due to the presence of a serious question regarding the validity of the Court's interlocutory orders in the supplementary proceedings – one of which is currently on appeal.

For these reasons, the Court directs Dexia to submit a supplemental brief, by no later than Monday, February 2, 2009 at 5:00 p.m., addressing the issues identified below (as well as any other issues that it believes appropriate under the circumstances). The Court also directs Dexia to make, by that same date, a supplemental filing completely identifying the citizenship of Braddock Management, L.P. The Court directs the Rogans and any other interested party to submit a supplemental response to Dexia's brief, likewise addressing the issues identified below (and any others they believe appropriate), by no later than Thursday, February 5, 2009 at 5:00 p.m. These are firm dates; the Court will not extend them.

The issues the Court directs the parties to address are:

- the finality of the purported judgment;

- the implications if the purported judgment is not final; and

- what actions the Court should take, if any, if it determines that a final judgment was never entered.

**Conclusion**

The Court sets the matter for a status hearing, as well as a possible ruling on the jurisdictional and other issues raised by this Memorandum Opinion, on Tuesday, February 10, 2009 at 9:30 a.m. The pending motions to dismiss for lack of subject matter jurisdiction (docket nos. 784 & 786) and all other pending motions are entered and continued to that same date.

Date: January 29, 2009
_____
MATTHEW F. KENNELLY
United States District Judge