1       IN THE UNITED STATES DISTRICT COURT
        NORTHERN DISTRICT OF ILLINOIS
2               EASTERN DIVISION

3

4   DEXIA CREDIT LOCAL, f/k/a          )
    Dexia Public Finance Bank          )
5   and Credit Local de France,        )   Docket No. 02 C 8288
                                        )
6               Plaintiff,              )
                                        )
7        vs.                            )   Chicago, Illinois
                                        )   November 6, 2008
8   PETER G. ROGAN, et al.,            )   9:45 a.m.
                                        )
9               Defendants.             )

10                  TRANSCRIPT OF PROCEEDINGS
11   BEFORE THE HONORABLE MATTHEW F. KENNELLY

12
    APPEARANCES:
13

14  For the Plaintiff:      HOWREY LLP
                            BY:   MR. GABRIEL AIZENBERG
15                          321 North Clark Street, Suite 3400
                            Chicago, Illinois   60654
16

17
    For Judith Rogan and
18  Brian Rogan:           O'ROURKE & MOODY
                            BY:   MR. MICHAEL J. O'ROURKE
19                                MR. MYLES P. O'ROURKE
                            55 West Wacker Drive, Suite 1400
20                          Chicago, Illinois   60601

21

22  For Janet Pedlow:      SENDER & ASSOCIATES, CHTD.
                            BY:   MR. RANDALL SCOTT SENDER
23                          15601 South Cicero Avenue
                            Suite 101
24                          Oak Forest, Illinois   60452

25

```
 1    For Robert Rogan and
      Sara Rogan:                TOUHY, TOUHY, BUEHLER & WILLIAMS, LLP
 2                               BY:  MR. JEFFREY J. HALLDIN
                                 55 West Wacker Drive, Suite 1400
 3                               Chicago, Illinois   60601

 4
      For the United
 5    States of America:         UNITED STATES ATTORNEY'S OFFICE
                                 BY:  MS. LINDA A. WAWZENSKI
 6                               219 South Dearborn Street
                                 Chicago, Illinois   60604
 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24              LAURA M. BRENNAN - Official Court Reporter
                 219 South Dearborn Street - Room 2102
25                     Chicago, Illinois   60604
                           (312) 427-4393
```

1    (The following proceedings were had in open court:)

2        THE CLERK:  02 C 8288, Dexia v. Rogan.

3        THE COURT:   Again, let's get everybody in a spot, and

4    we will just go from this direction to that direction.

5        MR. MYLES O'ROURKE:   Good morning, your Honor; Myles

6    O'Rourke with Brian Rogan.

7        MR. HALLDIN:   Jeff Halldin on behalf of Sara and

8    Robert Rogan.

9        MR. SENDER:   Scott Sender, appearance to be filed on

10   behalf of intervenor Marge Koltunski, K-o-l-t-u-n-s-k-i.

11       THE COURT:   Say your last name again.

12       MR. SENDER:   S-e-n-d-e-r.

13       THE COURT:   You've been here before but for somebody

14   else.

15       MR. SENDER:   Right, and also on behalf of Colleen

16   Rogan.

17       MR. MICHAEL O'ROURKE:   Your Honor, Mike O'Rourke on

18   behalf of Brian Rogan.

19       MR. AIZENBERG:   Gabriel Aizenberg on behalf of Dexia.

20       MS. WAWZENSKI:   Linda Wawzenski for the United

21   States.

22       THE COURT:   Let me just go over with you what I think

23   I have to deal with today, and you will tell me if I'm missing

24   anything.

25       First of all, this is the return date on an earlier

1    rule to show cause that I issued to Peter Rogan regarding his
2    nonresponse to a citation to discover assets.

3         I've got Brian Rogan's motion to clarify and
4    supplement the order of October the 16th concerning American
5    Express.

6         I've got Margie Koltunski, K-o-l-t-u-n-s-k-i, her
7    motion to intervene and amend the September 25th order
8    directed to Judith Rogan.

9         And I've got the Rogan children, Brian, Sara and
10   Robert Rogan's motion for a protective order and for
11   clarification of the order of October the 20th.

12        Is that everything I'm supposed to be dealing with
13   today?

14        MR. AIZENBERG:   One more, which was a return date
15   also on the criminal show cause order that your Honor issued.

16        THE COURT:   As to?

17        MR. AIZENBERG:   As to Mr. Rogan.   There were two show
18   cause orders that you issued.

19        THE COURT:   All right, fine.

20        Okay, I'm going to put that at the end of the list.

21        So on Brian Rogan's motion to clarify and supplement
22   the October 16th order, what is the plaintiff's position on
23   that?

