**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **DEXIA CREDIT LOCAL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 02 C 8288** |
| | ) | |
| **PETER G. ROGAN, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

As part of supplementary proceedings to enforce a judgment Peter Rogan, Dexia Credit Local (Dexia) has filed a motion requesting turnover of certain assets. Intervenors Brian, Sara, and Robert Rogan (the Rogan children) oppose that motion. Dexia and the Rogan children have moved for summary judgment with respect to some of the trusts holding the assets that Dexia seeks. The Rogan children have also moved to strike Dexia's Local Rule 56.1 statement in support of one of its summary judgment motions and to strike a declaration submitted with Dexia's opposition to the Rogan children's motion for summary judgment. For the reasons set forth below, the Court denies the Rogan children's motions to strike, grants in part and denies in part Dexia's motions for summary judgment, and denies the Rogan children's motion for summary judgment.

**Background**[1]

On cross-motions for summary judgment, the Court construes facts and draws inferences "in favor of the party against whom the motion under consideration is made." *In re United Air Lines, Inc.*, 453 F.3d 463, 469 (7th Cir. 2006).

Dexia sued Peter Rogan and others for fraud, conspiracy, and other torts. It eventually obtained a judgment against Rogan in excess of $124 million. Dexia subsequently pursued supplementary proceedings before this Court to satisfy its judgment. This Court entered temporary restraining orders freezing various assets that Dexia contends belong to Rogan or that he fraudulently transferred. Brian, Sara, and Robert Rogan (Peter Rogan's adult children) and Judith Rogan (his wife) then intervened to oppose the freeze orders. The Court ultimately entered preliminary injunctions that had the effect of extending the freeze orders in large part.

On December 8, 2008, Dexia filed, pursuant to the Court's instruction, a renewed motion for turnover pertaining to the Rogan children's interests in four categories of assets: those held by (1) the Peter G. Rogan Irrevocable Trust (PGR trust); (2) the RPP Finance Trust (RPP trust); and (3) various trusts domiciled in Florida and Belize that Peter Rogan created in the names of each of his children; and (4) assets the Rogan children received from those trusts.

Five of the trusts identified in Dexia's renewed motion for turnover are the subjects of the parties' summary judgment motions. Dexia's first motion for summary

_____

[1]The Court presumes general familiarity with the factual background set forth in its earlier opinions in this matter. *See Dexia Credit Local v. Rogan*, No. 02 C 8288, 2008 WL 4855416 (N.D. Ill. Nov. 10, 2008); *Dexia Credit Local v. Rogan*, No. 02 C 8288, 2008 WL 4543013 (N.D. Ill. Oct. 9, 2008).

judgment seeks turnover of the assets of the PGR trust. The Rogan children have moved to strike Dexia's Local Rule 56.1 statement in support of the PGR trust summary judgment motion but have not otherwise responded to either the motion or Dexia's Local Rule 56.1 statement.

Peter Rogan settled the PGR trust in 1996 with his own assets. The trust identifies Peter and Judith Rogan, as well as the Rogan children, as beneficiaries of the trust. The PGR trust provides for a trust protector to ensure that the trustees comply with the wishes of the settlor, i.e., Peter Rogan. At the time the PGR trust was created, Peter Rogan submitted a "letter of wishes" stating "[p]lease distribute all of the income of the Trust to me upon receipt by the Trustee. I will provide you with wire transfer information . . . to accomplish the transfer of the funds for my use." Dexia Local Rule 56.1 Statement, Ex. 72. "There is no evidence that the trustees of the PGR trust ever denied a or considered denying a request Rogan made for Trust funds." Dexia Local Rule 56.1 Statement ¶ 17.

The RPP trust is another one of the trusts addressed by Dexia's turnover motion. Dexia has filed a separate summary judgment motion with respect to the RPP trust. Peter Rogan established the RPP trust in 1995. He and Fred Cuppy were its first trustees. Peter Rogan ceased serving as a trustee in 1996. Cuppy continued to serve as the sole trustee for the RPP trust until December 5, 2006. The Rogan children admit that the RPP trust does not prevent creditors of trust beneficiaries from "accessing the trust's assets prior to the demise of both Peter Rogan and Fred Cuppy." Rogan Children Resp. to Dexia Local Rule 56.1 Statement ¶ 28. Peter Rogan is a beneficiary of the RPP trust (as are the Rogan children), but the Rogan children contend that he

never received a distribution from the trust.

In 1992, Peter and Judith Rogan settled three trusts for the benefit of their children, the Brian Rogan Domestic Trust, the Sara Caitlin Rogan Domestic Trust, and the Robert Rogan Domestic Trust (collectively the Rogan domestic trusts). The Rogan children are the only named beneficiaries of the Rogan domestic trusts, though each trust names contingent beneficiaries in the event the named beneficiary dies. A ten percent stock interest in Edgewater Operating Company (EOC) was the initial corpus for each of the Rogan domestic trusts. After EOC was sold in August 1994, the Rogan domestic trusts received money in exchange for the EOC stock they held. The Rogan children contend that the Rogan domestic trusts were created for estate planning purposes. Dexia disputes that contention.

