**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **DEXIA CREDIT LOCAL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 02 C 8288** |
| | ) | |
| **PETER G. ROGAN, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

In these supplementary proceedings, plaintiff Dexia Credit Local (Dexia) seeks to satisfy its judgment against Peter Rogan by executing on the assets held by various trusts that he established. Under one of its theories, constructive trust, Dexia contends it is entitled to the assets of those trusts because those assets are the proceeds of fraud that Rogan committed. Under a second group of theories, alter ego, nominee, and sham trust, Dexia contends it is entitled to the assets held by the trusts because they are actually the assets of Peter Rogan.

Dexia has moved the Court to bar Sara, Brian, and Robert Rogan (collectively, the Rogan children) from contesting any facts they admitted or did not oppose in response to Dexia's motions for summary judgment. Pursuant to Federal Rule of Civil Procedure 56(d)(1), the Court grants that motion in part and denies it in part. Dexia and the Rogan children have also filed briefs identifying the issues each side contends are contested or uncontested. As discussed below, the Court also determines, pursuant to

Federal Rule of Civil Procedure 16(c), that certain issues are uncontested and other issues remain contested.

## Discussion

**1.     Rule 56(d)(1) determinations**

Dexia has moved for turnover of assets held by trusts of which the Rogan children are beneficiaries. An evidentiary hearing on certain key claims made in the motion is set for March 30, 2009. Dexia previously moved for summary judgment on certain claims. In support of those motions, Dexia submitted statements of undisputed facts pursuant to Local Rule 56.1. The Court granted the motions in part and denied them in part.

In responding to Dexia's summary judgment motions, the Rogan children did not dispute certain of the facts that Dexia, in its Local Rule 56.1 submissions, contended were undisputed. Dexia now contends that those facts should be deemed admitted – in other words, they should be deemed not genuinely at issue – for purposes of the upcoming evidentiary hearing.

Federal Rule of Civil Procedure 56(d)(1) provides that "[i]f summary judgment is not rendered on the whole action, the court should, to the extent practicable, determine what material facts are not genuinely at issue . . . [and] issue an order specifying what facts . . . are not genuinely at issue." Fed. R. Civ. P. 56(d)(1). The Court did not make findings pursuant to Rule 56(d)(1) regarding the facts the Rogan children had not contested. As the Court previously advised counsel, the Court considers Dexia's current motion as seeking partial reconsideration, pursuant to Rule 56(d)(1).

The Court agrees with Dexia that it is appropriate to make findings under Rule

2

56(d)(1) identifying the facts that are not genuinely at issue, to simplify the issues and evidence at trial. The Rogan children have advanced no viable reason why the Court should not do what Rule 56(d)(1) permits (and arguably requires).[1]

For these reasons, the Court determines that the following facts, contained in Dexia's Local Rule 56.1 statement supporting its motion for summary judgment with respect to the RPP trust and agreed or not disputed by the Rogan children in responding to the motion, are not genuinely at issue:

1. On March 8, 1995, Peter Rogan (Rogan) and Fred Cuppy (Cuppy) created the RPP Finance Trust ("RPP Trust").

2. Rogan is the trust's grantor, and Rogan and Cuppy were its first trustees.

3. Cuppy and Rogan served as the first Trustees of the RPP Trust from March 8, 1995 to November 30, 1996, when Rogan resigned as trustee.

4. Cuppy continued as the sole Trustee for the RPP Trust until December 5, 2006.

5. On December 5, 2006, Cuppy signed a document – entitled "Deed of Appointment and Resignation of Trustee Supplemental to the RPP Finance Trust Dated March 8, 1995" ("RPP Trust Transfer").

6. Article 10 of the original RPP trust document named B. Macon Brewer, John Tatooles and John Foley as successor trustees, but all three of those men refused to accept the appointment.

7. The RPP Trust Transfer does not state that it is amending the trust.

8. The RPP Trust Transfer does not purport to quote the language of such an amendment.

---

[1] Because the Court makes this ruling pursuant to Rule 56(d)(1), it need not address Dexia's contention that under Local Rule 56.1, facts in a statement of uncontested facts that the opposing party does not dispute are deemed admitted for all purposes in the case, not just for purposes of the pending summary judgment motion.

