**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DEXIA CREDIT LOCAL, f/k/a Dexia Public Finance Bank and Credit Local de France, | ) ) ) | |
| Plaintiff, | ) ) | |
| | ) | No. 02 C 8288 |
| v. | ) ) | |
| | ) | Judge Matthew F. Kennelly |
| PETER G. ROGAN, et al. | ) ) | Magistrate Judge Sidney I. Schenkier |
| Defendants. | ) ) | |
| v. | ) ) | |
| PETER G. ROGAN, | ) ) | |
| Citation Respondent, | ) ) | |
| v. | ) ) | |
| JUDITH K. ROGAN, | ) ) | |
| Third-Party Citation Respondent, | ) ) | |
| v. | ) ) | |
| FREDERICK M. CUPPY, | ) ) | |
| Third-Party Citation Respondent. | ) | |

**PLAINTIFF DEXIA CRÉDIT LOCAL'S MOTION FOR A RULE TO
SHOW CAUSE WHY PETER G. ROGAN SHOULD NOT
BE HELD IN CIVIL CONTEMPT FOR FAILING TO RESPOND
TO THE COURT'S CITATION TO DISCOVER ASSETS**

Scott Mendeloff
Gabriel Aizenberg
HOWREY LLP
321 N. Clark St.
Chicago, Illinois 60654
(312) 595-1239
*Attorneys for Plaintiff Dexia Crédit Local*

**PLAINTIFF'S EXHIBIT**

tables

6

## **TABLE OF CONTENTS**

Page

FACTS ........................................................................................................................... 1

I.  Rogan's Non-Compliance. .................................................................................. 2

    A.  Substantial Intentional Delay ................................................................... 2

    B.  Rogan Finally "Responds" to the Citation. ............................................. 6

        1.  Refusal to Produce Account Statements or Individual Instruments. ........... 8

        2.  Rogan Has Failed to Produce Records Required by the Citations of This Court and the Government; and the United States Citation and Subpoenas Cover a Smaller Time Frame than Does Dexia's Citation. ................................................................................................... 11

        3.  Additional Non-Compliance .................................................................... 12

ARGUMENT .............................................................................................................. 20

II.  ROGAN SHOULD BE HELD IN CIVIL CONTEMPT FOR FAILURE TO PRODUCE THE DOCUMENTS IDENTIFIED IN THE CITATION. ............................. 20

    A.  Applicable Standard. ............................................................................. 20

    B.  Application. ........................................................................................... 21

        1.  Rogan's Objection for Lack of Proper Service Should be Overruled. ............................................................................................. 21

        2.  Rogan's Objection to Requests Nos. 12-18 are Meritless. ...................... 23

        3.  Remedy:  Rule to Show Cause. ............................................................... 25

CONCLUSION ........................................................................................................... 26

# TABLE OF AUTHORITIES

## CASES

*In re Air One, Inc.*,
    75 B.R. 998 (Bankr. E.D. Mo. 1987)........................................................................23

*Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*,
    145 F.R.D. 84, 86 (N.D. Ill. 1992) ........................................................................19

*Anthony Marano Co. v. A. Stallone, Inc.*,
    No. 00-8019, 2002 WL. 31875471 (N.D. Ill. Dec. 24, 2002) .................................21

*Bally Export Corp. v. Balicar, Ltd.*,
    804 F.2d 398 (7th Cir. 1986).................................................................................22

*Dasenbrock v. Interstate Restaurant Corp.*,
    302 N.E.2d 195 (Ill. App. Ct. 1973).....................................................................22

*EEOC v. Paragon Restaurant, Inc.*,
    No. 95-667, 1999 WL. 231678 (N.D. Ill. Mar. 26, 1999) ......................................21

*Federal Loan Corp. v. Harris*,
    17 Ill. App. 3d 49 (Ill. App. Ct. 1974)..................................................................24

*Flip Side Products., Inc. v. Jam Prod., Ltd.*,
    No. 82-3684, 1990 WL. 186777 (N.D. Ill. Nov. 8, 1990)......................................22

*Gerald E. Kennedy v. Four Boys Labor Services, Inc.*,
    279 Ill. App. 3d 361 (1996) ..................................................................................24

*Harrell v. Bower Motors, Inc.*,
    No. 02-8252, 2004 WL. 1745758 (N.D. Ill. Jul. 30, 2004) ....................................22

*Hartford Fire Insurance Co. v. Perinovic*,
    152 F.R.D. 128 (N.D. Ill. 1993) ...........................................................................22

*In re Joint Eastern and Southern Districts Asbestos Litigation*,
    71 F.3d 1319 (7th Cir. 1995).................................................................................20

*Martin-Trigona v. Gouletas*,
    634 F.2d 354 (7th Cir. 1980).................................................................................24

*Martin v. C.D. Gray, Inc.*,
    110 F.R.D. 398 (N.D. Ill. 1986), *aff'd*, 1986 WL 7348 (N.D. Ill. 1986) ................23

*Terry Regan and Dennis Egan v. Garfield Ridge Trust & Savings Bank,*
247 Ill. App. 3d 621 (1993) ......................................................................................................... 24

*Textile Banking Co., Inc. v. Rentschler,*
657 F.2d 844 (7th Cir. 1981) ...................................................................................................... 20

*In re Word of Faith Fellowship, Inc.,*
1996 WL 281357, at *2 (Bankr. N.D. Ill. 1996) ....................................................................... 19

## STATUTES

735 ILCS 5/2-1402 ................................................................................................................... 1, 20

735 ILCS 5/2-1402(a) ................................................................................................................... 20

Fed. R. Civ. P. 4(c)&(e) ............................................................................................................... 21

Fed. R. Civ. P. 4(f)(3) ............................................................................................................... 1, 22

Fed. R. Civ. P. 26(c) .................................................................................................................... 11

Fed. R. Civ. P. 69 .......................................................................................................................... 1

Fed. R. Civ. P. 69(a)(2) ............................................................................................................... 20

## STATE

Ill. S. Ct. R. 105(b) ..................................................................................................................... 21

Ill. S. Ct. R. 277(c) ...................................................................................................................... 21

Ill. Sup. Ct. R. 277 ....................................................................................................................... 20

Ill. Sup. Ct. R. 277(a) ................................................................................................................... 20

On May 3, 2007, the Court entered a judgment in this matter for $124,280,712.70 against defendant Peter G. Rogan ("Rogan"). On June 7, 2007, the Court issued a Citation to Discover Assets ("Citation") to Rogan, which Citation plaintiff Dexia Crédit Local ("Dexia") thereafter served upon him pursuant to an order issued under Fed. R. Civ. P. 4(f)(3). As he has throughout this case, Rogan failed to comply with this Citation, refusing to produce virtually any of the documents requested. Thus, pursuant to Fed. R. Civ. P. 69 and 735 ILCS 5/2-1402, Dexia moves this honorable Court to order Rogan to appear in person before the Court to show cause why he should not be held in civil contempt for his failure to comply with the Citation.

