

CERTIFIED COPY
A True Copy
Teste:
[signature]
Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 08-3500

DEXIA CRÉDIT LOCAL,

              *Plaintiff-Appellee,*

v.

PETER G. ROGAN, *et al.*,

              *Defendants,*

and

JUDITH K. ROGAN,

            *Citation Respondent-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 02 C 8288—**Matthew F. Kennelly,** *Judge.*

ARGUED JUNE 3, 2009—DECIDED APRIL 26, 2010

Before EASTERBROOK, *Chief Judge,* and ROVNER and SYKES, *Circuit Judges*.

ROVNER, *Circuit Judge.* In a supplementary proceeding to enforce a judgment against Peter Rogan and related partnerships, Dexia Crédit Local obtained a preliminary

injunction barring Judith Rogan, Peter's wife, from continuing to transfer certain assets. On appeal, Judith asserts that the district court lacked subject-matter jurisdiction and that the preliminary injunction was improper. We conclude otherwise and affirm.

**I.**

This appeal has its genesis in the longstanding Medicare and Medicaid fraud scheme that Peter Rogan carried out through Edgewater Medical Center from 1993 to 2001. *See United States v. Rogan,* 517 F.3d 449, 451 (7th Cir. 2008). In 1998 Peter and one of his related partnerships sought to refinance Edgewater's bond debt to get a lower interest rate. Concealing the fraud scheme, they arranged for Dexia to guarantee Edgewater's repayment of the bonds.

Dexia brought this diversity action against Peter and his related partnerships for fraud, conspiracy, and other torts relating to this longstanding scheme. *See* 28 U.S.C. § 1332. But Peter abandoned his defense of this suit by absconding to Canada, and Dexia obtained a default judgment for $124 million against him and some of his partnerships. To satisfy its judgment, Dexia served Judith Rogan with a citation to discover assets. *See* FED. R. CIV. P. 69; 735 ILCS § 5/2-1402.

Next, Dexia filed an ex parte motion for a temporary restraining order ("TRO") to freeze certain of Judith's assets. Dexia asserted in an affidavit that it would sustain irreparable harm if the Rogans had advance notice of

the freeze-order. *See* FED. R. CIV. P. 65(b). Dexia also appended documentation to show that Judith was helping her husband conceal assets by placing his assets in accounts under her name, opening offshore accounts, and sending money to him or his creditors from these accounts. According to Dexia's motion, she even helped him flee to Canada by opening new bank accounts there and transferring several million dollars from other offshore accounts into these Canadian accounts.

The district court granted the TRO without notice to the Rogans, concluding that there was good cause to believe that Judith acted as the alter ego of her husband and disposed of his assets for his benefit. Under the terms of the TRO, Judith was prohibited from transferring, concealing, or dissipating any assets owned or controlled by Peter and certain defined entities, including trusts purportedly owned by the Rogans' children, pending the court's determination of Dexia's request to extend the TRO into a preliminary injunction under the same terms.

Judith promptly moved to dissolve the TRO on grounds that it was based solely on Dexia's affidavit, which was improper hearsay; that the TRO was vague and overly broad; and that the district court lacked subject-matter jurisdiction over her, a non-party. The court denied Judith's motion as moot, explaining that it would address all arguments at a hearing three days later to determine whether the TRO should be converted into a preliminary injunction. Dexia's and Judith's counsel did not object.

But Judith could not point to any evidence in the record to contest Dexia's assertion that she acted as the alter

ego of her husband. Although before the preliminary injunction hearing she submitted an affidavit disputing her control over various bank accounts, and at the hearing her former attorney and a former employee testified that Peter had no interest in some of her assets, she later withdrew all this evidence. When the hearing resumed in the afternoon, Judith's counsel informed the court that Judith had filed for bankruptcy that morning and that she was withdrawing her affidavit and the offered testimony. The next day, however, Dexia informed the court that Judith's bankruptcy petition had been declared a "nullity from its inception" because she failed to comply with minimum filing requirements.

The court granted the preliminary injunction under the same terms as the TRO, and Judith's counsel did not object. At a later hearing, the court explained its decision by noting that Judith had withdrawn her evidence in opposition to the injunction and she did not object to its terms.

After Judith appealed the preliminary injunction, we ordered her to supplement her jurisdictional statement to address the citizenship of the named partnership-defendants. At this point, she discovered that complete diversity was lacking in Dexia's original action against Peter because diversity jurisdiction does not exist where the party on one side of a case is foreign and the party on the other side includes both domestic and foreign parties. *See Salton, Inc. v. Phillips Domestic Appliances & Pers. Care B.V.*, 391 F.3d 871, 875 (7th Cir. 2004); *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 10 F.3d 425, 428 (7th Cir.

1993). Judith discovered that Dexia was a French company and two of the named partnership-defendants had partners who were Belizean corporations. She then supplemented her jurisdictional statement on appeal and identified the citizenship of these partners. In the district court, she also moved to dismiss Dexia's citation to discover her assets.

