IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DEXIA CRÉDIT LOCAL, f/k/a Dexia Public Finance Bank and Credit Local of France, ) ) ) Plaintiff, ) ) v. ) ) PETER G. ROGAN, *et al.*, ) ) Defendants. ) | No. 02 C 8288<br><br>Judge Matthew F. Kennelly |

**PLAINTIFF DEXIA CRÉDIT LOCAL'S MOTION FOR AN ORDER AUTHORIZING COURT-APPOINTED RECEIVER TO SELL PETER ROGAN YACHT**

Plaintiff Dexia Crédit Local ("Dexia"), by and through its counsel, hereby moves this Honorable Court for an order authorizing the Court-appointed Receiver, Eugene Crane, to sell a yacht ("Yacht") nominally owned by a dissolved entity that was 100% owned by Peter Rogan ("Rogan"). The Yacht is an asset of Rogan's subject to execution by Dexia to satisfy its judgment against Rogan in this matter. In support of its motion, Dexia states as follows:

**Facts**

Rogan's Ownership of the Yacht.

    1.    The Yacht is a 48-foot Carver ship identified by U.S. Coast Guard Certificate Number 976050 and bearing the name "Fringe Benefit". (Ex. A; Ex. B at 3; Ex. L at 2, 12)

    2.    The "Fringe Benefit" is titled in the name of BFB, Ltd. ("BFB"). (Ex. A) BFB was an Illinois corporation that was involuntarily dissolved on or about April 30, 2007. (Ex. C) BFB's sole asset was the Yacht.

    3.    From 2002 to the present, Peter Rogan was the sole shareholder and officer of BFB (except for one year when the a Rogan employee was treasurer). (Ex. C; Ex. D, at 10; Ex.

E, at PGR_Mville_TempBox22 000644 & 000649) Rogan operated BFB out of his former business office at 24 E. 90th Drive, Valparaiso, Indiana. (Ex. E, at PGR_Mville_TempBox22 000647; Ex F; Ex. G, at 1) BFB had no business apart from Rogan's exclusive use of the Yacht. Rogan used the Yacht for personal recreation and also as a business perquisite. David Miller, a Rogan employee, handled BFB's finances out of Rogan's business office, which is also where mail for BFB usually was sent -- c/o JKR Business. (Ex. F; Ex. G; Ex. H; Ex. I; Dckt. No. 1097, July 7, 2009 Op., *Dexia v. Rogan*, 02-C-8288, at 9-10 ("Miller operated as Rogan's right hand"; Miller…used the JKR Business name at the Merrillville office address to carry out a number of his tasks for Peter Rogan….")) BFB had no office, equipment, employees, or activities of its own. All of BFB's expenses for upkeep, maintenance, and operations were paid by Rogan himself or by Rogan-controlled companies.[1] (Dckt. No. 1097, July 7, 2009 Op., *Dexia v. Rogan*, 02-C-8288, at 10 ("Miller and Rogan both worked out of the Merrillville office, across the hall from each other. The staff employed at the Merrillville office worked on all of the Rogan-related … matters….Expenses for paying those staff and for the cost of maintaining the Merrillville office were not broken out for each of the entities that operated there."))

Rogan's Abandonment of the Yacht.

4. On February 6, 2007, as part of its effort to satisfy its judgment against Rogan, the United States filed an Application for a Writ of Continuing Non-Wage Garnishment directed to the marina where the Yacht is stored, Doyne's Marine, Inc. (*U.S. v. Rogan*, 02 C 3310, Dckt. No. 280) The court issued the writ on February 16, 2006.

---

[1] For example, on November 5, 2002, Rogan faxed the Trustee of the Peter G. Rogan Irrevocable Trust in The Bahamas directing it to wire transfer $50,000 to BFB. (Ex. J) The Trustee notified Rogan that same day that the transfers had occurred. (*Id*.) At the time of this transfer, BFB was $40,204 in arrears to a company called "Captain's Orders" for various fees for the care of the yacht. (Ex. K, at PGR_Mville_TempBox17 000331)) The day after BFB received the funds, BFB immediately issued a check to "Captain's Orders" to pay the balance due. (Exs. H, I, M)

5. The garnishee, Doyne's Marine, responded on February 26, 2007, acknowledging that it had possession of Rogan's property -- the Yacht -- and noting that substantial storage fees are owed. (Ex. B, at 3) Storage fees have not been paid storage fees since 2006.

