<pre>
 1                 IN THE UNITED STATES DISTRICT COURT?
                     NORTHERN DISTRICT OF ILLINOIS
 2                        EASTERN DIVISION

 3

 4   DEXIA CREDIT LOCAL, f/k/a      )
     Dexia Public Finance Bank      )
 5   and Credit Local de France,    )    Docket No. 02 C 8288
                                    )
 6               Plaintiff,          )
                                    )
 7               vs.                 )    Chicago, Illinois
                                    )    November 5, 2008
 8   PETER G. ROGAN, et al.,         )    10:10 a.m.
                                    )
 9               Defendants.         )

10                     TRANSCRIPT OF PROCEEDINGS
11           BEFORE THE HONORABLE MATTHEW F. KENNELLY

12
     APPEARANCES:
13

14   For the Plaintiff:     HOWREY LLP
                             BY:  MR. GABRIEL AIZENBERG
15                                MR. SCOTT T. MENDELOFF
                             321 North Clark Street, Suite 3400
16                           Chicago, Illinois   60654

17

18   For Judith Rogan and
     Brian Rogan:            O'ROURKE & MOODY
19                           BY:  MR. MYLES P. O'ROURKE
                             55 West Wacker Drive, Suite 1400
20                           Chicago, Illinois   60601

21

22   For Robert Rogan and
     Sara Rogan:             TOUHY, TOUHY, BUEHLER & WILLIAMS, LLP
23                           BY:  MR. JEFFREY J. HALLDIN
                             55 West Wacker Drive, Suite 1400
24                           Chicago, Illinois   60601

25
</pre>

```
 1   For the United
     States of America:        UNITED STATES ATTORNEY'S OFFICE
 2                             BY:  MS. LINDA A. WAWZENSKI
                               219 South Dearborn Street
 3                             Chicago, Illinois   60604

 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24              LAURA M. BRENNAN - Official Court Reporter
                 219 South Dearborn Street - Room 2102
25                    Chicago, Illinois  60604
                          (312) 435-5785
```

1    (The following proceedings were had in open court:)

2         THE CLERK:  02 C 8288, Dexia v. Rogan.

3         THE COURT:  Good morning.  So we have our daily

4    emergency motion in the Dexia case.

5         Let's sort of start over on this side and then go

6    across.

7         MR. HALLDIN:  Good morning, your Honor; Jeff Halldin

8    on behalf of Robert and Sara Rogan.

9         MR. O'ROURKE:  Good morning, your Honor; Myles

10   O'Rourke for Brian Rogan.

11        MR. AIZENBERG:  Gabriel Aizenberg on behalf of Dexia.

12        MR. MENDELOFF:  Scott Mendeloff on behalf of Dexia.

13        MS. WAWZENSKI:  Linda Wawzenski for the United

14   States.

15        THE COURT:  Just a little point that I don't want to

16   make a huge deal out of, but it's getting to be a huger deal.

17   I mean, I don't know what time this thing got filed last

18   night, but the way I found out about it is I just happened to

19   notice it in my morning report of all of yesterday's

20   E-filings.  It was not delivered over last night.  It was not

21   delivered over until this morning.  That's not good enough.

22   On an emergency motion, it's just not good enough.  I mean,

23   you give me something that has got, you know, 40 pages in

24   here, five exhibits.

25        The next time it happens, you will not have your

1    emergency motion heard.  I don't care how much of an emergency

2    it is.  Do you get that?  Okay.  So don't that again.  It's

3    got to be brought over here the day before the close of

4    business.

5              All right.  So we have got --

6              Do we have everybody here that we need?  We have got

7    the lawyer for -- we have got the lawyers for Judith Rogan and

8    all of the three children, right?

9              MR. O'ROURKE:  Actually, no, your Honor.  Judith

10   Rogan is in bankruptcy court.

11             THE COURT:  Oh, right.

12             MR. O'ROURKE:  And Dexia currently and the United

13   States are contesting to our representation of Judith Rogan in

14   that bankruptcy court.

15             MR. MENDELOFF:  That does not have to do with this

16   case, your Honor.  And the case law is absolutely clear that

17   even though there may be a stay in bankruptcy, that does not

18   alleviate -- save a person from contempt issues.

19             THE COURT:  Can you give me something?  When you say

20   the law is absolutely clear --

21             MR. MENDELOFF:  Yes, we have got case law on that,

22   and we would be happy to supply it to the Court.

