```
             IN THE UNITED STATES DISTRICT COURT
                 NORTHERN DISTRICT OF ILLINOIS
                       EASTERN DIVISION


 DEXIA CREDIT LOCAL,                 )  Docket No. 02 C 8288
                                     )
             Plaintiff,              )
                                     )
       vs.                           )
                                     )
 PETER G. ROGAN, et al.,             )  Chicago, Illinois
                                     )  October 15, 2015
             Defendants.             )  9:30 o'clock a.m.


          TRANSCRIPT OF PROCEEDINGS - MOTION
       BEFORE THE HONORABLE MATTHEW F. KENNELLY


 APPEARANCES:

 For the Plaintiff:    GREENBERG TRAURIG, LLP
                       BY:  MR. GABRIEL AIZENBERG
                       77 West Wacker Drive, Suite 3100
                       Chicago, IL  60601
                       (312) 456-1029


 Pro Se Defendant:     MR. PETER G. ROGAN
                       Metropolitan Correctional Center
                       71 West Van Buren Street
                       Chicago, IL  60605




 Court Reporter:       MS. CAROLYN R. COX, CSR, RPR, CRR, FCRR
                       Official Court Reporter
                       219 S. Dearborn Street, Suite 2102
                       Chicago, Illinois  60604
                       (312) 435-5639
```

1  (The following proceedings were had in open court:)
2  THE CLERK: Case number 02 C 8288, Dexia Credit v.
3  Rogan.
4  MR. AIZENBERG: Good morning, your Honor. Gabriel
5  Aizenberg on behalf of Dexia.
6  THE COURT: And Mr. Rogan is also here.
7  Mr. Rogan, this is just up on the civil matter that's
8  pending, and I had asked Dexia's lawyer to submit a report
9  basically identifying, at least in summary terms, what further
10 discovery they wanted to do in order to try to locate assets.
11 Did you get a copy of their report?
12 MR. ROGAN: No, I didn't, your Honor.
13 Your Honor, could I have a pen or a pencil? The
14 marshals don't allow me to bring a pen or pencil.
15 THE COURT: Yeah, there's reasons for that.
16 So I tell you what. Here's -- why don't you take a
17 few minutes, read this. It won't take you too long to read.
18 You can just read it there, and then I'll recall the case.
19 Just have a seat, Mr. Aizenberg. I will do a couple other
20 things.
21   (Short break.)
22 THE CLERK: Case 02 C 8288, Dexia v. Rogan.
23 MR. AIZENBERG: Good morning, your Honor. Gabriel
24 Aizenberg on behalf of Dexia.
25 THE COURT: Give your name.

1    MR. ROGAN:  Peter Rogan.
2    THE COURT:  So, Mr. Rogan, since you've got my copy
3 of this, let me pull it up electronically.
4    MR. ROGAN:  Your Honor, I marked this copy up.
5    THE COURT:  You can keep it.  I am going to let you
6 keep it.  I can always print out another one.  I just want to
7 print one up myself so I can look at it.
8    So, Mr. Aizenberg, what you're proposing to do at
9 this point is to serve subpoenas for documents on various
10 people and entities, I guess, right?
11    MR. AIZENBERG:  Yes, your Honor.
12    THE COURT:  And so just to be -- just so we have a
13 sense of who that is, it's the lawyer in the criminal case,
14 it's Ms. Pedlow, who is Mr. Rogan's sister, P-e-d-l-o-w, and
15 it's Mrs. Rogan and, if I am recalling correctly, there's two
16 sons, but I could be wrong about that.
17    MR. AIZENBERG:  Two sons and a daughter.
18    THE COURT:  Sons and a daughter.
19    All right.  So, Mr. Rogan, do you have a position on
20 any of that?
21    MR. ROGAN:  Your Honor, all I can do is relate to
22 what was done yesterday, and apparently documents have already
23 been received from Mrs. Pedlow.  I don't know whether it was
24 by Dexia's attorney here or whether it was by the U.S.
25 attorney.