24        MR. AIZENBERG:   Your Honor, we believe that an order
25   has already been entered on this issue.

1    THE COURT:  But it sounds like it may not have been
2    good enough for American Express.

3    MR. MICHAEL O'ROURKE:  Your Honor, I think that may
4    be the problem.

5    I don't know if it's a problem with their receiver or
6    sender, but they have not unfrozen the account.  So I thought
7    that would be --

8    THE COURT:  Do you have any problem with me entering
9    some sort of more specific order that directs American Express
10   to do what is necessary to unfreeze the credit card account
11   that Brian Rogan has?

12   MR. AIZENBERG:  No.

13   THE COURT:  Okay, so this is what I'd like you to do.
14   You are going to have a better idea, Mr. O'Rourke, of what's
15   necessary.

16   You draft an order, show it to Mr. Aizenberg, get it
17   over to me, and I will sign it.

18   MR. MICHAEL O'ROURKE:  I did yesterday, your Honor.

19   THE COURT:  Okay.  So let's table that then because
20   he's going to need to look at it.

21   MR. MICHAEL O'ROURKE:  That's fine.

22   THE COURT:  So you will get it to me at some point.

23   So that motion is granted.  That is Brian Rogan's
24   motion to clarify and supplement --

25   MR. MICHAEL O'ROURKE:  Thank you, your Honor.

1       THE COURT:  -- just subject to giving me an order.

2       Margie Koltunski's motion to intervene and amend the

3   preliminary injunction order, Mr. Aizenberg, what is your

4   position on that?

5       MR. AIZENBERG:  No objection to the intervention.

6   With respect to amending, what we would like to do, we may

7   have some of the -- we may have account statements for this

8   particular account.  We would like to just verify what she is

9   saying about the nature of the account.

10       She says that Mrs. Rogan --

11       THE COURT:  Is a cosigner.

12       MR. AIZENBERG:  -- is just a cosigner, and I think

13   what we would like is maybe just to come back in a few days

14   subject to us being able to verify.  If what she says is true,

15   I don't think we will have an objection to amending it.  But

16   we want to be able to verify.

17       THE COURT:  Mr. Sender, do you have any problem with

18   that?

19       MR. HALLDIN:  We will submit any records that they

20   request.

21       THE COURT:  Okay.  So if I enter and continue that a

22   week, is that enough time?

23       MR. AIZENBERG:  I think that will be adequate.

24       THE COURT:  The Koltunski motion to intervene is

25   granted.  The motion to amend is entered and continued to the

1    13th of November at 9:30.

2         Then I've got the Rogan children's emergency motion

3    for a protective order and/or for clarification of the order

4    of October the 20th.

5         Doesn't this interrelate with the other stuff we have

6    got going on?

7              MR. HALLDIN:  Yes, it does, your Honor.

8              THE COURT:  So has this been superseded by

9    intervening events or what exactly?

10             MR. JEFF HALLDIN:  It's interrelated, as you say.  We

11   filed the motion at about 3:45 on Tuesday.  They filed another

12   motion at 8:30 that night.

13             THE COURT:  Is that the one I dealt with yesterday?

14             MR. HALLDIN:  Yes.

15             MR. AIZENBERG:  Yes.

16             THE COURT:  So do I still need to deal with this

17   motion that you filed?

18             MR. HALLDIN:  Well, we would like clarification.  If

19   the Rogan children are, in fact, ordered to do something under

20   the Court's October 20th order, we would just like to know

21   what affirmative acts --

22             THE COURT:  I thought that's what I did yesterday.

23             MR. AIZENBERG:  That is what I understood as well,

24   your Honor.

25             THE COURT:  Did you guys get figured out what it was,

1  you know, the letter that was going to go to the receiver or

2  the liquidator, whatever they call them?

3  MR. MICHAEL O'ROURKE: We have, your Honor,

4  circulated letters. We have gotten consents from two of the

5  respondents, Brian and Caitlin. We sent them to

6  Mr. Aizenberg, and we also sent them to the liquidator as

7  well, your Honor.

8  THE COURT: That seems to be fairly well in hand

9  then.

10  MR. MICHAEL O'ROURKE: Yes.

11  MR. AIZENBERG: What we are waiting for is from two

12  of the spouses, from Robert Rogan --

13  THE COURT: Does he need to sign off or something?

14  MR. AIZENBERG: Yes, but we have not gotten the

15  signed letters.