## Discussion

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). To determine whether a genuine issue of material fact exists, the Court must view the record in the light most favorable to the nonmoving party and draw reasonable inferences in that party's favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir. 2002). A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. "The fact that plaintiff and defendants have filed cross-motions for

summary judgment does not change the applicable standard.  The Court must consider each motion independently and must deny both motions if there is a genuine issue of material fact."  *Egan Marine Corp. v. Great Am. Ins. Co. of N.Y.*, 531 F. Supp. 2d 949, 953 (N.D. Ill. 2007) (citations omitted).

**1.     The PGR trust**

**a.     The motion to strike Dexia's Local Rule 56.1 statement**

The Rogan children have not filed a response to Dexia's PGR trust motion, nor have they responded to Dexia's statement of facts filed pursuant to Local Rule 56.1. Rather, they have moved to strike Dexia's statement of facts pursuant to Federal Rule of Civil Procedure 56(e).  That rule provides that an affidavit in support of a motion for summary judgment must be made on "personal knowledge" and that "[i]f a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with the affidavit."  Fed. R. Civ. P. 56(e)(1).

The Rogan children attack two affidavits that Dexia cites in support of its motion. The first is the affidavit of Matthew Gibbons.  Gibbons is the chairman of Oceanic Bank and Trust Limited (Oceanic).  Dexia submitted the affidavit to authenticate documents produced by Oceanic that Dexia cites in support of its motion.  Gibbons swears that he has reviewed the documents with the identifying numbers OB00001 to OB01914 and that they are true and correct copies of Oceanic's business records.

The Rogan children contend that the affidavit and Dexia's entire statement of facts should be stricken because Dexia did not attach each of the 1,914 pages identified in the affidavit.  Though Dexia did not attach each of those pages, it made

5

them available for copying and inspection by the Rogan children on at least three separate occasions, as early as November 18, 2008. Thus the documents have been made available to the Rogans, even if they were not all attached to the affidavit. Moreover, Dexia has submitted with its Local Rule 56.1 statement all of Oceanic's documents it offers in support of its motion for summary judgment. This was all Dexia was required to do. *See Edlund v. St. Anthony Med. Ctr.*, No. 00 C 50216, 2002 WL 596358, at *1 (N.D. Ill. Apr. 16, 2002).

The cases the Rogan children cite are inapposite. *G. D. Searle & Co. v. Charles Pfizer & Co.*, 231 F.2d 316, 318 (7th Cir. 1956), merely notes that inadequate affidavits should be disregarded; it does not address the issue raised with respect to Gibbons' affidavit. In *Logan v. Denny's, Inc.*, 259 F.3d 558, 570 (6th Cir. 2001), the Sixth Circuit disregarded an affidavit because the document referenced in it had not been "attach[ed] or produce[d]." As noted above, Dexia made the Oceanic documents available to the Rogan children and attached the subset of documents that it contends support its motion.

Additionally, the Rogan children target an affidavit signed by one of Dexia's attorneys, Gabriel Aizenberg. In that affidavit, Aizenberg states that he has not seen any documents produced in discovery indicating that the trustees of the PGR trust denied or considered denying a request made by Peter Rogan. Aizenberg also states that the other attorneys he worked with and/or supervised on this matter have not seen any such documents. Essentially, with respect to this subject, Aizenberg contends that none of Dexia's lawyers have found a needle in the haystack of documents they reviewed.

6

The Court need not address the propriety of Aizenberg's affidavit. The point of the affidavit was to advance the contention that no evidence reflects that the PGR trust's trustees ever denied or considered denying any of Peter Rogan's requests. Even without the affidavit, Dexia has made the point in its motion for summary judgment in a way sufficient to put the Rogan children on notice of Dexia's contention that no such evidence existed. Specifically, Dexia argued that "there is no evidence that the Trustees ever denied or considered denying a request Rogan made for Trust funds." Dexia Mot. for Summ. J. at 5. The Rogan children have not submitted any contrary evidence.

### b. Self-settled spendthrift trusts

Even though the Rogan children have failed to respond to either Dexia's motion for summary judgment or its accompanying Local Rule 56.1 statement, this means only that the Rogan children have admitted the facts set forth in that statement. *See, e.g.*, *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006). Dexia must still establish that it is entitled to judgment as a matter of law based on those uncontroverted facts. *See id.*; *Flynn v. Sandahl*, 58 F.3d 283, 288 (7th Cir. 1995). Dexia contends it is entitled to turnover of the assets of the PGR trust because, under the trust's terms and based on the circumstances of its formation, the trust holds the assets of Peter Rogan.

The first step is to determine which jurisdiction's law governs the interpretation and operation of the PGR trust. The PGR trust deed of settlement provides that the trust was established under the law of the Bahamas and that Bahamian governs its

enforcement and construction.  The fact that the trust documents specify Bahamian law does not necessarily mean, however, that this Court will honor that choice of law provision.