9.      No other document produced in these proceedings in any way addresses the choice of law issue regarding the RPP Trust.

10.     From the RPP trust's inception to the present, Cuppy has lived in Indiana and Florida. Since roughly early 2004, Cuppy claims to have resided primarily in Florida.

11.     From the RPP trust's inception to the present, Cuppy has performed his trust duties in these states.

12.     At least as of 2004, account statements and IRS 1099 forms from financial institutions holding RPP trust assets were sent to Cuppy's Florida address.

13.     At least as of 2004, RPP Trust's tax filings list Cuppy's Florida residence as the trust's address, including K-1 forms in which the trust identified Cuppy's Florida address as that of its "fiduciary," *i.e.*, its trustee.

14.     All of RPP's known real estate investments are located in Florida.

15.     The RPP trust contains no provision blocking the creditors of trust beneficiaries – including Rogan – from accessing the trust's assets prior to the demise of both Peter Rogan and Fred Cuppy.

16.     Plaintiff Dexia Credit Local is a French banking institution with an agency based in New York, New York.

17.     Defendant Peter G. Rogan is a U.S. citizen, who currently resides in Vancouver, British Columbia, Canada. At the time Dexia filed its complaint in this case, Peter Rogan was domiciled in the State of Indiana.

18.     Defendant Bainbridge Management, Inc. ("Bainbridge Inc.") is a corporation organized under the laws of Illinois. At the time Dexia filed its complaint in this case, the principal place of business of Bainbridge Inc. was in Merrillville, Indiana.

19.     Intervenor Judith K. Rogan is the wife of Peter G. Rogan, and purports to live in Indiana.

20.     Intervenor Robert C. Rogan is the son of Peter and Judith Rogan, and lives in California.

21.     Intervenor Brian P. Rogan is the son of Peter and Judith Rogan, and lives in the Northern District of Illinois.

22. Intervenor Sara C. Rogan is the daughter of Peter and Judith Rogan, and lives in the Northern District of Illinois.

The Court likewise finds that the following facts, contained in Dexia's Local Rule 56.1 statement with respect to its motion for summary judgment concerning the PGR Trust and agreed to or not disputed by the Rogan children in responding to Dexia's motion, are not genuinely at issue:

1. On January 5, 1996, Peter Rogan caused an "irrevocable" trust to be created in The Bahamas via a Deed of Settlement ("PGR Bahamas Trust" or "Deed").

2. Rogan was the settlor of the PGR Trust.

3. "Foreign Grantor Trust Owner Statements," contained in Rogan's United States tax filings for the years 1996-97, 1999-2001, 2003, 2005 state: "The United States Owner identified in line 6 above [Peter G. Rogan] is treated as the owner of the entire foreign trust to which this statement is attached . . . Such United States Owner transferred either directly or indirectly all of the property contributed to the trust . . . ."

4. Rogan's 1996 Form 3520 indicates that Rogan contributed the original amount of funds transferred into the PGR Trust, *i.e.*, $21,344,142.

5. The original trustee was New World Trustees (Bahamas) Limited, a Bahamian entity. Later, another Bahamian entity, Oceanic Bank & Trust ("Oceanic") replaced New World as trustee. In or about November 23, 2006, new trustees replaced Oceanic on the PGR Bahamas Trust: two principals at Caledonia Corporate Management Group Limited ("Caledonia") named Matthew McNeilly and William Jennings.

6. There is no evidence that the Trustees ever denied or considered denying a request Rogan made for PGR Trust funds.

7. From 2002-04, the PGR Bahamas Trust made at least $4.75M in distributions, the destination of which the Trustee obtained from Rogan personally. In all, Rogan instructed the Trustee to send $3.225M of the $4.75M in distributions to himself (Rogan) personally. The $3.225M to Rogan consisted of transfers to Rogan

personally of: $3,000,000 and $225,000.