## FACTS

On June 7, 2007, this Court issued its Citation to Rogan, which obligated production of the requested documents by July 5, 2007.[1] The Citation warned in bold capital letters that the:

> failure to appear and answer as herein directed may cause you to be arrested and brought before the court to answer to a charge of contempt of court, which may be punishable by imprisonment.

Dexia expeditiously caused service of the Citation upon Rogan.[2] Despite Dexia's repeated efforts to obtain the requested documents, Rogan has failed to produce the documents, and has continued his practice of working to thwart Dexia's efforts to discover his assets.

---

[1] The Citation conditioned the commencement of the citation examination upon a full and complete production of the requested documents.

[2] *See infra* at 2.

1

## I.      ROGAN'S NON-COMPLIANCE.

### A.      Substantial Intentional Delay.

Rogan failed to respond in any way to the Citation by the production deadline of July 5, 2007. A day later, on July 6, 2007, Patrick Deady, Rogan's appellate counsel in *U.S. v. Rogan*, delivered a letter to Dexia's counsel, claiming that Rogan had been traveling since June 25, 2007, had not yet received the Citation, would not receive it until his return to Vancouver the following week, and then would respond to it.[3] In a response dated July 10, 2007, Dexia pointed out that Rogan's travels did not excuse his failure to respond because: (a) the July 6th letter acknowledged that Dexia had effected service on at the latest June 20th, and Rogan did not leave for his trip until five days later; (b) Rogan thus had five days to initiate the gathering and timely production of records; (c) those five days also gave Rogan more than enough time to arrange a means by which he could orchestrate the production of records from afar; and (d) Rogan obviously knew in advance that he would be gone on July 6th, but waited until after the due date to finally inform Dexia of the conflicts allegedly interfering with his timely compliance.[4]

After receiving notice from Mr. Deady on July 11th that he was not representing Rogan in relation to the Citation,[5] Dexia immediately sent Rogan a letter via his Canadian counsel: (a) reiterating the points of Dexia's July 10th letter to Mr. Deady; (b) warning that Dexia would file a Rule to Show Cause unless Rogan committed by July 12 to make full

---

[3] Ex. 501 (July 6, 2007 letter from P. Deady to E. Pruitt).

[4] Ex. 502 (July 10, 2007 letter from E. Pruitt to P. Deady).

[5] *Id*. Mr. Deady also informed Dexia that Mr. Deady's July 6th letter was intended to be sent in his capacity as Rogan's registered agent and not as counsel. Ex. 503 (July 11, 2007 letter from P. Deady to E. Pruitt). Notably, notwithstanding his July 11th attempt to distinguish his July 6th letter, Mr. Deady's representations in that earlier letter are nevertheless admissions attributable to Rogan, for Deady was serving as Rogan's agent and speaking about facts related to that function.

production by July 20th; and (c) notifying Rogan that Dexia had obtained a Court order
approving Dexia's means of serving the Citation.[6]

On July 16, 2007, Rogan's Canadian counsel acknowledged receipt of the
Citation, stated that Rogan has been out of town, and that he would respond to the requests
"shortly."[7] Rogan's Canadian counsel contended that Rogan already produced most of the
documents Dexia requested to the government, and attached a letter that counsel had transmitted
to the government some seven months earlier – on December 11, 2006 – responding to the
government's citation. Rogan's December 11, 2006 letter to the government (on which Dexia
had not been copied) stated that most of the documents the government sought in its Citation had
been among those abandoned at Rogan's former office at 240 East 90th Drive in Indiana and
attached a list of additional documents Rogan purportedly produced to the government.[8]

On July 27, 2007, Rogan's Canadian counsel sent Dexia 11 documents along with
a cover letter claiming that the remainder of the documents for which Dexia's Citation called had
either been abandoned at Rogan's Indiana office or had been produced to the government.[9]
Dexia reviewed the abandoned documents (110 boxes, the vast majority of which were
irrelevant) and the records Rogan produced to the government in December 2006. These records
plainly failed to satisfy Rogan's production obligations under the Citation. Moreover, at
Rogan's abandoned Indiana offices, Dexia discovered revealed strong proof that Rogan had

---

[6] Ex. 504 (July 11, 2007 letter from E. Pruitt to P. Rogan c/o Canadian Counsel).

[7] Ex. 505 (July 16, 2007 letter from K. Wellburn to E. Pruitt & attached December 11, 2006 letter to DOJ).

[8] *Id.*

[9] Ex. 506 (July 27, 2007 letter from K. Wellburn to E. Pruitt).

shortly before his departure purged his office of many highly pertinent documents, either shredding or removing them, which documents Rogan had failed to produce.[10]

The depth of Rogan's contemptuousness here is palpable: (i) first, Rogan improperly withheld highly material financial records located in his offices that were responsive to this Court's June 9 and August 4, 2004 discovery orders in this case; (ii) then, in or about mid-2006, Rogan caused those documents to be removed from his offices or shredded; (iii) next, in or about October 2006, Rogan abandoned his offices when he absconded to Canada; (iv) later, in response to this Court's Citation calling for production of those same documents that had been the subject of this Court's June 9 and August 4, 2004 discovery orders, [11] Rogan claimed to have abandoned them in his offices.

On October 18, 2007, Dexia sent Rogan's Canadian counsel a 14-page letter, explaining in detail how the documents Rogan had abandoned at his Indiana office and those produced to the government did not meet Rogan's production obligations under the Citation.[12] Furthermore, Dexia's October 18th letter provided new proof of Rogan's then-recent contacts with the Trustee of the PGR Bahamas Trust. The letter noted that: (a) Dexia had learned form

---

[10] *Id*. at 2-3. *See Dexia v. Rogan, Motion for a Rule to Show Cause Why Rogan Should Not Be Held in Criminal Contempt ("Criminal Contempt Motion")*, at 32-34. Dexia asked Rogan immediately to: (i) notify Dexia if Rogan had indeed destroyed or removed responsive documents; (ii) identify each and every one of these documents; (iii) immediately produce any responsive documents he removed, including documents contained on his laptop computer; and (iv) explain why he destroyed any responsive documents. Ex. 506 (July 27, 2007 letter from K. Wellburn to E. Pruitt, at 3). Rogan did not respond.

[11] One of the categories of missing records Dexia identified – communications with Oceanic Bank and Trust – is of particular note in light of the recent production from Oceanic Bank. Of course, in July-October 2004, Dexia repeatedly pressed its proof that such records were within Rogan's possession, custody and control. Similarly, during that same time, this Court repeatedly responded with strident warnings to Rogan about the perils of discovery abuse. Nevertheless, Rogan responded by: (i) committing a fraud upon the Court by intentionally producing an incomplete copy of the PGR Bahamas Trust agreement; (ii) affirmatively lying to the Court about his ability to obtain and produce trust records; and (iii) interfering with the efforts of his counsel dutifully to comply with the Court's orders. *Criminal Contempt Motion*, at 3-28.

[12] Ex. 5 (October 18, 2007 letter from E. Pruitt to K. Wellburn).