While this appeal was pending, the district court denied her motion and dismissed the two nondiverse parties, concluding that they were unnecessary and dispensable. The court further stated that under *Newman-Green, Inc. v. Alfonzo-Larrain,* 490 U.S. 826 (1989), the dismissal of the dispensable nondiverse parties acted retroactively to validate any acts occurring before dismissal. Thus, the court concluded that the judgment in the underlying action was final and that the Rogans could no longer challenge Dexia's citation to discover her assets on jurisdictional grounds.

## II.

Judith presents two issues on appeal: (1) whether the district court had subject-matter jurisdiction over the case; and (2) whether the district court abused its discretion when it entered the preliminary injunction.

### A. Subject-Matter Jurisdiction

Dexia first asserts that Judith's subject-matter jurisdiction argument is waived because she never raised it at the

hearing on the preliminary injunction. But we have an independent duty to ensure subject-matter jurisdiction, *see Büchel-Ruegsegger v. Büchel*, 576 F.3d 451, 453 (7th Cir. 2009); *EEOC v. The Chi. Club*, 86 F.3d 1423, 1428 (7th Cir. 1996), and neither the parties nor their lawyers may waive arguments that the court lacks jurisdiction. *United States v. Tittjung*, 235 F.3d 330, 335 (7th Cir. 2000); *see also Dave v. Ashcroft*, 363 F.3d 649, 652 (7th Cir. 2004).

Judith argues that the district court lacked subject-matter jurisdiction over Dexia's original action against Peter and his related partnerships because the presence of foreign parties on both sides of the case spoiled diversity jurisdiction. And if Dexia's original judgment was void for lack of jurisdiction, she continues, the court lacked jurisdiction over Dexia's citation to discover her assets. Judith's jurisdictional challenges, however, come too late. The judgment against Peter is final. She might have mounted an attack on subject-matter jurisdiction before a final decision was entered in Dexia's original action, but she did not. "[S]ubject-matter jurisdiction may not be attacked collaterally." *Travelers Indem. Co. v. Bailey*, 129 S. Ct. 2195, 2205 (2009) (quotation and internal citation omitted); *Kontrick v. Ryan*, 540 U.S. 443, 455 n.9 (2004). In any event, the parties have not discussed the difference between direct and collateral challenges to a judgment. And even if we could entertain Judith's collateral attack, we would conclude that the district court properly dismissed the nondiverse parties under Federal Rule of Civil Procedure 21 and preserved its jurisdiction. *See Newman-Green, Inc.*, 490 U.S. at 832; *Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482, 1492 (7th

No. 08-3500 7

Cir. 1996). Under Rule 21, a district court can dismiss dispensable, nondiverse parties either before *or* after a final judgment. *Newman-Green, Inc.*, 490 U.S. at 827, 832 n.6; *see also Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 572-73 (2004); *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1271 (7th Cir. 1996).

**B. The Preliminary Injunction**

Judith next makes a host of challenges to the district court's entry of the preliminary injunction. She asserts, for instance, that the district court failed to make findings of fact and conclusions of law in violation of Federal Rule of Civil Procedure 52; that the court failed to specify its reasons for the injunction, to state its terms specifically, and to describe in reasonable detail the acts restrained in violation of Federal Rule of Civil Procedure 65(d); that the injunction was overly broad; and that the injunction could not be issued against her, a non-party. Dexia responds that these arguments are waived because they were not renewed when the court entered the preliminary injunction.

We decline to find waiver here. Although arguments not raised before the district court may not be raised for the first time on appeal, *Bus. Sys. Eng'g, Inc. v. Int'l Bus. Machs. Corp.*, 547 F.3d 882, 889 n.3 (7th Cir. 2008), this rule is not meant to be overly formalistic; rather, the requirement that parties appeal only issues that have first been presented to the district court maintains the efficiency, fairness, and integrity of the judicial system for all parties.

*See Republic Tobacco Co. v. N. Atl. Trading Co., Inc.*, 381 F.3d 717, 728 (7th Cir. 2004); *Boyers v. Texaco Ref. & Mktg., Inc.*, 848 F.2d 809, 812 (7th Cir. 1988). It is true that Judith did not reassert her objections to the preliminary injunction, but she objected on the same grounds to the TRO which contained identical terms and was issued by the court for identical reasons, and the district court explained that it would address Judith's concerns regarding the TRO when it considered the preliminary injunction. To require her to re-raise her objections would be an overly formalistic application of waiver.

As to the merits, Judith first argues that the injunction violates Federal Rule of Civil Procedure 65(d) because it lacks specific terms, a reasonable description of the acts restrained or required, and reasons why it was issued. *See* FED. R. CIV. P. 65(d)(1). We disagree. The preliminary injunction directly addressed the key issue—whether Judith controlled certain of Peter's assets and transferred funds from these accounts to elude his creditors. And it described in reasonable detail that Judith was prohibited from transferring, converting, encumbering, concealing, or otherwise dissipating these assets for the benefit of her husband or any of the entities her husband controlled. Further, the court provided its reasons for the injunction: Judith was doing everything in her power to help her husband conceal his assets from creditors. The injunction is sufficiently precise and self-contained, and we require nothing more to comply with Rule 65. *See PMC Inc. v. Sherwin-Williams, Co.*, 151 F.3d 610, 619 (7th Cir. 1998); *Bd. of Educ. v. Ill. State Bd. of Educ.*, 79 F.3d 654, 657 (7th Cir. 1996).