6. Rogan never filed any objection to the government's writ or Doyne Marine's answer.

## Argument

**The Yacht is a Rogan Asset Upon Which Dexia Can Execute its Judgment Against Rogan.**

7. By virtue of its dissolution in April 2007, BFB's assets, including the Yacht, are now the assets of its sole shareholder, Peter Rogan. "Illinois corporate law that treats a corporation's assets upon dissolution as belonging to its shareholders as tenants in common, subject to rights of creditors and legal claims of third persons." *In re Ratner*, 146 B.R. 211, 218 (Bankr. N.D. Ill. 1992); *see also In re Hancock*, 192 F.3d 1083, 1086 (7th Cir. 1999) (dissolution of corporation "obliterated" debtor's shares in the corporation "by operation of law," thereby providing debtor's estate with an interest in the corporation's assets); *Dubey v. Abam Bldg. Corp.*, 639 N.E.2d 215, 218 (Ill. App. Ct. 1994) ("Whatever assets a dissolved corporation has belong to the former shareholders, subject to the rights of creditors.").

8. BFB held the Yacht as an alter ego or nominee of Peter Rogan because, as explained in paragraph 3, *supra*, Rogan: (a) had full control over BFB; (b) operated BFB using the same business address and resources as all of the other entities that he ran out of his business office; and (c) paid all of BFB's expenses with his own funds or the funds of his other entities. *See Dexia Credit Local v. Rogan*, 629 F.3d 612 (7th Cir. 2010) (affirming this Court's order turning over assets of Rogan Children's Trusts on the ground that trusts held assets of Peter Rogan as alter ego/nominees); Dckt. No. 1097, July 7, 2009 Op., *Dexia v. Rogan*, 02-C-8288

(setting forth and applying alter ego/nominee factors); *Plaintiff Dexia Crédit Local's Memorandum Of Law (# 1) On Likelihood Of Success On The Merits Relating To The Peter G. Rogan Irrevocable Trust In The Bahamas,* at 18-34 (Dckt. No. 379) (setting forth factors relevant to alter ego/nominee factors as well as how some of these factors apply here).

9. As noted, Rogan never has disputed the contention set forth in the government's application for writ of garnishment and in Doyne Marine's answer to the writ that the Yacht is his asset.

10. Because the Yacht is an asset of Rogan's, this Court has the authority to enter an order turning over the Yacht to Dexia. *See* 735 ILCS § 5/1402(c) (courts may use citation proceedings to order judgment debtors, and third parties holding assets of the judgment debtors, to turnover property of the debtor to satisfy the judgments at issue); *Soc. of Lloyd's v. Estate of McMurray*, 274 F.3d 1133, 1135-36 (7th Cir. 2001) (affirming turnover order and stating that 735 ILCS § 5/1402 "vests courts with broad powers not only to order discovery, but also to compel application of discovered assets to satisfy a judgment.") (emphasis added); *Resolution Trust Corp. v. Ruggiero*, 994 F.2d 1221, 1223 (7th Cir. 1993) (through Illinois citation proceedings, courts may, inter alia, "order the debtor to turn over property to the creditor to satisfy the judgment.").

**Sale of the Yacht in Lieu of Turnover.**

11. In lieu of turnover of the Yacht itself to Dexia, however, Dexia requests that this Court authorize the Receiver to sell the Yacht because the terms below are fair and reasonable in light of the due diligence that has been performed regarding the value of the Yacht.