23             THE COURT:  All right, so on the assumption that that

24   law is out there.

25             You said something about somebody's contesting your

1  representation.

2           MR. O'ROURKE:  They are objecting to our law firm.

3           THE COURT:  To your firm.

4           MR. O'ROURKE:  Our firm representing, who is a major

5  creditor of Judith Rogan representing her in bankruptcy and

6  representing her interests, and they are coming before you and

7  seeking us.

8           THE COURT:  Me?

9           MR. O'ROURKE:  No.  Dexia is coming before you and

10  seeking that we take some kind of affirmative steps for Judith

11  Rogan.  So that is really our problem with that.

12           MR. MENDELOFF:  Well, first of all --

13           THE COURT:  Okay, hang on a second.  We are getting

14  ahead of the game here.  I mean, I entered an order in -- I

15  mean, this was after the bankruptcy was filed, if I recall

16  correctly.  I entered an order on October the 20th, on or

17  about October the 20th, and I believe that the issue of the

18  bankruptcy was brought up at that point in time.  And I

19  concluded that it did not preclude me from entering the order

20  that I did.

21           And the language of the order says that various

22  people, Mrs. Rogan and the three children, you know, at least

23  implicitly were to do certain things.

24           And I've got a motion here that basically says

25  that --

1        Hang on a second.

2        Well, let me ask -- actually I need to ask Dexia's

3   lawyer a question.  This is essentially the same underlying

4   factual material that was the basis for the order to show

5   cause relating to Mr. Rogan, right?

6            MR. MENDELOFF:  Yes.

7            THE COURT:  In other words, the letter that was sent

8   essentially says Mr. Rogan wants me to do something or doesn't

9   want me to do something.

10       And the thing I was a little bit --

11       And, again, I'm operating at a disadvantage because I

12  was kind of reading this on the fly this morning, but the

13  thing I was having a little bit of trouble getting a handle on

14  is, is there some contention that Mrs. Rogan or the Rogan

15  children have done something that they were not supposed to do

16  as opposed to not doing something that you think they were

17  supposed to do?

18           MR. MENDELOFF:  No.  The contention is that they have

19  not done something they were supposed to do, and more

20  specifically --

21           THE COURT:  And the something that they were supposed

22  to do, as you see it, is what exactly?

23           MR. MENDELOFF:  Is notify the --

24           THE COURT:  The receiver.

25           MR. MENDELOFF:  Not the receiver.  The Bahamian Court

1    and the liquidator.

2            THE COURT:  The official liquidator.  That is the

3    term I was looking for.

4            MR. MENDELOFF:  Right, that they are not raising any

5    claim to any of the assets and that they want them transferred

6    to the receiver.

7            THE COURT:  What is it that makes you think that that

8    is an impediment?  That, I guess, is what I'm getting at.

9            MR. MENDELOFF:  Because Mr. Scott has taken the

10   position that --

11           THE COURT:  He's the liquidator?

12           MR. MENDELOFF:  No.  He's the lawyer for Mr. Rogan.

13           THE COURT:  Got it.

14           MR. MENDELOFF:  And he says he's the lawyer for the

15   other beneficiaries.

16           THE COURT:  Okay.

17           MR. MENDELOFF:  And he states that the order that

18   your Honor entered only applies to Mrs. Rogan and Mr. Cuppy

19   and not to the other beneficiaries, which is plainly not true.

20           And the suggestion that has been made by him is that

21   he may well argue that, as a result, the Court in the Bahamas

22   is not -- it is not clear that the other beneficiaries are not

23   going to lodge complaints against this later.

24           THE COURT:  And this all concerns this hearing or

25   whatever it is that is supposed to happen tomorrow --

1           MR. MENDELOFF:  Yes.

2           THE COURT:  -- down in the Bahamas.

3           MR. MENDELOFF:  Yes.

4           And the point is, your Honor, that the main

5    impediment to transferring this is a concern by some of the

6    parties that they don't want to transfer this and then have

7    somebody come back and sue them.

8           THE COURT:  Right.

9           MR. MENDELOFF:  And so the positions have to be made

10   clear in that Court that the beneficiaries are agreeing to

11   this and are not lodging any stake in this.  Once we have --

12          Now, Mrs. Rogan -- your Honor's prior order

13   affirmatively requires Mrs. Rogan to make that clear.  It also

14   affirmatively requires Mrs. Rogan to make that representation

15   on behalf of the children.  It does not specifically require

16   the children to do it themselves.