1  THE COURT: Yeah. So if the government's got it, it
2 doesn't necessarily mean that Dexia's privy to them.
3  MR. AIZENBERG: To some extent, we're sharing, and we
4 wouldn't do it twice. If the government is getting it, they
5 are sharing it with us.
6  With respect to Ms. Pedlow, I think we've gotten --
7 they've gotten documents from Citibank.
8  THE COURT: From a bank.
9  MR. AIZENBERG: And so we don't know how much follow
10 up they have actually done with Ms. Pedlow in trying to find
11 out the sources of the funds. We know that she sent out
12 money, but we don't know where the money came from
13 specifically.
14  MR. ROGAN: Your Honor, just to refresh your
15 memory --
16  THE COURT: That's fine.
17  MR. ROGAN: Just to refresh your memory, many years
18 ago -- I shouldn't say many years ago -- a number of years ago
19 Dexia also had frozen Ms. Pedlow's account and had done, I
20 believe, an investigation at that time relative to Ms. Pedlow
21 and then dismissed -- I am not using the right words, I'm
22 sorry --
23  THE COURT: I get what you're saying.
24  MR. ROGAN: -- let it go, released it, or whatever
25 the words were, based upon Ms. Pedlow's attorney, and also, I

1  believe they did that with my children and my wife.
2  　　　　THE COURT:  I certainly remember it on your wife and
3  children.  I had completely forgotten about --
4  　　　　MR. AIZENBERG:  Your Honor, in fact, there had been a
5  freeze on Ms. Pedlow's Citibank account.
6  　　　　THE COURT:  When?  Do you remember, ballpark, when it
7  was lifted?
8  　　　　MR. AIZENBERG:  Yeah, in 2008, and these payments
9  started happening afterwards.
10 　　　　THE COURT:  Post the date?
11 　　　　MR. AIZENBERG:  Yeah.
12 　　　　MR. ROGAN:  The other thing that you should be aware
13 of, your Honor, is that in 2006, although I was never served,
14 we continued to voluntarily provide asset disclosure through
15 my Canadian counsel, Catherine Wilburn, Mr. Aizenberg's then
16 co-counsel, Eric Pruitt, while we were also serving to update
17 discovery to the government.  Furthermore, in 2008, Dexia
18 brought an action against me in Canada called a Mareva
19 injunction which was litigated, and also --
20 　　　　THE COURT:  What is that?
21 　　　　MR. ROGAN:  A Mareva injunction, it's the title of an
22 injunction that they use up there.  It just froze all my
23 assets.
24 　　　　THE COURT:  Okay.
25 　　　　MR. ROGAN:  In regard to that --

1  THE COURT: You said it got litigated, and then what
2  happened?
3  MR. ROGAN: Dexia -- again, I am not using the right
4  term maybe, but Dexia lost and paid cost --
5  THE COURT: Okay.
6  MR. ROGAN: -- in Canada. And yet along those
7  lines -- that went beyond 2008. It started in 2008, and it
8  actually coincided, your Honor, with your -- as I subsequently
9  learned, your order that I had to personally show up --
10  THE COURT: Right.
11  MR. ROGAN: -- in 2008, and that was also tied into
12  -- Dexia's position up there was I was not allowed to use any
13  money from my attorneys for living expenses, and that finally
14  got resolved, and I don't know what year it was, whether it
15  was 2009 or 2010, but along those lines, we also provided
16  discovery to Dexia in the Canadian proceedings.
17  THE COURT: Okay.
18  MR. AIZENBERG: Do you want me to respond, your
19  Honor?
20  THE COURT: Yes.
21  MR. AIZENBERG: I'll respond briefly to some of
22  Mr. Rogan's points.
23  First of all, we are seeking discovery for the time
24  period after 2008.
25  THE COURT: Understood.