16  Lastly, I don't know how to characterize what's going

17  on with Mrs. Rogan, but I got -- I just saw it this morning,

18  but I got an e-mail last night telling me that the bankruptcy

19  lawyer who's handling Ms. Rogan's bankruptcy says that the

20  O'Rourke firm can't do anything related to Mrs. Rogan. The

21  bankruptcy lawyer doesn't want to handle Mrs. Rogan.

22  I think your Honor can just order Mrs. Rogan to sign

23  this consent. We don't need lawyers involved.

24  THE COURT: I thought I did.

25  MR. AIZENBERG: I thought you did, too, but we are

1   still sort of getting the run-around on that, and I don't know
2   if it's intentional on that.
3          THE COURT:  Let me hear from Mr. O'Rourke.
4          MR. MICHAEL O'ROURKE:  Let me say, your Honor, I
5   wish -- but I cannot speak for Mrs. Rogan.  I have an
6   application pending with Judge Klingenberger.  There's been
7   objections to my representation of Ms. Rogan.
8          So Mr. Goubeia is handling --
9          THE COURT:  Mr. who?
10         MR. MICHAEL O'ROURKE:  Mr. Goubeia.  He's our
11  bankruptcy counsel.
12         THE COURT:  Spell that.
13         MR. MICHAEL O'ROURKE:  G-o-u-b-e-i-a.
14         THE COURT:  Is he a lawyer in northwest Indiana?
15         MR. MICHAEL O'ROURKE:  Yes.  He's bankruptcy counsel,
16  your Honor.
17         THE COURT:  Okay.
18         MR. MICHAEL O'ROURKE:  He's advised me that this
19  matter has to go -- he believes it exceeds Judge
20  Klingenberger's order.
21         THE COURT:  Then this is what's going to happen.  You
22  are going to walk out the door, you are going to call
23  Mr. Goubeia and tell him I need to see him in an hour, and if
24  not, then he is going to be the subject of a rule to show
25  cause that I'm going to issue on my own motion.  I'm not going

1  to have some lawyer countermanding my orders and saying that

2  they have to go in front of some other judge.  That's not his

3  remedy.  The remedy is to come back in front of me and say,

4  Judge, you can't do this.

5          I'm not going to have that happening.  It's not going

6  to happen.  So you get on the phone, you call Mr. Goubeia, you

7  do what you need to do, and tell him if he's not standing

8  right where you're standing at 11:00 o'clock in the morning,

9  he's going to have a United States marshal coming out and

10 getting him --

11         MR. MICHAEL O'ROURKE:  I will call him, Judge.

12         THE COURT:  -- and putting him in leg irons and

13 bringing him here.

14         MR. MICHAEL O'ROURKE:  I will call him.

15         THE COURT:  We are going to pause.  I will see you

16 guys at 11:00.  We will deal with everything else then.

17 Good-bye.

18     (Brief recess.)

19         THE COURT:  Recalling 02 C 8288, Dexia v. Rogan.

20         MR. MICHAEL O'ROURKE:  Good morning again, your

21 Honor.  We have some good news.

22         THE COURT:  Okay, let me just get your names on the

23 record.

24         MR. MICHAEL O'ROURKE:  Mike O'Rourke on behalf of

25 Brian Rogan.

1    MR. HALLDIN:   Jeff Halldin on behalf of Sara and

2    Robert Rogan.

3    MR. MYLES O'ROURKE:   Myles O'Rourke on behalf of

4    Brian Rogan.

5    MR. AIZENBERG:   Gabriel Aizenberg on behalf of Dexia.

6    MS. WAWZENSKI:   Linda Wawzenski for the United

7    States.

8    THE COURT:   Your good news is?

9    MR. MYLES O'ROURKE:   Your Honor, if I may?

10    I spoke with and personally received a phone call at

11    10:20 this morning with Mr. Anthony Kiki- --

12    MR. AIZENBERG:   Kikivarakis.

13    MR. MYLES O'ROURKE:   -- Kikivarakis, and I can spell

14    his name, K-i-k-i-v-a-r-a-k-i-s.

15    THE COURT:   I would have just said by the usual

16    spelling, but whatever.

17    MR. MICHAEL O'ROURKE:   As normally spelled.

18    MR. MYLES O'ROURKE:   He is the official liquidator in

19    the Bahamas.   He's supervised this proceeding that is going on

20    in the Bahamas.

21    He's informed me that this morning there was a ruling

22    before the Bahamas Supreme Court that has authorized the

23    transfer of the Caledonian proceeds to Eugene Crane, your

24    Honor --

25    THE COURT:   Who is the receiver I appointed.

1          MR. MICHAEL O'ROURKE:  Correct.

2          MR. MYLES O'ROURKE:  -- this Court's appointed

3    receiver.