A district court sitting in diversity applies the choice-of-law rules of the state in which it sits.  *E.g.*, *Malone v. Corrections Corp. of Am.*, 553 F.3d 540, 543 (7th Cir. 2009).  Under Illinois law, courts will not honor a choice of law provision specified to govern the interpretation and enforcement of a contract where doing so would violate Illinois public policy.  *E.g.*, *Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 704-06 (7th Cir. 2004).  That rule of contract interpretation also applies to the interpretation of trusts. *E.g.*, *Ranger v. Ranger*, 379 Ill. App. 3d 752, 757, 883 N.E.2d 750, 754 (2008).

A trust created for a settlor's own benefit is a self-settled trust.  *Schechter v. Balay (In re Balay)*, 113 B.R. 429, 437 n.14 (Bankr. N.D. Ill. 1990); *Black's Law Dictionary* 1518 (7th ed. 1999).  The PGR trust is a self-settled trust because Peter Rogan both established and is a beneficiary of the trust.  A spendthrift trust is "'a trust that prohibits the beneficiary's interest from being assigned and also prevents a creditor from attaching that interest.'"  *Mattis v. State Univs. Retirement Sys.*, 212 Ill. 2d 58, 81, 816 N.E.2d 303, 316 (2004) (quoting *Black's Law Dictionary* 1518 (7th ed. 1999)).  The PGR trust is a spendthrift trust because it prohibits creditors from obtaining the beneficiaries' interests and prevents the beneficiaries from alienating their interests.

For purposes of this motion, Dexia has conceded that Bahamian law would not permit it to seek turnover of the assets held by the PGR trust, because Bahamian law permits the use of self-settled spendthrift trusts to shield assets from a settlor's

creditors.  Dexia contends, however, that Bahamian law on this point is contrary to Illinois law and public policy and should therefore be disregarded.

Under Illinois law, spendthrift trusts are valid except when they have been created or funded by a judgment debtor.  *See* 735 ILCS 5/2-1403.  A self-settled spendthrift trust is "void as to existing or future creditors, and they can reach his or her interest under the trust."  *In re Marriage of Chapman*, 297 Ill. App. 3d 611, 620, 697 N.E.2d 365, 371 (1998); *see also Barah v. Morris (In re Morris)*, 151 B.R. 900, 906-07 (C.D. Ill. 1993).  This rule reflects the law in most U.S. jurisdictions.  *E.g.*, Restatement (Third) of Trusts § 58(2); Restatement (Second) of Trusts § 156(2).  Bahamian law to the contrary would violate Illinois' public policy.  Accordingly, this Court will not apply Bahamian law to the construction and operation of the PGR trust.  *See, e.g., Scentrua Creations, Inc. v. Long*, 325 Ill. App. 3d 62, 69, 756 N.E.2d 451, 457 (2001) ("a party cannot rely on the protections of foreign law to enforce a contract that is illegal in the forum of the local government.").[2]

Illinois law permits Dexia to reach Peter Rogan's interest in the PGR trust. Under the terms of that trust, the trustees can provide Peter Rogan with the entire corpus of the trust, as well as all of the trust's income.  Indeed, Dexia has submitted evidence, uncontested by the Rogan children, that Peter Rogan has received millions of dollars of distributions from the PGR trust.  Because the PGR trust is self-settled and its settlor, Peter Rogan, can receive all of the trust's income as well as its entire corpus,

---

[2]Dexia has also cited persuasive authority that under Illinois law it is not bound by the PGR trust's choice of law provision as a third party and that application of the "most significant relationship test" would result in the application of Illinois rather than Bahamian law.  *See generally* Dexia Mot. for Summ. J. at 18-22.

Dexia, as his creditor, is entitled to execute on the assets of the Trust. Accordingly, the Court grants Dexia's motion for summary judgment with respect to its request for turnover of the Rogan children's interests in the PGR trust.[3]

**2.     The RPP trust**

The RPP trust does not contain a choice of law provision. Dexia provides a detailed analysis in support of its contention that Florida law applies to the RPP trust. The Rogan children have not disputed that contention, and they rely primarily on Florida law in opposition to the motion (though, like Dexia, they cite several cases from other jurisdictions). The Court will apply Florida law with respect to Dexia's motion for summary judgment concerning the RPP trust.

**a.     Sufficiency of Dexia's evidence**

The Rogan children contend Dexia lacks an evidentiary basis for its motion for summary judgment because many of the exhibits attached to its Local Rule 56.1 statement have not been authenticated. Dexia responds that those documents were produced variously by Peter Rogan, Cuppy, and the RPP trust in response to discovery, and that they are self-authenticating because they were produced by "central parties to this case." Dexia Reply in Support of its Mot. for Summ. J. at 11. The Rogan children dispute this argument.