8.     Rogan told the Trustee to send the remaining $1.525M, which consisted of the following transfers: (i) $100,000 and $50,000 to Judy Rogan; (ii) $50,000 to BFB. Inc. (wholly-owned and controlled by Rogan); (iii) $170,000, $50,000 and $250,000 to Bainbridge Management, Inc.; (iv) $80,000 to Edgewater Property Company; (v) $300,000 and $360,188 to Winston & Strawn, Rogan's personal counsel in this action and others; and (vi) $31,115 and $88,013 to Mayer Brown Rowe & Maw, counsel Rogan retained to represent his companies, including EPC and Bainbridge Inc. 20. The PGR Bahamas

9.     Rogan in part funded the PGR Trust with some proceeds from the sale of Edgewater Hospital.

10.     The litigation between the parties has been pending in Illinois since 2002.

11.     After Edgewater Medical Center defaulted on its bonds, Dexia paid the bondholders via the bond trustee – LaSalle Bank in Illinois.

12.     Peter Rogan's (directly and via his alter ego, Bainbridge Management, Inc.) place of business was Illinois (Edgewater Medical Center).

13.     The place of business and state of incorporation of Bainbridge Management, Inc., was Illinois.

14.     Dexia's place of business is New York.

Dexia contends it is also uncontested that "[f]rom the RPP trust's inception to the present, Cuppy has been the trust's sole beneficiary." Dexia's Reply in Supp. of Mot. Barring Intervenors from Contesting Facts at 1. This fact is contested, as the Rogan children have pointed to contrary language in the trust document. The Court notes, however, that it appears Dexia may be able to prove that Cuppy is the only vested beneficiary of the RPP Trust.

The Rogan children raise several additional issues. First, they contend that

certain documents identified by Dexia are not self-authenticating. The Court dealt with this issue when ruling on the cross motions for summary judgment. To the extent the Rogan children contest facts and Dexia has not yet provided a proper foundation for evidence to the contrary, those facts remain contested. Nothing in this order changes that analysis. Second, the Rogan children take issue with Dexia's quotations from certain documents. To the extent it is necessary under a rule of law to examine an entire document, the Court has done so and will continue to do so.

**2.      Uncontested and contested issues for hearing**

Rule 16(c)(2) permits a court to enter orders "formulating and simplifying the issues" before it. Fed. R. Civ. P. 16(c)(2)(A) & (P). Dexia and the Rogan children agree that the following issues are uncontested, and the Court so finds:

1.      In December 1992, Peter Rogan and Judith Rogan established the domestic trusts for each of his three children, Robert, Brian and Sara Caitlin Rogan and appointed Frederick Cuppy, Trustee to the Domestic Trusts and/or Florida Trusts. In 1992, 10% of EOC stock was placed in each of the domestic trusts.

2.      Fred Cuppy is a long-time advisor to Peter Rogan and the Rogan Family. Dexia disputes that this completely describes Cuppy's role.

3.      David Miller is a former employee of Peter Rogan and worked for Bainbridge Management, L.P. and the former entity, Braddock Management, Inc. and performed accounting functions. Dexia disputes that this completely describes Miller's role.

4.      The Peter G. Rogan Irrevocable Trust 001 was established in Nassau, Bahamas and is a self-settled spendthrift trust.

5.      Presently, the United States, Dexia Credit Local, and Edgewater Medical Center hold judgments against Peter G. Rogan.

Dexia and the Rogan children disagree whether a number of the issues the Rogan children identify as contested are actually contested or relevant. The Court finds

as follows concerning those issues:

Paragraphs 1 & 3.[2]  These statements concern whether Peter Rogan committed a fraud on Northside Operating Group with respect to its purchase of Edgewater Medical Center in 1994.  Dexia contends it is irrelevant whether there was a fraud on those purchasers and what is relevant is the alleged fraud on the bondholders that financed the deal.  These issues, however, are interrelated; they involved the same acts and occurred at or around the same time frame.  The Court is thus not prepared to say that the existence of a fraud on Northside Operating Group is irrelevant.  That does not mean, however, that Dexia is required to prove such a fraud existed.  Dexia is entitled to frame its legal theory.  The Court will determine after the conclusion of the evidentiary hearing whether Dexia has proven what it needs to prove.