4

Mrs. Rogan's attorney (Michael O'Rourke) that Oceanic was no longer the Trustee for the PGR Bahamas Trust;[13] (b) "in order for Mr. O'Rourke to have this knowledge, Oceanic Bank must have been in communication with Mr. Rogan or attorneys/agents working on Mr. Rogan's behalf";[14] and thus (c) there must be some records pertaining to the transfer of the Trust. Dexia demanded production of any and all records evidencing such a communications and developments, *e.g.*, telephone records, travel records, bank records, notes.[15]

Dexia's October 18th letter went on to identify a number of other categories of non-production. The letter most significantly:

➢ Specifically enumerated account records for numerous bank accounts held by Rogan and Rogan-controlled entities (identified by bank, account number, and the time period for which records were missing);[16]

➢ Numerous categories of records pertaining to the RPP Trust;[17]

➢ Credit and debit card statements for January 1, 2004 through the present;[18]

➢ A copy of Rogan's current passport;[19]

➢ A copy of all documents related to applications for temporary or permanent residency in any foreign county;[20] and

➢ Documents evidencing Mr. Rogan's travel for the period January 1, 2004 through the present.[21]

Dexia received no response to its October 18th letter.

---

[13] Ex. 5 (October 18, 2007 letter from E. Pruitt to K. Wellburn, at 12).

[14] *Id.*

[15] *Id.* Upon information and belief, Dexia states that Rogan traveled to The Bahamas in or about late 2006 or early 2007.

[16] Ex. 5 (October 18, 2007 letter from E. Pruitt to K. Wellburn, at 7-9).

[17] *Id.* at 6.

[18] *Id.* at 4-5.

[19] *Id.* at 11-12.

[20] *Id.*

[21] *Id.*

On November 2, 2007, Dexia sent a second letter to Rogan's Canadian counsel urging the production requested.[22] This time, Rogan's Canadian counsel responded that same day, claiming that Rogan was preparing a response to Dexia's October 18th letter.[23] Nevertheless, Dexia received nothing from Rogan or counsel. On November 22, Dexia sent still another letter to Rogan's Canadian counsel again pressing for production.[24]

## B.     Rogan Finally "Responds" to the Citation.

On December 5, 2007, **after five full months of delay**, Dexia finally received a response from Rogan's Canadian counsel to the Citation.[25] Unfortunately, Rogan's extremely generalized responses continued his long-established pattern of evasiveness and prevarication. For example, Rogan's counsel stated that she could not comment upon Dexia's representation that the materials abandoned in his Indiana office without an itemization of the relevant materials

---

[22] Ex. 507 (November 2, 2007 letter from E. Pruitt to K. Wellburn).

[23] Ex. 508 (November 2, 2007 letter from K. Wellburn to E. Pruitt).

[24] Ex. 509 (November 22, 2007 letter from E. Pruitt to K. Wellburn).

[25] With the letter, Rogan produced a single document: an unexecuted copy of Rogan's 2006 IRS Form 3520 – Annual Return to Report Transactions with Foreign Trusts and Receipt of Certain Foreign Gifts, including a partial copy of an IRS Form 3520-A and 2006 Federal Grantor Information form for CFMT, Ltd. setting forth information regarding income and deductions for the PGR Bahamas Trust ("2006 Form 3520 and Related Documents"). In a December 14, 2007 letter to Rogan's Canadian counsel, Dexia noted that Rogan never before had produced any other Federal Grantor Information forms for CFMT – even though CFMT has been in existence for many years and thus such forms should have been prepared previously. Thus, Dexia requested that Rogan produce these forms for prior years. Ex. 510 at 2 (December 14, 2007 letter from E. Pruitt to K. Wellburn). On January 8, 2008, Rogan's Canadian counsel refused to produce a copy of the CFMT attachments referenced in the 2006 Federal Grantor Information form, claiming that "a third party inadvertently produced the Federal Grantor form previously and that this form is not a document belonging to Mr. Rogan." Rogan's counsel then asked Dexia to return this document so that "we can try to return it to its rightful owner." Ex. 511 (January 8, 2008 letter from K. Wellburn to E. Pruitt). Dexia refused.

6

found there, and denied that Rogan had any control over 2004-06 information or documents in

the names of PGR Properties, Edgewater Property Company, or JKR Business.[26]

            Furthermore, as to the Oceanic records, Rogan's counsel responded to Dexia's

letter as follows:

> With respect to communications concerning Oceanic Bank & Trust, Mr. Rogan
> does not have any records or documents concerning that entity. We do not
> understand your assumption that any information provided by the lawyers for
> Mrs. Rogan was provided to him by Mr. Rogan.[27]

The disingenuousness of this position is clear in a number of ways: (a) despite this Court's

numerous admonitions to Rogan clearly articulating the scope of Rogan's production

responsibilities under the "possession, custody and control" standard, the letter focuses only

upon what Rogan physically possesses, and not what Rogan can obtain; (b) the Oceanic

production makes clear that Rogan then had the ability to access and produce a large number of

documents pertaining to communications with Oceanic; (c) less than a year before Dexia served

Rogan with the Citation, Rogan personally wrote the Trustee to request that it issue a credit card

directly payable by the Trust itself;[28] (d) less than a year before Dexia served the Citation upon

Rogan, Rogan was amidst the selection of a new trustee for the PGR Bahamas Trust and

---

[26] Ex. 512 (December 5, 2007 letter from K. Wellburn to E. Pruitt, at 1-2). Rogan claimed he lacked conterol over these entities' documents, even though, for example, he was the sole corporate representative of EPC and PGR during the five-week trial before Bankruptcy Judge Bruce Black in 2006 and made post-trial filings on their behalf in 2007. *Statement of Facts*, at 119 & n.439.

[27] Ex. 512 at 5 (December 5, 2007 letter from K. Wellburn to E. Pruitt).

[28] Rogan repeatedly wrote the Trustee about the issue. Rogan sent the Trustee completed credit card applications along with a letter stating: "Because Judy and I will both be traveling over the near future, once you receive the credit cards please forward both of them to Fred Cuppy...." *Statement of Facts*, at 90-91 & n.299; Ex. 247 (OB 1045). On August 18, 2006, Rogan sent the Trustee a letter confirming that he wanted the credit cards in the names of himself and his wife and instructing the Trustee to deliver them to Cuppy. Ex. 513 (OB 750-51).

7

necessarily had communications relating to that process;[29] and (e) <u>Plaintiff Dexia Credit Local's</u> <u>*Statement of Facts* in Support of its Motion For a Temporary Restraining Order and a</u> <u>Preliminary Injunction Freezing Assets, and an Order Turning Over the Assets of Peter G. Rogan</u> ("*Statement of Facts*") contains voluminous proof that Rogan and Cuppy repeatedly acted on Judy Rogan's behalf and orchestrated her actions regarding the Trust, belying the suggestion that Mrs. Rogan would somehow have independent knowledge of important changes in Rogan's Bahamas trust.[30]

To establish Rogan's failure to comply with the Citation, we review first an overarching issue in his response and then examine the myriad flaws in Rogan's responses to the several specific Citation requests.