No. 08-3500 9

Next, Judith asserts that the district court in two respects did not comply with Federal Rule of Civil Procedure 52, which requires a court to substantiate the issuance of an injunction with findings and conclusions of law. *See* FED. R. CIV. P. 52(a)(2). First, she asserts without elaboration that the court was required to conduct an evidentiary hearing. But the court need not conduct an evidentiary hearing unless one is called for as a result of a fact issue created by the response to a motion for a preliminary injunction. *See, e.g., In re Aimster Copyright Litig.*, 334 F.3d 643, 653-54 (7th Cir. 2003); *Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808, 814 (7th Cir. 2002); *Ty, Inc. v. GMA Accessories, Inc.*, 132 F.3d 1167, 1171 (7th Cir. 1997). Here, Judith raised no issue of fact; rather she withdrew her evidence and did not object when the court entered the injunction.

Second, she argues that the court did not comply with Rule 52 by not making Rule 52's requisite factual findings in a written order accompanying the injunction. But at a later hearing, the court pronounced its reasons and conclusions orally, stating that the justifications for the TRO would substantiate the court's findings for the preliminary injunction. Pronouncing its decision orally on the record is acceptable. *See* FED. R. CIV. P. 52(a)(1); *EEOC v. Severn Trent Serv., Inc.*, 358 F.3d 438, 442 (7th Cir. 2004). Further, we note that Rule 52 facilitates judicial review, *see Mayo v. Lakeland Highlands Canning Co.*, 309 U.S. 310, 316 (1940); *Freeland v. Enodis Corp.*, 540 F.3d 721, 739 (7th Cir. 2008), by ensuring a sufficient record from which we can render a decision. *See Miranda v. Bennett*, 322 F.3d 171, 175 (2d Cir. 2003); *Davis v. New*

*York City Hous. Auth.*, 166 F.3d 432, 436 (2d Cir. 1999); *Tekkno Labs., Inc. v. Perales*, 933 F.2d 1093, 1097 (2d Cir. 1991). In this case, there were no contested matters; Judith withdrew all her evidence, and the district court provided its reasons and conclusions orally. Based on the record before us, we conclude that the court adequately complied with Rule 52.

Judith's next argument is somewhat difficult to follow. She contends that when Dexia withdrew its Rule 65(b) affidavit, the absence of that affidavit somehow rendered Dexia's documentary evidence unauthentic and inadmissible. But Judith misconstrues the course of events: Dexia did not withdraw the affidavit, but instead submitted it in order to comply with Federal Rule of Civil Procedure 65(b)(1), which requires a party seeking an ex parte TRO to certify that the movant would suffer irreparable harm. *See* FED. R. CIV. P. 65(b)(1). And even if Dexia's evidence was inadmissible under the Federal Rules of Evidence, we have recognized that a district court may grant a preliminary injunction based on less formal procedures and on less extensive evidence than a trial on the merits. *See, e.g., Ty, Inc.*, 132 F.3d at 1171; *SEC v. Cherif*, 933 F.2d 403, 412 n.8 (7th Cir. 1991); *see also Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009); *Cobell v. Norton*, 391 F.3d 251, 261 (D.C. Cir. 2004); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995). We find no error here.

Next, Judith contends that the injunction is overly broad because it requires her to exercise control over her children's trusts and prohibits her from using certain of

Case: 1:02-cv-03288 Document #: 1300 Filed: 06/02/10 Page 11 of 11 PageID #:22705
Case: 08-3500 Document: 45-2 Filed: 04/26/2010 Pages: 11

her own assets. But the injunction here was tailored to the scope of her alleged misconduct, and we cannot say the court abused its discretion. *See Lineback v. Spurlino Materials, LLC*, 546 F.3d 491, 505 (7th Cir. 2008); *Gaddy v. Abex Corp.*, 884 F.2d 312, 318 (7th Cir. 1989). When the district court fashioned the broad injunction, it noted the elaborate steps Judith had taken to evade creditors. Further, the court relied upon evidence that Judith did not dispute at the time of the injunction—evidence documenting the extensive support she provided her husband to conceal his assets, including her use of offshore accounts and various trusts to funnel money to Canada.

Last, Judith contends that the district court improperly entered an injunction against her because she was not a party to the underlying case. But one need not be a party to be susceptible to an injunction. Under Illinois law—which governs Dexia's proceedings to execute its judgment, *see* FED. R. CIV. P. 69(a)—restraining orders are proper against third-party defendants and citation respondents. *See* 735 ILCS § 5/2-1402; *Star Ins. Co. v. Risk Mkt. Group Inc.*, 561 F.3d 656, 662-63 (7th Cir. 2009); *Cacok v. Covington*, 111 F.3d 52, 54 (7th Cir. 1997).

Accordingly, we AFFIRM the ruling of the district court.