12. Due Diligence Prior to the Proposed Sale. The Yacht has been in storage at Doyne's Marina since at least 2006. In December, 2011, the Receiver, via its consultant,

4

Waveland Partners, LLC ("Waveland") commissioned a marine survey of the vessel from Captain Timothy Dry, an accredited marine surveyor. His study concludes, in part that the "conditions noted at the time of inspection" reveal "poor craftsmanship of repairs, salt water use and a long lay-up in an unheated barn with dirt floors." (Ex. L, at 36) It goes on to say: "Heavy mildew has anchored itself in fabrics, vinyls and on wood surfaces. Moisture has collected and there is surface rust on much of the metal surfaces throughout the vessel. The vessel appears to have had a history of rough use and was put to rest in 2006 and forgotten." (*Id.*) Captain Dry concludes that the boat has a current fair market valuation of $50,000. (*Id.* at 38)

13. Waveland has undertaken significant efforts to sell the craft. In January 2012 Waveland contacted Dwight Mulder, a yacht broker, to determine the extent of outside interest in purchasing the boat. Mr. Mulder has identified a buyer who has offered to purchase the vessel for $67,500 -- $17,500 more than Captain Dry's valuation -- in its current condition and location in the Doyne's Marine storage facility. Mr. Mulder has agreed to reduce his commission rate from 10% to 5%.

14. In addition, Doyne's Marine has not been paid for storage fees since 2006. By the end of 2011, the cumulative storage fees amounted to $43,346.98. Mr. Doyne has agreed to reduce his bill to $33,346.98 and release all liens if the full $33,346.98 is paid by June 1, 2012. (Ex. N)

15. <u>Proposed Terms of Sale</u>. These are the proposed terms of the sale:

| | |
|---|---|
| Total Sales Price | $67,500.00 |
| Doyne's Marina Invoice # 0003224 | <$33,346.98> |
| Sunset Bay (Mulder) Commission | <$3,375.00> |
| **TOTAL AMOUNT PAID TO RECEIVER** | **$30,778.02** |

16. Dexia believes that the proposed sales terms are fair and appropriate.

5

<009>
<010>

<011>
<012>
<013>

<014>
<015>
<016>
<017>
<018>
<019>
<020>
<021>

<022>
<023>
<024>
<025>
<026>
<027>
<028>
<029>
<030>

<031>
<032>
<033>
<034>
<035>

<036>
<037>
<038>

<039>

17. Counsel for the United States has informed counsel for Dexia that the government agrees that the proposed sale should occur and that the proposed terms are fair and appropriate.

WHEREFORE, for the foregoing reasons, Dexia Crédit Local urges this Honorable Court to enter an order: (a) finding that the Yacht is an asset of Peter Rogan's upon which Dexia can execute its judgment against him; (b) turning over title to the Yacht to Receiver; (c) in lieu of physical turnover of the Yacht, authorizing the Receiver to sell the Yacht subject to the terms set forth above and to dispose of the net proceeds upon further instructions from Dexia. [A proposed order is attached hereto as Ex. O]

Dated: April 25, 2012

Respectfully submitted,

/s/ Gabriel Aizenberg
Scott Mendeloff
Gabriel Aizenberg
Greenberg Traurig, LLP
77 W. Wacker Drive, Suite 3100
Chicago, Illinois 60601
Tel: (312) 456-8400
Fax: (312) 456-8435

**Certificate of Service**

      I, Gabriel Aizenberg, an attorney, hereby certify that on April 25, 2012, I caused a true and correct copy of the foregoing PLAINTIFF DEXIA CRÉDIT LOCAL'S MOTION FOR AN ORDER AUTHORIZING COURT-APPOINTED RECEIVER TO SELL PETER ROGAN YACHT to be filed electronically via this Court's ECF filing system and served on all ECF-registered counsel of record and upon:

Peter Rogan
1155 Mainland Avenue, Suite 603
Vancouver, British Columbia V6B5P2
Canada
[Via Federal Express]


Doyne's Marine, Inc.
1340 Crisman Road
Portage, IN 46368
[Via Federal Express]


Dated: April 25, 2012

                                                                      /s/ Gabriel Aizenberg