17          So as a result of that, the motion we have made seeks

18   to hold Mrs. Rogan in contempt for not having made that

19   representation and asks your Honor to amend your order to

20   require the children directly and affirmatively to make that

21   representation instead of just doing it through their mother.

22          THE COURT:  I see.

23          MR. O'ROURKE:  Judge, if I can respond?

24          THE COURT:  Remind me who represents whom again.

25          MR. O'ROURKE:  Myles O'Rourke for Brian Rogan.

1          THE COURT:  As well as Judith, with an asterisk.

2          MR. O'ROURKE:  Well, a big asterisk.

3          THE COURT:  Yes, okay.  So you're talking to me now

4     on behalf --

5          MR. O'ROURKE:  For Brian Rogan, Judge.

6          THE COURT:  Go ahead.

7          MR. O'ROURKE:  Brian Rogan has asserted a claim as a

8     beneficial interest in that trust.  He has asserted in this

9     proceeding and he's filed this claim before this Court.  He

10    has asserted a claim as a beneficiary, a legal beneficiary.

11         THE COURT:  Okay.  But as I --

12         Maybe I'm mistaken about something, but as I

13    understood -- at least as I think I understood what was going

14    to happen, assuming none of these issues had come up, is that

15    the Bahamian court was going to distribute the money.  It was

16    going to go to the receiver that I appointed, and the receiver

17    was just going to hold it and sit on it until I could

18    adjudicate all of the claims, including the one you are just

19    talking about.

20         MR. O'ROURKE:  Yes.

21         Your Honor, but, also, the letter that Dexia drafted

22    and wanted us to sign said the exact opposite, that we

23    renounce the claim, so that we are claiming no interest in

24    these trusts, and we are beneficiaries.

25         THE COURT:  And so your concern on behalf of Brian

1     Rogan is that you don't want to be forced to say something

2     that, as you contend, isn't true. He's asserting a claim.

3     You don't want to be forced to say that he's not asserting a

4     claim because that could get stuck in your ear later on.

5            MR. O'ROURKE: Right, such as this personal

6     jurisdiction argument because we intervened, which we already

7     have before the Court, as the Court --

8            THE COURT: Understood.

9            MR. HALLDIN: And, your Honor, Sara and Rob, I

10     represent them, and we have the same problem.

11            THE COURT: Same issue.

12            MR. HALLDIN: We did not want to face a waiver

13     argument several weeks or several months down the road where

14     they claim that we sent a notarized -- signed a notarized

15     letter to the Bahamian court stating --

16            THE COURT: It would seem to me that we could deal

17     with that by --

18            That's a drafting problem.

19            MR. MENDELOFF: That's correct.

20            THE COURT: I mean, it seems to me that there has got

21     to be a way for smart people to figure out, to tell the

22     Bahamian court what it is that I essentially required people

23     to tell the Bahamian court but to not forfeit their position

24     in this case.

25            MR. MENDELOFF: It strikes me, your Honor, as

1 literally --

2 THE COURT:  I have not seen the -- maybe I have.

3 MR. MENDELOFF:  It's in the motion, your Honor.  It's

4 in paragraph 23 of the motion.

5 THE COURT:  Paragraph how many, 23?  Just a second.

6 MR. MENDELOFF:  23.

7 And it strikes me that if this was the issue, they

8 could have easily just called us and then saved time here, but

9 the --

10 MS. WAWZENSKI:  Page 6, your Honor.

11 MR. MENDELOFF:  Page 6.

12 THE COURT:  I've got it.

13 MR. MENDELOFF:  If you look at --

14 THE COURT:  It's the last sentence.

15 MR. MENDELOFF:  Right.

16 "Under the Court's order, I exercise no claim or

17 right to any property pertaining to the trust."  We could add

18 "before this Bahamian Court," period, and resolve the whole

19 issue.

20 THE COURT:  Would that solve the problem?

21 MR. HALLDIN:  It may, your Honor.

22 Frankly, we are dealing a little bit shorthanded

23 here.  The motion was filed after 8:00 o'clock last night.  I

24 didn't even have a chance to read them.

25 THE COURT:  I'm happy to have you come back in an

1     hour and a half, but I'm going to have to deal with

2     this today.  I understand you might need to look at it and

3     talk to people and so on, but I'm going to have to deal with

4     this today as a practical matter because, you know, the horse

5     could be out of the barn as of tomorrow morning, and that's

6     not going to happen because I sat on something.