1  MR. AIZENBERG:  And that just has never been covered.
2 We've never gotten any discovery from Mr. Rogan directly or
3 indirectly for that matter post 2008, and as to pre 2008, the
4 whole idea that there was cooperation with Mr. Pruitt when he
5 was in private practice with us was the subject of your -- of
6 an order to show cause that your Honor issued as to why
7 Mr. Rogan should not be held in civil contempt for not
8 responding to the citation to discover assets, and your Honor
9 issued that order so that issue has been adjudicated.
10  THE COURT:  That's kind of --
11  MR. AIZENBERG:  I think that's past.
12  THE COURT:  Stop.
13  MR. AIZENBERG:  We are seeking post discovery which
14 we never got.
15  THE COURT:  Stop.  Stop.  That means stop.
16  MR. AIZENBERG:  Got it.
17  THE COURT:  Look, what I've got here -- what's the
18 outstanding amount of the judgment, Dexia's judgment at this
19 point?
20  MR. AIZENBERG:  The judgment is for $124 million.
21  THE COURT:  What amount, if any, have you gotten?
22  MR. AIZENBERG:  We have gotten in the vicinity of 25.
23  THE COURT:  Million, okay.  So there's north of 90
24 million?
25  MR. AIZENBERG:  Not counting interest.

1  THE COURT: So I think that Dexia is entitled to do
2  reasonable discovery in order to ascertain whether there are
3  assets that are legally available to satisfy part of the
4  judgment. The fact that evidently, at least it's alleged,
5  some money went from Mr. Rogan's sister for his benefit after
6  I lifted the asset freeze suggests that there are other funds
7  that conceivably might be available.
8  So what I'm going to permit you to do is to issue
9  records subpoenas. We are not talking about depositions of
10 anybody yet, records subpoenas to the people that you've
11 identified here, and I want to make clear that in saying that,
12 I am not -- I am not saying that -- I am not adjudicating any
13 privilege claims or anything like that. I am not saying
14 somebody can't come in and assert a privilege, whether it's a
15 Fifth Amendment privilege or whether it's an attorney-client
16 privilege, that's an issue for another day. I am just letting
17 you issue the subpoenas and nature will, I guess, take its
18 course after that.
19 So we're going to have to do this in stages. You are
20 going to need to come in and ask me for whatever it is, the
21 next step you want to do after you get past that.
22 And then my guess is that by the time you're back
23 here, Mr. Rogan, you won't be around here anymore. You're
24 going to be shipped off somewhere.
25 MR. ROGAN: Just for information purposes, I guess

1  query on my part, your Honor, in my discussion with Mr. Breen
2  (phonetic) yesterday after court, apparently Mr. Breen
3  vigorously disputed Mr. Aizenberg's claim or description of
4  how he served Mr. Breen and what Mr. Breen said or didn't say;
5  but as a result of that, we are having, as I understand it,
6  your Honor, there is ongoing discussion with Mr. Breen and the
7  government as to one of the clauses that has to do with
8  Judge Leinenweber's ruling --
9          THE COURT: Okay.
10         MR. ROGAN: -- relative to me, so Mr. Breen told me
11 he would be meeting with me sometime next week --
12         THE COURT: Okay.
13         MR. ROGAN: -- to discuss that.
14         THE COURT: Okay.
15         MR. ROGAN: And I think that impacts me in terms of
16 any kind of response that I might make --
17         THE COURT: Fair enough.
18         MR. ROGAN: -- to any inquiries.
19         THE COURT: So the email that was attached to this,
20 which I think you've got there, is that it looks like
21 Mr. Breen sent Mr. Aizenberg an email back a couple of weeks
22 ago indicating that he didn't represent you in this case, he
23 represented you in the case in front of judge Leinenweber, but
24 essentially that you would -- while the criminal case is
25 pending, quote-unquote, you would assert your Fifth Amendment