4          The Court has also ruled, the Bahamas Supreme Court,

5    that is, has ruled that 2 percent of the assets should be put

6    aside to pay Mr. Kikivarakis' loss.

7          THE COURT:  Do we know what it's 2 percent of, 2

8    percent of how much?

9          MR. AIZENBERG:  The proceedings --

10         MS. WAWZENSKI:  18 million, we think.

11         MR. AIZENBERG:  This is part of a --

12         THE COURT:  Let me let Mr. O'Rourke finish.

13         Go ahead.

14         MR. MYLES O'ROURKE:  The attorneys for Peter Rogan

15   have objected to this transfer -- I mean, to Dexia's motion

16   and to the wishes of these beneficiaries.  There may be an

17   appeal.

18         However, at the present time Anthony Kikivarakis has

19   informed me that there is no present emergency.  He is in

20   receipt of consent forms that are signed from Sara Caitlin

21   Rogan and Brian Rogan.  I informed him also that I am

22   authorized to represent the beneficiaries and relaying the

23   order and the wishes --

24         THE COURT:  When you say "I," you mean he says he is

25   authorized to represent the beneficiaries.

1     MR. MYLES O'ROURKE:  No, no, no.  I am authorized for
2  this limited purpose to authorize and approve alone the orders
3  of this Court and to indicate the wishes of the beneficiaries.

4     THE COURT:  When you say "to represent," you mean vis
5  a vis him.

6     MR. MYLES O'ROURKE:  Yes.

7     THE COURT:  Okay.

8     MR. MYLES O'ROURKE:  And Peter Rogan is not.

9     Peter Rogan's counsel is not authorized to represent
10  to anyone the wishes or the intentions of Judith Rogan, and
11  this might get me in trouble with the Northern District of
12  Indiana bankruptcy court, but that being aside, of Judith K.
13  Rogan, Brian Rogan, of Robert Rogan, and Sara Caitlin Rogan.
14  I told him that none of the beneficiaries object to the
15  transfer to this receiver.

16     THE COURT:  And from what you have told me, he --
17  that's good enough for Mr. Kikivarakis.

18     MR. MYLES O'ROURKE:  Mr. Kikivarakis said that the
19  motion has gone through.  A transfer order has been entered.

20     THE COURT:  It's been entered.  Mr. Rogan's lawyers
21  might appeal, but the judge in the case that everybody was
22  appearing in front of this morning entered the order that
23  authorized the transfer of the funds to the receiver except
24  for the part that the judge ordered set aside for the
25  liquidator's expenses and costs and fees.

1          MR. MYLES O'ROURKE:  And I disabused him of the

2  notion that Michael Scott represents any of these

3  beneficiaries or Judith K. Rogan in anything, which they --

4  which is what our understanding is and what it remains.

5          THE COURT:  Mr. Aizenberg.

6          MR. AIZENBERG:  Your Honor, actually the government

7  received some similar information.

8          MS. WAWZENSKI:  Our lawyer in the Bahamas, Mr. Brian

9  Simmons, I received an e-mail from him also that pretty much

10  corroborates what Mr. O'Rourke has just said.

11          The only thing that I don't have and that we have

12  asked for is a copy of the actual order from Justice Lyons in

13  the Bahamas.  But what we were told was that there had

14  previously been a stay order on the transfer, and that stay

15  order has been lifted by the Court.  And what Mr. Rogan's

16  attorney had submitted --

17          THE COURT:  You mean staying the transfer to the

18  receiver that I appointed.

19          MS. WAWZENSKI:  Correct.

20          And what Mr. Rogan's lawyer in the Bahamas had filed

21  was a motion to extend the time for him to get instruction

22  from his client on how to proceed.  That was the motion that

23  was up this morning.  That is the motion that Justice Lyons

24  denied and lifted the order that was in place staying the

25  transfer.

1    So I don't know if all we are going to have is the

2  order lifting the stay or if there's going to be another

3  order.  And as I say, we have asked for a copy of it, and I'm

4  sure Mr. O'Rourke has done the same thing as well.

5    THE COURT:  How typically do they send stuff to you?

6  Do they fax it or what do they do?

7    MS. WAWZENSKI:  PDF.

8    MR. AIZENBERG:  Usually it's an e-mail that's PDF.

9    THE COURT:  But it's reasonable to expect based on

10  your experience that you're going to see an order within the

11  next couple of days.

12    MR. MICHAEL O'ROURKE:  Correct, your Honor.  That's

13  our understanding.