Dexia correctly notes that the majority of its exhibits were submitted to support its

_____

[3]Under the authority cited above, there is no requirement that a creditor prove a trustee never refused to honor a request for a distribution by a settlor in order to execute on the assets of a self-settled spendthrift trust. Thus Dexia was not required to submit any evidence that the PGR trust's trustees had never refused a request by Peter Rogan.

contention that Florida law applies to the RPP trust.  As noted above, the Rogan children have conceded that point, eliminating Dexia's need to rely on those particular unauthenticated exhibits.

One important exhibit, however, remains unauthenticated – the RPP trust instrument itself.  *See* Dexia Ex. 297.  The identifying stamp on that document appears to indicate that Cuppy produced it to Dexia.  As indicated above, Dexia contends that the document's production by Cuppy is sufficient to authenticate it – that is, to establish that it is what it purports to be, namely the actual RPP trust instrument.

The cases that Dexia cites to support this conclusion do not permit a finding of so-called "self-authentication" on the record as it now stands.  For the most part, those cases stand for the proposition that if a party to a case produces documents, that is sufficient to establish that they are the party's documents.  But Dexia wants to go further than this; it asks the Court to determine that the document is the actual RPP trust instrument.  If the Court knew more about the circumstances of the document's production, such a finding might be permissible.  For example, if Dexia made a request to Cuppy to produce the RPP trust instrument, or all trust instruments relating to Peter Rogan, his act of producing this particular document likely would be sufficient to authenticate it.  But if, on the other hand, Cuppy produced the document pursuant to a much broader request – for example, a request for all documents relating to Peter Rogan-settled trusts, or even all documents relating to the RPP trust, the act of production of this particular document would not permit the Court to determine that it is the actual RPP trust instrument.  On the present record, the Court can draw no conclusions from Cuppy's act of producing this particular document.

It is likely that Dexia would have no difficulty authenticating the RPP trust instrument via some other means. The document bears a signature purporting to be that of Peter Rogan. *See* Dexia Ex. 297 at 9. If Dexia can provide evidence sufficient to support a finding that this is, in fact, Rogan's signature, that would allow the document to be admitted in evidence. There may also be other ways to authenticate the document. That, however, will have to await another day. On the present record, the Court cannot make a determination that the document is, in fact, the RPP trust instrument.

This does not prevent the Court from ruling on some of the legal issues raised by Dexia's motion. Rule 56(d)(1) permits district courts to "determine what material facts are not genuinely disputed" but does not address whether a court may resolve the legal questions that would apply to the facts. Fed. R. Civ. P. 56(d)(1). Rule 16(c)(2), however, permits a court to enter orders "formulating and simplifying the issues" before it. Fed. R. Civ. P. 16(c)(2)(A) & (P). Even though summary judgment is not appropriate, this Court may "resolve the legal questions posed by the motion in the interest of advancing the litigation." *Wetherill v. Univ. of Chicago*, 548 F. Supp. 66, 67 n.2 (N.D. Ill. 1982); *see also Agri-Sales, Inc. v. United Potato Co.*, 436 F. Supp. 2d 967, 969 (N.D. Ill. 2006) ("Resolution of issues as a matter of law under Rule 16 is directly analogous to a Rule 56(d) proceeding in the summary judgment area . . . ."); 6A C. Wright, A. Miller, & M. Kane, *Federal Practice & Procedure* § 1529 at 299-301 (2d ed. 1990).

Dexia and the Rogan children have submitted extensive briefs arguing their positions regarding the rights creditors may or may not have with respect to self-settled

trusts under Florida law.  Dexia contends the RPP trust is a self-settled trust.  Though

the Court cannot grant Dexia's summary judgment motion because Dexia has not (yet)

submitted evidence authenticating the RPP trust document, Dexia presumably will

attempt to do so in a supplemental filing or at trial.  At that time, the Court will be

required to apply Florida law to that trust.  It will simplify the issues before the Court and

significantly advance this litigation if the Court resolves the purely legal questions that

the parties have already briefed.  Accordingly, the Court will do so pursuant to Rule

16(c)(2)(A) & (P).

### b.    Self-settled trusts for the benefit of the settlor

Dexia contends that under Florida law, a creditor can execute on the property of

a trust, regardless of whether the trust contains a spendthrift provision, to the extent

that the settlor is also a beneficiary of the trust.  Dexia relies on a recent Florida statute

and cases that predate the statute in support of this contention.

The statute Dexia relies upon is part of the Florida Trust Code, which was

enacted effective July 1, 2007.  It provides, in relevant part:

> (1) Whether or not the terms of a trust contain a spendthrift provision, the
> following rules apply:
>
> (a) The property of a revocable trust is subject to the claims of the settlor's
> creditors during the settlor's lifetime to the extent the property would not
> otherwise be exempt by law if owned directly by the settlor.
>
> (b) With respect to an irrevocable trust, a creditor or assignee of the
> settlor may reach the maximum amount that can be distributed to or for
> the settlor's benefit. If a trust has more than one settlor, the amount the
> creditor or assignee of a particular settlor may reach may not exceed the
> settlor's interest in the portion of the trust attributable to that settlor's
> contribution.