Paragraphs 9-13.  These statements concern the circumstances surrounding various trusts established in the names of the Rogan children.  Dexia contends these issues are irrelevant to the legal theories under which it seeks to obtain the assets of those trusts, including alter ego, nominee, sham trust, and constructive trust.  The Court disagrees with Dexia.  Though evidence concerning the formation and purpose of the children's trusts may not be dispositive, it is relevant to determination of whether those trusts currently hold the assets of Peter Rogan.  For example, to determine whether the trusts are Peter Rogan's alter ego, a factor the Court will have to consider is whether Rogan's alleged control over the children's trusts was exercised "to commit a wrongful act."  *In re Maghazeh*, 310 B.R. 5, 19 (Bankr. E.D.N.Y. 2004).  The Court must also

---

[2]These paragraph numbers refer to the statement of contested issues submitted by the Rogan children, docket no. 928.

consider the "general chronology of events" and the "inadequacy of consideration," among other factors. *Id.* at 17. The court in *Maghazeh* conducted this analysis with respect to a trust that was created at an earlier time before the fraudulent activity alleged in that case. *Id.* Though Dexia is relying primarily on a different theory here, the same sort of evidence is relevant to, though not necessarily determinative of, the current dispute.

Paragraph 15. This statement concerns the source of the funds received by the domestic trusts in 1994 following the sale of stock. This Court agrees with Dexia that this issue is not genuinely disputed. Whether the money that flowed to the trusts came directly from Peter Rogan or one of his companies, it is undisputed that Peter Rogan set up the structure that caused the money to flow into the trusts.

Paragraphs 20 & 38. The Rogan children argue that whether the domestic and Belizean trusts were established to conceal the assets of Peter Rogan and defraud his creditors is a contested issue. Dexia responds that this is not part of what it has to prove. Though the Court agrees that Dexia does not need to prove this proposition to succeed on at least some of its equitable theories, the matter is not entirely irrelevant. For example, the Rogan children might utilize evidence on this point to undermine Dexia's claim to equitable relief. *See In re Maghazeh*, 310 B.R. at 17-19.

Paragraphs 25, 29, 39, 44, 54 & 59. The Rogan children contest whether Peter Rogan or Cuppy possess the assets of the domestic or Belizean trusts. The Court agrees with Dexia that these issues are irrelevant. In the current proceedings, Dexia is attempting to recover assets in the possession of various trusts and individuals that it contends are actually the assets of Peter Rogan. Whether Rogan or Cuppy hold trust

9

assets has no relevance.

Paragraph 31.  The Rogan children contend it is relevant whether Judith Rogan is in possession of the assets of Peter Rogan or owes him money.  Though that issue may well be relevant in a citation proceeding against Judith Rogan, she is not participating in the upcoming hearing because proceedings against her are currently stayed under the Bankruptcy Code.  Her possession of assets has nothing to do with whether the various trusts or the Rogan children hold the assets of Peter Rogan.

Paragraphs 48-63.  These issues concern the RPP trust.  The Court agrees with Dexia that if (1) Dexia authenticates the exhibit or exhibits that comprise the RPP trust document and (2) thereby demonstrates that the RPP trust is a self-settled trust of which Peter Rogan can receive all of the trust's income and corpus, regardless of whether the trustee has discretion, then the issues identified in paragraphs 48-63 will no longer be relevant.  *See Dexia Credit Local*, 2009 WL 648634, at *6-9.  If Dexia fails to do so, then these matters will be relevant and contested.

Paragraphs 8, 16, 19, 21, 26-28, 34, 37, 40 & 45-46.  Dexia has responded to the issues identified in these paragraphs by stating they are disputed in part.  In each situation, Dexia appears to dispute either the implications of the issue as framed by the Rogan children or portions of the issue.  Most of these paragraphs concern the establishment, operation, control over, and actions of the various trusts at issue in these proceedings.  The Court concludes that the issues raised in these paragraphs are genuinely contested.