### 1. Refusal to Produce Account Statements or Individual Instruments.

Setting to one side his history of complete concealment of assets, the next largest flaw in Rogan's responses to discovery throughout this case has been their repeated refusal to provide the ***individual instruments*** (front and reverse)[31] used to effectuate individual transactions identified in and underlying monthly statements of account at financial institutions and other vendors. Denied these documents, a judgment creditor is crippled in its efforts to trace Rogan's sources and applications of money to discover the location of assets. Throughout this litigation, Dexia has repeatedly identified with specificity these as items that must be produced,

---

[29] *See Criminal Contempt Motion* at 32-34.

[30] *See Statement of Facts* at 68-91, 96-103, 133-39.

[31] Dexia cannot emphasize strongly enough the need for production of both sides of the individual instruments, for the reserve sides contain critical proof of the disposition of the instruments (date and location of deposit). The *Statement of Facts* includes evidence revealing the Rogans' efforts to take advantage of this issue to conceal transfers between them. On several occasions, Judy Rogan wrote checks to "cash," which checks Peter Rogan then endorsed and deposited. See, e.g., *Statement of Facts* at 81-84. Without the reverse side of the check, Dexia would not have been able to trace this movement of funds.

and throughout, the Rogans and Cuppy have ignored these instructions. This has occurred once again in relation to the Citation. The Citation and Dexia's October 18th letter prominently mention the fact that the Citation seeks these sorts of account records.[32]

Nevertheless, in his December 5, 2007 response, Rogan states that: (a) requiring Rogan to comply would be oppressive because the United States already has subpoenaed the same records; (b) the process of retrieving the requested documents would be expensive and "*for the most part* duplicative of the documents already produced" (emphasis supplied);[33] (c) he would comply only if Dexia would bear the cost of obtaining these documents from the various financial institutions; and (d) with regard to credit card statements, he "does not retain copies of those statements and they already have been subpoenaed by the US government."[34]

That Rogan attempted such an obvious tactic of delay and evasion after putting off even a response for more than five months is brazenly contemptuous. First, the Court has notified Rogan in the past that he must obtain records of this sort himself and cannot force Dexia to subpoena them.[35] Second, Rogan's argument that the government has subpoenaed the same records is meaningless if Rogan has not complied with that subpoena; Rogan's production to the government entails incomplete statements of account at financial institutions and utterly fails to

---

[32] For example, the ¶¶ 2-3 of the Citation specifically request: "wire transfer records, canceled checks,... deposit slips, withdrawal slips" for a large number of specifically identified accounts (¶2) and for "any other bank or investment account... held by or for the benefit of: Peter Rogan, Judy Rogan" and their children. (¶3) And, ¶¶9-10 of the Citation specifically lists "checks" as the type of record to be produced in relation to the records sought in those paragraphs. Ex. 2 (Peter Rogan Citation).

[33] Ex. 512 (December 5, 2007 letter from K. Wellburn to E. Pruitt, at 2). Obviously, the qualification Rogan places on this statement reveals its fallaciousness. Clearly, any portions that are not duplicative cannot be obtained from the production Rogan made to the United States.

[34] *Id.*, at 2.

[35] Ex. 296 (*Dexia v. Rogan*, Transcript of Proceedings on March 31, 2005, at 22-23).

include any individual financial instruments (*e.g.*, checks, *etc.*) and transaction records (*e.g.*, wire transfer records) underlying those accounts.

Third, the fact that Rogan did nothing over the five months from the time Dexia served him with the Citation the date of counsel's letter on December 5th to begin to collect these records speaks volumes about his intention to comply. In fact, the Court has specifically criticized just this tactic when Rogan has employed it previously:

> …from the beginning, at least in my exposure to the case, you know, I think that there has been a lot of effort required to get things where it shouldn't require as much effort as it did. There was a large motion that was filed that initially came to me that was the subject of then an order in June that was an agreed order, and agreed order. And since August we've been doing very little except fighting over production of things that were within the agreed order.

> Now some of these things … these discovery requests were served long ago. … why is it that now, only several months after an order that's entered by agreement to produce documents is that inquiry made? I mean given the nature of the case, did somebody really think that his tax returns weren't going to be produced? I mean, really?

> So instead of taking steps to start to assemble things that you all know were going to be produced, … it lingers. There's a motion. There's an order. Then, oh my gosh, I've got to assemble it two months past, and now we're four months past.[36]

Rogan's manipulation of the process is also evident in his last two communications on the missing Citation materials. When counsel stated in her letter of November 2nd that Rogan was preparing a response to Dexia's October 18th extensive itemization of missing documents, Dexia hoped for supplemental production, and expected at least a substantive reply. Instead, more than a month later, Rogan's counsel provided 4½ pages of loosely organized, repetitive and unsupported evasiveness.

Fourth, Rogan cites no authority for the proposition that a judgment debtor can recover the costs of complying with a citation, and this position makes no sense. The purpose of

---

[36] Ex. 296 (*Dexia v. Rogan*, Transcript of Proceedings on March 31, 2005, at 29).

issuing a citation upon a recalcitrant judgment debtor is to discover assets that can satisfy the judgment. The judgment creditor should not have to pay the judgment debtor to discover these assets. Moreover, Fed. R. Civ. P. 26(c) only requires the payment of costs if the responding party makes a showing that complying with the discovery request will impose an undue burden. Rogan has not even attempted to satisfy this standard.

Fifth, Rogan's request for costs is inconsistent with the practice of the parties in this litigation to bear their own costs of production.

Rogan has failed to comply with this most critical element of the Citation Requests across the board.

> **2.** **Rogan Has Failed to Produce Records Required by the Citations of This Court and the Government; and the United States Citation and Subpoenas Cover a Smaller Time Frame than Does Dexia's Citation.**

Although it is not bound to do so,[37] Dexia will not require Rogan to produce to it any document that Rogan can show he *or* Cuppy *actually produced* to the government. Short of that, however, the mere fact that the government may have *requested* by its citation or subpoenas some of the same categories of documents that are included in this Court's Citation does not excuse Rogan's failure to comply with this Court's Citation because: (a) Rogan has failed to produce the requested records either to the government or Dexia, especially but not only records of individual transactions (*e.g.*, checks, wire transfer receipts, *etc.*); and (b) the government's citation and subpoenas only cover the time period until November 2006, while the Court's Citation requires the production of records to and including **the present**. The categories of documents falling into this latter tranche are records of: credit and/or debit card (Citation

---

[37] This Court specifically recognized the validity of a party seeking the same documents or set of documents from different sources in order to make sure that they're getting what they asked for. Ex. 70 (*Dexia v. Rogan*, Transcript of Proceedings on September 9, 2004, at 8).

11

Request #1); annuities, brokerage accounts, and mutual funds; numerous financial institutions detailed in the Court's Citation and Dexia's October 18, 2007 letter to Rogan.[38]

### 3. Additional Non-Compliance.

Rogan's responses to many of the individual Citation requests provide additional clear examples of his groundless non-compliance.