7             MR. HALLDIN:  And, your Honor, there is another issue

8     that we have in here, too, and we did file a motion that we

9     set up for hearing tomorrow which we put on the Court's status

10    call, and that was to clarify the October 20th order.

11            Are the Rogan children personally enjoined from doing

12    anything, or are they personally enjoined to do something

13    because it was our understanding --

14            THE COURT:  I have not looked at that motion yet.

15            MR. HALLDIN:  Okay.

16            MR. O'ROURKE:  Because, your Honor, that's the

17    problem with what we --

18            Another concern of ours here is this is really a

19    mandatory injunction for them to take an affirmative step to

20    do something.

21            THE COURT:  You know, the thing about mandatory

22    injunctions is it tends to be an issue as to how one

23    characterizes things.  I mean, you know, what you are telling

24    me is that I am telling you to do something, and I think what

25    the plaintiff is essentially saying is that I am telling you

1　　to remove any impediment.

2　　　　　　I mean, essentially what we are talking about here, I

3　　believe, is preserving -- among other things, is preserving my

4　　ability to deal with the postjudgment proceedings in this

5　　manner, in this matter, you know, in this Court rather than

6　　having other people that essentially are beyond my control;

7　　namely, a court in the Bahamas do stuff that impairs

8　　somebody's position as to an asset that I think is

9　　legitimately the subject of the postjudgment proceedings here.

10　　　　　　But what I'm inclined to do is, let's say, talk to

11　　you at 11:30.

12　　　　　　MR. O'ROURKE:  Judge, just one last thing.  I wanted

13　　to ask for the documents that Dexia has been relying on in the

14　　Bahamas, that there are any transcripts of what Mr. Scott is

15　　saying.  We are not --

16　　　　　　THE COURT:  Do you have stuff like that?

17　　　　　　MR. MENDELOFF:  What Mr. Scott is saying is attached

18　　to the motion, your Honor.

19　　　　　　THE COURT:  You are talking about this letter down

20　　here?

21　　　　　　MR. MENDELOFF:  Yes.  And as soon as we get a

22　　transcript, we will be happy to present it.  We have not

23　　gotten a transcript yet.

24　　　　　　THE COURT:  Okay.

25　　　　　　MS. WAWZENSKI:  Your Honor, I just may add that I

1   have been given the same information by the lawyer that the

2   United States has hired in the Bahamas, that this is the

3   position that Mr. Scott has been taking in court and in

4   conversation.

5           THE COURT:  So you are getting essentially verbal

6   reports from the lawyers down there.

7           MS. WAWZENSKI:  Correct.

8           THE COURT:  Yes, okay.

9           So when you come back at 11:30, I want you to have,

10  and I want you to have given to these folks, you know, e-mail

11  them the citations within the next half hour or 45 minutes of

12  this thing, to Mrs. Rogan's lawyer, this thing about whether I

13  can properly deal with this as it relates to her.

14          MR. MENDELOFF:  Yes, your Honor.

15          THE COURT:  So I will see you at 11:30.

16          MR. MENDELOFF:  And, your Honor, one other thing.

17          There is a motion up today, the rule to show cause of

18  Mrs. Peter Rogan.

19          MR. AIZENBERG:  You had set it for this morning.

20          THE CLERK:  I have that for tomorrow.

21          MS. WAWZENSKI:  We were in on the motion on Monday

22  and --

23          THE COURT:  Oh, this is one that was continued over.

24          MS. WAWZENSKI:  And today was the return on the rule?

25          THE COURT:  Oh, I see.

1          MS. WAWZENSKI:  And we need the order before

2     tomorrow.

3          THE COURT:  You know what, I'm going to tell you what

4     I said before people left the courtroom.  Come over in a half

5     an hour and pick it up.  It has been sitting signed.

6          MR. MENDELOFF:  No, no, no, we got that one, your

7     Honor.  That was the rule to show cause.  We got that.

8          This is the order holding him in contempt because he

9     hasn't appeared.

10          THE COURT:  And return date -- the order said the

11     return date was 9:30 today?

12          MR. MENDELOFF:  Yes.

13          MR. AIZENBERG:  Correct.

14          THE COURT:  I will need to officially ask:  Is there

15     anybody here on behalf of Peter Rogan?  No.  It's five after

16     10:00.  Give me the order.