1 privilege, which obviously you're entitled to do. I don't
2 know whether that changes now. Presumably, that's one of the
3 things you are going to talk to Mr. Breen about.
4     MR. ROGAN: That's one of the things that I
5 understand is still open, your Honor.
6     THE COURT: Understood. It would be logical for that
7 to be the case.
8     So I'm going to set this for another status in about
9 60 days out. Basically, this time in December. My guess is
10 that Mr. Rogan will not be local at that point, but it will
11 not be that difficult to know where you are because there is a
12 website that basically --
13     MR. ROGAN: I think they will be able to find me,
14 your Honor.
15     THE COURT: Right, we will know where you are. So
16 I'll try to figure out whether there's a way to get you hooked
17 in by telephone or by some other mechanism for that, if you
18 want to be. And if you have counsel at that point, then
19 obviously the lawyer can appear for you.
20     So, Mr. Aizenberg, look at your schedule and tell me
21 whether the 15th of December at 9:30 would work for you.
22     MR. ROGAN: I'm sorry, your Honor?
23     THE COURT: The 15th of December.
24     MR. AIZENBERG: That's fine, your Honor.
25     THE COURT: I am setting it for a status on that

1  date.
2          Any other questions you have for me?
3          MR. ROGAN: Yes, your Honor. Just as -- you know, as
4  a matter of formal record, I had no idea of this hearing, this
5  status hearing, and --
6          THE COURT: Yeah, I think the reason for that -- I
7  think the reason for that -- my guess is that there's no,
8  quote-unquote, pro se appearance. So let's do this. You have
9  an identification number. Do you know what it is off the top
10 of your head?
11         MR. ROGAN: Yes, I do.
12         THE COURT: What is it?
13         MR. ROGAN: 46751424.
14         THE COURT: 46751424.
15         MR. ROGAN: Right.
16         THE COURT: Let's add Mr. Rogan's name to the docket,
17 that number, and it's at least currently Metropolitan
18 Correctional Center, which I think is 78 West Van Buren. We
19 will get that figured out.
20         MR. ROGAN: 71 West Van Buren.
21         THE COURT: 71 West Van Buren. Do you have the zip
22 code?
23         MR. AIZENBERG: 60605.
24         THE COURT: We will get that added, and then once we
25 figure out where you are, we will get it changed. I think

1 what happened is at the last date since your appearance, if
2 you will, wasn't on the docket, all I did was to tell
3 Mr. Aizenberg -- Mr. Aizenberg orally asked for leave to do
4 discovery. I said you're going to have to tell me what it is.
5 That's why he filed this report, and so that's essentially all
6 that happened.
7     MR. ROGAN: Okay.
8     THE COURT: And you can take that with you. You
9 can't take the pen, though. Got to have the pen back.
10     MR. ROGAN: All right. I'm certain I will probably
11 have some additional questions, your Honor, once I am able to
12 digest this.
13     THE COURT: That's fine. You can file something,
14 obviously. You will have to mail it to the clerk, of course,
15 but you can file something.
16     MR. AIZENBERG: Your Honor, just bottom line, we're
17 entitled to take the discovery that's set forth in paragraph 7
18 of our status report?
19     Do you want to see it? My markings are on the first
20 page.
21     THE COURT: Yeah, you're entitled to send records
22 subpoenas --
23     MR. AIZENBERG: Understood.
24     THE COURT: -- to the people and entities that are
25 identified in paragraph 7.

1           MR. AIZENBERG:  Thank you, your Honor.

2           THE COURT:  All right.  Okay.  Take care.  Thanks.

3     (Which were all the proceedings had in the above-entitled

4  cause on the day and date aforesaid.)

5     I certify that the foregoing is a correct transcript from
   the record of proceedings in the above-entitled matter.
6

7  Carolyn R. Cox                              Date
   Official Court Reporter
8  Northern District of Illinois

9  /s/Carolyn R. Cox, CSR, RPR, CRR, FCRR