14    MS. WAWZENSKI:  Right.

15    THE COURT:  So let's kind of bring this back to where

16  we were earlier.

17    Does this resolve, on the one hand, the motion I

18  dealt with yesterday, the motion for rule to show cause as to

19  Mrs. Rogan and the motion for an order as to the Rogan

20  children and, on the other hand, the motion that I dealt with,

21  that I was starting to deal with this morning that I am

22  groping for here, the motion by the Rogan children for a

23  protective order and/or for clarification?

24    At least for the time being, does it resolve that?

25  Can I enter and continue by a couple of days to see what

1    happens, Mr. Aizenberg?

2    MR. AIZENBERG:    Yes.    What I was going to add is I

3    still believe, and my understanding in talking with counsel

4    before we were before your Honor just a little while ago, is

5    -- they don't disagree with this -- we still think the

6    consents are essential because, again, there is a possibility

7    of an appeal.    I don't think it moots that, but, yes.

8    THE COURT:    But the issue on the consents was a

9    question of you didn't have enough time to get them; it's just

10   a question of getting them.

11   MR. MICHAEL O'ROURKE:    Exactly, Judge.

12   THE COURT:    Or is there this additional issue with

13   regard to Mrs. Rogan?

14   MS. WAWZENSKI:    I was going to raise that.

15   MR. MICHAEL O'ROURKE:    I talked with counsel.    He

16   wants me to reassure you, Judge, that he fully wants to

17   cooperate.

18   What he is doing today or tomorrow -- he is at a

19   seminar on mediation out of town.    So we are going to get a

20   motion filed in front of Judge Klingenberger getting authority

21   for you to represent Mrs. Rogan.

22   THE COURT:    For you.

23   MR. MICHAEL O'ROURKE:    For me.

24   THE COURT:    I don't want to represent anybody.

25   MR. MICHAEL O'ROURKE:    We're talking for me to

1    represent Mrs. Rogan and to authorize the consent.  And we
2    have given the consent to counsel.  They have reviewed it.
3    They feel that it's comfortable.  They just want to make sure
4    that they have -- that we have someone who's got authority to
5    act here, and they are going to get that motion on file with
6    Judge Klingenberger ASAP.

7           THE COURT:  Do you have a sense as to how quickly it
8    is going to be gotten?

9           MR. MICHAEL O'ROURKE:  Either today or tomorrow,
10   Judge.

11          Katherine -- co-counsel is working on it, as we
12   speak.

13          MR. AIZENBERG:  Your Honor, I don't see why you can't
14   order Mrs. Rogan to sign this document.  I'm not sure why we
15   are getting held up with motions to approve counsel, but if
16   it's quick --

17          THE COURT:  I kind of thought I already did.

18          MR. AIZENBERG:  I thought you did, too.  So I'm not
19   sure we are sort of getting caught up in sort of some
20   procedural matter that is slowing things down.  And our
21   concern is, you know, the longer --

22          Let's say there is an order entered today or tomorrow
23   by Justice Lyons in the Bahamas transferring the funds.  Our
24   view is Mr. Kikivarakis needs to get those funds transferred
25   as soon as possible --

1          THE COURT:  Here's the way I propose --

2          MR. AIZENBERG:  -- before there's an appeal.

3          THE COURT:  Here's the way I propose to deal with

4 this.  The motion that I dealt with that I heard yesterday but

5 I didn't enter an order on it was -- the first part of it was

6 Dexia's motion for rule to show cause why Judith Rogan should

7 not be held in contempt, and it was a request for civil

8 contempt.

9          My inclination would be to issue the rule to show

10 cause, and it's always been the law, and it would be my view,

11 that if before the return date on the rule to show cause that

12 the thing has been done, then that purges any possible

13 contempt and we're done.  And then I set a return date on it

14 that is maybe, you know, a week or so from now to give people

15 a chance to do that.

16          MR. MICHAEL O'ROURKE:  And I think, Judge, a week, 10

17 days, something like that, hopefully we can get in front of

18 Judge Klingenberger quickly, and hopefully we can get these

19 objections resolved so that I can have --

20          THE COURT:  So this is what I'm going to do.

21          MR. AIZENBERG:  Could it be a shorter time period?

22          THE COURT:  No, because you're coming back on the

23 13th anyway.

24          MR. AIZENBERG:  Okay.

25          THE COURT:  So the emergency motion for rule to show

1  cause as to Judith Rogan, which is document number 687, is

2  granted.  She is ordered to show cause on or before the 13th

3  of November why she shouldn't be held in civil contempt.  And

4  I'm making the return date November the 13th at 9:30.  You are

5  going to be here anyway.  I just --

6  You know, silly me, I'm trying to not have you here

7  every day.