Fla. Stat. § 736.0505(1)(a)-(b).  Under the terms of this statute, Dexia can reach the

assets of any irrevocable trust settled by Peter Rogan if Peter Rogan is also a
beneficiary of that trust. *Id.* In that situation, Dexia could collect the maximum amount
of the trust's assets that the trustee could potentially distribute to Peter Rogan. *Id.*

The Rogan children respond that section 736.0505 does not apply because it
was enacted in 2007, two years after the RPP trust was apparently settled. Another
section of the same statute, however, states that the Florida Trust Code applies "to all
trusts created before, on, or after" its enactment. Fla. Stat. § 736.1303(1)(a). It also
applies to judicial proceedings commenced after July 1, 2007 and to judicial
proceedings commenced before that date unless application of the statute would
"prejudice the rights of the parties." *Id.* §736.1303(1)(b)-(c).

In short, section 736.0505 applies unless the Rogan children can establish their
rights will be prejudiced. The Rogan children cannot make such a showing because the
statute is effectively a codification of existing Florida common law. "Where a trust is
self-funded by a beneficiary . . . the beneficiary's interest is subject to alienation by her
creditors." *Menotte v. Brown (In re Brown)*, 303 F.3d 1261, 1265-66 (11th Cir. 2002)
(applying Florida law). In *Brown*, the settlor created a trust with her own assets. *Id.* at
1263. The trust contained a spendthrift provision and provided that the settlor was
entitled to receive seven percent of the value of the trust annually. *Id.* at 1263-64.
Upon the settlor's death, the seven percent annual payments would be made to the
settlor's daughter for the rest of her life, after which the trust corpus would pass to
several charities. *Id.* at 1264. Subsequently, the settlor filed for bankruptcy protection,
and her creditors attempted to access the trust's assets to satisfy their claims against

14

her.  *Id.* at 1263-64.

The Eleventh Circuit concluded that the settlor's creditors could reach the trust assets up to the amount of the settlor's interest in the trust.  *Id.* at 1268.  The creditors could not reach the trust corpus, however, because the settlor only had a right to trust income, not to all of the assets of the trust.  *Id.* at 1268-69; *see also In re Lawrence*, 251 B.R. 630, 642 (S.D. Fla. 2000) (creditors could reach maximum amount of trust assets settlor could potentially receive from a self-settled trust) (applying Florida law); Restatement (Second) of Trusts § 156(2) ("Where a person creates for his own benefit a trust for support or a discretionary trust, his transferee or creditors can reach the maximum amount which the trustee under the terms of the trust could pay to him or apply for his benefit.") (cited in *Brown*); *Sattin v. Brooks (In re Brooks)*, 217 B.R. 98, 103 (Bankr. D. Conn. 1998) (noting that "nearly every jurisdiction" has adopted the rule creditors can reach a settlor's interest in a self-settled trust).

The Rogan children respond that this rule does not apply in situations where a trust has more than one beneficiary.  The cases on which they rely, however, do not support that conclusion.  The Florida case they cite, *Sylvester v. Sylvester*, does not address whether a creditor can reach the assets of a trust that has more than one beneficiary.  *See Sylvester v. Sylvester*, 557 So. 2d 599, 600 (Fla. App. 1990).  That case merely addressed whether a trust was irrevocable.  *Id.*  Moreover, the quotation from *Sylvester* on page 7 of the Rogan children's brief does not even come from the majority opinion in the case.  *Id.* at 401 (Downey, J., concurring in part and dissenting in part).  The two Missouri cases the Rogan children cite are inapposite because they

apply a particular Missouri statute that is inapplicable here. Last, *In re Marrama*, 316 B.R. 418, 423 (B.A.P. 1st Cir. 2004), is irrelevant. The court in that case noted that a debtor was the sole beneficiary of a trust, but it did not determine that a creditor cannot seek assets in a trust with multiple beneficiaries. *Id.*

*Brown* illustrates that a creditor can seek a settlor's interest in a self-settled trust even if there are other beneficiaries. In that case, the settlor's daughter and several charities were beneficiaries of the trust along with the settlor. *Brown*, 303 F.3d at 1263-64. This did not stop the settlor's creditors from reaching her interest in the trust. *Id.* at 1268-69. The creditors could reach the trust assets, but only to the extent of the settlor-debtor's potential interest in them. *Id.*

In sum, regardless of whether section 736.0505 or the common law that preceded it governs this action, the result is the same under Florida law. If a settlor creates a self-settled trust, i.e., a trust under which the settlor is one of the beneficiaries, a judgment creditor of the settlor can reach the trust's assets to satisfy its judgment. Its ability to do so is limited to the maximum amount that the settlor-beneficiary could receive from the trust's income and corpus, e.g., just income if the settlor can only receive income, or the entirety of the trust corpus if the settlor can receive the entire corpus.