Paragraphs 64-68.  These paragraphs concern alleged fraudulent transfers.  The matters in these paragraphs are contested, though they are not among the issues to be

10

determined in the hearing commencing on March 30, 2009.

Paragraphs 2, 6-7, 14, 18, 22-24, 30, 32-33, 35-36, 41-43 & 47. Dexia and the Rogan children agree that the issues identified in these paragraphs are contested.

Dexia and the Rogan children also disagree whether a number of the issues Dexia identifies as contested are actually contested or relevant. The Court finds as follows with respect to those issues:

Paragraphs I.A.6-10.[3] Dexia contends that whether Peter Rogan created the Rogan children's trusts to protect his assets in anticipation of a lawsuit and funded them to keep assets from his creditors is contested. The Rogan children challenge this based on the proposition that Dexia admits Peter Rogan did not have creditors or anticipated creditors in 1992. The Court agrees with Dexia. Though Peter Rogan was not in debt in 1992, Dexia may be able to prove that based on his business activities, he anticipated he would need to create trusts to protect his assets against future liabilities.

Paragraphs III.B.1-6 & 13. See the discussion below regarding issue preclusion estoppel and default judgments.

Paragraphs III.B.7 & 9-10. These paragraphs concern whether Peter Rogan disclosed any fraudulent activities at various points in time. The proposition that Peter Rogan never disclosed fraudulent activities is not genuinely disputed. With respect to nature and timing of any fraudulent activities, Dexia is required to prove their existence and timing as otherwise set forth throughout this order.

Paragraph III.B.11. This paragraph concerns Dexia's actions with respect to

---

[3]These paragraph numbers refer to the statement of contested issues submitted by Dexia, docket no. 927.

issuing a $56 million letter of credit.  The Rogan children contend there is no evidence

to support the statements in this paragraph.  The evidence Dexia cites, the declaration

of John Flaherty, was submitted as part of Dexia's statement of additional facts in

opposition to the Rogan children's motion for summary judgment.  As the Court

previously stated on the record at a status hearing, the Rogan children are not bound by

facts submitted by Dexia in opposition to their motion for summary judgment.

Accordingly, the matters in this paragraph remain disputed.  Dexia may well be able to

establish these points at the evidentiary hearing via Flaherty's testimony.

Paragraphs I.A.1-5 & 9-11; II.A.1-15; III.A.1-5; III.B.8, 12 & 14-16.  Dexia and the

Rogan children agree that the issues identified in these paragraphs are contested.

Paragraphs I.B.1-5; II.B.1-5 & 7-8.  Dexia and the Rogan children agree that the

issues identified in these paragraphs are uncontested.

**3.      Issue preclusion, pleadings, and default judgment as evidence**

Dexia contends that based on the judgment entered against Peter Rogan in the

current case and judgments entered in two related cases, the Rogan children are barred

from relitigating certain issues pursuant to the doctrine of issue preclusion, sometimes

referred to as "collateral estoppel."  Those issues are detailed on pages 1-4 of Dexia's

brief in support of nonparty issue preclusion (docket no. 949).

The doctrine of issue preclusion bars parties from relitigating issues in a lawsuit

under the following conditions:

> 1) the issue sought to be precluded must be the same as that involved in
> the prior action, 2) the issue must have been actually litigated, 3) the
> determination of the issue must have been essential to the final judgment,
> and 4) the party against whom estoppel is invoked must be fully
> represented in the prior action.

*Washington Group Int'l, Inc. v. Bell, Boyd & Lloyd LLC*, 383 F.3d 633, 636 (7th Cir. 2004). The Court will address the first three elements of issue preclusion with respect to each issue identified by Dexia and will then analyze whether the fourth element is satisfied.