**Request No. 1–All Documents Relating to Rogan's Assets and Liabilities.**

*Financial Institution/Credit or Debit Card Records.* Here, the Court's Citation encompasses financial institutions' records that the government did not subpoena, such as the statements and account detail for the credit cards held by Rogan and his family listed below.:

- Citi AAdvantage Master Card # xxxx xxxx xxxx 8592 (1/1/07-present)
- Citi Aadvantage Visa Signature Card # xxxx xxxx xxxx 1172
- United Mileage Plus Visa Account # xxxx xxxx xxxx 5278
- American Express Platinum # xxxx xxxxxx x3007
- Vancity Enviro Gold Visa # xxxx xxxx xxxx 1961.

Further, the government's subpoena did not encompass any of the financial records and account detail generated between the issuance of the government's subpoena on November 13, 2006 and June 7, 2007 when the Court's Citation was issued that related to Rogan's assets and liabilities. Even where there is overlap between the government's citation and Dexia's Citation, Rogan has failed in either case to produce the individual instruments used to pay the monthly bills.[39]

*Copies of notes payable and receivable.* Dexia's review of Rogan's financial activity since 1994 reveals that he allegedly frequently employs notes (particularly oral,

---

[38] These institutions include: Chase, Citibank, Morgan Stanley, Putnam Investments, and First USA Bank.

[39] *See supra* at 8-9 & nn.31-32.

12

unrecorded notes). With this in mind, Rogan's failure to respond to the request that he identify all notes payable or receivable to which he has been a party during the period 1994 through the present is problematic, especially in light of the recent movement of Rogan's funds offshore.[40] Rogan's response on this subject does not help, for he will only state that the materials he produced to the United States and/or the materials that he abandoned at his Indiana office contain copies of notes payable and receivable. By refusing to say whether these are the universe of notes payable and receivables, Rogan prevents Dexia from resolving the completeness of his production in this realm and precludes a complete analysis of his assets.

*Domestic or foreign trusts.* This request requires Rogan to produce "[a]ll documents (written or electronic) ... including ... domestic or foreign trusts for which you are settlor, beneficiary or trustee, including... the RPP Finance Trust and any corporations... in which they own an interest." Rogan has produced nothing pertaining to the PGR Bahamas Trust, RPP Trust, or any corporations in which they hold an interest (with the exception of a tax document Rogan contends he produced inadvertently).

Rogan suggests that his production to the United States and the documents he abandoned at his Indiana office contain responsive documents relating to the PGR Bahamas Trust, the RPP Trust, and corporations, partnerships or other entities in which they own an interest, and other than that "he has no further documents in his possession or control."[41] No domestic or foreign trust records were present in either location and Rogan has produced none. Moreover, Oceanic production shows that Rogan controls those trusts, which makes abundantly clear the falsity of Rogan's contention that "he has no further documents in his possession or

---

[40] *See Statement of Facts*, at 95, 97-100, 123-26. *See also id.* at 25-27, 53, 72-74 (Cuppy emails revealing steps taken to avoid U.S. Courts and discovery); 90-91 (Cuppy and Rogan attempting to arrange mobile access to trust funds while traveling outside the U.S.).

control,"[42] *i.e.*, that he lacks the practical ability to obtain such documents from others.[43] Furthermore, the record of recent events strongly suggests that Rogan does possess such documents of this sort (*e.g.*, on his computer).[44]

As to RPP Trust, RPP Ltd., and any businesses or entities they may hold or control (collectively "the RPP entities"), the documents missing from production by Rogan and Cuppy[45] include complete records of: (a) the source for relating to Rogan's initial funding of any of the RPP entities; (b) the formation and original owner of RPP Finance, Ltd.; (c) the accounts held in the name of the RPP entities that it owns or controls through to the present and not yet produced by Cuppy, including especially individual transaction records;[46] (d) all real estate transactions of the RPP entities, including mortgages and notes issued and all instruments relating to those deals; (e) transactions and other events in any way affecting the trust or its assets since Rogan and Cuppy purported to appoint new trustees, *i.e.*, Messrs. McNeilly and Jennings; and (f) any communications with Cuppy, Troy Myers, John Foley, John Tatooles, Matthew McNeilly, William Jennings, or others regarding the RPP entities.

*Other trusts.* The PGR Bahamas Trust, RPP Trust, and Rogan Children's Trusts (Florida and Belize) are the only Rogan-related trusts of which Dexia is aware. Nevertheless,

---

[41] Ex. 512 (December 5, 2007 letter from K. Wellburn to E. Pruitt, at 3).

[42] *Statement of Facts*, at 54-64, 67-102, 105-10, 116-17, 126-39; *Motion for a Rule to Show Cause Why Rogan Should Not Be Held in Criminal Contempt*, at 4-5, 41-54.

[43] As Dexia explains above and in its *Statement of Facts* at 102-03 & n.354, Rogan knows and has reason to know the meaning of "control" in the discovery context.

[44] *See infra* at 15-16.

[45] While Rogan has failed to provide any documents pertaining to the RPP Trust or RPP Ltd., Cuppy has begun to provide some records. Notably, that production is nevertheless far from complete.

[46] Cuppy has produced some but not a complete set of account records for holdings by RPP Ltd., but has completely failed to produce even a single record of individual transactions (*e.g.*, checks or wire transfers) for those accounts.

Rogan has evinced a troubling record of concealment of his assets, especially details pertaining to offshore trusts. In fact, as described in Dexia's *Statement of Facts*, Rogan and Cuppy concealed the RPP Trust for years, and its existence only came to the fore due to Dexia's independent investigation.[47] It is critical therefore that Rogan certify under penalty of perjury the identity of every foreign or domestic trust with which he has ever been associated, including without limitation as settlor/grantor, trustee (directly or indirectly through ownership or control of an entity that serves as a protector) or beneficiary.

*Vancouver Property Lease.* Rogan has produced a Lease Addendum dated April 5, 2007 for a residence in Vancouver, which makes reference to a Lease dated October 21, 2007. On December 10, 2007, Rogan's Canadian counsel claimed that Rogan "is searching for a copy of the original lease."[48] Though a simple call to his Vancouver landlord would yield a copy of the lease, Rogan has yet to produce it. Rogan has also not produced: (a) any checks or other instruments used to pay his rent; or (b) any communications related to the lease and Addendum, including communications in the possession of his counsel and/or other advisors.

### Request No. 3–Account Documents for Accounts Not Identified in Request No. 2.

This request seeks all of the same types of records identified in relation to known accounts for "*any other bank or investment account not identified in [Request] No. 2…."* Rogan's only objection to this request was that he already had produced responsive documents to this request to the United States and that the materials Rogan abandoned contained documents responsive to this request.[49] In response, Dexia notified Rogan that Dexia had reviewed these documents and did not locate *any* documents relating to bank or investment accounts not

---

[47] *Statement of Facts* at 110-23.

[48] Ex. 514 at 2 (December 10, 2007 letter from K. Wellburn to E. Pruitt).

[49] Ex. 506 (July 27, 2007 letter from K. Wellburn to E. Pruitt, at 6).