17       (Brief interruption.)

18          MR. MENDELOFF:  I also note, your Honor, that we have

19     added to the end of the order an additional statement by the

20     Court that if Mr. Rogan persists in refusing to respond, that

21     a more serious response may be forthcoming.

22          THE COURT:  Give me a minute to read this.  So just

23     stop talking for a second.

24       (Brief interruption.)

25          THE COURT:  I guess I need you to put on the record,

1  Mr. Aizenberg, what was done to serve Mr. Rogan with the rule
2  to show cause.

3          MR. AIZENBERG:  And I brought it with me in case your
4  Honor wanted to see it, too, but it was -- the service was
5  made by me posting it to the door of his apartment.

6          THE COURT:  Up in Vancouver.

7          MR. AIZENBERG:  Yes.  And also by faxing it to his
8  Canadian counsel.

9          THE COURT:  That door is probably getting pretty
10 cluttered with paper by this point.

11         MR. AIZENBERG:  Yes.

12         THE COURT:  Actually, when the person goes back there
13 to post the new stuff, is the old stuff still there?

14         MR. AIZENBERG:  Actually, we were --

15         The stuff that is put there for Mr. Rogan is actually
16 not still there, I have been told by my Canadian counsel.

17         THE COURT:  Okay.  Well, that tells you something.

18         MR. AIZENBERG:  Yes.

19         THE COURT:  It may tell you that the cleaning people
20 are taking it away.

21         MR. AIZENBERG:  Your Honor, would you like me to
22 submit the proof of service?

23         THE COURT:  Just file it.  I'm taking your
24 representation.  That's fine.  Just let me finish reading this
25 thing.

1          (Brief interruption.)

2          THE COURT:  All right.  I'm going to add

3  handwritten -- I'm going to strike one word and add two to the

4  second to the last paragraph on page 2, which in the draft

5  reads:

6          "It is further ordered that this Court will impose

7  harsher sanctions and penalties on Peter G. Rogan should he

8  persist in disobeying this Court's order."  I'm going to

9  change it to "will consider imposing."

10          I just wrote that, and I'm initialling it with

11  today's date on it.  And the date for your fee petition is

12  going to be November the 19th.  I filled that in on the last

13  page.

14          Have you got another copy of this thing?  I can make

15  the same changes in that one.  That way I can give you one to

16  take with you.

17          MR. MENDELOFF:  Sure.

18          (Brief interruption.)

19          THE COURT:  Okay.  One for you, Augie, and one for

20  them.

21          All right.  So we should -- we are going to need to

22  do a minute order saying that Peter G. Rogan is held in

23  contempt --

24          We are talking civil contempt here?

25          MR. MENDELOFF:  Yes, your Honor.

1    THE COURT:  -- is held in civil contempt of Court,

2    and just refer to the draft.  Just refer to the order.

3         Okay.  So I will see you at 11:30.

4         MR. MENDELOFF:  Yes.

5         MS. WAWZENSKI:  Thank you, your Honor.

6         (Recess.)

7         THE CLERK:  Recalling 02 C 8288, Dexia v. Rogan.

8         MR. HALLDIN:  Jeff Halldin on behalf of Rob and Sara

9    Rogan.

10        MR. O'ROURKE:  Myles O'Rourke on behalf of Brian

11   Rogan.

12        MR. AIZENBERG:  Gabriel Aizenberg on behalf of Dexia.

13        MS. WAWZENSKI:  Linda Wawzenski for the United

14   States.

15        THE COURT:  Okay.  So update me.

16        MR. AIZENBERG:  Your Honor, initially, the one aspect

17   of this Court's order about an hour and a half ago was the

18   parties to confer about the text of this letter to go to the

19   Bahamian court and a liquidator.  I sent an email to counsel

20   at 10:22 a.m.  I did it from my BlackBerry.  We had sent them

21   the proposed text on November 3rd, so two days ago.  We

22   reiterated that proposed text in the motion that we filed last

23   night, and I have not heard back.

24        But as your Honor walked in, counsel was about to

25   explain to me where they stand on this proposed text.

1     THE COURT:  Explain all this.

2     MR. HALLDIN:  Your Honor, Jeff Halldin on behalf of

3  Rob and Sara Rogan.

4     It's our position that from reading the papers that

5  have been filed, it looks like a lawyer in the Bahamas

6  represented by an email dated October 30th that he represented

7  all of the beneficiaries of these trusts, which would imply

8  that he represents our clients, the Rogan children.