8  MR. HALLDIN:  Your Honor, Jeff Halldin on behalf of

9  Sara and Rob.

10  As to the motion for --

11  THE COURT:  I'm going to enter and continue that to

12  the same date because I don't see -- I don't see that there is

13  any outside impediment, unlike in the Judith Rogan sense where

14  we have got this bankruptcy court.

15  I do think it's important, as I suggested earlier,

16  for whatever additional consents have to be done, to get those

17  done promptly, as soon as is humanly possible, and get them in

18  the Bahamas person or people's hands.

19  So as long as I'm satisfied that that has gotten

20  done, then I'm going to, you know, vacate -- I'm going to end

21  up, I guess, denying the motion as to the Rogan children

22  because it's moot.

23  But in the meantime, that needs -- for whatever

24  additional things you have to do, it needs to get done before

25  that, and I just don't think that is particularly

1  unreasonable.

2              MR. MYLES O'ROURKE:  Judge, real quickly --

3              THE COURT:  And let me just tell you the reason why.

4  I mean, even though you have got this person in the Bahamas

5  telling you A, B and C, he doesn't control the show.  There's

6  a judge down there, there's an appellate judge down there, and

7  even if the liquidator tells you that something is okay, you

8  may have some judge say, well, that's not good enough for me,

9  and so I want to have it all buttoned down.

10             MR. MYLES O'ROURKE:  I know Jeff wanted to say, but

11  just for Robert's consideration, he wanted to just make sure

12  that this one act of what he is doing is not -- does not speak

13  to a waiver of any kind of personal jurisdiction.

14             THE COURT:  I think I made that clear yesterday.

15  Nobody is waiving any arguments about personal jurisdiction.

16  I will deal with those, if I have to, later on.

17             MR. MYLES O'ROURKE:  Thank you, your Honor.

18             THE COURT:  So that gets us to the --

19             I think we are now back to the thing we started out

20  with this morning, which is the contempt order as to --

21             MR. AIZENBERG:  The two contempt orders.

22             THE COURT:  The two contempt orders as to Peter

23  Rogan.

24             So let me just talk that through with you here.

25  First of all, there was nobody here on behalf of Peter Rogan

1    when I called the case, and I recognize the only other persons
2    sitting in the courtroom are the people who are government
3    lawyers.  So there is nobody here on behalf of Peter Rogan
4    right now.
5            On the civil contempt aspect of it, I think that
6    procedurally I can go ahead and hold him in civil contempt and
7    then figure out what it is I do after that.
8            On the criminal contempt of it, I honestly don't
9    know.  I don't know that I can hold somebody in criminal
10   contempt.  I think I have to jump through a bunch of other
11   hoops first.
12           MR. AIZENBERG:  I believe you have to refer this to
13   the U.S. attorney's office.
14           THE COURT:  Have to refer it to the U.S. attorney's
15   office.
16           MS. WAWZENSKI:  Yes, your Honor.
17           THE COURT:  Well, that's convenient because you're
18   here.
19           MR. AIZENBERG:  And ask them to prosecute.
20           THE COURT:  Okay, so let me deal with the civil
21   aspect of it first.
22           And I just want to caution you here because what I'm
23   going to ask you in a second is what is it that you are going
24   to ask me to do.  Are you just going to ask me to issue what
25   is called a body attachment?

1     MR. AIZENBERG: Yes.

2     THE COURT: Or are you going to ask me to impose some

3 sort of remedial --

4     MR. AIZENBERG: I think a body attachment, holding in

5 contempt, and I think we would want to -- not that it's going

6 to change much from a financial point of view, but we want to

7 at least recover the fees and costs incurred in preparing

8 these two motions.

9     THE COURT: Okay. And I just want to clue you in on

10 an issue which, given what you just said, I don't think is an

11 issue, and the issue is this. I know this from one of my past

12 lives.

13     When you have parallel civil and criminal proceedings

14 and there is some sort of a disposition of the civil case,

15 depending upon what relief is imposed, you may or may not be

16 creating an argument that the person has effectively been

17 placed in jeopardy because of the nature of the relief that is

18 imposed in the civil proceeding.

19     There is a Supreme Court called Securities and

20 Exchange Commission v. Halper, which was decided, I think,

21 about probably going on 20 years ago, but maybe it's more like

22 15, that talked about the circumstances under which a civil

23 fine imposed by the Securities and Exchange Commission

24 essentially amounted to a criminal sanction that precluded,

25 because of double jeopardy, a later criminal prosecution.