### c.    Discretionary trusts

The Rogan children contend that under Florida law, if a trustee has discretion whether to make a distribution to a beneficiary, creditors of that beneficiary are prevented from reaching the trust's assets. In support of this argument, they rely on

another section of the Florida Trust Code:

> (2) Whether or not a trust contains a spendthrift provision, if a trustee may make discretionary distributions to or for the benefit of a beneficiary, a creditor of the beneficiary, including a creditor as described in s.736.0503(2), may not:
>
> (a) Compel a distribution that is subject to the trustee's discretion; or
>
> (b) Attach or otherwise reach the interest, if any, which the beneficiary might have as a result of the trustee's authority to make discretionary distributions to or for the benefit of the beneficiary.

Fla. Stat. § 736.0504(2).

To the extent the Rogan children rely on section 736.0504, they implicitly concede that section 736.0505 applies retroactively, as neither section was enacted until 2007. *See* 2006 Fla. Law c. 2006-217 § 5. The entire Florida Trust code was enacted and made effective as of July 1, 2007. Equity does not permit the Rogan children to pick and choose which sections of that statute they think should apply retroactively.

Assuming these two sections of the Florida Trust Code apply to the RPP trust, section 736.0504 provides that creditors of a beneficiary may not reach the assets of discretionary trusts, whereas section 736.0505 permits creditors to reach the maximum amount of a trust that can be distributed to the settlor. The former provision deals generally with whether a creditor can attach a beneficiary's interest in a trust. The latter provision, by contrast, concerns when a creditor is permitted to reach the interest a settlor-beneficiary has in a self-settled trust. "[W]hen both a specific and a general provision govern a situation, the specific one controls." *Berkson v. Gulevsky (In re Gulevsky)*, 362 F.3d 961, 963 (7th Cir. 2004); *see also Murray v. Mariner Health*, 994

So. 2d 1051, 1061 (Fla. 2008) ("where two statutory provisions are in conflict, the specific controls the general provision.").

Section 736.0505 addresses the specific situation raised by Dexia's claim with respect to the RPP trust. Thus to the extent there is a conflict between sections 736.0504 and 736.0505, section 736.0505 controls. This result is confirmed by the cases that preceded the Florida Trust Code:

> Indeed, when a person creates a discretionary trust for his own benefit . . . his creditors can reach the maximum amount which the trustee under the terms of the trust could pay to him . . . even though the trustee in the exercise of his discretion wishes to pay nothing to the beneficiary or to this creditors, and even though the beneficiary could not compel the trustee to pay him anything.

*Lawrence*, 251 B.R. at 642 (quotation omitted). The Eleventh Circuit reached a similar conclusion in *Brown*. "The fact that [the settlor-beneficiary] cannot exercise dominion over the trust assets is irrelevant to this analysis. The issue of self-settlement is separate from the issue of control . . . ." *Brown*, 303 F.3d at 1267 n.9.

**3. The Rogan children's domestic trusts**

**a. Statutes of limitations and repose**

The Rogan children first contend that Dexia's fraudulent transfer claims with respect to the Rogan domestic trusts are barred by Florida's statute of repose. Under that statute, an action based on fraud must be initiated "within 12 years after the date of the commission of the alleged fraud, regardless of the date the fraud was or should have been discovered." Fla. Stat. § 95.031(2)(a). It is undisputed that the Rogan domestic trusts were settled in 1992. Dexia filed its motion for turnover of the assets of those trusts in 2008.

Dexia contends that this statute does not apply because it is not claiming that the initial transfers of assets into the Rogan domestic trusts were fraudulent. Rather, Dexia claims, the only transfers that its motion for turnover contends should be undone as fraudulent are transfers within the last four years to the Rogan children from Peter Rogan, Judith Rogan, or the Rogan domestic trusts. Those transfers are within both Florida's and Illinois' fraudulent conveyance limitations periods. *See* Fla. Stat. § 726.110(1); 740 ILCS 160/10(a).

Dexia's other bases for turnover concerning the Rogan domestic trusts involve claims that those trusts hold the assets of Peter Rogan. These efforts to obtain the alleged assets of Peter Rogan do not implicate Florida's limitations period for fraud actions. Rather, Rule 69(a) invokes Illinois procedural law with respect to the enforcement of judgments. Fed. R. Civ. P. 69(a); *see Atlantic Richfield Co. v. Monarch Leasing Co.*, No. 94-72406, 1995 WL 871140, at *2 (E.D. Mich. Feb. 9, 1995) (applying forum state's statute of limitations for enforcement of judgments pursuant to Rule 69), *aff'd*, 84 F.3d 204 (6th Cir. 1996). Illinois imposes a seven-year limitation period on enforcement of judgments. 735 ILCS 5/12-108(a). Dexia's turnover motion with respect to the Rogan domestic trusts was filed less than two years after entry of judgment against Peter Rogan.

For these reasons, the Court rejects the Rogan children's contention that the motion for turnover is barred by statutes of limitations or repose.