### a. Relitigation of issues that were previously decided

Dexia seeks to apply the doctrine of issue preclusion to a number of prior determinations concerning Peter Rogan's fraudulent activities. With respect to Dexia's alter ego, sham trust, and nominee theories, those prior determinations regarding fraud appear to be of limited relevance. Those theories are largely based on Peter Rogan's control over the trusts and their assets, as well as other factors including lack of consideration, relationship between the parties, and enjoyment of the benefits of the assets. *See, e.g.*, *United States v. Schaut*, No. 97 C 4114, 2001 WL 1665314, at *3 (N.D. Ill. Dec. 28, 2001); *In re Maghazeh*, 310 B.R. at 17-19.

Peter Rogan's fraudulent activities have more relevance to Dexia's constructive trust theory. "In order to impose a constructive trust, it is sufficient that a party has received money properly belonging to another under circumstances that, in equity, the party ought not be allowed to retain." *Jackson v. Callan Publishing, Inc.*, 356 Ill. App. 3d 326, 334, 826 N.E.2d 413, 423 (2005).

> It is well established that when a person's property has been wrongfully appropriated and converted into a different form, equity impresses a constructive trust upon the new form or species of property, not only while it is in the hands of the original wrong-doer, but as long as it can be followed and identified in whosesoever hands it may come, except those of a *bona fide* purchaser for value. [A] constructive trust may be imposed even though the person wrongfully receiving the benefit is innocent of collusion. By accepting the property, he adopts the means by which it was procured.

13

*Id.* (internal citations and quotation mark omitted). Thus, if the assets in the children's trusts were originally obtained by Peter Rogan's fraud, that fraud can follow those assets to the present day.

First, Dexia contends that the Rogan children are barred from contesting the matters asserted in paragraphs 91, 124, 151, 152, 155, 159, 160 & 185 of its second amended complaint. Paragraphs 91, 124, and 151-52 concern Peter Rogan's healthcare fraud scheme and how it involved payment of management fees to Rogan's companies. Paragraphs 155 and 159 are allegations that Rogan and his companies knew that Dexia would rely on financial information produced by those companies and that Dexia would not have issued a letter of credit had it been aware of the healthcare fraud. Paragraph 160 contains allegations about paying off the original 1994 bondholders. Finally, paragraph 185 is an allegation that Peter Rogan learned that in early 1999, the U.S. Department of Justice was investigating his healthcare fraud scheme.

The judge who was presiding over the case at the time entered default judgment in Dexia's favor on the second amended complaint. Factual allegations in a complaint, except those pertaining to damages, are deemed admitted upon entry of default judgment. *E.g.*, *Yang v. Hardin*, 37 F.3d 282, 286 (7th Cir. 1994). Looking at the second amended complaint as a whole, it is clear that the allegations listed above were essential to the default judgment in favor of Dexia. Dexia sued Peter Rogan for, among other things, fraud. These allegations provide important information regarding the history and nature of that fraud, going back to the healthcare fraud that made possible the sale of Peter Rogan's hospital, and that ultimately resulted in Dexia repaying the

14

bondholders whose money facilitated Rogan's fraud.

The Rogan children respond that "a default judgment is not a proper basis for collateral estoppel," because issue determined via a default judgment does not satisfy the requirement that it be "actually litigated." *Grip-Pak, Inc. v. Ill. Tool Works, Inc.*, 694 F.2d 466, 469 (7th Cir. 1982). There are, however, exceptions to that general rule. In one case, the Seventh Circuit cited *Moore's Federal Practice* for the proposition that, due to the requirement of actual litigation, "collateral estoppel does not apply to unlitigated issues underlying default or consent judgments." *Klingman v. Levinson*, 831 F.3d 1292, 1296 (7th Cir. 1987) (internal quotation marks omitted). Nevertheless, the Seventh Circuit gave preclusive effect to issues determined in a consent judgment where "*the parties could reasonably have foreseen the conclusive effect of their actions.*" *Id.* (emphasis in original) (internal quotation marks omitted). Relying on this principle, courts have given issue-preclusive effect to default judgments entered under conditions similar to those in the instant litigation. *See, e.g.*, *In re Bush*, 62 F.3d 1319, 1325 (11th Cir. 1995); *In re Bruetman*, 259 B.R. 649, 663 (Bankr. N.D. Ill. 2001) (citing *Klingman*, 831 F.3d at 1296) (default judgment given preclusive effect where defendant in underlying action appeared, answered complaint, and engaged in discovery, but then refused to comply with further court orders, resulting in entry of default judgment).