15

identified in Request No. 2 held by or for the benefit of the persons/entities listed.[50]  Rogan's

December 5, 2007 letter ignores this valid request completely.  Again, in light of Rogan's history

of long-term concealment of numerous critical records in this case, it is critical therefore that

Rogan certify under penalty of perjury the identity of every financial institution account with

which he has been directly or indirectly associated since in or after 1994, including accounts in

the name or for the benefit of Rogan, Judy Rogan, the Rogan children, or any business, trust or

other entity directly or indirectly associated with any of the foregoing people.

**Request No. 5-Rogan Family Tax Returns.**

　　　　　In response to Dexia's request for Rogan family tax returns, Rogan states that the

only such tax returns in his possession and control are the joint tax returns of himself and Judy

Rogan for 2005 and 2006, which he had already produced.[51]  Even if this were true (which it is

not), Rogan's production remains deficient for, Rogan still has failed to produce:

> ➢ **2006 – Judy and Peter Rogan**.  A complete, signed copy of Peter and Judith Rogan's
>    2006 state and federal tax returns, including all related gift tax returns, K-1s, W-2s, Form
>    1099s, Form 1044s, Form 3520, Form 3520-A, Federal Grantor Information Form, and any
>    accompanying worksheets, schedules or attachments.

Moreover, notwithstanding his claims to the contrary, Rogan has failed to produce numerous

other important records under this rubric.

> ➢ **2002-06 – Form 3520-A Federal Grantor Information Forms for CFMT.**  Rogan
>    produced this form for the year 2006, and then tried to get it back.[52]  As Dexia explains
>    in its Freeze/Turnover Motion, the 2006 Federal Grantor Information Form related to

---

[50] Ex. 5 (October 18, 2007 letter from E. Pruitt to K. Wellburn, at 9).

[51] Ex. 514 (Letter from K. Wellburn to E. Pruitt, at 2).

[52] *See supra* at 6 n.25.

CFMT, including its attachments, is within Rogan's "control" – he easily can obtain them from Cuppy, as evidenced by his production of the form for 2006.

➢ **2004-2006 – Rogan children**. In discovery, Rogan produced tax returns for two of his children for the years 2002-2004, showing that these returns were in his possession, custody, or control. Rogan has failed to produce complete, signed copies of the 2004, 2005, and 2006 state/federal tax returns for Robert Rogan, Brian Rogan and Sara Rogan, including all related gift tax returns, K-1s, W-2s, Form 1099s, Form 1044s, Form 3520, Form 3520As, and any accompanying worksheets, schedules, or attachments. Given Rogan's effort to funnel assets and income through his children, these returns are especially relevant.

## Requests No. 7-8–PGR Business, Rogan Family, and Rogan Entities Peachtree Records.

During discovery, Rogan and his entities produced accounting ledgers (and the underlying paper documentation) in paper and electronic form generated via a program called Peachtree. The production varied from entity to entity and account to account. Some records have been produced through December 31, 2007, while others cut off in years earlier. The Citation requests such records for those entities through the present, especially: (a) PGR Business/Rogan Family. Electronic ledgers for the period January 1, 2004- present and paper records covering the period December 1, 2006-present; and (b) Rogan Entities. Electronic ledgers for the period January 1, 2004-present and paper records for the period December 1, 2006-present for Bainbridge Management LP, Bainbridge Management Inc., BFB, Ltd., Edgewater Property Company and PGR Properties, Inc.

In response to this portion of the Citation, Rogan argued that he already had produced documents responsive to this request to the United States and in the materials he

17

abandoned.[53] Dexia responded that he was wrong.[54] Also, Dexia noted that the Peachtree

records Rogan produced to the United States bear a time/date stamp indicating that the records

**were generated** from an electronic database **on December 4, 2006**.[55] In response, Rogan

astoundingly claims that although he produced Peachtree records generated in December 2006,

these records "must have been printed by someone else in possession of a computer containing

Peachtree records."[56] Irrespective of how Rogan got the records in December 2006, he

obviously had and has control over them and we urge the Court to require that he produce them.

**Request No. 10–Transfers Between Individuals or Entities Named on Rider B.**

This request required Rogan to Produce "[a]ll documents (written or electronic)

… sufficient to identify any transfer of funds or assets (directly or indirectly) between any of the

individuals or entities listed on Rider B…."[57] Rider B lists CFMT Ltd., the PGR Bahamas Trust,

Judy Rogan, and Rogan. Thus, the Citation expressly calls for large quantities of the documents

recently produced by Oceanic.[58] Rogan produced none of these even though the proof adduced

in the *Statement of Facts* establishes Rogan's control over them.[59] Similarly, Rider B also

includes RPP Trust and RPP Ltd., so it expressly would include proof of any transfers between

Rogan or CFMT and either of those entities. Again, nothing was produced.

**Requests Nos. 12-18.**

---

[53] Ex. 506 (July 27, 2007 letter from K. Wellburn to E. Pruitt, at 7).

[54] Ex.5 (October 18, 2007 letter from E. Pruitt to K. Wellburn, at 10-11).

[55] *Id.* at 10.

[56] Ex. 512 (December 5, 2007 letter from K. Wellburn to E. Pruitt, at 4).

[57] Ex. 2 at 9 (Citation to Discover Assets to Peter Rogan) and Ex. 3 at 6 (Citation to Discover Assets to Mrs. Judith Rogan).

[58] *See Statement of Facts* at 41-53, 59, 62-102.

[59] *Id.* at 25-101.

Rogan advances what amount to legal challenges to production of these records, which we address in the "Argument" section of this pleading, *infra* at 23-25.

### Request No. 19–First National Bank of Valparaiso Safe Deposit Box.

Rogan states that he does not maintain an inventory of the safe deposit box identified in Dexia's request, and that Dexia could subpoena the bank for a copy of the bank's log recording access to this box. This Court has previously instructed Rogan on repeated occasions that, as the account holder, he has the responsibility to obtain the record requested.[60] That Rogan persists in these sorts of objections amounts to intentional disregard for prior rulings of this Court and intentional delay.

### Request No. 25–Communications with Counsel.

In his initial response to the Citation, Rogan did not assert any attorney-client privilege objections to Dexia's request for his communications with Cuppy, Troy Myers, John Tatooles, or John Foley regarding the entities on Rider B.[61] After Dexia pointed this out, Rogan objected to production based upon the attorney-client privilege.[62] Because a blanket privilege claim is improper,[63] Rogan must provide a privilege log detailing the basis for his claim of privilege for each withheld document. This has not been forthcoming.

### Requests No. 26-31–Billing Records/Records of Payment for Rogan/Rogan Entity Lawyers.

---

[60] Ex. 296 (*Dexia v. Rogan*, Transcript of Proceedings on March 31, 2005, at 22-23).

[61] Ex. 505 (July 16, 2007 letter from K. Wellburn to E. Pruitt); Ex. 506 (July 27, 2007 letter from K. Wellburn to E. Pruitt).

[62] Ex. 512 at 5 (December 5, 2007 letter from K. Wellburn to E. Pruitt).