9     We have attempted to contact our clients but have not

10  been able to get in touch with them before coming into Court,

11  so I don't know if that's true, but I suspect that it's not

12  because we have never heard of this lawyer in the Bahamas,

13  Mr. Scott.

14     It's our position that if Mr. Scott is

15  misrepresenting to the Bahamas court that he represents our

16  clients, that we can fix that by sending a letter to the

17  Bahamas court explaining that Mr. Scott does not represent our

18  clients and that he has no authority to act on behalf of them.

19  That would be the counterproposal for the language of a letter

20  that we would send to the Bahamas court.

21     THE COURT:  This needs to be both.  I mean, I think

22  that needs to be in the letter, but I think it needs to have

23  something that says that the -- because I think it's implicit

24  in the order I made before back on October the 20th, or

25  whatever the specific date was, that none of the Rogan

1   children nor Mrs. Rogan is asserting in the -- before the

2   Bahamas court or to the official litigator -- I said

3   "litigator"; I meant "liquidator" -- any claim or right to the

4   property pertaining to the two trusts at issue and requesting

5   that the Court and the liquidator transfer the properties to

6   the receiver.  And you can --

7         I have no problem with you adding a sentence saying

8   that any claims that Mrs. Rogan or the Rogan children are

9   making will be dealt with in the case up here, just to make it

10   clear that you're preserving your position in that regard.

11         But I think it needs to include all of those things.

12   I just don't think it --  if you just send a letter down there

13   that says he is not representing us, it's just going to add to

14   mother confusion, mother disputes, and mother problems.

15   Again, I want this to be done with.  I don't want to have

16   people back in front of me this afternoon or tomorrow morning

17   or the next day.

18         So that's the ruling.  Okay.

19         MR. O'ROURKE:  Judge, Myles O'Rourke.  Just --

20         THE COURT:  I'm not going to hold anybody in contempt

21   here, just so it's clear at this point.  I'm just talking

22   about sending a letter that clarifies things.  As far as --

23         Assuming that letter goes out, then the matter of

24   contempt regarding Mrs. Rogan on this particular thing is

25   going to be terminated.

1      MR. O'ROURKE:  Thank you.

2      MR. HALLDIN:  Your Honor, can I clarify one thing?

3      THE COURT:  Sure, absolutely.

4      MR. HALLDIN:  The request here is for a signed and

5  notarized letter.  If we have some problem getting a notarized

6  letter sent out today, would it be sufficient to have our

7  clients send a signed letter and follow that up with a

8  notarized copy?  I just don't want our clients to be held in

9  contempt because they can't get to a notary before the end of

10  business today.

11      THE COURT:  Well, I'm just going to ask you to make

12  --

13      MR. HALLDIN:  We will make all of our best efforts to

14  get that done.

15      THE COURT:  -- your reasonable best efforts to do

16  that.  And if you're not able to do that, you know, come up

17  with some alternative that, you know, that you're the lawyer

18  representing them and you're certifying that, you know, that

19  they have signed it and it will be followed up with a

20  notarized letter as soon as possible.

21      MR. HALLDIN:  Okay.

22      THE COURT:  Okay.

23      MR. O'ROURKE:  Thank you.

24      MR. HALLDIN:  Thank you.

25      MR. AIZENBERG:  By when should these letters

1  be produced?

2  THE COURT:  I assume it needs to go out some time

3  today so that you can -- you know, before the close of

4  business, so that you can go down there tomorrow for the court

5  proceeding down there, which I think is tomorrow morning.

6  MR. O'ROURKE:  Judge, I propose one hour.

7  THE COURT:  Okay.

8  MR. AIZENBERG:  Okay.

9  THE COURT:  Okay, it works for me.  I mean, if it

10  needs to be a little longer, that's fine, but just do the best

11  you can.  Okay.

12  MR. AIZENBERG:  Thank you, your Honor.

13  THE COURT:  Thanks.

14  (Which were all the proceedings had in the above-entitled

15  cause on the day and date aforesaid.)

16  C E R T I F I C A T E

17

18  I hereby certify that the foregoing is a true and

19  correct transcript of the above-entitled matter.

20

21

22  /s/ Laura M. Brennan                        April 9, 2015

23

24  _____          _____

25  Laura M. Brennan
   Official Court Reporter                              Date
   Northern District of Illinois