1        You know, I will consider any sanction you want to
2   impose, but I just want to make sure that you are cognizant
3   and the government is cognizant of doing something that might,
4   you know, give somebody an argument, and potentially a
5   successful argument, that they have already been in effect
6   punished for this same thing.

7        MR. AIZENBERG:  Given your Honor's caution, and I
8   appreciate that very much, your Honor, why don't I suggest
9   that on the civil side you can certainly hold him in contempt,
10  and when we come back, Dexia, on the 13th, and propose
11  whatever additional sanctions --

12       THE COURT:  Fine.  So Peter Rogan is held in civil
13  contempt of court for his failure to respond to the citation
14  to discover assets, and consideration of the remedial --
15  consideration of a remedy is entered and continued to the 13th
16  of November at 9:30 in the morning.

17       Is there anything else that I have not covered that
18  we had up today?

19       MR. AIZENBERG:  On the criminal side, I think you
20  could issue -- I think you can issue a warrant to have him
21  arrested.

22       THE COURT:  All right, just pause for a second.

23       Isn't there already a warrant to have the man
24  arrested?

25       MR. AIZENBERG:  There is a civil body attachment that

1    Judge Darrah issued.

2          THE COURT:  There's not any kind of a warrant out
3    there that anybody --

4          MR. AIZENBERG:  Yes, I'm sorry, there is.

5          THE COURT:  I thought there was.

6          MS. WAWZENSKI:  The criminal information --

7          MR. AIZENBERG:  Yes, yes, yes, I'm sorry.

8          MR. AIZENBERG:  -- includes, I believe, but I'm not
9    sure, your Honor, if there has actually been a bench warrant
10   issued, but I believe there is one outstanding.

11         THE COURT:  Was the information filed in this
12   district?

13         MS. WAWZENSKI:  Yes.

14         THE COURT:  So it's a misdemeanor information.  It's
15   also a contempt case, right?

16         MR. AIZENBERG:  No, perjury and obstruction of
17   justice.

18         MS. WAWZENSKI:  Perjury and obstruction of justice
19   for the affidavit that he submitted --

20         THE COURT:  When did that become a misdemeanor?

21         MS. WAWZENSKI:  -- in front of Judge --

22         No, I'm not saying it is.  I'm not sure it's a
23   misdemeanor, but it's --

24         THE COURT:  Well, if it's an information, it darned
25   well better be a misdemeanor because otherwise the man's grand

1   jury right has been --

2         MS. WAWZENSKI:  I'm not the expert on this, but it's

3   perjury and obstruction of justice.

4         THE COURT:  Hang on a second.  I'm just going to look

5   up the docket here and see what I can find.

6         (Brief interruption.)

7         THE COURT:  Case number 08 CR 415, which currently is

8   before Magistrate Judge Ashman on a criminal complaint, and an

9   arrest warrant was issued back in May.  It was more recently

10   unsealed actually in the latter part of May.

11         The criminal complaint, the affidavit, and arrest

12   warrant were unsealed.  So there's an arrest warrant that has

13   been issued on that case.  And the charge is a charge of

14   perjury and obstruction of justice both in connection with the

15   02 C 3310 case, U.S. v. Peter Rogan.

16         So I don't in the least have a problem with

17   issuing -- with directing the issuance of a warrant for

18   Mr. Rogan's arrest on criminal contempt charges, but let me

19   just look at Rule 42 of the criminal rules first to make sure

20   I'm hopping through all of the right hoops.

21         Just hang on a second.

22         (Brief interruption.)

23         THE COURT:  Okay, Rule 42(a) says "any person who

24   commits criminal contempt may be punished for that contempt

25   after prosecution on notice."

1    Subpart 1:  "Notice.  The person must give the person

2    notice in open Court in an order to show cause or in an arrest

3    order.  Notice must state the time and place of the trial,

4    allow the defendant a reasonable time to prepare a defense,

5    and state the essential facts constituting the charge of

6    criminal contempt and describe it as such."

7    Subparagraph 2:  "Appointing a prosecutor.  The Court

8    must request that the contempt be prosecuted by an attorney

9    for the government unless the interest of justice requires the

10   appointment of another attorney.

11   If the government declines the request, the Court

12   must appoint another attorney to prosecute the contempt."

13   So let me now go back to -- I think --

14   MR. AIZENBERG:  I believe you complied with some part

15   of it.