### b.     Dexia's equitable theories

The Rogan children also raise a number of contentions they claim bar some or

all of Dexia's equitable theories supporting turnover.

First, the Rogan children contend Dexia cannot pursue three of its equitable theories – sham trust, constructive trust, and alter ego – without a "separate claim." Mem. in Supp. of Intervenors' Mot. for Summ. J. at 6. In support of this argument, the Rogan children cite cases that generally discuss the nature of equitable relief. This argument misstates what Dexia is attempting to accomplish in the supplemental proceedings. Dexia has already prevailed on its claims against Peter Rogan. Dexia now seeks to satisfy its judgment against Rogan by collecting assets in the possession of the Rogan domestic trusts that Dexia contends are actually Peter Rogan's assets based on the equitable theories listed above. Dexia does not need to assert a new claim to engage in such proceedings to enforce its judgment against Peter Rogan. Though the situation might be different were Dexia seeking to hold the Rogan domestic trusts directly liable to Dexia (in other words, irrespective of whether the trusts' assets are actually Peter Rogan's), Dexia is not now attempting to do so.

Next, the Rogan children assert that Dexia cannot utilize its equitable theories to seek turnover of the Rogan domestic trusts' assets because a trust is not rendered invalid simply because the settlor, Peter Rogan, allegedly retains control over the trust. *See, e.g.*, Fla. Stat. § 689.075(1); Restatement (Second) of Trusts § 57. The argument again fails to come to grips with the relief Dexia seeks. Dexia does not contend that the assets of the Rogan domestic trusts are in fact Peter Rogan's solely because he allegedly controls those trusts. Rather, Dexia contends that control is one fact among several that it intends to prove to establish its right to the assets of the Rogan domestic trusts. *See, e.g.*, *Kendall v. Turner (In re Turner*), 335 B.R. 140, 146-47 (Bankr. N.D.

Cal. 2005); *Pergament v. Maghazeh Family Trust (In re Maghazeh)*, 310 B.R. 5, 17-18

(Bankr. E.D.N.Y. 2004) (examining a number of factors, including control, referred to as

"badges of fraud" in order to determine if trust was used to shield debtor's interest in

various mortgages).  Dexia will attempt to prove similar facts in support of its alter ego

theory.[4]

The Rogan children also assert that Dexia cannot utilize alter ego/veil piercing

claims in a supplementary proceeding.  Several cases cited by Dexia imply such a rule.

*See Matos v. Richard A. Nellis, Inc.*, 101 F.3d 1193, 1195 (7th Cir. 1996 ("Illinois likely

would not permit veil-piercing in supplementary proceedings. . . ."); *Pyshos v. Heart-

Land Dev. Co.*, 258 Ill. App. 3d 618, 623-24, 630 N.E.2d 1054, 1057-58 (1994).  The

Illinois Supreme Court has not addressed this issue.  More recently, however, the

Seventh Circuit stated that "a district court could entertain, under Fed. R. Civ. P. 69(a),

a post-judgment motion to pierce the corporate veil."  *Int'l Fin. Servs. Corp. v. Chromas

Techs. Canada, Inc.*, 356 F.3d 731, 737 (7th Cir. 2004); *see also Flip Side Prods., Inc.

v. Jam Prods., Ltd.*, No. 82 C 3684, 1990 WL 186777, at *2 (N.D. Ill. Nov. 8, 1990) ("A

supplementary proceeding is a proper means for a judgment creditor . . . to collect a

judgment from suspected alter egos of the judgment debtor.").  Thus it is appropriate for

Dexia to seek the assets of Peter Rogan in the possession of the Rogan domestic

trusts on equitable alter ego theory.

More to the point, *Pyshos* and the other Illinois cases cited by the Rogan children

_____

[4]Disputed issues concerning the facts that control the outcome of Dexia's alter ego and sham trusts theories prevent the Court from entering summary judgment in favor of either party concerning those bases for relief.

clearly permit a judgment creditor to reach assets of a debtor that are in the hands of third parties, which is precisely what Dexia seeks to do in this proceeding. *Pyshos*, 258 Ill. App. 3d at 623-24, 630 N.E.2d at 1057-58  In this regard, the Rogan children place undue emphasis on the labels Dexia has used to describe its equitable theories.  In these supplementary proceedings, Dexia does not attempt to impose liability directly on Rogan domestic trusts.  Rather, Dexia asserts that those trusts hold Peter Rogan's assets.  Dexia may use equitable theories, including an alter ego theory or similar theories, to attempt to prove that assertion.

Last, the Rogan children contend that Dexia's constructive trust theory is improper because Peter Rogan's health care fraud allegedly originated in the early 1990s, whereas Dexia did not become involved with Rogan's company until 1997 or 1998.  It is undisputed that the Rogan domestic trusts were settled with stock that was subsequently converted to cash and that this occurred before Dexia's involvement.