It is undisputed that Peter Rogan participated in this litigation for years, including filing pleadings and pursuing motion practice and discovery, before abandoning the case. He was represented by counsel until he decided to leave the country. Under these circumstances, the default judgment entered against him satisfies the "actually litigated" requirement. Accordingly, the allegations of second amended complaint that,

15

via the default judgment, are deemed to have been admitted, satisfy the first three elements for issue preclusion.

Second, Dexia seeks to bar the Rogan children from contesting a finding in related litigation that Peter Rogan's healthcare fraud scheme began no later than 1993.[4] *See United States v. Rogan*, 459 F. Supp. 2d 692, 700-01 (N.D. Ill. 2006) (*Rogan I*). As noted above, the nature and extent of Peter Rogan's fraudulent activities are relevant issues in the current supplementary proceedings. Some of the same issues were decided as part of the previous related litigation. *See generally id.* Admittedly, *Rogan I* did not concern whether there was any fraud in the sale of the hospital or the financing of that sale. The court in *Rogan I* did determine, however, the latest possible starting point of Rogan's healthcare fraud scheme. *Id.* at 700-01. That determination was essential to the decision in *Rogan I*. The government's claims in that case were for violations of the conspiracy provisions of the False Claims Act, 31 U.S.C. § 3729(a)(3). *Rogan I*, 459 F. Supp. 2d at 718-19. Examining the origins of the fraud and conspiracy, the court in *Rogan I* determined that Rogan and several doctors conspired in the early 1990s to arrange referrals to Rogan's hospital in return for kickbacks, resulting in substantial profits for Rogan. *Id.* at 700.

Third, Dexia contends that issue preclusion applies to findings in a related bankruptcy court proceeding that Peter Rogan's companies fraudulently obtained management fees. *In re Edgewater Med. Ctr.*, 344 B.R. 864 (Bankr. N.D. Ill. 2006)

---

[4]The Rogan children's brief on this issue indicates that they assume that Dexia seeks to establish more than this one fact based on the decision in *Rogan I*. That does not appear to be the case from Dexia's brief.

(*Rogan II*); *In re Edgewater Med. Ctr.*, 332 B.R. 166 (Bankr. N.D. Ill. 2005) (*Rogan III*).

The receipt of fraudulent management fees is an issue in this case because Dexia is

attempting to show that some of fees ended up in the Rogan children's trusts. The

Rogan children do not dispute that this issue was actually decided in *Rogan II* and

*Rogan III*. Moreover, the determination was essential to the decisions in those cases,

because the nature and amount of those management fees was one of the primary

determinations the court made. *See Rogan II*, 344 B.R. at 872-73; *Rogan III*, 332 B.R.

at 175.

**b.      Parties bound by the previous determinations**

Dexia does not contend that any of the Rogan children were actual parties to the

prior decisions it claims have preclusive effect in the current supplementary

proceedings. There are, however, six exceptions that permit a party to invoke issue

preclusion against a nonparty to the prior litigation. *See Taylor v. Sturgell*, --- U.S. ---,

128 S. Ct. 2161, 2172-73 (2008). Dexia contends that three of those exceptions apply

to the Rogan children.

First, "[n]onparty preclusion may be justified based on a variety of pre-existing

substantive legal relationship[s] between the person to be bound and a party to the

judgment." *Id.* at 2172 (internal quotation marks omitted). This is akin to the concept of

privity. *Id.* at 2172 n.8. According to Dexia, the Rogan children stand in the shoes of

the various trusts in this action, and those trusts are bound by the judgments against

Peter Rogan because they are his alter egos. The problem with that theory is that

whether the trusts actually are Peter Rogan's alter egos is an key disputed issue this

Court must resolve in the current proceedings. The Court will not put the cart before the

horse in this manner.