[63] *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.,* 145 F.R.D. 84, 86 (N.D. Ill. 1992) ("A claim of privilege cannot be a blanket claim, but must be made and established on a document-by-document basis."); *In re Word of Faith Fellowship, Inc.*, 1996 WL 281357, at *2 (Bankr. N.D. Ill. 1996) ("The party claiming the privilege has the burden of showing the specific facts giving rise to the privilege; blanket claims of privilege are improper.")

The Citation seeks billing records and records of payment for various attorneys that have provided services to Rogan and his entities. Rogan does not object to this requests, but rather states that he "is making inquiries for the billing records and records of payment" relating to these attorneys' services.[64] To date, however, Rogan has not produced these records. There is no valid excused for the lapse except intentional delay.

## ARGUMENT

## II.  ROGAN SHOULD BE HELD IN CIVIL CONTEMPT FOR FAILURE TO PRODUCE THE DOCUMENTS IDENTIFIED IN THE CITATION.

### A.  Applicable Standard.

Fed. R. Civ. P. 69(a)(2) obligates judgment creditors like Dexia to follow state law provisions for judgment enforcement and post-judgment discovery. Under Illinois law, a citation to discover assets is issued by the Clerk of Court pursuant to 735 ILCS 5/2-1402 against "the judgment debtor or any third party the judgment creditor believes has property of or is indebted to the judgment debtor." Ill. Sup. Ct. R. 277(a). The citation directs the party to produce documents and appear to answer questions with respect to the assets or indebtedness of the judgment debtor. Failure to comply with a citation is punishable by contempt. *See Textile Banking Co., Inc. v. Rentschler*, 657 F.2d 844, 850 (7th Cir. 1981); 735 ILCS 5/2-1402(a); Ill. Sup. Ct. R. 277. The following cases illustrate the application of this principle.

In *In re Joint Eastern and Southern Districts Asbestos Litig.,* 71 F.3d 1319 (7th Cir. 1995), defendant had failed to pay a contempt judgment in New York and failed to comply with a citation to discover assets in Illinois. *Id.* at 1320. Finding he was in contempt, the Court ordered him imprisoned until he cooperated in the discovery of his assets. *Id.* When defendant

---

[64] *Id.* at 5.

20

appealed, the imprisonment was stayed upon the posting of a bond exceeding the value of the judgment against him. *Id.* at 1321. When the appeal was dismissed, the bond was disbursed to the plaintiff. *Id.*

In *Anthony Marano Co. v. A. Stallone, Inc.*, No. 00-8019, 2002 WL 31875471, at *9 (N.D. Ill. Dec. 24, 2002), Judge Brown recommended that a citation respondent be found in civil contempt for failing to comply with various court orders and with citations to discover assets issued to her personally and as the representative of the corporate defendant. To compel compliance, the court recommended that a bench warrant be issued to compel the respondent's appearance before the court. *Id.*[65]

In *EEOC v. Paragon Rest., Inc.*, No. 95-667, 1999 WL 231678, at *1 (N.D. Ill. Mar. 26, 1999), defendant failed to comply with a citation to discover assets and was the subject of a contempt motion. Judge Coar ordered defendant to present himself for discovery on a date selected by the plaintiff and stated that a failure to appear or to deliver required materials would result in a fine of $100 per day until the defendant complied. *Id.* The court also ordered defendants to pay plaintiff's attorney's fees and costs. *Id.* at *9.

## B. Application.

### 1. Rogan's Objection for Lack of Proper Service Should be Overruled.

Rogan claims he never was properly served with the citation. He is wrong.

On June 8, 2007, Dexia effectuated personal service upon Rogan. Personal service of a citation to discover assets is proper under both federal and Illinois service rules. *See* Fed. R. Civ. P. 4(c) & (e); IL. S. Ct. R. 277(c) & 105(b). On June 8, 2007, Dexia served the

---

[65] Judge Holderman adopted Judge Brown's recommendations in their entirety. (Case No. 00-C-8019, Dckt. No. 73).

Citation upon Rogan at one of the Rogans' two residences in the United States, 476 Wexford, Valparaiso, IN;[66] on June 11, 2007, Dexia served the citation upon Rogan at the Rogans' other U.S. residence, 55 E. Erie St. in Chicago, by leaving the Citation with a member of the Rogan household at Wexford and with the doorman at Erie.[67] Dexia also served the registered agent of Rogan's alter ego, Bainbridge, Inc. on June 8, 2007.[68] [As part of its judgment in this case, this Court found Bainbridge, Inc. to be the alter ego of Rogan.[69]]

        Finally, Dexia undertook significant supplemental steps to ensure proper service of the Citation upon Rogan because Dexia understood that Rogan had absconded from the United States and that he had contested the propriety of service upon him in *U.S. v. Rogan*. Dexia moved for and obtained from the Court a Fed. R. Civ. P. 4(f)(3) order permitting service upon individuals in foreign countries as directed by the Court. That order permitted Dexia to serve Rogan by serving Chicago and foreign lawyers that had represented him.[70] To that end, with this Court's approval, Dexia served the lawyers handling Rogan's appeal in *U.S. v. Rogan*

---

[66] Citation to Discover Assets, Ex. 515.

[67] Second Service of Citation, Ex. 516. The doorman told Dexia's process server that he was not authorized to accept service. However, courts have held that service of process on a doorman at a defendant's residence is sufficient to accomplish proper service. *See Hartford Fire Ins. Co. v. Perinovic*, 152 F.R.D. 128, 130-31 (N.D. Ill. 1993) (noting also that the term "residing therein" within the meaning of Rule 4 is to be liberally interpreted and holding that regular occupancy is not a prerequisite for establishing a dwelling as the defendant's residence for purposes of Rule 4); *Harrell v. Bower Motors, Inc.*, No. 02-8252, 2004 WL 1745758, *1 (N.D. Ill. Jul. 30, 2004) (holding that service on a doorman is proper service).

[68] Citation to Discover Assets to Bainbridge, Inc., Ex. 2. *See Dasenbrock v. Interstate Rest. Corp.*, 302 N.E.2d 195, 196 (Ill. App. Ct. 1973) (service of citation upon registered agent of corporate judgment debtor held proper); *Bally Export Corp. v. Balicar, Ltd.*, 804 F.2d 398, 405 (7th Cir. 1986) ("Where one corporation so controls another corporation that, as a practical matter, the two entities function as one, service on one corporation is effective as to both."); *Flip Side Prods.., Inc. v. Jam Prod., Ltd.*, No. 82-3684, 1990 WL 186777, at *4 (N.D. Ill. Nov. 8, 1990) ("It makes little sense to insist on separate service of individuals and corporations that are held as a matter of law to be alter egos of another corporation.")..

[69] (Ex. 19 (*Dexia v. Rogan, Order Entering Final Judgment Pursuant to Federal Rule of Civil Procedure 58*, May 3, 2007).