16   THE COURT:  I believe part of that was done, but I

17   don't know that all of it was done in the order that I entered

18   back in --

19   MR. AIZENBERG:  I think the only part that's not

20   there is a date for the trial, but what you did do is ask

21   Mr. Rogan to be prepared to come to court today and state how

22   much time he needs to prepare for trial.

23   THE COURT:  Just give me a second.  I want to look at

24   the order myself.

25   (Brief interruption.)

1    MR. AIZENBERG:  It's document number 619, if that
2  helps, your Honor.
3    THE COURT:  I have it on the screen.
4    So I did what Rule 42(a)(1) requires in the sense
5  that I gave -- I gave notice via an order to show cause.  I
6  did what (a)(1)(C) requires in that I stated the essential
7  facts constituting the charge of criminal contempt and
8  described it as such.
9    As Mr. Aizenberg just said, I said, at the show cause
10  hearing, Rogan must be prepared to inform the Court regarding
11  the reasonable amount of time he will need to prepare for
12  trial.  It says I will order his arrest if he doesn't appear,
13  but did I appoint the government?
14    MR. AIZENBERG:  No.
15    THE COURT:  Fine.
16    All right, so what I'm going to do today is pursuant
17  to criminal Rule 42(a)(2), the government is appointed to
18  prosecute the charge of criminal contempt against Mr. Rogan.
19  I am going to order the issuance of an arrest warrant.
20    I don't know who is dealing with this on the criminal
21  side.
22    MS. WAWZENSKI:  It's Mr. Gillogly and Mr. Boutros.
23    THE COURT:  And Mr.?
24    MS. WAWZENSKI:  Boutros, Andrew Boutros.
25    THE COURT:  He was here this morning.

1      MS. WAWZENSKI:  Yes, he was.

2      THE COURT:  I will tell you that based on a recent

3   experience I had where I issued -- where I made a charge of

4   criminal contempt in connection with a criminal case that it

5   completely threw the 20th floor into a tizzy, I mean, I'm

6   telling you, for about two months.  I could use more graphic

7   barnyard terms to describe it, but I won't.  It just threw

8   them into a tizzy because they didn't know how to deal with

9   this in the context of an existing case.

10      And what we came to after about two months is there

11   needed to be a new case number, a CR number, assigned to it,

12   and then that case was then assigned to me, but it was just a

13   complete mess.

14      So I don't want to start issuing warrants or whatever

15   in this case until I get that kind of sorted out.  And my

16   courtroom deputy isn't here because she's at a clerk's office

17   meeting right now, which was sort of a command performance for

18   her.  So I think what I'd like to do, just on the criminal

19   contempt part of this, is ask you to come back, and I'm just

20   talking about Dexia's lawyer and the government's lawyer.

21   Anybody else can come who wants, but that's the only people I

22   need back.

23      MS. WAWZENSKI:  Would you like someone from the

24   criminal side, your Honor?

25      THE COURT:  That would be nice.

1          MS. WAWZENSKI:   Okay.

2          THE COURT:   That would be nice because I'm appointing

3   them, but I'm afraid to issue -- I'm afraid to enter an order

4   until I get it sorted out.

5          But what I really want you to do is talk to Augie

6   about this between now and when I have you come back.

7   Frankly, I think I can wait until next Thursday on that, too,

8   because nothing's --

9          MS. WAWZENSKI:   We can maybe sort this out, also,

10   because I know that we have not acted on the arrest warrants

11   from the criminal case because of the pending immigration

12   action that is going on.

13          THE COURT:   There is essentially the equivalent of a

14   detainer, I'm assuming.

15          MS. WAWZENSKI:   Yes.

16          THE COURT:   All right.   So try to get it all sorted

17   out as to who is going to do what and how I do this before

18   next Thursday.

19          So I'm going to enter and continue the criminal

20   contempt for a setting of whatever other dates and then

21   whatever other orders to November the 13th at 9:30, too.

22          Is there anything else we need to talk about today?

23          Good.   Thanks for staying around, and thanks for

24   having that conversation.

25          MR. AIZENBERG:   Thank you.

1          MR. MYLES O'ROURKE:   Thank you.

2          MS. WAWZENSKI:   Thank you, your Honor.

3       (Which were all the proceedings had in the above-entitled

4    cause on the day and date aforesaid.)

5

6

7

8                   C E R T I F I C A T E

9

10          I hereby certify that the foregoing is a true and

11    correct transcript of the above-entitled matter.

12

13

14    /s/ Laura M. Brennan

15    _____          _____
      Laura M. Brennan
16    Official Court Reporter                    Date
      Northern District of Illinois
17

18

19

20

21

22

23

24

25