Under Illinois law, "a constructive trust is imposed to prevent unjust enrichment by imposing a duty on the person receiving [a] benefit to convey the property back to the person from whom it was received." *Martin v. Heinold Commodities, Inc.*, 163 Ill. 2d 33, 56, 643 N.E.2d 734, 745 (1994).  "In order to impose a constructive trust, it is sufficient that a party has received money properly belonging to another under circumstances that, in equity, the party ought not be allowed to retain." *Jackson v. Callan Publishing, Inc.*, 356 Ill. App. 3d 326, 334, 826 N.E.2d 413, 423 (2005).  A trust may be imposed even when the ultimate recipient of the property is an innocent party. *Id.*

The Rogan domestic trusts did not receive property from Dexia; they were

funded before Dexia agreed to guarantee bonds issued by Peter Rogan's company, EOC. Dexia contends that it nonetheless can seek to impose a constructive trust on the trust assets. The sale of EOC, in which the EOC stock held by the Rogan domestic trusts was converted to cash, was financed through the sale of bonds in 1994. Those bonds were refinanced in 1998, and as a material part of the refinancing Dexia guaranteed payment to the bondholders. Dexia argues, however, that the original sale of EOC, and thus the original issuance of bonds, would not have occurred had it been known that Peter Rogan was engaging in fraudulent activity going back to the early 1990s. Had that sale not occurred, Dexia says, there would have been no bonds to refinance in 1998 and thus no occasion at that time for Dexia to guarantee payment. It argues that the Rogan domestic trusts, as recipients of proceeds at an earlier stage of Peter Rogan's alleged ongoing fraudulent scheme, should not retain the benefits of that fraud at Dexia's expense.

The Rogan children are not entitled to summary judgment on this aspect of Dexia's motion for turnover. The Court is not prepared to conclude that Dexia's theory is legally infirm. Even though Dexia did not guarantee payment of bonds until 1998, when it did so, it arguably stepped into the shoes of earlier victims of Peter Rogan's ongoing frauds. *See United States v. Shefton*, 548 F.3d 1360, 1364 (11th Cir. 2008) (party was entitled to constructive trust where it covered loss suffered by its insured as a result of defendant's fraud).

### c. Miscellaneous contentions

In their motion for summary judgment, the Rogan children raise several additional arguments that are meritless. First, they contend that the Rogan domestic

trusts are not properly before the Court. Dexia, however, sent Cuppy a citation to discover in his capacity as trustee of those trusts, and Cuppy responded in his capacity as trustee. The Court cannot fathom any other method to bring the trusts before the Court, and the Rogan children suggest none. As trustee, Cuppy had a fiduciary duty to advise beneficiaries of adverse claims on the trust assets, and in any event, they are all on notice of Dexia's claims.

The Rogan children also assert that Dexia has not alleged intent to defraud. With respect to alleged fraudulent transfers, Dexia has clearly made such an allegation. Thus the Rogan children's contention on this point fails.

Finally, the Rogan children contend that Dexia cannot raise fraudulent conveyance issues in a supplementary proceeding. The Court disagrees. Dexia can utilize a fraudulent conveyance theory to prove that others hold the assets of Peter Rogan. *See, e.g.*, *Kennedy v. Four Boys Labor Serv., Inc.*, 279 Ill. App. 3d 361, 368-69, 664 N.E.2d 1088, 1092-93 (1996).

### d. Rule 26 motion to strike

The Rogan children ask the Court to strike the affidavit of John Flaherty. That affidavit was submitted by Dexia as an exhibit to its response to the Rogan children's Local Rule 56.1 statement. Flaherty was not listed in Dexia's Rule 26(a)(1) disclosures. "If a party fail to . . . identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness . . . unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1)

Dexia offered Flaherty's affidavit to support its contentions concerning general facts that should come as no surprise to the Rogan children. For example, Flaherty asserts that Dexia did not know of Peter Rogan's fraudulent activities in 1998, and, if it

had, Dexia would not have guaranteed bonds for companies associated with Rogan. These assertions by Dexia cannot possibly have come as a surprise to the Rogan children, nor do they articulate how they have been harmed other than to state they did not have the opportunity to depose Flaherty. Dexia had previously placed the Rogan children on notice that it may need to supplement the individuals it had disclosed pursuant to Rule 26(a)(1). The Court will, if the Rogan children request, direct Dexia to produce Flaherty under reasonable conditions for a deposition prior to the upcoming hearing on the motion for turnover. Under the circumstances, Dexia's failure to disclose Flaherty at an earlier date was harmless. The Court denies the motion to strike Flaherty's affidavit.

## Conclusion

For the reasons set forth above, the Court denies the Rogan children's motions to strike [docket nos. 889, 903]. The Court denies Dexia's motion with respect to the RPP Trust, but makes rulings of law as set forth above pursuant to Rule 16 [docket no. 855]. The Court grants Dexia's motion for summary judgment with respect to the PGR trust [docket no. 857]. The Court denies the Rogan children's motion for summary judgment [docket no. 848].

Date: March 12, 2009

_____
MATTHEW F. KENNELLY
United States District Judge