Dexia also contends the substantive relationship exception applies based on its contention that there was a conspiracy between Rogan and Cuppy in his role as trustee of the children's trusts. Again, determining whether Cuppy, as trustee, conspired with Rogan to hide his assets by sheltering them in the children's trusts is one of the disputed issues presented in the current proceedings. The Court cannot bind the Rogan children to prior decisions based on legal determinations that remain open questions.

That said, if Dexia proves its alter ego claims in this matter, the Court would be in a position to find that the Rogan children are bound by the determinations made against Peter Rogan. In other words, this aspect of the Dexia's argument in favor of issue preclusion will remain open until the Court has ruled on Dexia's contentions that the children's trusts are the alter egos of Peter Rogan.

Second, Dexia contends that the Rogan children are bound by the prior determinations because they were "adequately represented by someone with the same interests who [wa]s a party to the [prior] suit." *Id.* at 2172 (internal quotation marks omitted). With respect to the allegations of the second amended complaint in this case, the Court disagrees that Peter Rogan adequately represented his children's interests. To the contrary, he left the country mid-case, fired his counsel, instructed his former counsel not to accept service on his behalf, disregarded several court orders to appear, and abandoned the litigation entirely. This resulted in a default judgment. Such representation hardly can be characterized as adequate.

The situation is different, however, with respect to the *Rogan I* and bankruptcy

court matters.  Peter Rogan and his companies participated fully in those cases to their conclusion and were represented by counsel.  In fact, Rogan testified at trial in each of those cases.  Peter Rogan had the same interest in those cases as his children have in the present supplementary proceedings, namely, persuading the trier of fact that (1) he did not engage in healthcare fraud and (2) the management fees he and his companies received were not fraudulently obtained.  Accordingly, it is appropriate to preclude the Rogan children from relitigating these issues in the current proceedings.

Third, "a party bound by a judgment may not avoid its preclusive force by relitigating through a proxy."  *Id.* at 2173.  Dexia contends issue preclusion is appropriate because the Rogan children are merely agents or proxies through which Peter Rogan seeks to revisit prior rulings against him.  The party asserting issue preclusion bears the burden of proof as to the doctrine's applicability.  *American Nat'l Bank & Trust Co. of Chicago v. Regional Transp. Auth.*, 125 F.3d 420, 430 (7th Cir. 1997).  Though Dexia points to a number of circumstances that arguably suggest that the Rogan children are serving as Peter Rogan's agents, that conclusion is based on a series of inferences from aspects of their litigation strategy from which other equally reasonable inferences could be drawn.  For example, Dexia points to the fact that the Rogan children sought to challenge Dexia's claims to the assets of two trusts not in their names, the PGR trust and the RPP trust.  Though this could indicate that Peter Rogan directed their actions, it is equally plausible that the children, as potential beneficiaries of those trusts, were seeking to protect their own interests.  The other inferences Dexia attempts to draw are similarly flawed.

More to the point, with regard to the domestic and Belizean trusts in the Rogan

children's names, the children have a clear interest of their own – a claim to millions of dollars – in preventing Dexia from obtaining the assets of those trusts.  Based on that interest, the Court concludes that Dexia has failed to show that the Rogan children are acting as their father's agent or proxy in the current proceedings.

To summarize, the following determinations in prior cases are binding upon the Rogan children:  (1) Peter Rogan initiated a healthcare fraud scheme no later than 1993; and (2) management companies controlled by Peter Rogan fraudulently obtained more than $13 million in management fees.  The allegations of Dexia's second amended complaint in the present case, however, are not binding on the Rogan children at this time.  If Dexia establishes that the Rogan children's trusts are alter egos of Peter Rogan, the Court will be prepared to revisit this issue.

## Conclusion

For the reasons set forth above, the Court grants in part and denies in part Dexia's motion to bar the Rogan children from contesting certain facts at trial [# 918]. The Court has also made findings and rulings as set forth above pursuant to Federal Rule of Civil Procedure 16(c)(2)(A) & (P).

Date:  March 30, 2009

_____
MATTHEW F. KENNELLY
United States District Judge