[70] *Dexia v. Rogan*, Docket Entry Order, June 21, 2007. Ex. 4.

as well as his Canadian counsel.[71] Because Dexia served Rogan in accordance with the Court's June 20, 2007 Rule 4(f)(3) order, Rogan's objection to the insufficiency of service is groundless. *See In re Air One, Inc.*, 75 B.R. 998, 1001 (Bankr. E.D. Mo. 1987) (denying motion to dismiss for insufficiency of process where plaintiff followed court's direction in effectuating service); Fed. R. Civ. P. 4(f)(3).[72]

## 2. Rogan's Objection to Requests Nos. 12-18 are Meritless.

In the referenced Citation requests, Dexia seeks a copy of Rogan's passport (Request 12), applications or other documents related to applications for temporary or permanent residency (Request 13), documents sufficient to show Rogan's travel by airplane or boat (Request 14), calendar (Request No. 15), address book and contacts list (Request 16), and telephone and cellular telephone records (Requests 17 and 18). Rogan objects to these requests as a "fishing expedition" seeking documents that: (a) "represent a gross invasion of privacy"; and (b) are irrelevant, or, as Rogan puts it, "would only be required to be produced if there is a sufficient factual foundation to require the production."[73] We address these in turn.

Rogan's "privacy" objection lacks merit. First, Rogan already produced similar documents in discovery, but did not designate them as "Confidential" under the protective order.[74] Moreover, Dexia used such documents in its public filings in this case without any

---

[71] Ex. 517.

[72] Also, Dexia's service was proper because: (a) it gave Rogan actual notice of the Citation proceeding and thus satisfied due process; and (b) Rogan has avoided paying the judgment against him. *See Martin v. C.D. Gray, Inc.*, 110 F.R.D. 398, 401 (N.D. Ill. 1986), *aff'd*, 1986 WL 7348 (N.D. Ill. 1986).

[73] *Id.* at 4-5.

[74] *See, e.g.*, Ex. 163 at Q (RDX 055306-08) (travel documents, *i.e.*, hotel bill, not marked as confidential); EX. 349 at II (January 2000 calendar not marked as confidential (RDX 011408); (bill for travel to Savannah, GA filed not marked as confidential (EPC 1969)); (February-March 2001 calendar filed not marked as confidential (RDX 67548-49)); (travel documents, *i.e.*, hotel bill filed not marked as confidential (RDX 055306-08); (March-April 2002 calendar filed not marked as confidential (RDX

23

objection from Rogan.[75]  Thus, Rogan long-ago waived the ability to object to the production of these categories of records at this late stage in the litigation.  Second, as Rogan is aware, he can produce these documents subject to the protective order in this case, which will adequately protect his purported interest in "privacy."

Equally unavailing is Rogan's relevance objection because the type of information discoverable via a citation is extremely broad.  *See Gerald E. Kennedy v. Four Boys Labor Servs., Inc.,* 279 Ill. App. 3d 361, 367 (1996) (noting that "[i]n interpreting the provisions of section 2-1402, the provisions are to be liberally construed.").  In fact, Illinois courts explicitly have held that in the context of a citation proceeding, a "fishing expedition" is permissible so long as it is based on a belief that assets are in the possession of the debtor or a third party.  *See Terry Regan and Dennis Egan v. Garfield Ridge Trust & Savings Bank,* 247 Ill. App. 3d 621, 624 (1993) ("a 'fishing expedition' for assets is permissible in the context of an initial proceeding to discover assets"); *Federal Loan Corp. v. Harris,* 17 Ill. App. 3d 49, 50 (Ill. App. Ct. 1974) (same).

The Seventh Circuit has held that a judgment creditor properly can use a citation to request non-financial information that may assist in discovering the location of the judgment debtor's assets.  *See Martin-Trigona v. Gouletas,* 634 F.2d 354, 357 (7th Cir. 1980) (affirming contempt order against citation respondent who refused to provide information regarding his place of birth, location of his telephone, and information relating to his filings as a candidate for

---

067567-68)); Ex. 524 (PROP/MNGT 2625-43) (July 12, 2002 phone records not marked as confidential); Ex. 525 (PROP/MNGT 5563-95) (January-November 2003 phone records not marked as confidential).

[75] *See, e.g.,* Ex. 163 at Q (RDX 055306-08) (travel documents, *i.e.,* hotel bill, filed without objection); EX. 349 at II (RDX 011408) (January 2000 calendar filed without objection), (EPC 1969) (bill for travel to Savannah, GA, filed without objection), (RDX 67548-49) (February-March 2001 calendar filed without objection), (RDX 055306-08) (travel documents, *i.e.,* hotel bill, filed without objection), (RDX 067567-68) (March-April 2002 calendar filed without objection).

24

public office). In its Citation, Dexia has requested from Rogan the same types of documents that he already produced during pre-judgment discovery and which the Seventh Circuit in *Gouletas* found relevant in a citation proceeding. These requests seek relevant information relating to the potential disposition and location of Rogan's assets. During pre-judgment discovery in this case, Rogan produced his calendar, address book, passport, and information evidencing travel. These records contained information directly relevant to Rogan's assets and control over various investments. For example, Rogan's calendar, airline ticket receipts, and passport provided evidence of his travel to the Bahamas to coordinate a transfer of funds from his Bahamian trust to a U.S. bank account in 2002.[76] Rogan's address book similarly evidenced Rogan's connections to investments in Savannah of which he claimed to have no knowledge.[77]

### 3.   Remedy: Rule to Show Cause.

Dexia seeks an order obligating Rogan to appear in person to show cause why he should not be held in civil contempt for failing to obey the Citation. It is critical that Rogan appear in person. If Rogan does appear in person, then he can be compelled: (a) to explain to this Court under oath why he has failed to obey the Citation; (b) to provide key additional financial information in relation to Citation; and either (c) (i) to produce assets this Court rules must be turned over the satisfy Dexia's judgment; or (ii) to be jailed until he complies.

To allow Rogan to respond in writing rather than in person is to sanction Rogan's continued attempts to delay and to game the judicial system. Rogan fired his counsel before in the proceedings before Judge Darrah (*U.S. v. Rogan*), Judge Black (*EMC v. EPC*, *EMC v. Rogan*), and the Court in this case. Since that time and in defiance of the orders of this Court and

---

[76] Ex. 138, 138A and 138B.

[77] *Id.*

25

others, Rogan has failed to appear personally before this and the other judges in this district, choosing instead to remain ensconced abroad. At the same time, Rogan has selectively filed *pro se* pleadings in this case (mailing them from Canada) and has appeared via counsel in his appeal before the Seventh Circuit in *U.S. v. Rogan*. Accordingly, Dexia urges this honorable Court to stand firm against such misconduct, and reject any further attempts by Rogan to continue his methods of manipulation and/or introduce further cost and delay in these proceedings.

## CONCLUSION

For the reasons stated above, this Court should grant Plaintiff Dexia Crédit Local's Motion for an Order Obligating Rogan to Show Cause Why He Should Not be Held in Civil Contempt for Failing to Respond to Dexia's Citation to Discover Assets.

Dated: August __, 2008                By:____/s/ Scott Mendeloff____

One of its Attorneys
Scott Mendeloff
Gabriel Aizenberg
HOWREY LLP
321 N. Clark Street, Suite 3400
Chicago, Illinois 60654
(312) 595-1239

*Attorneys for Plaintiff Dexia Crédit Local*